## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| MEDTECH PRODUCTS INC.,<br>90 North Broadway<br>Irvington, New York 10533<br><br>    Plaintiff,<br><br>  v.<br><br>RANIR, LLC,<br>4701 East Paris Avenue<br>Grand Rapids, MI  49512<br><br>    and<br><br>CVS PHARMACY, INC.,<br>One CVS Drive<br>Woonsocket, RI  02895<br><br>    Defendants. | 07 CV _____<br><br>**JURY DEMAND**<br><br>**COMPLAINT FOR<br>INJUNCTIVE RELIEF AND<br>MONEY DAMAGES** |

07 CV 3302

RECEIVED
APR 2 4 2007
U.S.D.C. S.D. N.Y.
CASHIERS

        For its Complaint for Injunctive Relief and Money Damages against Defendants RANIR,

LLC ("Ranir") and CVS PHARMACY, INC. ("CVS") (collectively, the "Defendants"), Plaintiff

MEDTECH PRODUCTS INC. ("Medtech") states and alleges as follows:

### INTRODUCTION

        1.      This is an action for willful infringement of a duly and legally issued patent, as

well as unfair competition, violation of the Lanham Act by use of false designation in interstate

commerce, violation of common law trademark and trade dress rights, copyright infringement,

and violation of New York's Consumer Protection Act.

2.      This case involves a dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism (teeth grinding), a product which is sold under the trademarks THE DOCTOR'S® NIGHTGUARD™ and that nationally generates over ten million dollars in annual sales for Medtech.

3.      Medtech and its predecessor-in-interest pioneered sales of over-the-counter ("OTC") dental protectors and have been selling THE DOCTOR'S® NIGHTGUARD™ brand dental protector now for more than ten years.  Until recently, Medtech was the only lawful source of any such product in the OTC market.

4.      Medtech's THE DOCTOR'S® NIGHTGUARD™ brand dental protector is covered by valid patents issued by the U.S. Patent and Trademark Office.  THE DOCTORS® NIGHTGUARD™ is a high-quality product that has both distinct advantages to the consumer and a distinctive feel.  THE DOCTOR'S® NIGHTGUARD™ offers superior protection and comfort—characteristics that consumers of dental protectors have come to expect from Medtech's product.

5.      Defendants CVS and Ranir are currently marketing and selling a dental protector in interstate commerce for nighttime tooth grinding or bruxism in the OTC market which improperly utilizes Medtech's NIGHTGUARD™ mark.   Moreover, Ranir appears to be preparing to market and sell the same dental protector, albeit under a different name, through Duane Reade, Inc., a pharmacy chain headquartered in New York.

6.      Prior to January 2007, CVS sold the NIGHTGUARD™ dental protector for an average retail price of approximately $24.99.  In January 2007, and without any price change by

Medtech, CVS unilaterally inflated the price of the NIGHTGUARD™ dental protector by approximately 20 percent, to $29.99.

7.    Only a short time after inflating the price of the NIGHTGUARD™ dental protector, in January 2007, CVS introduced its infringing dental protector at an average retail price of $24.99 – the same price at which the NIGHTGUARD™ dental protector was sold before CVS's unilateral price increase.    By keeping the NIGHTGUARD™ dental protector price artificially higher, CVS has attempted to boost sales of its infringing product at the expense of the NIGHTGUARD™ dental protector.

8.    Defendants' product infringes on Medtech's valid patent rights relating to dental protectors.    As a result, the Defendants have wrongfully and deliberately used Medtech's patented product formulation to attempt to make the Defendants' dental protector product feel like the NIGHTGUARD™ dental protector and otherwise infringe Medtech's valid patent rights.

9.    In introducing a competing product using Medtech's trade dress and/or its mark, Defendants are wrongfully benefiting from the commercial success of, and misappropriating the consumer's trust that is placed in, THE DOCTOR'S® NIGHTGUARD™ dental protector. Medtech has committed millions of dollars to radio and television advertising in order to support and expand the brand recognition for the THE DOCTOR'S® NIGHTGUARD™.

10.    Defendants have launched a coordinated campaign of unfair competition to deceptively lure consumers into purchasing Defendants' dental protector in the mistaken belief that it comes from Medtech, the maker of the market-leading and well-advertised THE DOCTOR'S® NIGHTGUARD™ dental protectors.

