# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**WESTCHESTER DIVISION**

|  |  |
|---|---|
| **MEDTECH PRODUCTS INC.,** ) <br> **90 North Broadway** ) <br> **Irvington, New York 10533** ) <br> ) <br> **Plaintiff,** ) <br> ) <br> **v.** ) <br> ) <br> **DENTEK ORAL CARE, INC.,** ) <br> **307 Excellence Way** ) <br> **Maryville, Tennessee 37801** ) <br> ) <br> **and** ) <br> ) <br> **KELLY M. KAPLAN** ) <br> **4 Woodmont Road** ) <br> **Upper Montclair, NJ 07043** ) <br> ) <br> **Defendants.** ) | **07 CV 03302-UA-LMS** <br><br> **JURY DEMAND** <br><br> **AMENDED COMPLAINT FOR** <br> **INJUNCTIVE RELIEF AND** <br> **MONEY DAMAGES** |

For its Amended Complaint for Injunctive Relief and Money Damages against Defendants DENTEK ORAL CARE, INC. ("DenTek") and KELLY M. KAPLAN ("Ms. Kaplan"), Plaintiff MEDTECH PRODUCTS INC. ("Medtech") states and alleges as follows:

## INTRODUCTION

1.     This is an action for willful infringement of a duly and legally issued patent; unfair competition in violation of the Lanham Act by use of false designation of origin in interstate commerce and violation of common law trademark rights; violation of New York's Consumer Protection Act; copyright infringement; and breach of contract and related torts.

2.     This case involves a dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism (teeth grinding), a product which is sold under the trademarks THE DOCTOR'S® NIGHTGUARD™, and that nationally generates more than ten million dollars in annual sales for Medtech.

3.     Medtech and its predecessor in interest pioneered sales of over-the-counter ("OTC") dental protectors and have been selling THE DOCTOR'S® NIGHTGUARD™ brand dental protector now for more than ten years. Until recently, Medtech was the only lawful source of any such product in the over-the-counter market.

4.     Medtech's THE DOCTOR'S® NIGHTGUARD™ brand dental protector is covered by valid patents issued by the U.S. Patent and Trademark Office. THE DOCTOR'S® NIGHTGUARD™ is a high-quality product that has both distinct advantages to the consumer and a distinctive feel. THE DOCTOR'S® NIGHTGUARD™ product therefore offers superior protection and comfort—characteristics that consumers of dental protectors have come to expect from Medtech's product.

5.     DenTek is currently marketing and selling a dental protector in interstate commerce for nighttime tooth grinding or bruxism in the over-the-counter market which improperly utilizes Medtech's NIGHTGUARD™ mark.

6.     DenTek's product infringes on Medtech's valid patent rights relating to dental protectors. As a result, DenTek has wrongfully and deliberately used Medtech's patented product formulation to make DenTek's product feel like the NIGHTGUARD™ dental protector and otherwise infringe Medtech's valid patent rights.

7.    Ms. Kaplan assisted DenTek in bringing its infringing product to the market by divulging Medtech's confidential and proprietary information and material to DenTek. Ms. Kaplan was a former Vice President of Marketing of Dental Concepts LLC, Medtech's predecessor-in-interest. As an executive for the Company, Ms. Kaplan had substantial access to confidential and proprietary information and material relating to THE DOCTOR'S® NIGHTGUARD™ product. Ms. Kaplan's actions in divulging such information to DenTek violates her valid contract with Medtech.

8.    In introducing its competing product, DenTek is wrongfully benefiting from the commercial success of THE DOCTOR'S® NIGHTGUARD™. Medtech has committed millions of dollars to extensive radio and television advertising in order to support and expand the brand recognition for THE DOCTOR'S® NIGHTGUARD™.

9.    DenTek has launched a coordinated campaign of unfair competition to deceptively lure consumers into purchasing DenTek's dental protector product in the mistaken belief that it is, or comes from, Medtech, the maker of the market-leading and well-advertised THE DOCTOR'S® NIGHTGUARD™ dental protectors. DenTek's confusingly labeled product, combined with DenTek's deceptive marketing, is likely to cause confusion among consumers.

10.    Furthermore, DenTek's product attempts to misappropriate the consumer's trust that is placed in Medtech's NIGHTGUARD™ brand dental protector by copying the copyrighted material that is published in Medtech's "At-Home Fitting Instructions" and packaging.

## PARTIES, JURISDICTION & VENUE

11.    Medtech is a corporation organized and existing under the laws of Delaware, with its principal place of business at 90 North Broadway, Irvington, New York 10533.

12.    DenTek is a corporation organized and existing under the laws of Tennessee, with its principal place of business at 307 Excellence Way, Maryville, Tennessee 37801.

13.    Ms. Kaplan is an individual residing at 4 Woodmont Road, Upper Montclair, New Jersey 07043.

14.    This Complaint arises under 15 U.S.C. §§ 1116-18 and 1125(a); 17 U.S.C. § 101 et seq.; 35 U.S.C. § 271; and the laws of the State of New York.

15.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and (b), and 15 U.S.C. § 1121.    This Court also has subject matter jurisdiction over this claim under 28 U.S.C. § 1332(a)(1).    There is complete diversity of citizenship between the parties, as Medtech is a Delaware corporation with a principal place of business in New York, DenTek is a Tennessee corporation with a principal place of business in Tennessee, and Ms. Kaplan is an individual residing in New Jersey.    The damages alleged exceed the jurisdictional amount exclusive of costs and interest.    Moreover, this Court has supplemental and pendent jurisdiction under 28 U.S.C. § 1367 because the state and federal claims are derived from a common nucleus of operative facts and considerations of judicial economy dictate that the state and federal issues be consolidated for a single trial.

16.    DenTek and Ms. Kaplan are subject to personal jurisdiction in this Court.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  Venue is also proper pursuant to 28 U.S.C. § 1391(c) because DenTek is subject to personal jurisdiction in this District under New York law.

**FACTS COMMON TO ALL COUNTS**

18.     Medtech markets, distributes, and sells a dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism (teeth grinding) under Medtech's trademarks THE DOCTOR'S® NIGHTGUARD™.  Medtech markets, distributes, and sells dental protectors throughout the United States and in the New York area.

