# EXHIBIT A

# ALSTON&BIRD LLP

90 Park Avenue
New York, New York 10016

212-210-9400
Fax: 212-210-9444
www.alston.com

**Karl Geercken**          Direct Dial: 212-210-9471          E-mail: karl.geercken@alston.com

May 25, 2007

*VIA Facsimile and U.S. Mail*

Jim Shalek, Esq.
Alan Federbush, Esq.
Proskauer Rose
1585 Broadway
New York, NY 10036-8299
Facsimile Number: (21) 969-2900

Re: *Medtech Products, Inc. v. Dentek Oral Care, Inc.*, Case No. 07-CV-3304 (CLB) (GAY)

Dear Mr. Shalek and Mr. Federbush:

       We are writing regarding an urgent matter that came to our client's attention today regarding a former employee of Dental Concepts, LLC ("Dental Concepts") named Kelly Kaplan. This letter requires your immediate attention, the attention of your client, and the attention of Dental Concepts' former employee, Ms. Kaplan.

       We believe that Ms. Kaplan is being represented by your firm, or is otherwise being represented by DenTek counsel. **Please advise us immediately if you represent Kelly Kaplan, either individually or as counsel for DenTek. Should we not hear from you by 5:00 p.m. EST, we are going to assume that you do not represent her and have this letter hand-delivered to Ms. Kaplan at her last known address (4 Woodmont Road, Upper Montclair, New Jersey, 07043).** I understand that my colleague, Amy Manning, called you earlier today and informed you that we would be sending you a letter this afternoon relevant to this case.

     A.     **BACKGROUND**

       As DenTek knows, Kelly Kaplan executed a General Release ("Release") when Prestige Brands, Inc. ("Prestige"), through its affiliated company, Medtech Products Inc.,

| One Atlantic Center | Bank of America Plaza | 3201 Beechleaf Court, Suite 600 | The Atlantic Building | Brienner Strasse 11/V |
|---|---|---|---|---|
| 1201 West Peachtree Street | 101 South Tryon Street, Suite 4000 | Raleigh, NC 27604-1062 | 950 F Street, NW | 80333 Munich |
| Atlanta, GA 30309-3424 | Charlotte, NC 28280-4000 | 919-862-2200 | Washington, DC 20004-1404 | (49) (89) 238-0-70 |
| 404-881-7000 | 704-444-1000 | Fax: 919-862-2260 | 202-756-3300 | Fax: (49) (89) 238-0-7110 |
| Fax: 404-881-7777 | Fax: 704-444-1111 | | Fax: 202-756-3333 | (Representative Office) |

May 25, 2007
Page 2

acquired Dental Concepts. A true and correct copy of that Release is attached as Exhibit A to this letter for your reference.

As the Vice President of Marketing of Dental Concepts, Ms. Kaplan was privy to important product information, marketing information, and other confidential information relating to Dental Concepts' business.

Therefore, as part of the Release, Ms. Kaplan agreed that the Dental Concepts confidential information that she possessed would both (1) be kept confidential and (2) any records reflecting such information would be returned to Dental Concepts. The applicable paragraph in the Release, entitled "Confidential Information" states, as regards to the duty of Ms. Kaplan not to divulge information:

> <u>Confidential Information</u>. Employee agrees that it will not use, divulge, sell or deliver to or for any other person, firm or corporation other than the Company and its respective subsidiaries, affiliates, successors and assigns any confidential information and material (statistical or otherwise) relating to the Company's business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information.

Moreover, Ms. Kaplan was required to return all such Confidential Information in her possession as of November 14, 2005 (the "Effective Date" of the Release):

> On or before the Effective Date, Employee will surrender to the Company all lists, books and records of or in connection with the Company's business and all other property belonging to the Company.

Finally, Ms. Kaplan agreed that injunctive relief would be appropriate should she violate the Release, agreeing that such an occurrence would substantially harm Prestige:

> Should there be a violation or attempted or threatened violation of this provision, the Company may apply for and obtain an injunction to restrain such violation or attempted or threatened violation, Employee conceding that the loss of such secret or confidential information cannot reasonably or adequately be compensated in damages in an action at law, and that the right to said injunction is necessary for the protection and preservation of the rights of the Company and of any transferee or assignee hereof to prevent irreparable damage to the Company. Such injunctive relief shall be in addition to such other rights and remedies as the Company, and any other permitted transferee or assignee hereof, may have against Employee arising from any breach hereof on his part.

