IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> RANIR, LLC and <br> CVS PHARMACY, INC. <br><br> Defendant. | |
| MEDTECH PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> DENTEK ORAL CARE, INC., <br> Defendant. | Civil Action No. 07 CV 3302 (KMK)(LMS) <br><br> **PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER AND MOTION FOR LEAVE TO FILE ITS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW IN SUPPORT THEREOF** |
| MEDTECH PRODUCTS INC., <br><br> Plaintiff, <br><br> v. <br><br> POWER PRODUCTS, INC. <br> d/b/a SPLINTEK, <br><br> Defendant. | |

Medtech Products Inc. ("Medtech") hereby respectfully submits this Motion to Amend the Scheduling Order and Motion for Leave to File Its Second Amended Complaint and Memorandum of Law in Support Thereof ("Motion to Amend"). Medtech's Motion to Amend seeks to modify the current Civil Case Discovery Plan and Scheduling Order (07-cv-3302,

1

Docket No. 17) ("Scheduling Order") entered in this case in order to allow Medtech to file a Second Amended Complaint and conduct discovery on the additional claims raised therein. Medtech also seeks leave of court pursuant to Federal Rules of Civil Procedure 15(a) and 21 to file its Second Amended Complaint. A copy of Medtech's Second Amended Complaint and the current Scheduling Order are attached hereto as Exhibits 1 and 2, respectively.

Based on additional third-party discovery conducted by Medtech, the Second Amended Complaint seeks to add three new defendants, Kelly Kaplan, Ray Duane, and C.D.S. Associates, Inc., as well as additional claims against current defendant DenTek Oral Care, Inc. ("DenTek"). The current Scheduling Order dictated an expedited discovery schedule for Medtech's claims against defendants DenTek and Power Products, Inc. ("Power Products"). On July 9, 2007, this Court held a conference with the parties during which the Court addressed Medtech's pending Motion for Leave to File Its Amended Complaint Against DenTek Oral Care, Inc. (07-cv-3302, Docket No. 23) ("Motion for Leave to File Its First Amended Complaint"). Medtech's First Amended Complaint sought to add Ms. Kelly Kaplan as a defendant. During the conference, this Court clearly contemplated holding a ruling on Medtech's Motion for Leave to File Its First Amended Complaint in abeyance until Medtech had completed certain third-party discovery on Ms. Kaplan, Mr. Duane, and two Tufts University doctors associated with Mr. Duane and DenTek, Drs. Ayman Aboushala and Noshir Mehta.

In particular, as to Kelly Kaplan, the Court stated: "perhaps the right thing to do, then, is to allow you to do your initial discovery, and then allow you to make the motion. And I'll extend the date for amending the complaint. And then, quite frankly, we'll have to re-open depositions and go back and do things all over again once she's in the case." July 9, 2007 Hg. Tr. p. 7. Further, with respect to Mr. Duane and Drs. Aboushala and Mehta, the Court held:

> I'm going to order the motion to amend held in abeyance, pending some initial discovery. **I'm going to allow the discovery to go forward**. It seems to me that it is sufficiently related to the pleadings and, certainly, the proposed pleadings, that it falls within the four corners of what the discovery rules permit. And so I will allow it to go forward, again with everyone working together to find dates that will work out.

*Id*. at p. 16 (emphasis added).

Since the July 9th hearing, Medtech has taken the depositions of Mr. Duane and Drs. Aboushala and Mehta. Ms. Kaplan refused to be deposed on the grounds that this Court did not require her deposition at the July 9th hearing, and filed a Motion to Quash Medtech's Rule 45 subpoena to her issued by the United States District Court for the District of New Jersey. On August 23, 2007, the New Jersey District Court held a conference with the parties, at which time that court dismissed Ms. Kaplan's Motion to Quash without prejudice and on grounds of judicial efficiency allowed Medtech to withdraw its subpoena and reissue it from the United States District Court for the Southern District of New York. On that same day, Medtech issued a subpoena from the Southern District of New York to Ms. Kaplan noticing her deposition for September 6, 2007.

