UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x

MEDTECH PRODUCTS, INC.,

                Plaintiff,                No. 07-CV-3302 (KMK)(LMS)

        -v-                   ECF Case

DENTEK ORAL CARE, INC., et al.,

                Defendants.

----------------------------------------------------------x


MEMORANDUM OF LAW BY DEFENDANTS RAY DUANE AND
C.D.S. ASSOCIATES, INC. IN SUPPORT OF THEIR MOTION TO
DISMISS THE SECOND AMENDED COMPLAINT AND FOR OTHER RELIEF


GREENBERG FREEMAN LLP
24 West 40th Street, 17th Floor
New York, NY  10018
(646) 366-0881
*Attorneys for Defendants Ray Duane*
*and C.D.S. Associates, Inc.*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................... ii

I.      INTRODUCTION ..............................................................................1

II.     RELEVANT ALLEGATIONS AND PROCEEDINGS .............................................2

        A.      Relevant Allegations in the SAC ....................................................2

        B.      Prior Proceedings ........................................................8

III.    ARGUMENT ........................................................................8

        Point I

        APPLICABLE LEGAL STANDARD ON A MOTION TO DISMISS......................8

        Point II

        MEDTECH HAS FAILED TO STATE A CLAIM AGAINST THE
        DUANE DEFENDANTS FOR TRADE SECRET MISAPPROPRIATION..............8

        Point III

        MEDTECH HAS FAILED TO STATE A CLAIM FOR
        BREACH OF CONTRACT AGAINST THE DUANE DEFENDANTS ................... 9

        A.      The Non-Compete Clause in the Consulting Agreement
                Does Not Apply Here.......................................................9

        B.      The Confidentiality Provisions in the Consulting Agreement and
                the Proprietary Information and Inventions Agreement Were
                Superseded by the General Release. ...............................................10

        C.      Any Claim for Breach of Contract Based on the Disclosure of
                Proprietary and Confidential Information Fails as a Matter of Law.................11

        Point IV

        MEDTECH HAS FAILED TO STATE A CLAIM AGAINST DUANE FOR
        TORTIOUS INTERFERENCE WITH CONTRACT  .................................................12

Point V

MEDTECH HAS FAILED TO STATE A CLAIM AGAINST THE DUANE
DEFENDANTS FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS
BUSINESS RELATIONSHIP/ECONOMIC ADVANTAGE ....................................13

Point VI

MEDTECH HAS FAILED TO STATE A CLAIM AGAINST THE DUANE
DEFENDANTS FOR CIVIL CONSPIRACY.............................................................15

Point VII

IF THE COURT GRANTS THIS MOTION TO DISMISS, THE DUANE
DEFENDANTS REQUEST LEAVE TO SEEK ATTORNEYS' FEES AND
COSTS ..................................................................................................................................15

IV.     CONCLUSION..............................................................................................................16

# TABLE OF AUTHORITIES

Page

### CASES

CreditSights, Inc. v. Ciasullo, No. 05 CV 9345 (DAB), 2007 WL 943352
  (S.D.N.Y. Mar. 29, 2007) ...........................................................................11

E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc.,   No. 00 Civ.
  8670(LTS)(GWG), 2003 WL 22068573 (S.D.N.Y. Sep. 5, 2003), report
  adopted, 2005 WL 535065 (S.D.N.Y. Mar. 8, 2005) ......................................14

Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals
Group PLC,  298 F.3d 136 (2d Cir. 2002). ......................................................2

Hayden v. County of Nassau, 180 F.3d 42 (2d Cir. 1999) ..............................4

Independent Energy Corp. v. Trigen Energy Corp., 944 F. Supp. 1184
  (S.D.N.Y. 1996) ........................................................................................10

Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171
  (2d Cir. 1990)............................................................................................9

Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993)..........................................12

NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614 (1996) .....13, 14

# I.  <u>INTRODUCTION</u>

Defendants Ray Duane ("Duane") and C.D.S. Associates, Inc. ("C.D.S." and collectively, the "Duane Defendants"), submit this memorandum of law in support of their motion to dismiss the claims against them in the Second Amended Complaint ("SAC") pursuant to Fed. R. Civ. P. 12(b)(6) and for other relief described herein.