11.     Defendants' confusingly labeled product, combined with Defendants' deceptive marketing, is likely to cause confusion among retailers and consumers. By using the distinctive red, purple, and white packaging, a crescent moon, a drawing of the device, and other graphic elements established in the market as Medtech's trade dress, the competing products manufactured or assembled by Ranir as house brands for CVS (and potentially Duane Reade) appear to the consumer to be manufactured by Medtech.

12.     Further, Defendants' product attempts to misappropriate the consumer's trust that is placed in Medtech's NIGHTGUARD™ brand dental protector by copying the copyrighted material that is published in Medtech's "At-Home Fitting Instructions" and packaging.

## PARTIES, JURISDICTION & VENUE

13.     Medtech is a corporation organized and existing under the laws of Delaware, with its principal place of business at 90 North Broadway, Irvington, New York 10533.

14.     Ranir is a limited liability company organized and existing under the laws of Delaware, with its principal place of business at 4701 East Paris Avenue, Grand Rapids, Michigan 49512.

15.     CVS is a corporation organized and existing under the laws of Delaware, with its principal place of business at One CVS Drive, Woonsocket, Rhode Island 02895.

16.     This Complaint arises under 15 U.S.C. §§ 1116-18 and 1125(a); 17 U.S.C. § 101 et seq.; 35 U.S.C. § 271; and the laws of the State of New York.

17.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121.   Moreover, this Court has supplemental and pendent jurisdiction under 28 U.S.C. § 1367 because the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate that the state and federal issues be consolidated for a single trial.

18.     Defendants are subject to personal jurisdiction in this Court.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are doing business in this District, because a substantial part of the events giving rise to the acts complained of occurred in this District.   Venue is also proper pursuant to 28 U.S.C. Section 1391(c) because Defendants are subject to personal jurisdiction in this District under New York law.   Moreover, Duane Reade, another outlet through which, upon information and belief, Ranir intends to distribute its product, resides in this judicial district.

## FACTS COMMON TO ALL COUNTS

20.     Medtech markets, distributes, and sells a dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism (teeth grinding) under its trademarks THE DOCTOR'S® NIGHTGUARD™.   Medtech markets, distributes, and sells dental protectors throughout the United States and in the New York area.

21.     Medtech and its predecessor-in-interest, Dental Concepts LLC, have spent a considerable amount of time, money, and labor in marketing and promoting dental protector products under the NIGHTGUARD™ mark through extensive radio and television advertising campaigns.   (Hereinafter, Dental Concepts and Medtech are collectively referred to as

"Medtech.") As the leader in OTC dental protectors, Medtech has fostered substantial consumer trust by combining high-quality products with extensive marketing and promotional activities.

## MEDTECH BEGAN USING THE
## NIGHTGUARD™ MARK IN JANUARY 1997.

22.     Medtech has used ornamentally distinctive coloring and graphics layouts since 1997 on its products packaging, hereinafter referred to as Medtech's NIGHTGUARD™ "Trade Dress," which the consuming public has come to recognize as designating high-quality dental protector products of Medtech.

23.     Medtech began using the NIGHTGUARD™ mark in association with the marketing, distribution, and sale of dental protectors on or about January 1997. Under the NIGHTGUARD™ mark, Medtech is distinctively identified to the public as the source of a high-quality dental protector and related products.

24.     From January 1997, and for several years thereafter, the NIGHTGUARD™ dental protector was the only significant such product on the OTC market. Its quality and efficacy generated significant product recognition, and the NIGHTGUARD™ mark and associated Trade Dress became firmly associated in the minds of the consuming public with the high-quality dental protector product marketed and sold by Medtech.

25.     All previous bruxism devices had been limited to "prescription only" sales by the FDA approval process. Prior to the FDA approval of March 3, 2006, sales of the NIGHTGUARD™ dental protective device were made OTC with the knowledge of the FDA but without formal approval.

26.     All of Medtech's NIGHTGUARD™ dental protective devices sold prior to formal FDA OTC approval were in distinctive blue, white, and black packaging, with a crescent moon, and featured prominent display of the NIGHTGUARD™ mark. An example of the prior packaging is attached as **Exhibit A**, and the front cover is pictured below:



27.     Medtech originated the market when it was the first to obtain formal FDA approval for an OTC dental protective device for night time tooth grinding or bruxism on March 3, 2006. A true and correct copy of the summary basis of approval is attached as **Exhibit B**. All previous bruxism devices had been limited by the FDA to 'prescription only' sales. As such, Medtech is credited with creating the entire category of OTC dental protectors and revolutionizing at-home consumer care for nighttime tooth grinding or bruxism.