**MEDTECH HAS SPENT MILLIONS OF DOLLARS
AND YEARS OF EFFORT ESTABLISHING
THE NIGHTGUARD™ MARK.**

19.     Medtech and its predecessor-in-interest, Dental Concepts LLC, have spent a considerable amount of time, money, and labor in marketing and promoting dental protector products under the NIGHTGUARD™ mark through extensive radio and television advertising campaigns. (Hereinafter, unless otherwise noted, Dental Concepts and Medtech are collectively referred to as "Medtech.")  As the leader in over-the-counter dental protectors, Medtech has fostered substantial consumer trust by combining high-quality products with extensive marketing and promotional activities.

20.     Medtech began using the NIGHTGUARD™ mark in association with the marketing, distribution, and sale of dental protectors on or about January 1997.  As such, Medtech is credited with creating the entire category of over-the-counter dental protectors and revolutionizing at-home consumer care for nighttime tooth grinding or bruxism.

21.    From January 1997, and for several years thereafter, the NIGHTGUARD™ dental protector was the only significant such product on the OTC market.  Its quality and efficacy generated significant product recognition, and the NIGHTGUARD™ mark became firmly associated in the minds of the consuming public with the high-quality dental protector product marketed and sold by Medtech.

22.    Prior to the FDA approval of March 3, 2006, sales of the NIGHTGUARD™ dental protector device were made OTC with the knowledge of the FDA but without formal approval.  Medtech originated the market by becoming the first to obtain formal FDA approval for an OTC dental protective device for night time tooth grinding or bruxism on March 3, 2006. A true and correct copy of the summary basis of approval is attached as **Exhibit A**.  All previous bruxism devices had been limited to 'prescription only' sales by the FDA approval process.

### MS. KAPLAN'S ACCESS TO CONFIDENTIAL AND PROPRIETARY INFORMATION

23.    Until November 2005, Ms. Kaplan worked for Dental Concepts as an Executive Vice President of Marketing.  As an Executive Vice President, Ms. Kaplan had substantial access to confidential and proprietary information regarding the NIGHTGUARD™ dental protector device.  Such confidential and proprietary information was closely guarded and kept secret by Dental Concepts and related to, among other things, the manufacturing, marketing and sale of the NIGHTGUARD™ dental protector device.

24.    In November 2005, Dental Concepts was acquired by Prestige Brands, Inc. ("Prestige") and was folded into the Prestige group of companies as Medtech.  As part of that acquisition, Ms. Kaplan executed a General Release with Dental Concepts under which she

received a lucrative severance payment and certain continued health and dental insurance. A true and correct copy of the General Release is attached hereto as **Exhibit B** (with only the amount of the severance payment redacted).

25.    Dental Concepts valued its confidential and proprietary information and made efforts to keep it confidential. As part of the General Release with Dental Concepts, Ms. Kaplan agreed to keep secret the confidential and proprietary information she learned while at Dental Concepts. The General Release contained the following "Confidential Information" clause, with Ms. Kaplan being the "Employee" and Dental Concepts the "Company":

> Confidential Information. Employee agrees that it will not use, divulge, sell or deliver to or for any other person, firm or corporation other than the Company and its respective subsidiaries, affiliates, successors and assigns any confidential information and material (statistical or otherwise) relating to the Company's business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information. On or before the Effective Date, Employee will surrender to the Company all lists, books and records of or in connection with the Company's business and all other property belonging to the Company. Should there be a violation or attempted or threatened violation of this provision, the Company may apply for and obtain an injunction to restrain such violation or attempted or threatened violation, Employee conceding that the loss of such secret or confidential information cannot reasonably or adequately be compensated in damages in an action at law, and that the right to said injunction is necessary for the protection and preservation of the rights of the Company and of any transferee or assignee hereof to prevent irreparable damage to the Company. Such injunctive relief shall be in addition to such other rights and remedies as the Company, and any other permitted transferee or assignee hereof, may have against Employee arising from any breach hereof on his part. (Ex. B at ¶ 7.)

26.    As the successor-in-interest to Dental Concepts, Medtech can enforce the terms of the General Release with Ms. Kaplan. As the General Release was executed "[i]n connection with the acquisition" of Dental Concepts by Prestige, an action by Medtech was clearly contemplated by Ms. Kaplan at the time the General Release was executed.

27.     The General Release also provides that "the prevailing party" in any litigation to enforce the agreement "shall be entitled to recover from the opposite party all reasonable attorney's fees and costs incurred in connection with such action." (Ex. B at ¶ 6.)

### MEDTECH'S USE OF THE NIGHTGUARD™ MARK

28.     At all times, Medtech's THE DOCTOR'S® NIGHTGUARD™ packaging has consistently and prominently featured the NIGHTGUARD™ mark on the front of the packaging, as pictured below (hereinafter referred to as Medtech's NIGHTGUARD™ "Trade Dress"):



| NIGHTGUARD™ PACKAGING (THROUGH FALL 2006) | NIGHTGUARD™ PACKAGING (FALL 2006 TO THE PRESENT) |
|---|---|

29.     Since Fall 2006, Medtech's packaging has prominently displayed the NIGHTGUARD™ mark on the front cover, with "NIGHT" in bold letters and "GUARD" set off in a contrasting font. The package lists on its side panel certain warnings and instructions. The

package also prominently states on the back, in contrasting red and purple, the following featured phrase:

*Designed by a dentist*
*for protection and comfort.*
*Custom fit by you*
*for convenience.*

The package layout of Medtech's NIGHTGUARD™ dental protector is readily recognizable to consumers for dental protector devices. A true and correct copy of the packaging for Medtech's NIGHTGUARD™ dental protector is attached hereto as **Exhibit C**.

30.     Medtech sells the NIGHTGUARD™ dental protector with an "At-Home Fitting Instructions" insert that describes the dental protector product and how the customer should use the product.  A true and correct copy of the "At-Home Fitting Instructions" insert is attached as **Exhibit D** hereto.

## THE SUCCESS OF THE NIGHTGUARD™ MARK

31.     As a direct result of its marketing and promotional activities, Medtech has created a distinctive designation to the public of Medtech as the source of a high-quality dental protector and related products under the NIGHTGUARD™ mark and Trade Dress.