(Release ¶ 7.) Thus, this clause was reasonable and necessary.

May 25, 2007
Page 3

### B. PRESERVATION REQUEST

Prestige just learned that Ms. Kaplan is now or has recently been working for DenTek.

Obviously, any use of Dental Concepts confidential information and material would constitute a material violation by Ms. Kaplan of the Release, and would constitute unfair competition by DenTek. The coincidence of Ms. Kaplan working for DenTek is especially telling when viewed in light of the myriad of product similarities between the DenTek dental protector and THE DOCTOR'S® NIGHTGUARD.™ These product similarities are set forth in detail in the Complaint, filed on April 24, 2007, and include misappropriation of the NIGHTGUARD™ mark, patented invention, and copyrighted material.

For the purposes of this letter, **Electronically Stored Information ("ESI")** includes e-mail and other electronic communication, word processing documents, spreadsheets, databases, calendars, telephone logs, contact manager information, Internet usage files, and network access information. Medtech has already requested, via letter dated April 24, 2007, that DenTek preserve all information relating to this case and this letter, while more specific, is not intended to limit DenTek's obligations.

**Prestige is identifying Ms. Kaplan as a potential key player in the case.** *See, e.g., Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 217-218 (S.D.N.Y. 2003); *Consolidated Aluminum Corp. v. Aloca, Inc.*, 2006 WL 2583308 (M.D. La. July 19, 2006). Medtech asks that steps be taken to preserve any ESI relating to Ms. Kaplan and the development, testing, marketing, or other business activity relating to the DenTek dental protector.

Prestige requests that you, DenTek and Ms. Kaplan: (1) take every reasonable step to preserve any ESI that relates to the claims in the above case and Ms. Kaplan; (2) take every reasonable step to ensure that such ESI is not used, disclosed, or disseminated any further; and (3) take steps to return any such information to Prestige.

Ms. Kaplan is well-aware of her own use information and is in a better position to know the specifics of the electronic devices that she uses day-to-day. We ask that you, DenTek and Ms. Kaplan take all appropriate steps to *preserve* the data related with any such electronic devices relating to Ms. Kaplan, whether on DenTek's information technology system, on Ms. Kaplan's home computer, hosted with a third party (such as a "Hotmail" or "Yahoo!" account), or on some removable electronic medium. This request includes, but is not limited to, an obligation to discontinue any activities that could corrupt the computer that you have used which may contain information relating to Prestige or Medtech Products Inc. ("Medtech") (such as data destruction, modifying files, running wiping programs, destroying hardware, etc.).

May 25, 2007
Page 4

    As to the return of this information to Prestige, the Company recommends that we agree on a third party electronic evidence handler (such as Lexis Applied Discovery or Kroll OnTrack) to act as a repository for the time-being to ensure no destruction of files.

Sincerely,

Karl Geercken

cc:    Amy S. Manning, Esq.

# EXHIBIT A

Alston & Bird

To: Kelly M. Kaplan
4 Woodmont Road
Upper Montclair, NJ 07043

## GENERAL RELEASE

This General Release ("Release") is made and entered into by and between Dental Concepts, LLC, a Delaware limited liability company (the "Company"), and Kelly M. Kaplan the ("Employee"), as of the date written below ("the Effective Date").

In connection with the acquisition of the Company by Prestige Brands, Inc., Employee will receive the Consideration (as defined below) as severance and contractual payout. In exchange for the Consideration, Employee intends to fully and unconditionally release any and all claims that he, his heirs, administrators, executors, personal representatives, beneficiaries, and assigns may have against the Company and each of their affiliates, predecessors, successors, subsidiaries, divisions, assigns, officers, directors, members, shareholders, representatives, employees, former employees, attorneys, insurers and agents (collectively referred to as "Releasees"), on the terms contained in this Release as fully set forth below.

1. Consideration. Employee gives the releases, covenants, representations, and warranties stated herein in consideration of the payment of REDACTED less applicable withholding taxes in severance, and REDACTED in contractual payout, ("the Consideration") to Employee by the Company, to be made by check made payable to Employee and to be delivered to Employee, upon the Effective Date. Additionally, Company will provide health and dental insurance for a period of three months from the Effective Date.