Based on the discovery taken from Mr. Duane and Drs. Aboushala and Mehta, Medtech has more than enough information to support the causes of action in its Second Amended Complaint. In particular, DenTek had opposed Medtech's Motion for Leave to File Its First Amended Complaint on the ground that more specificity regarding the confidential and proprietary information at issue was required. (Docket No. 33 at pp. 4-5). Medtech's Second Amended Complaint more than complies with the federal pleading requirements, and provides sufficient specificity regarding the confidential and proprietary information that Medtech alleges was misappropriated and misused by DenTek, Mr. Duane and Ms. Kaplan.

Accordingly, Medtech respectfully requests that the Court amend the Scheduling Order to allow Medtech to file a Second Amended Complaint and conduct discovery on the additional claims. In addition, Medtech requests that the Court grant it leave to file its Second Amended Complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

Prestige Brands Holdings, Inc. ("Prestige"), the parent company of Medtech, acquired Dental Concepts LLC ("Dental Concepts") in November 2005. Dental Concepts owned THE DOCTOR'S® NIGHTGUARD™ brand dental protector, the market-leading dental protector. Two of the top three key executives of Dental Concepts were Ray Duane, the Vice President of Sales, and Kelly Kaplan, the Vice President of Marketing.

In April 2007, Medtech filed its Complaint against DenTek alleging a myriad of intellectual property infringement claims: patent infringement, trademark infringement, copyright infringement, and related New York statutory and common law unfair competition claims. (07-cv-3304, Docket No. 1). The essence of Medtech's claim was that DenTek knocked off THE DOCTOR'S® NIGHTGUARD™ brand dental protector.

After the April Complaint, in June of 2007, Medtech discovered that both Mr. Duane and Ms. Kaplan were associated with DenTek. This motion practice arises out of Medtech's efforts to bring Mr. Duane and Ms. Kaplan into this lawsuit for misappropriating the confidential and proprietary information of Medtech—in violation of their contractual commitments—and to move this case forward with these necessary defendants included.

Two previous motions have a direct relation to the current Motion to Amend the Scheduling Order: (1) Medtech's Motion for Leave to File Its First Amended Complaint; and (2) Medtech's Motion to Permit the Deposition of Non-Party Raymond Duane and Memorandum in Support thereof (07-cv-3302, Docket No. 42). This Memorandum will first set forth briefly the

4

factual context of the First Motion to Amend the Complaint, and then discuss the factual and procedural developments since the July 9, 2007 hearing.

**A.    THE SCHEDULING ORDER IN THIS CASE.**

After filing its Complaint, on May 23, 2007, Medtech filed a Motion for Preliminary Injunction against Power Products. (07-cv-3305, Docket Nos. 8 – 13). Thereafter, DenTek filed its Answer and Counterclaim. (07-cv-3302, Docket No. 15). The next day, on May 31, 2007, Judge Brieant held a conference with all counsel in the consolidated action to discuss a hearing date on the pending Motion for Preliminary Injunction, "along with the possibility of consolidating such a hearing with trial of the merits under Rule 65(a)." (07-cv-3302, Docket No. 11). As DenTek itself described:

> At the Court's suggestion and to avoid the need for the Court to decide Medtech's request for a preliminary injunction in its action against Power Products, Inc., counsel for DenTek, Power Products, and Medtech retired to the jury room and ***negotiated an accelerated case schedule addressing the claims in issue at that time***.

(07-cv-3302, Docket No. 33 at p. 2). The expedited discovery schedule reflected the parties' agreement to advance the trial of the action on the merits *in lieu* of Medtech's pending Motion for Preliminary Injunction against Power Products (and the planned motion for the same relief against DenTek). *See* FED.R.CIV.P. 65(a)(2).