Plaintiff Medtech Products, Inc. ("MedTech") has asserted six different causes of action against the Duane Defendants under different legal theories.  The common threads running through all these claims are allegations that the Duane Defendants violated a non-competition provision contained in their consulting agreement with Medtech's predecessor-in-interest (the "Consulting Agreement") by accepting employment with Medtech's competitor, defendant DenTek Oral Care, Inc. ("DenTek") and, further, that the Duane Defendants allegedly divulged Medtech's confidential trade secrets to DenTek.  None of Medtech's claim can survive this motion to dismiss, however, for any number of the following reasons described in detail below:  (a) by its terms, the non-compete clause in the Consulting Agreement did not apply under the circumstances by which the agreement was terminated; (b) the Consulting Agreement, or at least its relevant provisions, was superseded by a later agreement; (c) Medtech has failed to identify any information that could reasonably qualify as a protectible trade secret.

Many of the legal arguments demonstrating why the claims against the Duane Defendants should be dismissed have already been extensively briefed by the other two defendants in this case, DenTek and Kelly M. Kaplan ("Kaplan"), in their respective motions to dismiss.  Accordingly, as seen below, the Duane Defendants adopt and incorporate by reference the legal arguments contained in Dentek's Memorandum of Law

in Support of Its Motion [ ] For Partial Dismissal of the Second Amended Complaint, etc., dated November 21, 2007 ("Dentek Br."), and Kaplan's Memorandum of Law in Support of Her Motion To Dismiss and For Other Relief, dated November 21, 2007 ("Kaplan Br."), to the extent they are applicable to the Duane Defendants. The Duane Defendants write separately only where necessary to rebut allegations directed solely to them, to explain why the arguments made by the other defendants are applicable here, and to address the claims directed solely against the Duane Defendants.

## II.  RELEVANT ALLEGATIONS AND PROCEEDINGS

A.      Relevant Allegations in the SAC.[1]

Since 1997, Medtech and its predecessor-in-interest, Dental Concepts LLC ("Dental Concepts"), has manufactured and sold an over-the-counter dental protector under the name NIGHTGUARD designed to treat a condition known as bruxism, or nighttime tooth grinding. (SAC ¶¶ 22-23.)

In 1999, Dental Concepts hired the Duane Defendants as consultants for the purpose of assisting Dental Concepts to position itself for a strategic acquisition by another company. (SAC ¶¶ 27-30.)[2] At the time they were hired, the Duane Defendants signed a Consulting Agreement with Dental Concepts setting forth the parties' rights and obligations. (SAC ¶¶ 31-36.) As relevant to this action, the Consulting Agreement contained a non-competition clause that provides as follows:

> (b) The Consultant [*i.e.*, C.D.S.] and Duane agree that, commencing as of the date hereof and during the period of the Consultant's engagement by the

---

[1] The allegations relating to the claims asserted against the Duane Defendants are accepted as true for purposes of this motion to dismiss.  Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 141 (2d Cir. 2002).

[2] Duane, at all relevant times, was the sole active employee of C.D.S., and, thus, all services provided by C.D.S. were provided by Duane personally.

Company [*i.e.*, Dental Concepts] (whether under this Agreement or otherwise) and for a period of twenty-four (24) months from and after the date of termination of such engagement, <u>if such engagement is terminated by the Consultant or is terminated by the Company for Just Cause</u>, neither the Consultant nor Duane shall, without the prior written approval of the Board of Managers of the Company, directly or indirectly, through any other person or entity, whether for itself or himself or as agent on behalf of any other person or entity, and whether as employee, consultant, principal, lender, partner, officer, director, stockholder or otherwise:

(i) solicit, raid, entice or induce, or cause, any person who presently is, or any time during the Consultant's engagement by the Company shall be or shall have been, an employee of the Company or any of its Affiliates at any time during the twelve (12) months preceding such solicitation, raid, enticement, inducement or causation, to become employed or retained by any other person or entity; or

(ii) initiate communications with, solicit, entice, or induce any client, customer or account who presently is, or at any time during the period of the Consultant's engagement by the Company shall be or shall have been, a client, customer, supplier or account of the Company or Dental Concepts, Inc. (the "Predecessor") at any time during the twenty-four (24) months preceding such communication, solicitation, enticement or inducement, to terminate or reduce any contractual, business or other relationship with the Company;

(iii) sell any product or provide any service which is competitive with any of the businesses, products or services of the Predecessor and/or the Company engaged in or marketed during the period of the Consultant's engagement with the Company or during the 24-month period prior thereto (the "Activities'), or promote, market, sell, become or acquire an interest in, or associate in a business relationship with, or aid or assist, any other person or other entity whatsoever who is engaged in any line of business competitive with any of the Activities;