**IN 2006, MEDTECH CONTINUES TO ESTABLISH ITS MARK WITH A
REVISED TRADE DRESS AND EXTENSIVE ADVERTISING.**

28.     Subsequent to the FDA approval, Medtech changed its trade dress in the Fall of 2006 to a distinctive combination of purple, red, and white, and included on a package a crescent moon, a drawing of the device, and other distinctive graphic elements ("Medtech's Trade

Dress"). Concurrent with the new Trade Dress, Medtech revised its labeling in conformance with the new FDA approval. A true and correct copy of the packaging for Medtech's NIGHTGUARD™ dental protector is attached hereto as **Exhibit C**, and the front cover is depicted below:



29.     The package prominently displays Medtech's mark NIGHTGUARD™ on the front cover, with "NIGHT" in bold letters and "GUARD" set off in a contrasting font. The package colors are a distinctive purple, red, and white, and the package cover features the crescent moon and product drawing. The package lists on its side panel certain warnings and instructions and prominently states on the back, in contrasting red and purple, the following featured phrase:

> *Designed by a dentist*
> *for protection and comfort.*
> *Custom fit by you*
> *for convenience.*

The brilliant colors and package layout of Medtech's NIGHTGUARD™ dental protector are readily recognizable to consumers of dental protector devices.

30.     Since use of the NIGHTGUARD™ mark and associated Trade Dress began, Medtech has used the NIGHTGUARD™ mark and associated Trade Dress to market its dental protector through advertisements on nationally syndicated radio networks and shows, and on cable television.  The advertisements display the NIGHTGUARD™ mark and associated Trade Dress.

31.     Medtech has spent a considerable amount of time, money, and labor in marketing and promoting dental protector products under the NIGHTGUARD™ mark.

32.     Since  January  2007,  all  television  advertising  by  Medtech  for  its NIGHTGUARD™ dental protector devices has featured the NIGHTGUARD™ mark and the distinctive purple, red, and white color scheme.

33.     In the past three years alone, Medtech has spent approximately $9,000,000 in advertising and promotion to build the NIGHTGUARD™ brand name.  Those efforts include a recent cable television advertising campaign.  As a result of that advertising campaign, growth in sales increased dramatically.

34.     Medtech sells the NIGHTGUARD™ dental protector with an "At-Home Fitting Instructions" insert that describes the dental protector product and how the customer should use the product.  Portions of the "At-Home Fitting Instructions" are reproduced on Medtech's packaging.  A true and correct copy of the "At-Home Fitting Instructions" insert is attached as **Exhibit D** hereto.

**MEDTECH'S WIDELY RECOGNIZED MARK IS A DISTINCTIVE DESIGNATION
TO THE PUBLIC OF THE SOURCE OF A HIGH-QUALITY DENTAL PROTECTOR**

35.     The NIGHTGUARD™ dental protector product has enjoyed a consistently high level of commercial success.  Over the past six years, Medtech has sold more than $43,000,000 of its NIGHTGUARD™ dental protector products.  Notwithstanding the recent addition of numerous competitors in this category, the NIGHTGUARD™ dental protector product remains the recognized category leader.

36.     As a direct result of its marketing and promotional activities, Medtech has created a distinctive designation to the public of Medtech as the source of a high-quality dental protector and related products under the NIGHTGUARD™ mark and its associated packaging Trade Dress.

37.     Through its extensive advertising campaign and sales of high-quality dental protectors to the public under the NIGHTGUARD™ brand name, Medtech has successfully established the NIGHTGUARD™ mark as a widely-recognized symbol of high-quality dental protectors, and has accumulated incalculable goodwill now associated with Medtech's NIGHTGUARD™ mark and Trade Dress.

38.     By virtue of this success, the NIGHTGUARD™ trademark has become associated exclusively with Medtech.  Medtech presently owns a pending federal trademark application for its NIGHTGUARD™ mark (NIGHTGUARD, Ser. No. 77/056,556, United States Patent and Trademark Office).