32.     Through its extensive advertising campaign and sales of high-quality dental protectors to the public under the NIGHTGUARD™ brand name, Medtech has successfully established the NIGHTGUARD™ mark as a widely-recognized symbol of high-quality dental protectors, and has accumulated incalculable goodwill associated with Medtech's NIGHTGUARD™ mark and Trade Dress.

33.     Since use of the NIGHTGUARD™ mark began, Medtech has used the NIGHTGUARD™ mark to market its dental protector through advertisements, on nationally syndicated radio networks and shows, and on cable television.  The advertisements display the NIGHTGUARD™ mark.

34.     In the past three years alone, Medtech has spent approximately $8,000,000 in advertising and promotion to build the NIGHTGUARD™ brand name.  Those efforts include a recent cable television advertising campaign.  As a result of that advertising campaign, growth in sales increased dramatically.

35.     The NIGHTGUARD™ dental protector product has enjoyed a consistently high level of commercial success.  Over the past six years, Medtech has sold more than $43,000,000 of its NIGHTGUARD™ dental protector products.  Notwithstanding the recent addition of numerous competitors in this category, the NIGHTGUARD™ dental protector product remains the recognized category leader.

36.     By virtue of this success, the NIGHTGUARD™ trademark has become associated exclusively with Medtech.  Medtech presently owns a pending federal trademark application for its NIGHTGUARD™ mark (NIGHTGUARD, Ser. No. 77/056,556, United States Patent and Trademark Office).

### THE MEDTECH NIGHTGUARD™ DENTAL PROTECTOR IS COVERED BY A VALID UTILITY PATENT ISSUED BY THE U.S. PATENT AND TRADEMARK OFFICE

37.     The Medtech NIGHTGUARD™ dental protector is covered by U.S. Patent No. 6,830,051, issued by the U.S. Patent and Trademark Office on December 14, 2004 (the "'051

Patent"). A true and correct copy of the '051 Patent is attached hereto as **Exhibit E**.    The '051

Patent is valid and is subsisting in full force and effect, and Medtech is the current assignee of all

rights under the '051 Patent.    Medtech has complied with all appropriate requirements to

maintain the validity and effect of the '051 Patent.

38.    The United States Patent and Trademark Office has recognized the industry-

leading developments in dental protector products by Medtech, as indicated by the following

United States patents:

> Hidalgo, et al, U.S. Pat. No. D504,744 (issued May 3, 2005), "Bruxism Guard"
>
> Wagner, U.S. Pat. No. D382,965 (issued Aug. 26, 1997), "Mouthguard"
>
> Wagner, U.S. Pat. No. 5,566,684 (issued Oct. 22, 1996), "Custom Fit Mouthguard"

39.    The grant via the United States Patent and Trademark Office of the '051 Patent is

*prima facie* evidence of the validity of such patent.    The patent grants Medtech the right to

exclude others from making, using, selling or offering to sell the patented invention in commerce

in the United States.    The '051 Patent is constructive notice to DenTek and to all others of

Medtech's ownership of the patented invention.  Moreover, Medtech's NIGHTGUARD™ dental

protector products have long been and are currently marked with the applicable U.S. Patent

Numbers.

### MEDTECH'S PACKAGING AND "AT-HOME FITTING INSTRUCTIONS" ARE COVERED BY A VALID COPYRIGHT ISSUED BY THE U.S. REGISTER OF COPYRIGHTS

40.    Medtech owns a federal copyright registration for its packaging and "At-Home

Fitting Instructions" insert (**Exhibit D**), as reflected in U.S. Reg. No. TX 6-536-309, issued by

the U.S. Register of Copyrights on April 23, 2007 (the "Copyright Registration"). A true and correct copy of the Copyright Registration is attached hereto as **Exhibit F**. The Copyright Registration is valid and is subsisting in full force and effect.

41.     Medtech's Copyright Registration is *prima facie* evidence of the validity of such registration, of Medtech's ownership of the copyright, and of Medtech's exclusive right to use the copyrighted material. Moreover, Medtech's packaging and "At-Home Fitting Instructions" carry a copyright notice that is actual notice to DenTek and to all others of Medtech's ownership of the copyrighted material.

### WITH THE ASSISTANCE OF MS. KAPLAN, DENTEK HAS ENGAGED IN CONCERTED AND COORDINATED EFFORTS TO MISAPPROPRIATE MEDTECH'S SUCCESS

42.     DenTek markets, distributes, and sells a competing product to Medtech's dental protector using the mark "NIGHTGUARD" and associated packaging throughout the country and in the New York area.

43.     Upon information and belief, only after the success of the NIGHTGUARD™ devices in the marketplace did DenTek begin to adopt Medtech's NIGHTGUARD™ trademark, patented invention, and copyrighted material in a deliberate and transparent attempt to wrongfully profit from Medtech's investments in the intellectual property protecting its NIGHTGUARD™ dental protector.

### MS. KAPLAN'S ASSISTANCE TO DENTEK

44.     Upon information and belief, Ms. Kaplan has worked, now works, consults for, or otherwise has provided services-for-hire for DenTek.

45.     Upon information and belief, Ms. Kaplan has provided to DenTek certain of Medtech's confidential and proprietary information relating to the THE DOCTOR'S® NIGHTGUARD™ product. This assistance violates the terms of the General Release, Ex. B, and explains the numerous and pervasive similarities between the DenTek dental protector and THE DOCTOR'S® NIGHTGUARD™ dental protector.

46.     Upon information and belief, because of the assistance of Ms. Kaplan, DenTek has procured the same product manufacturers and/or technical advisors as Medtech. Upon information and belief, because of her position within Dental Concepts (now Medtech), Ms. Kaplan had confidential and proprietary knowledge about contacts among manufacturers, technical experts, sales brokers, packaging firms and others, and this proprietary information is covered by the confidentiality provisions of the General Release.