2. General Release and Covenants by Employee.

a. Employee does hereby voluntarily and unconditionally remise, release, acquit, and forever discharge the Company and all subsidiary, parent, affiliated or related companies and their respective divisions and their respective past and present officers, directors, members, managers, agents, employees, successors and assigns, in their individual and representative capacities (the "Released Parties"), of and from any and all suits, actions, causes of action, obligations, damages, charges, costs, claims, demands, liabilities, expenses and attorneys' fees of whatever kind of nature, contingent or fixed, liquidated or unliquidated, matured or unmatured, known or unknown, which the Employee, his assigns, heirs and legal representatives may now have, or have ever had, against any or all of the Released Parties, whether or not arising from the Employee's employment relationship with Employer, or which may be related in any way to the Employee's employment relationship with the Company, the termination of that relationship, and/or any other employment related dealings of any kind between on the one hand, and any or all of the Released Parties on the other, which have transpired on, or prior to, the Execution Date, including, but not limited to, any and all claims, rights, demands and causes of action for breach of the covenant of good faith and fair dealing; inducement of breach; wrongful or unlawful discharge; intentional or negligent infliction of emotional distress; intentional or negligent fraud or misrepresentation; conspiracy; failure to pay wages, benefits, severance, or other compensation of any sort; discrimination on the basis of race, color, sex, national origin, religion, age, disability, marital status, sexual orientation, or sexual harassment; retaliation for protesting discrimination on the

1

basis of race, color, sex, national origin, religion, age, disability, marital status, sexual orientation, or sexual harassment; a violation of any laws, statutes, rules or regulations whether state, federal or local, including, but not limited to, the Americans with Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act and any other federal, state or local wage, wage hour or wage payment law, the Employee Retirement Income Security Act of 1974 ("ERISA") including but not limited to, breach of fiduciary duty and equitable claims arising under section 1132(a)(3) of ERISA, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Age Discrimination in Employment Act of 1990, the Civil Rights Acts of 1866, 1871, 1991, including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, the Worker Adjustment and Retraining Notification Act (all as amended).

  b. The claims, causes of action, security interests, liabilities, and judgments released in Paragraph 2(a) above shall be referred to collectively herein as "Employee's Released Claims."

  c. Nothing herein is intended, nor shall it be construed, as a waiver or release by the Employee of his rights, if any, under any statutory claims for state unemployment insurance, worker's compensation, disability insurance benefits (other than discrimination claims for such benefits), and any legal obligations of the Company to indemnify the Employee under applicable by-laws for so long as the Employee adheres to the terms of this Agreement.

  d. Employee hereby covenants and agrees that he will forever refrain and forebear from commencing, instituting, or prosecuting any lawsuit, action, or other proceeding against any of the Releasees, individually or collectively, based on, arising out of, or connected with any of Employee's Released Claims.

  e. Employee understands and agrees that this Release shall be binding upon him in his individual capacity as well as upon his heirs, administrators, executors, personal representatives, beneficiaries, and assigns.

3. <u>No Assignment or Transfer by Employee of Released Claims</u>. Employee represents and warrants that as of the Effective Date, he has not assigned or transferred, or purported to assign or transfer, to any person, firm, corporation, association, or entity whatsoever, any of Employee's Released Claims. Employee hereby agrees to indemnify and hold harmless Releasees against, without limitation, any and all rights, claims, warranties, demands, debts, obligations, liabilities, costs, expenses (including attorney's fees), causes of action, and judgments based on, arising out of, or connected with any such transfer or assignment, or purported transfer or assignment by Employee. ~~Employee represents and warrants that as of the Effective Date, he has not assigned or transferred, or purported to assign or transfer, to any person, firm, corporation, association, or entity whatsoever, any of Employee's Released Claims.~~ [Repeat sentence/ KMK 11/14/05]

4. <u>Releases Include Unknown Claims</u>. [except as set forth herein KMK 11/14/05]

  a. Employee understands and agrees that Employee's Released Claims are intended to and do include any and all claims of every nature and kind whatsoever (whether known, unknown, suspected, or unsuspected) that Employee may have against the Company.