**B.    FIRST MOTION TO AMEND THE COMPLAINT.**

On June 6, 2007, within the timeframe set by the Scheduling Order, Medtech filed its Motion for Leave to File Its First Amended Complaint. In that Motion, Medtech requested leave "to add certain allegations relating to DenTek's current advertising, as well as add a new Defendant, Ms. Kelly Kaplan." Kelly Kaplan, the Vice President of Marketing for Dental Concepts LLC, the company that Prestige acquired in November 2005, had just been discovered to be associated with DenTek.

5

DenTek opposed Medtech's Motion for Leave to File Its First Amended Complaint primarily on two grounds: (a) DenTek requested more specificity regarding the confidential and proprietary information at issue (Docket No. 33, at pp. 4-5); and (b) it claimed that the present schedule did not adequately allow time for "proper discovery in an action alleging improper use of confidential or proprietary information." (*Id*. at pp. 2, 3-5).

**C.     MOTION TO PERMIT THE DEPOSITION OF RAY DUANE.**

After filing the Motion for Leave to File Its First Amended Complaint, Medtech learned that Ray Duane, the Vice President of Sales for Dental Concepts, was also associated with DenTek. This information was learned on June 23, 2007, when Ray Duane attended the National Association of Chain Drug Stores ("NACDS") marketing conference with DenTek. Almost immediately, Medtech subpoenaed Mr. Duane on June 27, 2007; DenTek's counsel, Proskauer Rose LLP ("Proskauer") objected one week later on the basis that the subpoena was untimely. (*Id.* at pp. 4-5). Proskauer also represents Mr. Duane.

On July 9, 2007, in its Motion to Permit the Deposition of Non-Party Raymond Duane and Memorandum in Support thereof, (07-cv-3302, Document No. 42), Medtech set forth additional and necessary background to the instant motion. It described how Mr. Duane had implied that any association with DenTek was minimal. (*Id*. at p. 3, Ex. B).

At the hearing on July 9, 2007, DenTek's and Mr. Duane's combined counsel, Proskauer, argued that Medtech's subpoena to Mr. Duane was a "fishing expedition," implying that Mr. Duane's association with DenTek was minimal. Counsel argued:

> [Medtech] subpoenaed a former sales representative of the plaintiff [Dental Concepts], *who was a consultant for Defendant DenTek for a two month period.* And they're basically going on a fishing expedition, hoping to find some movement of their confidential information into DenTek, and they assert a document and subpoena request, as well. . . . *we're at a loss, your Honor*, because right now, there is no claim directed to misappropriation of confidential

> information, and we have no idea what it is they're talking about, why these people's depositions would be relevant to something that's in this case.

July 9, 2007 Hg. Tr. at p. 9 (emphasis added).

**D.    MEDTECH DEPOSES RAY DUANE.**

After working around Mr. Duane's schedule, Medtech received documents produced by Mr. Duane and took his deposition on Friday, August 3, 2007. Every document produced by Mr. Duane was designated Attorneys' Eyes' Only—an express condition that Proskauer imposed before producing any documents (or describing what was being produced).

At Mr. Duane's deposition, additional facts regarding Mr. Duane's and Ms. Kaplan's association with DenTek were explored. Despite Medtech's efforts to reach agreement on the designation's inapplicability, Mr. Duane and Proskauer refused to undesignate the documents. *See* Exhibit 3 (8/16/2007 Ltr. from Federbush to Ramage at p. 2, ¶ 5). As such, the proposed Second Amended Complaint is filed under seal so that the Court can consider the more specific allegations regarding confidential and proprietary information.

Most critically to the standards applicable to this Motion to Amend, Mr. Duane plainly stated that his association with DenTek was not known or knowable to the industry because, until the NACDS Conference on June 23, 2007, he had no face to the industry. Mr. Duane testified, when asked whether he had produced all the documents in his possession responsive to Medtech's Subpoena[1]:

> Q.    All documents concerning DenTek's description of your affiliation, including such descriptions in communications, advertising, or tradeshow applications.
>
> A.    Yeah, that's an interesting question. ***I have no documentation and, obviously, the trade has no knowledge of my working for DenTek until the***

---

[1]    (07-cv-3302, Docket No. 42-6, pp. 9-13.)