(iv) become an employee, consultant, agent, principal, lender, partner, officer, director, stockholder of, or otherwise provide services to or on behalf of, any other person or entity who is engaged in any line of business competitive with any of the Activities engaged in during the period of the Consultant's engagement with the Company or during the 24-month period prior thereto, or

(v) promote, market, assist or participate in the development, sale, marketing or licensing of any product or service competitive with any of those marketed by the Predecessor and/or the Company during the period of the Consultant's engagement with the Company or the 24-month period prior thereto;

3

(Freeman Dec., Exh. A at pp. 5-6, ¶ 7(b) (emphasis added).)[3] Thus, pursuant to the highlighted language quoted above, the non-compete provision is inapplicable unless the Consulting Agreement was terminated voluntarily by the C.D.S. or was terminated by Dental Concepts for "Just Cause."  (Id.)

The circumstances under which the Consulting Agreement could be terminated is governed by ¶ 6, which provides, in relevant part, as follows:

> (a)   Notwithstanding anything contained herein, the Company's engagement of the Consultant under this Agreement and the Consultant's right to any and all compensation to which the Consultant would otherwise be entitled shall terminate upon the earliest occurrence of the following events:
>
> * * *
>
> (vi) at the option of the Company, upon sale of the Company or of substantially all its assets or business to a person or entity which is not immediately prior thereto an Affiliate of the Company.
>
> (b)    "Just Cause" for purposes hereof shall mean:
>
> (i)    the commission by the Consultant, Duane of any other employee, agent or affiliate of the Consultant of a felony, or of theft, embezzlement, obtaining funds or property under false pretenses or any similar act of material misconduct with respect to the property of the Company or any of its Affiliates or any of their respective employees or any of the Company's customers or suppliers, or should any representation made to the Company by the Consultant or Duane be false or inaccurate in any material respect;
>
> (ii)    the commission by the Consultant, Duane of any other employee, agent or affiliate of the Consultant of a material at of malfeasance, dishonesty or breach of trust against the Company or any of the Company's manufacturers, customers, or suppliers, including a breach by the Consultant, Duane or any other employee, agent or affiliate of the Consultant of any of its covenants or obligations under Section 10 of this Agreement [involving breach of warranties and representations];

---

[3] References to exhibits to the accompanying declaration of Michael A. Freeman, Esq. shall appear as "(Freeman Dec., Exh. __.)"  All the exhibits are appended to the SAC and, therefore, may properly be considered on a motion to dismiss for failure to state a claim.  Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

(iii)    the Consultant's or Duane's repeated failure to successfully fulfill its duties or his duties or obligations under the Agreement or its or his breach of any of the material obligations and covenants of this Agreement; or

(iv)    the termination of cessation of Duane's full-time employment with the Consultant, or its intentional failure of Duane to be available to perform the services contemplated by this Agreement for any reason.

(Freeman Dec., Exh. A at pp. 3-4, ¶ 6 (a), (b), emphasis added.)

Attached to and incorporated in the Consulting Agreement as an exhibit was a document entitled Proprietary Information and Inventions Agreement (the PII Agreement"), which, as the name implies, required the Duane Defendants to maintain the confidentiality of any proprietary information (as defined in the PII Agreement) received from Dental Concepts.  (SAC ¶¶ 42-46; Freeman Dec., Exh. A at Exhibit A.)  The SAC alleges that the PII Agreement was necessary because the Duane Defendants "had substantial access to confidential and proprietary information" belonging to Medtech regarding the "design, manufacturing, marketing and sale" of its NIGHTGUARD product (collectively, the "Alleged Trade Secrets").  (SAC ¶¶ 40-41.)[4]

In November 2005, a company known as Prestige Brands Holdings, Inc. ("Prestige") acquired Dental Concepts for approximately $31 million.  (SAC ¶ 71.)[5]  At or around the time of that transaction, Duane (as well as Kaplan) executed a document with Dental Concepts entitled "General Release".  (SAC ¶ 72; Freeman Dec., Exh. B.)  The General Release provided, in sum and substance, that in return for a payment of $750,000, a prearranged payout due to C.D.S. under the Consulting Agreement upon the sale of Dental Concepts to another company (Freeman Dec., Exh. A at Schedule B),

---

[4]  As described below, the Duane Defendants contend that the SAC fails to identify any information allegedly acquired by the Duane Defendants that was either confidential or that would constitute a trade secret under which a claim for misappropriation of trade secrets could be based.