## THE MEDTECH NIGHTGUARD™ DENTAL PROTECTOR
## IS COVERED BY A VALID UTILITY PATENT ISSUED BY
## THE U.S. PATENT AND TRADEMARK OFFICE

39.     The Medtech NIGHTGUARD™ dental protector is covered by U.S. Patent No. 6,830,051, issued by the U.S. Patent and Trademark Office on December 14, 2004 (the "'051 Patent"). A true and correct copy of the '051 Patent is attached hereto as **Exhibit E**. The '051 Patent is valid and is subsisting in full force and effect, and Medtech is the current assignee of all rights under the '051 Patent. Medtech has complied with all appropriate requirements to maintain the validity and effect of the '051 Patent.

40.     The United States Patent and Trademark Office has recognized the industry-leading developments in several dental protector products by Medtech, as indicated by the following United States patents:

Hidalgo, et al., U.S. Pat. No. D504,744 (issued May 3, 2005), "Bruxism Guard"

Wagner, U.S. Pat. No. D382,965 (issued Aug. 26, 1997), "Mouthguard"

Wagner, U.S. Pat. No. 5,566,684 (issued Oct. 22, 1996), "Custom Fit Mouthguard"

41.     The grant via the United States Patent and Trademark Office of the '051 Patent is *prima facie* evidence of the validity of such patent. The patent grants Medtech the right to exclude others from making, using, selling or offering to sell the patented invention in commerce in the United States. The '051 Patent is constructive notice to Defendants and to all others of Medtech's ownership of the patented invention. Moreover, Medtech's NIGHTGUARD™ dental protector products have long been and are currently marked with the applicable U.S. Patent Numbers.

42.    The OTC sales of dental protector devices under the new purple, red and white Trade Dress were, in all cases, protected by the '051 Patent and regulated by the formal FDA approval of OTC sales occurring in March 2006.

## MEDTECH'S PACKAGING AND "AT-HOME FITTING INSTRUCTIONS" ARE COVERED BY A VALID COPYRIGHT ISSUED BY THE U.S. REGISTER OF COPYRIGHTS

43.    Medtech owns a federal copyright registration for its packaging and "At-Home Fitting Instructions" insert (**Exhibit D**), as reflected in U.S. Reg. No. TX 6-536-309, issued by the U.S. Register of Copyrights on April 23, 2007 (the "Copyright Registration"). A copy of the Copyright Registration is attached hereto as **Exhibit F**. The Copyright Registration is valid and is subsisting in full force and effect.

44.    Medtech's Copyright Registration is *prima facie* evidence of the validity of such registration, of Medtech's ownership of the copyright, and of Medtech's exclusive right to use the copyrighted material. Moreover, Medtech's packaging and "At-Home Fitting Instructions" carry a copyright notice that is actual notice to Defendants and to all others of Medtech's ownership of the copyrighted material.

## DEFENDANTS INTRODUCE COMPETING PRODUCTS AND MISAPPROPRIATE THE INTELLECTUAL PROPERTY OF MEDTECH

45.    On information and belief, Defendant Ranir manufactures or assembles a competing product to Medtech's NIGHTGUARD™ dental protector for CVS (and potentially Duane Reade) to market, distribute, and sell throughout the country and in the New York area. Duane Reade is a Delaware corporation that is headquartered in New York, New York.

46.    Only after the success of the NIGHTGUARD™ devices in the marketplace did Ranir and CVS begin to adopt Medtech's NIGHTGUARD™ patent rights, trademark, and/or Trade Dress and copyright in a deliberate, obvious and transparent attempt to wrongfully profit from Medtech's investments in the intellectual property protecting its NIGHTGUARD™ dental protector.

47.    Defendant CVS also has artificially and unilaterally inflated the price of Medtech's NIGHTGUARD™ dental protector in its effort to make its competing product appear less expensive and in line with the historic price of the NIGHTGUARD™ dental protector.

48.    Prior to January 2007, CVS sold the NIGHTGUARD™ dental protector for an average retail sales price of approximately $24.99. In January 2007, and without any price change by Medtech, CVS unilaterally inflated the average retail sales price of the NIGHTGUARD™ dental protector by approximately 20 percent, to $29.99.

49.    Several weeks after inflating the price of the NIGHTGUARD™ dental protector, CVS introduced its infringing dental protector at an average retail price of $24.99—the same price of the NIGHTGUARD™ dental protector before CVS's unilateral price increase. By keeping the NIGHTGUARD™ dental protector price artificially higher, CVS has attempted to boost sales of its infringing product at the expense of the NIGHTGUARD™ dental protector.