### DenTek Has Misappropriated the NIGHTGUARD™ Mark and Trade Dress

47.     The DenTek package prominently displays the "NIGHTGUARD" mark on the front cover, with "NIGHT" in bold letters and "GUARD" set off in a contrasting fashion. The DenTek package also prominently states the following phrase, which uses essentially the same terminology as Medtech's featured and copyrighted phrase:     "Designed by a Dentist Fit by You." A true and correct copy of the packaging for DenTek's competing product is attached hereto as **Exhibit G** and is pictured below:



48.     DenTek's competing product is displayed adjacent to Medtech's THE DOCTOR'S® NIGHTGUARD™ dental protectors in retail stores throughout the country, including in the New York area.

49.     In addition to DenTek's confusing packaging, DenTek's advertising campaign prominently features Medtech's NIGHTGUARD™ mark and was designed to look and feel similar to THE DOCTOR'S® NIGHTGUARD™ advertising.  Advertisements for the DenTek dental protector across various advertising mediums consistently use Medtech's NIGHTGUARD™ mark and attempt to confuse the consumer about the origin of the product.

50.     A DenTek print advertisement, which will begin to run on June 1, 2007, uses a picture of a man and a shattered-looking background.  A true and correct copy of the DenTek print advertisement is attached hereto as **Exhibit H**.  The print advertisement displays the following text on the bottom, which includes six separate references to Medtech's NIGHTGUARD™ mark:



51.    Television advertising for the DenTek dental protector also prominently features the NIGHTGUARD™ mark.  The television advertisement started airing on May 14, 2007 and displays the www.DenTekNightGuard.com Web address for a substantial portion of the advertisement's running.  The television advertisement also consistently refers to the product as "DenTek NightGuard."  Finally, the television advertisement includes another iteration of the Medtech featured phrase, stating that the DenTek dental protector "was **designed by dentists**, with a comfortable custom fit that cushions your teeth while you sleep."  (emphasis added).

52.    Radio    advertisements    also    feature    Medtech's    NIGHTGUARD™    mark, consistently referring to the product as the "DenTek NightGuard," and instructing the radio listener to visit the www.DenTekNightGuard.com Web address for more information about the infringing product.

53.    Not only will retailers and consumers be confused into purchasing DenTek's dental protector product when they want Medtech's NIGHTGUARD™ dental protector, but DenTek's product will also eviscerate the goodwill Medtech has spent the last ten years (and millions of dollars) cultivating for NIGHTGUARD™.

## DenTek Has Misappropriated the NIGHTGUARD™ Patented Invention

54.    DenTek has received a Section 510(k) premarket authorization from the Food and Drug Administration ("FDA") for marketing of the DenTek NightGuard product, based upon the DenTek product being "substantially equivalent" to Medtech's product.   In its filings with the FDA, DenTek itself made the following assertion:

> The DenTek NightGuard is substantially equivalent to The Doctor's NightGuard. The DenTek NightGuard has the same intended uses, indications and principles of operation, and similar technological characteristics as its predicate device.  The minor technological differences between the DenTek NightGuard and its predicate device raises no new questions of safety or effectiveness.  Thus, the DenTek NightGuard is substantially equivalent to The Doctor's NightGuard.

55.    Due to DenTek's sales of a dental protector that deliberately infringes on Medtech's valid patent rights discussed above, Medtech has been, and will continue to be, irreparably harmed by DenTek's actions as DenTek will be wrongfully selling to Medtech's customers dental protectors that are prohibited from manufacture and sale under Medtech's valid patent rights.

## DENTEK HAS MISAPPROPRIATED THE NIGHTGUARD™ COPYRIGHTED "AT-HOME FITTING INSTRUCTIONS" AND PACKAGING

56.    DenTek's competing product also includes "At-Home Fitting Instructions," a true and correct copy of which is attached hereto as **Exhibit I**.

57.    The DenTek "At-Home Fitting Instructions" closely copies THE DOCTOR'S®

NIGHTGUARD™ "At-Home Fitting Instructions."    Substantial portions of Medtech's "At-

Home Fitting Instructions" are also copied on the packaging of the DenTek dental protector

product.    Further, Medtech's copyrighted phrase, "Designed by a dentist for protection and

comfort. Custom fit by you for convenience," is copied in pertinent part: "Designed by a dentist;

fit by you." The following chart reproduces the text of the two instructions, with the text copied

by DenTek indicated by bold and underlined font:

| THE DOCTOR'S® NIGHTGUARD™<br>AT-HOME FITTING INSTRUCTIONS<br>EXHIBIT D | DENTEK NIGHTGUARD<br>AT-HOME FITTING INSTRUCTIONS<br>EXHIBIT I |
|---|---|
| *Use* | *Use* |
| The Doctor's® **NightGuard™ is indicated for the protection against Bruxism or nighttime teeth grinding.** It **is intended to reduce damage to teeth and to prevent the noise associated with bruxing or teeth grinding.** | DenTek® **NightGuard is indicated for the protection against Bruxism or nighttime teeth grinding. By cushioning and keeping the teeth apart,** DenTek® NightGuard **is intended to reduce damage to teeth and to prevent the noise associated with bruxing or teeth grinding.** |
| The Doctor's® **NightGuard™ is similar to the dental protector recommended by many dentists for nighttime teeth grinding** with one advantage: you fit it yourself. **After fitting,** The Doctor's® **NightGuard™ conforms to your teeth so it** will be **comfortable.** And it will **stay** in place through the **night. By cushioning and keeping the teeth apart,** The Doctor's® NightGuard™ reduces the chances for tooth damage; and it stops the annoying grinding sound so your sleep partner will not be disturbed. | DenTek® **NightGuard is similar to the dental protector recommended by many dentists for nighttime teeth grinding. After fitting,** DenTek® **NightGuard conforms to your teeth so it** is **comfortable** to wear and **stays** in your mouth all **night**. |
| *Description* | *Description* |
| The Doctor's® **NightGuard™ is a moldable dental protector**, composed of a soft formable material and a hard base. This patented, 2-layered device safely and effectively prevents the noise associated with grinding while cushioning the teeth. When heated by water and then briefly cooled, the upper layer can be molded to fit comfortably around your upper teeth, forming a cushion. The **hard base prevents bite-through** by consumers with moderate or severe **bruxing/grinding. The life of your dental protector** | DenTek® **NightGuard is a moldable dental protector** specially designed with two materials:<br><br>• The blue, formable material, when heated, molds to your upper molars, front teeth, and most of the gum line for optimal retention.<br><br>• The **hard**er **base** material cushions your teeth and **prevents bite through** from **bruxing/grinding**. |