  b. Employee acknowledges that he may hereafter discover facts different from or in addition to those which he now knows or believes to be true with respect to Employee's Released Claims and

2

agrees that, in such event, this Release shall nevertheless be and remain effective in all respects, notwithstanding such different or additional facts, or the discovery thereof.

      c.    Employee represents and acknowledges that: (i) he and his attorneys have conducted whatever investigation was deemed necessary by him and his attorneys to ascertain all facts and matters related to this Release; (ii) he has consulted with and received advice from legal counsel concerning this Release; and (iii) he is not relying in any way on any statement or representation by the Company or their attorneys, except as expressly stated herein, in reaching his decision to enter into this Release.

5.    **No Admission of Liability.**  The parties understand and agree that this Release does not constitute an admission of liability on the part of the Company as to any matters, whatsoever.

6.    **Future Legal Actions.**  In the event either party to this Release commences an action, at law or in equity, to enforce any right under any provision of this Release or to compel compliance with any provision of this Release, Employee, and the Company agree that the prevailing party in any such action shall be entitled to recover from the opposite party all reasonable attorney's fees and costs incurred in connection with such action.

7.    **Confidential Information.**  Employee agrees that it will not use, divulge, sell or deliver to or for any other person, firm or corporation other than the Company and its respective subsidiaries, affiliates, successors and assigns any confidential information and material (statistical or otherwise) relating to the Company's business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information. On or before the Effective Date, Employee will surrender to the Company all lists, books and records of or in connection with the Company's business and all other property belonging to the Company. Should there be a violation or attempted or threatened violation of this provision, the Company may apply for and obtain an injunction to restrain such violation or attempted or threatened violation, Employee conceding that the loss of such secret or confidential information cannot reasonably or adequately be compensated in damages in an action at law, and that the right to said injunction is necessary for the protection and preservation of the rights of the Company and of any transferee or assignee hereof to prevent irreparable damage to the Company. Such injunctive relief shall be in addition to such other rights and remedies as the Company, and any other permitted transferee or assignee hereof, may have against Employee arising from any breach hereof on his part.

8.    **Modification.**  No provision of this Release may be changed, altered, modified or waived except in writing signed by Employee and a duly authorized representative of the Company, which writing shall specifically reference this Release and the provision that the parties intend to waive or modify.

9.    **Severability.**  In the event any provision of this Release should be held to be unenforceable, each and all of the other provisions of this Release shall remain in full force and effect.

10.    **Entire Agreement.**  The parties hereto acknowledge that this Release constitutes a full, final, and complete settlement of their differences and supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements, or negotiations between or among them relating to the subject matter hereof, and affirmatively state that there are no other prior or contemporaneous agreements, exchanges, representations, arrangements, or understandings, written or oral, between or

N TZG 542237 v2
2016563-000034  11/08/05

among them relating to the subject matter hereof other than that as set forth herein, and that this Release contains the sole and entire Release between them with respect to the subject matter hereof.

11.  **Understanding**. The parties acknowledge and represent that they have read this Release in full and, with advice of counsel, understand and voluntarily consent and agree to each and every provision contained herein.

12.  **Headings and Captions**. The headings and captions used in this Release are for convenience of reference only, and shall in no way define, limit, expand or otherwise affect the meaning or construction of any provision of this Release.

13.  **Counterparts Acceptable**. This Release may be executed in two or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

4

N TZG 542237 v2
2016563-000034 11/08/05

BY SIGNING BELOW, EMPLOYEE AGREES THAT HE HAS BEEN GIVEN A SUFFICIENT TIME TO READ AND REVIEW THIS RELEASE, THAT HE UNDERSTANDS THIS RELEASE, THAT HE SIGNS IT VOLUNTARILY OF HIS OWN FREE WILL, AND THAT HE IS NOT SUFFERING FROM ANY DISABILITY OR CONDITION THAT WOULD RENDER HIM UNABLE TO ENTER INTO THIS RELEASE.

IN WITNESS WHEREOF, the undersigned have executed this Release on the date shown below.

_____   Date: 11/14/05
Employee

DENTAL CONCEPTS, LLC

By: _____   Date: 11/14/05
Title: _____