7

> ***NACDS of this year. My assignment with DenTek as it related to NightGuard had nothing to do with customers so nobody would have any way of knowing.***

Duane Dep. at p. 48-49, attached as Exhibit 4. Later, Mr. Duane reiterated that he was not publicly linked to DenTek until the June 23, 2007 NACDS conference:

> Q. Did you ever contact any of the brokers with regard to DenTek?
>
> A. No. I want to make that really clear because . . . as far as anyone outside of DenTek and excluding Kelly Kaplan and Mike Lesser, nobody knew I was working for DenTek when I was working for DenTek, nobody. I had no face to the trade. I made no calls on customers. So far as the retail environment was concerned, nobody knew I was working for DenTek. The first time that anybody knew that I was doing anything at all with DenTek was when my name appeared under DenTek at the NACDS registration. . . . That's the first time.

*Id*. at pp. 321-22. And, upon looking at the registration page for the NACDS conference, and being asked "I think you're listed as a consultant for DenTek," Mr. Duane responded: "How perfect? Great. So that's the first public exposure of my doing anything for DenTek at all." *Id*. at p. 322.

Mr. Duane's involvement in spearheading DenTek's efforts to gain a foothold in the dental protector market, recruiting Kelly Kaplan, and using Medtech's confidential and proprietary information were explored. These allegations are set forth in greater detail in the Proposed Second Amended Complaint.

**E.    KELLY KAPLAN REFUSES TO BE DEPOSED.**

On July 23, 2007, Medtech subpoenaed Ms. Kaplan pursuant to the Court's Order. *See* Exhibit 5. After some back-and-forth, on August 7, 2007, Ms. Kaplan's counsel, John Paul Fulco, wrote that the pendency of Medtech's Motion for Leave to File Its First Amended Complaint precluded any deposition of Ms. Kaplan:

> Seeking document discovery and testimony from Ms. Kaplan by way of Subpoena during the pendency of Medtech's motion for leave to add Ms. Kaplan as a party defendant is ***an attempt to obtain pre-action discovery to the prejudice of Ms.***

8

> *Kaplan* . . . . Accordingly, demand is hereby made that Medtech withdraw its Subpoena forthwith, in default of which we will seek appropriate relief.

8/7/2007 Ltr. from Fulco to Geercken, at pp. 1-2, attached as Exhibit 6. On August 15, 2007, late in the day, Kelly Kaplan filed a Notice of Motion to Quash Subpoena Duces Tecum in the District of New Jersey. *See* Exhibit 7. Mr. Fulco, confirmed to counsel for Medtech that while he had a copy of the July 9, 2007 hearing transcript, he did not believe that this Court had permitted the deposition of Ms. Kaplan. On August 23, 2007, the New Jersey District Court denied Ms. Kaplan's Motion to Quash without prejudice, and informed the parties that she thought the United States District Court for the Southern District of New York would have jurisdiction over Ms. Kaplan, who resides in northern New Jersey. As a result, on that same day, Medtech issued a subpoena to Ms. Kaplan from the Southern District of New York requesting that she produce responsive documents and provide deposition testimony on September 6, 2007.

## STANDARD OF LAW

Rule 16(b) of the Federal Rules of Civil Procedure provides that a scheduling order "shall not be modified except ***upon a showing of good cause*** and by leave of the district judge or, when authorized by local rule, by a magistrate judge." FED.R.CIV.P. 16(b) (emphasis added). Under Judge Karas' and Judge Smith's Individual Practices, the "good faith" standard is articulated in the following factors:

> All requests for adjournments or extensions of time must state (1) the original date, (2) the number of previous requests for adjournment or extension, (3) whether these previous requests were granted or denied, and (4) whether the adversary consents, and, if not, the reasons by the adversary for refusing to consent. If the requested adjournment or extension affects any other scheduled dates, a proposed Revised Scheduling Order (reflecting only business days) must be attached.