[5]  Prestige later integrated Dental Concepts into Medtech.  (SAC ¶ 67.)

Duane would release any claims relating to his consulting arrangement with Dental Concepts. (Id.) As relevant to this motion, the General Release further provides that Duane may not

> use, divulge, sell or deliver . . . any confidential information and material (statistical or otherwise) relating to [Dental Concept's] business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information.

(Freeman Dec., Exh. B at ¶ 7.) The General Release also provides as follows:

> Entire Agreement: The parties hereto acknowledge that this Release constitutes full, final and complete settlement of their differences and supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements or negotiations between or among them relating to the subject matter hereof, and affirmatively state that there are no other prior or contemporaneous agreements, exchanges, representations, arrangements, or understandings, written or oral, between or among them relating to the subject matter hereof other than that as set forth herein, and that this Release contains the sole and entire Release between them with respect to the subject mater hereof.

(Id. at ¶ 10.)

The Duane Defendants continued providing services under the Consulting Agreement until February 2006, when their engagement ended. (SAC ¶ 87.) At that time, Prestige offered to hire Duane for a sales position, but he declined. (SAC ¶ 88.) The SAC does not allege that Prestige offered to extend the Consulting Agreement.

The SAC alleges that, in July 2006, DenTek recruited Duane to work on a project to create, market and sell a competing bruxism device (SAC ¶¶ 110-116), and that in August 2006, Duane and DenTek executed an agreement covering Duane's role on this project (SAC ¶ 120). Medtech alleges that Duane's agreement to work for DenTek violated the non-compete provision in the Consulting Agreement. (SAC ¶¶ 116, 120.)

6

After the Duane Defendants agreed to work with DenTek, the SAC alleges that they engaged in the following acts of misconduct:

- Duane misappropriated Medtech's strategic sales decision to maintain its "three-size platform" for it bruxism device despite pressure on Medtech from retail customers to manufacturer a one-size-fits-all device (SAC ¶ 123);

- Duane identified Item New Product Development ("Item"), a design firm in Rhode Island that was used by Dental Concepts, to DenTek, who then retained Item to design its bruxism device (SAC ¶ 137);

- Duane identified Stelray Plastic Products, Inc. ("Stelray"), an injection molder in Connecticut that was used by Dental Concepts, to DenTek, who then retained Stelray to manufacture its bruxism device (SAC ¶ 138);

- Duane may have identified AGI/Klearfold, a packaging company used by Dental Concepts, to DenTek, who then retained AGI/Klearfold to package its bruxism device (SAC ¶ 139);

- Duane "reach[ed] out" to a group of dentists affiliated with Tufts University in Massachusetts (the "Tufts Doctors"), who previously assisted Dental Concepts in developing its bruxism device, and recruited them to work with DenTek in developing its device (SAC ¶¶ 140, 144);

- Duane identified Hogan & Hartson, a Washington, D.C. law firm who assisted Dental Concepts in obtaining FDA approval of its bruxism device, to DenTek, who then retained Hogan & Hartson to assist DenTek in obtaining the necessary FDA approval for DenTek's bruxism device (SAC ¶¶ 151-155); and

- Duane recruited Kaplan to work for DenTek (SAC ¶¶ 133, 156).

Medtech alleges that these actions by the Duane Defendants were harmful to Medtech's business because they allowed DenTek to develop and enter the market with a competing bruxism device faster than DenTek otherwise would have, and that this caused Medtech to lose sales revenue. (SAC ¶¶ 181-183.)

B.    Prior Proceedings

Before Duane was named as a party, he was subpoenaed by Medtech as a third-party witness and, on August 3, 2007, Duane gave a deposition that lasted for approximately seven hours.  Following Duane's deposition, Medtech amended its complaint to add the Duane Defendants as party defendants.

After the Duane Defendants were joined as parties, Duane, appearing *pro se* on behalf of both himself and C.D.S., moved to dismiss the SAC against him individually and on behalf of C.D.S.  At a hearing on December 21, 2007, in response to opposition papers filed by Medtech, the Court advised Duane that a corporation must be represented by an attorney, and that the motion filed on behalf of C.D.S. could not be considered.