50.    CVS, in another obvious and deliberate attempt to take advantage of the customer trust in the NIGHTGUARD™ dental protector, has also confusingly placed its competing dental protector product immediately adjacent to the Medtech dental protector product on CVS' shelf. This shelf placement, combined with the historic price similarity to the NIGHTGUARD™ dental

protector, is likely to confuse customers into purchasing the CVS product, thinking that the customer is purchasing Medtech's NIGHTGUARD™ dental protector.

### DEFENDANTS HAVE MISAPPROPRIATED THE NIGHTGUARD™ MARK AND TRADE DRESS

51.    CVS's package prominently displays the "DENTAL GUARD" mark on the front cover immediately above the words "NIGHT PROTECTOR." CVS's packaging also uses the same distinctive purple, red, and white color scheme as Medtech's Trade Dress, and includes a prominent crescent moon and drawing of the product. A true and correct copy of the packaging for CVS's competing product is attached hereto as **Exhibit G**, and the front cover is pictured below:



52.    Based upon an image accessible at a webpage maintained by Ranir at http://www.restassurednite.com/indexdr.php, Duane Reade's packaging also uses (or will use) the same distinctive purple, red, and white color scheme as Medtech's Trade Dress. A copy of the packaging for Duane Reade's competing product, from the webpage, is pictured below:



53.     The CVS/Ranir competing product is apparently intended to be sold in CVS in the New York area adjacent to Medtech's NIGHTGUARD™ dental protectors.

54.     The selection of the colors purple, red, and white by Defendants was not coincidental.  Instead, Defendants purposefully have attempted to trade on the goodwill and reputation of Medtech's pioneering NIGHTGUARD™ dental protector.  When the packaging of THE DOCTOR'S® NIGHTGUARD™ Trade Dress (both the original and the most recent) is compared with the packaging of the Defendants' competing products, the intentional copying and resulting likelihood of consumer confusion is evident:

 

 

55.    Not only will consumers be confused into purchasing Defendants' dental protector products when they want Medtech's NIGHTGUARD™ dental protector, Defendants' products also will eviscerate the goodwill Medtech has spent the last ten years (and millions of dollars) cultivating for NIGHTGUARD™.

16

56.     The product offered by Defendants is of inferior quality when compared to THE DOCTOR'S® NIGHTGUARD™ and has noticeably different feel and comfort characteristics in the mouth of the consumer. The Defendants' product also may cause muscles in the face and jaw to engage involuntarily when used, causing the user to have a negative experience. Consumers who purchase a dental protector product in a distinctive purple, red, and white package and have a negative experience because of an inferior product are less likely to make a repeat purchase of a dental protector product with similar packaging. Accordingly, sales of the competing product by Defendants using Plaintiffs' Trade Dress and mark damage the reputation of Medtech and its product.

### DEFENDANTS HAVE MISAPPROPRIATED THE NIGHTGUARD™ PATENTED INVENTION

57.     Defendants have received a Section 510(k) premarket authorization from the Food and Drug Administration ("FDA") for marketing of the Defendants' product, based upon the Defendants' product being "substantially equivalent" to MedTech's product, among others. This authorization was received by Ranir under the product name "Ranir Rest Assured™ Nite Protector."

58.     The Defendants' product has not been licensed or authorized under the '051 Patent. The Defendants' product infringes one or more claims of Medtech's patent both literally and/or under the doctrine of equivalents.

## DEFENDANTS HAVE MISAPPROPRIATED THE NIGHTGUARD™ COPYRIGHTED "AT-HOME FITTING INSTRUCTIONS"

59.    On information and belief, Defendants' competing products include the same "Fitting Instructions," a true and correct copy of which is attached hereto as **Exhibit H**, and portions of which appear on their packaging.

60.    The Defendants' "Fitting Instructions" closely copies THE DOCTOR'S® NIGHTGUARD™ "At-Home Fitting Instructions" in both the language employed and the ordering of the instructions.  Substantial portions of the Medtech's "At-Home Fitting Instructions" are printed on the packaging of the CVS dental protector product.

61.    By way of example, in the "Warning" section of the Defendants' "Fitting Instructions," as well as on the packaging of the product, the Defendants include virtually identical warnings, in the same order, employing almost identical language as the copyrighted THE DOCTOR'S® NIGHTGUARD™ "At-Home Fitting Instructions."