| | |
|---|---|
| <u>will vary based on the force of your teeth grinding.</u> <u>The average dental protector should last six months or more.</u> | <u>The life of your</u> custom fit <u>dental protector will vary based on the force of your teeth grinding. The average dental protector should last</u> approximately <u>six months or more.</u> |
| *For Best Results* | *For Best Results* |
| <u>Read and follow instructions BEFORE and DURING custom fitting the dental protector. The dental protector</u> can be fitted on the upper or lower teeth, but upper is preferred. | <u>Read and follow instructions BEFORE and DURING custom fitting the dental protector. The dental protector</u> should be fitted to the upper teeth.<br><br>If you need additional assistance, visit our website, or call our customer service department between 8am and 5pm eastern standard time and we will guide you through the fitting process.<br><br>www.denteknightguard.com<br>1-800-4DENTEK |
| *What You Need to Begin* | *What You Need to Begin* |
| <ul><li><u>A cup</u> of cold <u>water</u></li><li><u>A pot</u> to <u>boil water</u></li><li><u>A kitchen</u> fork or <u>spoon</u></li><li>A mirror</li><li><u>A</u> clock with a <u>second hand to time</u> fitting steps in seconds.</li></ul> | <ul><li><u>A cup</u> of room temperature <u>water</u></li><li><u>A pot</u> of <u>boil</u>ing <u>water</u></li><li><u>A</u> metal <u>kitchen spoon</u></li><li><u>A timer</u></li></ul> |
| *Test Fitting* | *Test Fitting* |
| As soon as you remove the dental protector from the package, and <u>before you begin boiling, conduct a "test fitting."</u><br><br>1. <u>Position Doctor's® NightGuard™ in your mouth</u> to determine if you have properly chosen the small, medium or large size. You will know the sizing is correct if your teeth fit comfortably into the channel of the dental protector and if the arms of the U shape reach only to the end of your last molar.<br><br>2. <u>If the arch (U-shape)</u> of the dental protector <u>is too narrow or too wide</u> to fit <u>the arch of your mouth</u>, the dental protector can be altered <u>during the final fitting</u>.<br><br>3. <u>If the length of the dental protector extends beyond your</u> back <u>molar</u>s in the test fitting, the dental protector can be shortened by using a single-edge razor blade or a sharp knife. | <u>Before you begin boiling, conduct a "test fitting."</u><br><br>1. <u>Position</u> DenTek® <u>NightGuard in your mouth</u> and bite down. <u>If the arch (U-shape) is too wide or too narrow</u>, squeeze or stretch it to align with <u>the arch of your mouth during the final fitting.</u><br><br>2. <u>If the length of the dental protector extends beyond your</u> last <u>molar</u> and feels uncomfortable, use scissors to cut it along the trim guides. Start at the first line from the end and test fit it again. If that still is not comfortable, cut it again at the second trim line, remembering that it's best if all teeth touch the dental protector. Continue this until the dental protector feels comfortable and all teeth are cushioned. The optimal fit is when all teeth are properly centered and resting on the dental protector. |
| *Final Fitting* | *Final Fitting* |
| <u>After completing the test fitting, you are now ready to custom fit</u> the dental protector. | <u>After completing the test fitting, you are now ready to custom fit</u> DenTek® NightGuard. Make sure you |

have a cup of room temperature water ready for cooling.

**Fill a pot with approximately three inches of water. Boil water until you see a rolling boil** and **bubbles**. Let the water boil for one minute before inserting the dental protector into the water.

1. **Fill a pot with approximately three inches of water. Boil water until you see a rolling boil** with **bubbles**. Remove the pot from the heating element and let rest for one minute.

2. **Submerge the dental protector into the** boiling **water for** 60 **seconds**.

2. **Submerge the dental protector** face down **into** hot **water for** 25 **seconds**.

3. Using a fork or **spoon, remove the dental protector** from the boiling water and **submerge** it **into** the **cup of** cold **water for one second to remove the heat** from the dental protector.

3. **Remove dental protector** with a metal **spoon** and **submerge into cup of** room temperature **water for one second to reduce the heat** before fitting.

4. **Position the dental protector** comfortably **into your mouth**. You can widen or narrow the dental protector at this point in the process by up to ½ inch.

4. **Position the dental protector in your mouth**, aligning it with your teeth, so that all of your teeth rest on the dental protector. You may need to squeeze or stretch the arch of the dental protector to align with the arch of your mouth.

5. **Once in place, firmly bite down** into the dental protector.

5. **Once in place, bite down firmly** and **suck in to remove excess moisture.** Using your fingers, **press in along the gum line** under your lip with **equal amounts of pressure on both sides of the "U"** from the front **to the rear** teeth, **mold**ing **the soft** blue **material up and around** your **teeth** and gum line.

6. **Press in along the gum line** using **equal amounts of pressure on both sides of the "U"** shape **from the front** of the dental protector **to the rear** molars. Be sure to use your fingers to **mold the soft** impression **material up and around** the **teeth**.

If you did not get a good fit the first time, repeat the boiling process one more time starting at Step 1 above. After the second try, the material loses retention and you will need to follow the instructions for a replacement dental protector.

7. **Suck in to remove excess moisture** and create the suction that will allow the dental protector to stay comfortably in place on your upper teeth.