The standards applicable to Medtech's request for leave to file Its Second Amended Complaint are liberal and permissive. *See* FED.R.CIV.P. 15(a) (stating that a party may amend

9

his pleading "by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires"); FED.R.CIV.P. 21 (stating that "[p]arties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just"); *Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating that leave to amend "shall be freely given when justice so requires"); *See also Kaminsky v. Abrams,* 41 F.R.D. 168, 170 (S.D.N.Y. 1966) (affirming that the standards utilized by a Court for Rule 15(a) motions are to guide a Court in adjudicating Rule 21 motions); 6 CHARELES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE, § 1471 (2d ed. 1990) (same).  In *Foman*, the Supreme Court explained that in the absence of an explicit reason not to, leave to amend should be given.  *Foman*, 371 U.S. 178.  These reasons include such factors as undue delay in filing the amendment, bad faith or dilatory motive, undue prejudice to the opposing party, and futility of amendment.  *Id*.

## THE AMENDMENT SHOULD BE PERMITTED

There is good cause to amend the current Scheduling Order entered in this case to permit Medtech to file its Second Amended Complaint and to conduct discovery on the additional claims raised therein.  The deadline imposed in the Scheduling Order for adding new parties and amending pleadings was June 15, 2007.  Medtech only learned of Ms. Kaplan's association with DenTek immediately before the June 15th deadline, and timely filed its Motion for Leave to File its First Amended Complaint to add her as a party.  Medtech did not learn of Mr. Duane's association with DenTek until after the June 15th deadline had passed—and indeed could not have learned of it prior to June 23, 2007 because Duane and DenTek kept their relationship concealed.  Thus, Medtech could not have reasonably met the deadline in the Scheduling Order to add Mr. Duane as a party.

Since the July 9, 2007 hearing with the Court, Medtech has diligently pursued third-party discovery of Ms. Kaplan, Mr. Duane and the Tufts University doctors. Medtech has taken the depositions of Mr. Duane and Drs. Aboushala and Mehta as contemplated by the Court. Moreover, Medtech has diligently pursued third party discovery from Ms. Kaplan.

Despite Ms. Kaplan's unwillingness to be deposed, Medtech has obtained sufficient information through its other third-party discovery to file its Second Amended Complaint naming Mr. Duane, Ms. Kaplan, and C.D.S. Associates, Inc. Medtech's Second Amended Complaint more than adequately sets forth the confidential and proprietary information misappropriated by Mr. Duane, Ms. Kaplan and DenTek. Moreover, Medtech has diligently pursued filing its Second Amended Complaint, and has kept the Court informed of its intention to file an amended complaint based on newly discovered information. As such, Medtech believes that leave of court to file its Second Amended Complaint is warranted.

DenTek has already suggested that amending the Scheduling Order will be necessary given the new claims regarding the theft of Medtech's confidential and proprietary information—which directly violated Mr. Duane's and Ms. Kaplan's agreements with Medtech. Furthermore, the parties have not been able to agree on the terms of a protective order, an issue that will be adjudicated by this Court on September 5, 2007, and this has delayed document production in this case. Considering the above, the Scheduling Order should be appropriately amended to permit discovery on the claims of the Second Amended Complaint.

## CONCLUSION

For the foregoing reasons, Medtech respectfully requests that the Court grant its motion to amend the scheduling order and motion for leave to file its Second Amended Complaint.

Dated: August 24, 2007

                                              Respectfully submitted,

ALSTON & BIRD LLP

By: s/ Amy Manning
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, P.C.1800
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com
Admitted *Pro Hac Vice*

Carl M. Davis II, GA Bar Number 207710
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.1800
Six Concourse Parkway
Suite 3100
Atlanta, Georgia  30328
(678) 406-8700
cdavis@bakerdonelson.com
Admitted pro hac vice
Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com
Admitted pro hac vice

Of Counsel:

Todd R. David , GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com


Attorneys for Plaintiff
Medtech Products Inc.