Duane and C.D.S. both retained counsel on January 18, 2008 and now file this motion to dismiss pursuant to the schedule established by the Court at the hearing on February 14, 2008.  The previous motions filed by Duane *pro se* are withdrawn.

### III. LEGAL ARGUMENT

#### Point I

#### APPLICABLE LEGAL STANDARD ON A MOTION TO DISMISS

The Duane Defendants adopt and incorporate by reference the statement of the applicable legal standard contained in Kaplan Br. at pages 4-5.

#### Point II

#### MEDTECH HAS FAILED TO STATE A CLAIM AGAINST THE DUANE DEFENDANTS FOR TRADE SECRET MISAPPROPRIATION

Count XIII of the SAC alleges that all defendants, including the Duane Defendants, are liable for misappropriating Medtech's trade secrets.  The Duane Defendants adopt and incorporate by reference the  legal arguments contained in Dentek

8

Br. at pages 7-21, and those contained in Kaplan Br. at pages 5-19 as to why this cause of action should be dismissed for failure to state a claim.

Simply stated, Medtech has failed to adequately allege that any of the information that Medtech claims was wrongly divulged by the Duane Defendant – which consisted of disclosing Medtech's sales decision to maintain a "three-size platform" for its bruxism device, and the identities of Item, Stelray, AGI/Klearfold, the Tufts Doctors and Hogan & Hartson to Dentek – constitutes a protectible trade secret.  See Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 920 F.2d 171, 173 (2d Cir. 1990) (to prevail on claim for misappropriation of trade secrets, plaintiff must prove that "it possessed a trade secret").  It is axiomatic that if the Duane Defendants did not divulge any trade secrets, Medtech's claim is legally deficient.

### Point III

MEDTECH HAS FAILED TO STATE A CLAIM FOR
BREACH OF CONTRACT AGAINST THE DUANE DEFENDANTS

Count VII of the SAC alleges that the Duane Defendants breached the Consulting Agreement as well as the PII Agreement.  Count IX alleges breach of contract against Duane only arising from the General Release.  Each of these claims fails as a matter of law.

A.     The Non-Compete Clause in the Consulting Agreement Does Not Apply Here.

Medtech alleges that the Duane Defendants breached the non-competition provision of the Consulting Agreement when they began working for DenTek and soliciting suppliers and employees of Medtech to work for DenTek.  (SAC ¶ 221.)  The non-compete provision of the Consulting Agreement, however, which is quoted in full at pages 2-3, above, is applicable only if the agreement "is terminated by [CDS] or is

terminated by [Dental Concepts] Just Cause." (Freeman Dec., Exh. A at ¶ 7(b).) There is no allegation here that the Duane Defendants were terminated by Dental Concepts for Just Cause (as defined in ¶ 6(b) of the Consulting Agreement, quoted above at pages 4-5) or that they voluntarily terminated the Consulting Agreement.[6] To the contrary, the Duane Defendants were terminated when their assignment was concluded pursuant to ¶ 6(a)(vi) of the Consulting Agreement, which provides for termination of the Consulting Agreement upon the sale of the company, as occurred when Dental Concepts was sold to Prestige. (Freeman Dec., Exh. A at ¶ 6(a)(vi); SAC ¶ 71, 87.) Simply put, under the express terms of the Consulting Agreement, the non-compete provision that Medtech claims was breached by the Duane Defendants does not apply.

B.    The Confidentiality Provisions in the Consulting Agreement and the PII Agreement Were Superseded by the General Release.

Medtech also alleges that the Duane breached ¶ 7 of the Consulting Agreement and ¶ 7 of the PII Agreement by disclosing confidential and proprietary information to DenTek. (SAC ¶¶ 231-232.) This contention ignores, however, the fact that the General Release, executed by Duane following the acquisition of Dental Concepts by Prestige, also contained language that prohibited Duane from disclosing confidential and proprietary information and, further, expressly superseded and replaced all prior agreements between Duane and Dental Concepts. (Freeman Dec., Exh. B at ¶ 10, quoted above at page 6.) Since the General Release is the only surviving agreement between the parties governing Duane's possession and use of confidential information, Medtech's claim for breach of the two earlier agreements should be dismissed.

---

[6] Paragraph 88 of the SAC acknowledges that the Consulting Agreement had been terminated upon the sale of the company by alleging that Prestige offered Duane "employment in a sales position" after Dental Concepts was sold. Medtech does not allege that Duane declined any offer by Prestige to continue the Consulting Agreement.