### DEFENDANTS' ACTIONS ARE HARMFUL TO MEDTECH

62.    Defendants' deliberate acts infringing upon Medtech's NIGHTGUARD™ trademark and/or Trade Dress, copyrights, and patent rights are willful and deliberate, and have caused and or will continue to cause damage and irreparable injury to Medtech.

63.    Not only has Medtech lost sales and revenues as confused customers buy one of Defendants' products when they intended to buy Medtech's product, but Defendants' conduct will continue to damage Medtech's ability to maintain its hard-won brand recognition and reputation for high-quality products in the OTC dental protector category.  Further damage and

irreparable injury will result if Defendants are allowed to continue to violate Medtech's rights and deceive customers.

64.    More importantly, Defendants' conduct will damage Medtech's ability to maintain its brand recognition in the dental protector category due to Defendants' deliberately deceptive behavior.  If Defendants flood the market with its infringing, confusing, and inferior product, it will undermine Medtech's efforts to continue to grow its brand, maintain its reputation for high-quality products, and establish greater success.

65.    CVS's conduct in using Medtech's mark is all the more culpable when measured against the trademarks used by Medtech's competitors in the dental protector category.  A survey of the trademarks used by these competitors shows several non-infringing options available to companies that wish to enter this market, such as "SLEEP RIGHT SELECT™" and "VERSACRYL™ Splint," and even Duane Reade's "REST ASSURED™" brand.

66.    Defendants' deliberate acts constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a);  patent infringement under 35 U.S.C. § 271; copyright infringement under 17 U.S.C. § 501;  conduct in violation of the New York Act for Consumer Protection, NY CLS Gen. Bus. Section 349(h); and violations of related common-law rights.  Medtech seeks temporary and permanent injunctive relief to halt Defendants' deliberate and wrongful conduct and an award of compensatory and punitive damages, as well as attorneys' fees and expenses, for Defendants' willful and wanton conduct.

## COUNT I
## PATENT INFRINGEMENT

67.     Medtech incorporates the allegations contained in Paragraphs 1-63 above as if fully set forth herein.

68.     Medtech is the owner by assignment of the '051 Patent.     Defendants manufacture, make, have made, use, sell and/or offer for sale a dental protector product that infringes one or more claims in the '051 Patent, literally and/or under the doctrine of equivalents, and/or induces or contributes to the infringement of one or more claims in the '051 Patent by others, including but not limited to retailers and consumers who buy Defendants' products.

69.     Defendants' actions are a violation of 35 U.S.C. § 271.

70.     Defendants' infringing actions are willful and deliberate, and Medtech is entitled to treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285, this being an exceptional case.

71.     Defendants' infringement has damaged Medtech in an amount to be determined at trial.

72.     Defendants' infringement has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.     Medtech has no adequate remedy at law for Defendants' infringement.

## COUNT II
## LANHAM ACT – TRADE DRESS INFRINGEMENT

73.     Medtech incorporates the allegations contained in Paragraphs 1-72 above as if fully set forth herein.

74.    The consistent, distinctive, and non-functional color and appearance of the Trade Dress has achieved secondary meaning with customers, and constitutes protectible Trade Dress of Medtech.

75.    Defendants' unauthorized and willful use of Medtech's Trade Dress in the packaging of Defendants' competing goods constitutes use in interstate commerce that infringes Medtech's exclusive rights in its Trade Dress, and has and is intended to, or is likely to, cause confusion, mistake or deception in the minds of the public as to the origin, source, sponsorship, approval, association, and authenticity of the products sold and marketed by Defendants. Defendants' acts constitute trade dress infringement under 15 U.S.C. § 1125(a)(1)(A).

76.    Defendants' infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117.

77.    Defendants' infringing conduct has damaged Medtech in an amount to be determined at trial.

78.    Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Defendants' infringement.

## COUNT III
## LANHAM ACT - UNFAIR COMPETITION/USE OF FALSE DESIGNATION IN INTERSTATE COMMERCE

79.    Medtech incorporates the allegations contained in Paragraphs 1-78 above as if fully set out herein.

80.    Notwithstanding Medtech's well-known and prior-established rights to the NIGHTGUARD™ mark and Trade Dress, Defendants have caused (or will cause) dental protector goods to enter into interstate commerce using Medtech's Trade Dress. Furthermore, Defendant Ranir and CVS have caused dental protector goods to enter into interstate commerce using the designation and representation "DENTAL GUARD NIGHT PROTECTOR."