8. Once you feel you have attained a comfortable fit, remove the dental protector and place into the cup of cold water for another 30 second to "set" the mold.

| | |
|---|---|
| *Storage and Maintenance* | *Storage and Maintenance* |
| **Proper care of your dental protector will extend its life.**<br><br>• **After each use,** simply **rinse the dental protector in cool water or mouth wash**.<br>• **Store** The Doctor's® NightGuard™ **in the container** provided **when not in use**. | **Proper care of your** DenTek® **NightGuard will extend its life.**<br><br>• **After each use, rinse the dental protector in cool water or mouthwash**. Never use hot water on your dental proctor as it might lose its shape.<br>• **Store in the** hygienic storage **container when not in use.** |
| *Warnings* | *Warnings* |

| | |
|---|---|
| **Do not use:** | **Do not use:** |
| • **If you are under 18 years of age.** | • **If you are under 18 years of age.** |
| • **If you wear braces, dentures, or other dental** products. | • **If you wear braces, dentures, or other dental** appliances. |
| • **If you can wiggle any of your teeth.** | • **If you can wiggle any of your teeth.** |
| • **If your dentist has told you that you have TMJ.** | • **If your dentist has told you that you have TMJ.** |
| • **If you have any tooth or jaw pain or pain with bruxing or tooth grinding.** | • **If you have any tooth or jaw pain or pain with bruxing or tooth grinding.** |
| • **As an athletic mouth guard. Product does not absorb shock.** | • **As an athletic mouth guard. *Product does not absorb shock.*** |
| • **For more than three months without consulting your dentist.** | • **For more than three months without consulting your dentist.** |
| **Ask a Dentist Before Use if You Have:** | **Ask a dentist before use if you have:** |
| • **Loose fillings, loose caps or cavities with no fillings.** | • **Loose fillings, loose caps or cavities with no fillings.** |
| • **Clicking of your jaw.** | • **Clicking of your jaw.** |
| • **Jaw pain, teeth pain, face pain, or have a hard time chewing.** | • **Jaw pain, teeth pain, face pain, or have a hard time chewing.** |
| • **Two or more missing teeth.** | • **Two or more missing teeth.** |
| • **Mouth sores.** | • **Mouth sores.** |
| • **Gum disease or bleeding gums.** | • **Gum disease or bleeding gums.** |
| • **Serious breathing, respiratory or other health problems.** | • **Serious breathing, respiratory other health problems.** |
| **When Using This Product:** | **When using this product:** |
| • **See your dentist every six months.** | • **See your dentist every six months.** |
| **Stop Use and Ask a Dentist if:** | **Stop use and ask a dentist if:** |
| • **Your same symptoms last even after several weeks of use.** | • **Your same symptoms last even after several weeks of use.** |
| • **The product easily falls out of your mouth.** | • **The product easily falls out of your mouth.** |
| • **The product causes you to gag or feels uncomfortable.** | • **The product causes you to gag or feels uncomfortable.** |
| • **You have bleeding gums, soreness, or other reaction inside your mouth.** | • **You have bleeding gums, soreness, or other reaction inside your mouth.** |
| • **You notice new symptoms (jaw pain, teeth pain, ear pain, headache, neck stiffness, or joint clicking) because of the product.** | • **You notice new symptoms (jaw pain, teeth pain, ear pain, headache, neck stiffness, or joint clicking) because of the product.** |
| • **You have loose teeth or a change in your bite that lasts more than a few minutes after taking product out.** | • **You have loose teeth or a change in your bite that lasts more than a few minutes after taking the product out.** |

## DENTEK'S AND MS. KAPLAN'S ACTIONS ARE HARMFUL TO MEDTECH

58.     DenTek's actions of infringing upon Medtech's NIGHTGUARD™ trademark, copyrights, and patent rights are willful and deliberate, and have caused and will continue to cause damage and irreparable injury to Medtech.

59.    Ms. Kaplan's actions in providing DenTek with the proprietary and confidential information from Medtech has also caused and will continue to cause damage and irreparable injury to Medtech.  Upon information and belief, DenTek's infringing product was quickly brought to market, in part, because of proprietary information provided to DenTek by Ms. Kaplan.

60.    Medtech has already lost sales and revenues as confused customers bought DenTek's product when they intended to buy Medtech's product.  DenTek's conduct will continue to damage Medtech's ability to maintain its hard-won brand recognition and reputation for high-quality products in the over-the-counter dental protector category. Further damage and irreparable injury will result if DenTek is allowed to continue to violate Medtech's rights and deceive consumers.

61.    Medtech has spent considerable time, effort, and money in gaining valuable shelf space for its product in retail outlets.  The loyalty of these retailers, and the continued availability of the shelf space, is seriously threatened by DenTek's conduct and the resulting consumer confusion.  Once shelf space is lost it is essentially impossible to regain.  DenTek's deliberate use of its confusingly designed and marketed products to capture Medtech's shelf space will cause irreparable injury to Medtech.

62.    More importantly, DenTek's conduct will damage Medtech's ability to maintain its brand recognition in the dental protector category due to DenTek's deliberately deceptive behavior.  If DenTek floods the market with its infringing and confusing product, it will undermine Medtech's efforts to continue to grow its brand, maintain its reputation for high-quality products, and establish greater success.

63.     DenTek's conduct is all the more culpable when measured against the trademarks used by competitors in the dental protector category. A survey of the trademarks used by these competitors shows several non-infringing options available to companies that wish to enter this market, such as "SLEEP RIGHT SELECT™," "VERSACRYL™" and "REST ASSURED™".

64.     DenTek's deliberate acts constitute unfair competition under the Lanham Act, 15 U.S.C. § 1125(a); patent infringement under 35 U.S.C. § 271; copyright infringement under 17 U.S.C. § 501; conduct in violation of the New York Act for Consumer Protection, NY CLS Gen. Bus. Section 349(h); and violations of related common-law rights. Medtech seeks temporary and permanent injunctive relief to halt DenTek's deliberate and wrongful conduct and an award of compensatory and punitive damages, as well as attorneys' fees and expenses, for DenTek's willful and wanton conduct.

## COUNT I
## PATENT INFRINGEMENT
## (AGAINST DENTEK)

65.     Medtech incorporates the allegations contained in Paragraphs 1-64 above as if fully set forth herein.

66.     Medtech is the owner by assignment of the '051 Patent. DenTek manufactures, makes, has made, uses, assembles, sells and/or offers for sale a dental protector product that infringes one or more claims in the '051 Patent, literally and/or under the doctrine of equivalents, and/or induces or contributes to the infringement of one or more claims in the '051 Patent by others, including but not limited to retailers and consumers who buy DenTek's product.

67.     DenTek's actions are a violation of 35 U.S.C. § 271.

68.    DenTek's infringing actions are willful and deliberate, and Medtech is entitled to treble damages pursuant to 35 U.S.C. § 284 and attorneys' fees pursuant to 35 U.S.C. § 285, this being an exceptional case.