Under New York law, "a subsequent contract regarding the same subject matter supersedes the prior contract." <u>Independent Energy Corp. v. Trigen Energy Corp.</u>, 944 F. Supp. 1184, 1195-96 (S.D.N.Y. 1996) (applying New York law) (citing <u>Bauman v. Millbrook Care Ltd. Partnership</u>, 850 F. Supp. 1227, 1236 (S.D.N.Y. 1994); <u>accord</u>, <u>CreditSights, Inc. v. Ciasullo</u>, No. 05 CV 9345 (DAB), 2007 WL 943352 at *6 (S.D.N.Y. Mar. 29, 2007).  Even where two contracts do not cover entirely the same subject matter, inconsistent provisions in a later contract that cover the same subject matter as those in an earlier contract supersede the specific terms of the earlier contract.  <u>CreditSights</u>, 2007 WL 943352 at *6 (citing <u>Kreiss v. McCown De Leeuw & Co.</u>, 37 F. Supp. 2d 294 (S.D.N.Y. 1999)).[7]

Based on the foregoing, the Duane Defendants cannot be found to have breached the confidentiality provisions in the Consulting Agreement and PII Agreement as a matter of law because those agreements, or at least the confidentiality provisions in those agreements, were no longer in force and effect when the Duane Defendants purportedly took the actions alleged in the SAC.

C.    Any Claim for Breach of Contract Based on the Disclosure of Proprietary and Confidential Information Fails as a Matter of Law.

In addition, for the reasons set forth above at pages 8-9, incorporating the arguments in the legal memoranda of the other defendants, the Duane Defendants cannot be held liable for breach of any contract based on their having divulged trade secrets, because Medtech has failed to allege the disclosure of any trade secrets by the Duane Defendants.

_____

[7] The Duane Defendants further adopt and incorporate by reference the legal arguments set forth in Kaplan Br. at pages 19-21. which address this same point.

**<u>Point IV</u>**

MEDTECH HAS FAILED TO STATE A CLAIM AGAINST
<u>DUANE FOR TORTIOUS INTERFERENCE WITH CONTRACT</u>

Count XI of the SAC accuses Duane (but not C.D.S.) of tortious interference with contractual relations for allegedly "procur[ing] Kaplan's breach" of her General Release, "under which Kaplan was to maintain the secrecy of the confidential and proprietary information she had learned as an executive of Dental Concepts." (SAC ¶¶ 264-266.) A plaintiff seeking to establish a claim of tortious interference with contract must prove four elements: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff." <u>Kronos, Inc. v. AVX Corp.</u>, 81 N.Y.2d 90, 94 (1993).[8] Medtech's claim fails for at least two reasons.

First, Medtech fails to allege Duane's "intentional inducement" of Kaplan to breach the confidentiality provision in her General Release. The only allegations in the SAC that describe Duane's conduct vis-à-vis Kaplan's employment with DenTek state as follows:

> 133.   In or around mid-October, Duane personally . . . called and solicited Kaplan to work as a "project leader" on the development of DenTek's dental protector. Duane was personally responsible for recruiting Kaplan to DenTek: (a) Duane suggested Kaplan to DenTek; (b) Duane informed DenTek of the ways to best induce Kaplan to work for DenTek; and (c) Duane called Kaplan and personally recommended DenTek to her.

> * * *

---

[8] Duane also adopts and incorporates by reference Dentek Br. at pages 24-26, which also sets forth the elements of a claim for tortious interference with contract.

156.    Not later than late-October or early-November, DenTek and Duane were successful in recruiting Kaplan.  At that time, Kaplan took over the project and continued to work on bringing DenTek's product to the market.

(SAC ¶¶ 133, 156.)  No where does Medtech allege that Duane induced, encouraged or even asked Kaplan to divulge any allegedly confidential and proprietary information to DenTek.  All Medtech contends is that Duane recruited Kaplan to work for DenTek.  Assuming, for the sake of argument, that Kaplan actually did divulge secret information to DenTek after she began her employment, Kaplan's alleged malfeasance was not caused by Duane's actions in recruiting her to work there.

Second, Medtech has failed to adequately allege that Kaplan breached any aspect of her General Release.  NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620-21 (1996) (breach of contract is a requisite element of a claims for tortious interference with contract).  In this regard, Duane adopts and incorporates by reference Kaplan Br. at pages 20-21, in which Kaplan explains why did she not disclose any confidential information to DenTek and, therefore, did not breach her General Release.