81.    Defendants' use of the Trade Dress, and Defendant CVS and Ranir's use of the mark "DENTAL GUARD NIGHT PROTECTOR," are false designations of origin which are likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendants with Medtech, and as to the origin, sponsorship, or approval of Defendants' dental protectors by Medtech.

82.    Defendants' acts are in violation of 15 U.S.C. § 1125(a), in that Defendants have used in connection with goods and services a false designation of origin, a false or misleading description in order to cause mistake and to deceive as to the affiliation, connection, or association of Defendants' goods with Medtech, and as to the origin, sponsorship, and approval of Defendants' goods, services, and commercial activities by Medtech.

83.    As a result of Defendants' infringing conduct, Medtech has been injured, and likely will continue to be injured as to its goodwill and the value of its NIGHTGUARD™ mark and Trade Dress.

84.    Defendants' infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117.

85.     Defendants' infringing conduct has damaged Medtech in an amount to be determined at trial, including lost sales, revenues, and profits.

86.     Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Defendants' infringement.

## COUNT IV
## COMMON LAW - UNFAIR COMPETITION

87.     Medtech incorporates the allegations contained in Paragraphs 1-86 above as if fully set out herein.

88.     By misappropriating the commercial advantage gained by Medtech in the Trade Dress, and/or the NIGHTGUARD™ trademark, Medtech's patented invention, and the Copyright Registration, Defendants have competed unfairly in violation of the common law of New York, as preserved by N.Y. Gen. Bus. Law § 360-O.

89.     Defendants have acted in bad faith.

90.     Defendants' infringing actions are willful and deliberate.

91.     Defendants' conduct has damaged Medtech in an amount to be determined at trial.

92.     Defendants' conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Defendants' deliberate infringement.

## COUNT V
## COMMON LAW - UNJUST ENRICHMENT

93.    Medtech incorporates the allegations contained in Paragraphs 1-92 above as if fully set out herein.

94.    Defendants have received substantial benefits and profited from their deliberate and unlawful use of Medtech's NIGHTGUARD™ trademark, Trade Dress, patented invention, and the Copyright Registration, but have not compensated Medtech for the benefits Defendants received.

95.    Defendants' receipt of the above benefits and profits constitutes unjust enrichment.

96.    Defendants' conduct has damaged Medtech in an amount to be determined at trial.

## COUNT VI
## VIOLATION OF SECTION 349(H) NEW YORK ACT FOR
## CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES

97.    Medtech incorporates the allegations contained in Paragraphs 1-96 above as if fully set out herein.

98.    CVS and Ranir's uses of Medtech's Trade Dress and/or NIGHTGUARD™ trademark constitute efforts to pass off their products as products originating from Medtech. CVS and Ranir's actions described herein are consumer-oriented and are misleading in a material way.

99.    Defendants' use of Medtech's Trade Dress and/or NIGHTGUARD™ trademark causes a likelihood of consumer confusion and misunderstanding as to the source, sponsorship, approval, or association with respect to Defendants' products referenced herein.

100.    CVS' use of artificial price increases and confusing shelf placement are misleading in a material way.

101.    Defendants' use of Medtech's Trade Dress and/or NIGHTGUARD™ trademark, and CVS' artificial price increases and confusing shelf placement, constitute a deceptive trade practice in violation of NY CLS Gen. Bus. Section 349(h).

102.    Defendants' actions are willful and deliberate.

103.    Defendants' conduct has damaged Medtech in an amount to be determined at trial.

104.    Defendants' conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Defendants' infringement and deceptive practices.

## COUNT VII
## COPYRIGHT INFRINGEMENT

105.    Medtech incorporates the allegations contained in Paragraphs 1-104 above as if fully set out herein.

106.    Defendants have copied substantial portions of Medtech's copyrighted material, as identified in the Copyright Registration.

107.    Defendants' conduct infringes upon and violates the exclusive rights belonging to Medtech as owner of the work identified in the Copyright Registration, including, without limitation, Medtech's rights under 17 U.S.C. § 106.

108.    Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Medtech.  Defendants' infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

109.    Defendants' infringing conduct has damaged Medtech in an amount to be determined at trial.    Defendants also have realized and continue to realize profits and other benefits belonging to Medtech.  Accordingly, Medtech seeks an award of damages and costs pursuant to 17 U.S.C. §§ 504 and 505.