69.    DenTek's infringement has damaged Medtech in an amount to be determined at trial.

70.    DenTek's infringement has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for DenTek's infringement.

## COUNT II
## LANHAM ACT - UNFAIR COMPETITION/USE OF FALSE DESIGNATION IN INTERSTATE COMMERCE
## (AGAINST DENTEK)

71.    Medtech incorporates the allegations contained in Paragraphs 1-70 above as if fully set out herein.

72.    Notwithstanding Medtech's well-known and prior-established rights to the NIGHTGUARD™ mark, DenTek has caused dental protector goods to enter into interstate commerce using the designation and representation "NIGHTGUARD" connected therewith.

73.    DenTek's use of the mark "NIGHTGUARD" is a false designation of origin which is likely to cause confusion, to cause mistake, and to deceive as to the affiliation, connection or association of Defendant with Plaintiff, and as to the origin, sponsorship, or approval of DenTek's dental protector by Medtech.

74.     DenTek's acts are in violation of 15 U.S.C. § 1125(a), in that DenTek has used in connection with goods and services a false designation of origin, a false or misleading description in order to cause mistake and to deceive as to the affiliation, connection, or association of DenTek's goods with Medtech, and as to the origin, sponsorship, and approval of DenTek's goods, services, and commercial activities by Medtech.

75.     As a result of DenTek's infringing conduct, Medtech has been injured, and likely will continue to be injured as to its goodwill and the value of its NIGHTGUARD™ mark.

76.     DenTek's infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees pursuant to 15 U.S.C. § 1117.

77.     DenTek's infringing conduct has damaged Medtech in an amount to be determined at trial, including lost sales, revenues, and profits.

78.     DenTek's infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for DenTek's infringement.

**COUNT III**
**COPYRIGHT INFRINGEMENT**
**(AGAINST DENTEK)**

79.     Medtech incorporates the allegations contained in Paragraphs 1-78 above as if fully set out herein.

80.     DenTek has copied substantial portions of Medtech's copyrighted material, as identified in the Copyright Registration.

81.    DenTek's conduct infringes upon and violates the exclusive rights belonging to Medtech as owner of the work identified in the Copyright Registration, including, without limitation, Medtech's rights under 17 U.S.C. § 106.

82.    DenTek has willfully engaged in, and is willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Medtech.  DenTek's infringing actions are willful and deliberate, and Medtech is entitled to attorneys' fees and costs pursuant to 17 U.S.C. § 505.

83.    DenTek's infringing conduct has damaged Medtech in an amount to be determined at trial.  DenTek also has realized and continues to realize profits and other benefits belonging to Medtech.  Accordingly, Medtech seeks an award of damages and costs pursuant to 17 U.S.C. §§ 504 and 505.

84.    DenTek's infringing conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for DenTek's infringement.

**COUNT IV**
**COMMON LAW - UNFAIR COMPETITION**
**(AGAINST DENTEK)**

85.    Medtech incorporates the allegations contained in Paragraphs 1-84 above as if fully set out herein.

86.    By misappropriating the commercial advantage gained by Medtech in the NIGHTGUARD™ trademark, the Copyright Registration, and the '051 Patent, DenTek has

competed unfairly in violation of the common law of New York, as preserved by N.Y. Gen. Bus. Law § 360-O.

87.     DenTek has acted in bad faith.

88.     DenTek's infringing actions are willful and deliberate.

89.     DenTek's conduct has damaged Medtech in an amount to be determined at trial.

90.     DenTek's conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury. Medtech has no adequate remedy at law for DenTek's deliberate infringement.

**COUNT V**
**COMMON LAW - UNJUST ENRICHMENT**
**(AGAINST DENTEK)**

91.     Medtech incorporates the allegations contained in Paragraphs 1-90 above as if fully set out herein.

92.     DenTek has received substantial benefits and profited from its unlawful use of Medtech's NIGHTGUARD™ trademark, its copyrighted material, and its patented invention, but has not compensated Medtech for the benefits DenTek received.

93.     DenTek's receipt of the above benefits and profits constitutes unjust enrichment.

94.     DenTek's conduct has damaged Medtech in an amount to be determined at trial.

## COUNT VI
## VIOLATION OF SECTION 349(H) NEW YORK ACT FOR
## CONSUMER PROTECTION FROM DECEPTIVE ACTS AND PRACTICES
## (AGAINST DENTEK)

95.    Medtech incorporates the allegations contained in Paragraphs 1-94 above as if fully set out herein.

96.    DenTek's use of Medtech's NIGHTGUARD™ trademark, its copyrighted material, and its patented invention constitute efforts to pass off its products as products originating from Medtech.   DenTek's actions described herein are consumer-oriented and are misleading in a material way.

97.    DenTek's use of Medtech's NIGHTGUARD™ trademark, its copyrighted material, and its patented invention causes a likelihood of consumer confusion and misunderstanding as to the source, sponsorship, approval, or association with respect to DenTek's products referenced herein.

98.    DenTek's use of Medtech's NIGHTGUARD™ trademark, its copyrighted material, and its patented invention constitutes a deceptive trade practice in violation of N.Y. Gen. Bus. § 349(h).

99.    DenTek's actions are willful and deliberate.

100.    DenTek's conduct has damaged Medtech in an amount to be determined at trial.

101.    DenTek's conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for DenTek's infringement and deceptive practices.

## COUNT VII
## BREACH OF CONTRACT
## (AGAINST MS. KAPLAN)

102.    Medtech incorporates the allegations contained in Paragraphs 1-101 above as if fully set out herein.

103.    Ms. Kaplan had a valid agreement, which is enforceable by Medtech, which is attached hereto as the General Release at Exhibit B.

104.    Under the valid agreement, Ms. Kaplan was to maintain the secrecy of the confidential and proprietary information she had learned as an Executive Vice President of Marketing of Dental Concepts (predecessor in interest to Medtech).

105.    All duties and performance required by Dental Concepts/Medtech under the General Release have been discharged and fully performed.

106.    Upon information and belief, Ms. Kaplan has breached the agreement by providing DenTek with Medtech's confidential and proprietary information.