## Point V

MEDTECH HAS FAILED TO STATE A CLAIM AGAINST THE DUANE DEFENDANTS FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP/ECONOMIC ADVANTAGE

The Duane Defendants adopt and incorporate by reference the legal arguments set forth in Dentek Br. at pages 24-26 and Kaplan Br. at pages 23-26 as to why Count XIV of the SAC, alleging tortious interference with advantageous business relationship/economic advantage arising from the Duane Defendants' interaction with the Tuft Doctors, is deficient as a matter of law.

The elements of a claim for tortious interference with economic advantage are: "(1) a prospective contractual relation or business with a third party; (2) defendants' interference with that relation; (3) defendant acted with the sole purpose of harming plaintiff or used dishonest, unfair or improper means; and (4) injury to the plaintiff." E-Z Bowz, L.L.C. v. Professional Product Research Co., Inc., No. 00 Civ. 8670(LTS)(GWG), 2003 WL 22068573 at *36 (S.D.N.Y. Sep. 5, 2003) (report and recommendation) (quoting G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 253-54 (S.D.N.Y. 2001)), report adopted, 2005 WL 535065 (S.D.N.Y. Mar. 8, 2005).   As compared to a claim for tortious interference with contract, a plaintiff must demonstrate "a higher degree of interference" to recover for tortious interference with economic advantage. Id.; accord NBT Bancorp, 87 N.Y.2d at 621 ("[w]here there has been no breach of an existing contract, but only interference with prospective contract rights ... plaintiff must show more culpable conduct on the part of the defendant").   Specifically, the New York Court of Appeals has held that, to prevail on a claim for tortious interference with economic advantage, a plaintiff must establish that the defendant employed "wrongful means," which it defined as "'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract.'"   NBT Bancorp, 87 N.Y.2d at 624 (quoting Guard-Life Corp. v. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980)).

Medtech has not alleged that any conduct that would constitute "wrongful means" under the definition adopted by the New York Court of Appeals.  The SAC merely alleges that, following an alleged introduction by Kaplan, Duane "reach[ed] out" to the

14

Tufts Doctors and "recruit[ed] them to work for DenTek." (SAC ¶¶ 144.) Nothing more. There is no allegation in the SAC – which was filed after Duane gave his deposition – that Duane said or did anything vis-à-vis the Tufts Doctors that could reasonably be described as the type of wrongful conduct necessary to prove a claim for tortious interference with economic advantage. Accordingly, this cause of action should be dismissed.

<u>**Point VI**</u>

MEDTECH HAS FAILED TO STATE A CLAIM AGAINST
<u>THE DUANE DEFENDANTS FOR CIVIL CONSPIRACY</u>

Count XII of the SAC alleges civil conspiracy against all defendants. The Duane Defendants adopt and incorporate by reference the legal arguments set forth in Dentek Br. at pages 26-27 and Kaplan Br. at pages 21-22 as to why Medtech's claim for civil conspiracy is deficient as a matter of law.

<u>**Point VII**</u>

IF THE COURT GRANTS THIS MOTION TO DISMISS, THE DUANE
<u>DEFENDANTS REQUEST LEAVE TO SEEK ATTORNEYS' FEES AND COSTS</u>

The General Release provides, in ¶ 6, that if either party commences an action to enforce its rights or compel compliance, the prevailing party shall be entitled to recover his/its reasonable attorneys' fees and litigation costs from the other party. (Freeman Dec., Exh. B at ¶ 6.) If this Court grants this motion to dismiss the claims arising under the General Release (which it should), the Duane Defendants respectfully request leave to submit a motion, prior to their dismissal from the case, for an Order awarding them their reasonable attorneys' fees and litigation costs incurred in the defense of this action.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the SAC should be dismissed against the Duane Defendant for failure to state a claim against them, and this Court should grant leave to allow the Duane Defendants to submit a motion to recover their attorneys' fees and litigation costs.

Dated: New York, New York
       February 29, 2008

                    Respectfully submitted,

                    GREENBERG FREEMAN LLP

                    By:    */s/ Michael A. Freeman*
                        Michael A. Freeman (MAF-9600)
                        24 West 40th Street, 17th Floor
                        New York, NY 10018
                        (646) 366-0881
                        *Attorneys for Defendants Ray Duane*
                          *and C.D.S. Associates, Inc.*