110.    Defendants' infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Defendants' infringement.

## JURY DEMAND

Medtech demands a trial by jury of all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Medtech respectfully requests that process issue and be served upon Defendants, and that the claims in this action be tried and an Order be entered that:

1.     Temporarily enjoins Defendants from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's patent rights, trademarks, trade dress or copyrights; in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods utilizing Medtech's patented technology, the NIGHTGUARD$^{TM}$ mark, Medtech's Trade Dress and Medtech's copyrighted material, or any colorable variations thereof;

2.     Permanently enjoins Defendants from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's patent rights, trademarks, trade dress or copyrights; in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods utilizing Medtech's patented technology, Medtech's NIGHTGUARD$^{TM}$ mark, Medtech's Trade Dress and Medtech's copyrighted material, or any colorable variations thereof;

3.     Requires Defendants to recall from all distribution channels and all retail locations all products utilizing Medtech's patented technology, bearing Medtech's NIGHTGUARD$^{TM}$ mark, Trade Dress or any colorable variation thereof, or which infringes on Medtech's copyright, and take other affirmative steps to dispel such false impressions that heretofore have been created by their use of the NIGHTGUARD$^{TM}$ mark, Medtech's Trade Dress and Medtech's copyrighted material, or any colorable imitation thereof;

4.     Requires Defendants to deliver up for destruction all labels, signs, prints, packages, advertisements, products, and/or other matter bearing the unauthorized reproduction or imitation of Medtech's NIGHTGUARD$^{TM}$ mark or Trade Dress or of Medtech's copyrighted

material, and all means for making such reproductions or imitations pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503.

5.     Requires Defendants to account for their profits arising from their patent infringement, trademark infringement, trade dress infringement, copyright infringement, unfair competition, and other illegal and deceptive acts;

6.     Requires Defendants to destroy all product that infringes on the Medtech's patent rights;

7.     Awards Medtech actual damages, in an amount to be determined at trial, to the fullest extent allowed under 15 U.S.C. § 1117, 17 U.S.C. § 504, and 35 U.S.C. § 284, or, in the alternative, be awarded statutory damages pursuant to the Lanham Act and/or the Copyright Act, 17 U.S.C. § 504, in the maximum amount permitted by law.

8.     Awards Medtech treble damages for Defendants' willful and deliberate actions to the fullest extent allowed under 15 U.S.C. § 1117 and 35 U.S.C. § 284.

9.     Awards Medtech punitive damages pursuant to the law of the State of New York for Defendants' fraudulent, intentional, and malicious conduct.

10.     Awards Medtech costs and reasonable attorneys' fees to the fullest extent provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, and 35 U.S.C. § 285.

11.     Awards Medtech prejudgment and post-judgment interest at the highest rate prescribed by law.

12.     Taxes the costs of this case against Defendants.

13.    Awards such other and further relief as this Court deems equitable and just.

**Dated: April 24, 2007**

                                    Respectfully submitted,

                                    ALSTON & BIRD LLP

                                    By: _____
                                    Karl Geercken (KG 5897)
                                    Amy Manning (AM 0338)
                                    90 Park Avenue
                                    New York, New York 10016-1387
                                    (212) 210-9471 (phone)
                                    (212) 210-9444 (facsimile)
                                    karl.geercken@alston.com
                                    amy.manning@alston.com

                                    Of Counsel:

                                    Todd R. David, GA BPR No. 206526
                                    ALSTON & BIRD LLP
                                    One Atlantic Center
                                    1201 West Peachtree Street
                                    Atlanta, Georgia 30309-3424
                                    todd.david@alston.com

                                    W. Edward Ramage, TN BPR No. 16261
                                    BAKER, DONELSON, BEARMAN,
                                        CALDWELL & BERKOWITZ, P.C.
                                    211 Commerce Street, Suite 100
                                    Nashville, Tennessee 37201
                                    (615) 726-5771
                                    eramage@bakerdonelson.com

                                    Carl M. Davis II, GA Bar Number 207710
                                    BAKER, DONELSON, BEARMAN,
                                        CALDWELL & BERKOWITZ, P.C.
                                    6 Concourse Parkway, Suite 3100
                                    Atlanta, Georgia 30328
                                    (678) 406-8700

cdavis@bakerdonelson.com

Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.