107.    Medtech has been damaged by Ms. Kaplan's breach as DenTek has had unauthorized access to and utilized Medtech's confidential and proprietary information in bringing DenTek's infringing product to the market.

108.    Ms. Kaplan's conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury. Medtech has no adequate remedy at law for Ms. Kaplan's breach of contract.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS
## (AGAINST DENTEK)

109.    Medtech incorporates the allegations contained in Paragraphs 1-108 above as if fully set out herein.

110.    Ms. Kaplan had a valid agreement, which is enforceable by Medtech, which is attached hereto as the General Release at Exhibit B, under which she was to maintain the secrecy of the confidential and proprietary information she had learned as an Executive Vice President of Marketing of Dental Concepts.

111.    Upon information and belief, DenTek knew of the valid contract between Ms. Kaplan and Medtech.

112.    Upon information and belief, DenTek procured Ms. Kaplan's breach of that contract.

113.    Medtech has been damaged by Ms. Kaplan's breach as DenTek has brought its infringing product to the market with the assistance of unauthorized access to Medtech's confidential and proprietary information..

114.    Ms. Kaplan's and DenTek's conduct has caused and, unless restrained by this Court, will continue to cause Medtech irreparable injury.  Medtech has no adequate remedy at law for Ms. Kaplan's breach of contract and DenTek's tortious interference with contractual relations.

## COUNT IX

## CIVIL CONSPIRACY
## (AGAINST DENTEK AND MS. KAPLAN)

115.     Medtech incorporates the allegations contained in Paragraphs 1-114 above as if fully set out herein.

116.     Upon information and belief, DenTek and Ms. Kaplan conspired, agreed, and planned to use Medtech's confidential and proprietary information in violation of Ms. Kaplan's valid confidentiality agreement and New York law.

117.     Upon information and belief, Ms. Kaplan revealed to DenTek confidential and proprietary information belonging to Medtech, in violation of her confidentiality agreement, and DenTek used that information in bringing its infringing product to the market.

118.     Medtech has been damaged as a result of Defendants' conspiracy.

119.     Medtech prays that Defendants be enjoined from further concerted activities intended and calculated to injure Medtech, and that damages be awarded in an amount to be proven at trial.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury as to all issues so triable in this action.

## PRAYER FOR RELIEF

**WHEREFORE,** Medtech respectfully requests that process issue and be served upon Defendant, and that the claims in this action be tried and an Order be entered that:

1.    Temporarily enjoins DenTek from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's patent rights, trademark, or copyright, in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods utilizing Medtech's patented technology, Medtech's NIGHTGUARD™ mark or any colorable variations thereof, and Medtech's copyright.

2.    Permanently enjoins DenTek from unfairly competing with Medtech in any manner whatsoever or from infringing on Medtech's patent rights, trademark, or copyright; in particular, from manufacturing, distributing, selling, offering for sale, holding for sale or advertising any goods utilizing Medtech's patented technology, Medtech's NIGHTGUARD™ mark or any colorable variations thereof, and using Medtech's copyrighted material.

3.    Requires DenTek to recall from all distribution channels and all retail locations all products utilizing Medtech's patented technology, NIGHTGUARD™ mark, copyrighted material or any colorable variations thereof, and take affirmative steps to dispel such false impressions that heretofore have been created by its improper use of Medtech's patented technology, NIGHTGUARD™ mark, or colorable imitation thereof and Medtech's copyrighted material.

4.    Requires DenTek to deliver up for destruction all labels, signs, prints, packages, advertisements, products, and/or other matter infringing on Medtech's patent rights or bearing the unauthorized reproduction or imitation of Medtech's NIGHTGUARD™ mark, or Medtech's copyrighted material, and all means for making such reproductions or imitations pursuant to 15 U.S.C. § 1118 and 17 U.S.C. § 503.

5.      Requires DenTek to account for its profits arising from its patent infringement, trademark infringement, copyright infringement, unfair competition, use of Medtech's confidential and proprietary information, and other illegal and deceptive acts.

6.      Requires DenTek and Ms. Kaplan to return all confidential and proprietary information back to Medtech.

7.      Enjoins Ms. Kaplan from any further disclosures to DenTek of Medtech's confidential and proprietary information, and enjoins any further use of or profit from such confidential and proprietary information by both Ms. Kaplan and DenTek.

8.      Requires DenTek and Ms. Kaplan to identify every employee who possessed or had access to all information that was improperly taken and used from Medtech.

9.      Awards Medtech actual damages, in an amount to be determined at trial, to the fullest extent allowed under 15 U.S.C. § 1117, 17 U.S.C. § 504, and 35 U.S.C. § 284, or, in the alternative, statutory damages pursuant to the Lanham Act and/or the Copyright Act, 17 U.S.C. § 504, in the maximum amount permitted by law.

10.     Awards Medtech actual damages for Ms. Kaplan's breach of contract, DenTek's tortious interference with contract, and Ms. Kaplan's and DenTek's civil conspiracy.

11.     Awards Medtech treble damages for DenTek's willful and deliberate actions to the fullest extent allowed under 15 U.S.C. § 1117, 35 U.S.C. § 284, and N.Y. Gen. Bus. Law § 349(h).

12.     Awards Medtech punitive damages pursuant to the law of the State of New York for DenTek's and Ms. Kaplan's fraudulent, intentional, and malicious conduct.

13.     Awards Medtech costs and reasonable attorneys' fees to the fullest extent provided for by 15 U.S.C. § 1117, 17 U.S.C. § 505, 35 U.S.C. § 285 and General Release, Ex. B, ¶ 6.

14.     Awards Medtech prejudgment and postjudgment interest at the highest rate prescribed by law.

15.     Taxes the costs of this case against DenTek and Ms. Kaplan.

16.     Awards such other and further relief as this Court deems equitable and just.

Dated: June 6, 2007

Respectfully submitted,

ALSTON & BIRD LLP

By: _____
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.1800
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com
Admitted Pro Hac Vice

Of Counsel:

Todd R. David , GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street

Atlanta, Georgia 30309-3424
todd.david@alston.com

Carl M. Davis II, GA Bar Number 207710
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.1800
Six Concourse Parkway
Suite 3100
Atlanta, Georgia  30328
(678) 406-8700
cdavis@bakerdonelson.com

Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.