UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

MEDTECH PRODUCTS, INC.,

                Plaintiff,                          No. 07-CV-3302 (KMK)(LMS)

      -v-                                        ECF Case

DENTEK ORAL CARE, INC., et al.,

                Defendants.

-----------------------------------------------------------x


REPLY MEMORANDUM OF LAW BY DEFENDANTS RAY DUANE AND
C.D.S. ASSOCIATES, INC. IN FURTHER SUPPORT OF THEIR MOTION TO
<u>DISMISS THE SECOND AMENDED COMPLAINT AND FOR OTHER RELIEF</u>


                                              GREENBERG FREEMAN LLP
                                              24 West 40th Street, 17th Floor
                                              New York, NY  10018
                                              (646) 366-0881
                                              *Attorneys for Defendants Ray Duane*
                                                *and C.D.S. Associates, Inc.*

## **TABLE OF CONTENTS**

    Page

TABLE OF AUTHORITIES ................................................................................................. iii

I.    INTRODUCTION .....................................................................................................1

II.   ARGUMENT ON REPLY ........................................................................................1

    Point I

    MEDTECH HAS NOT ALLEGED ANY FACTS SUFFICIENT TO AVOID
    DISMISSAL OF THE BREACH OF CONTRACT CLAIM......................................1

    A.    The Non-Competition Clause in the Consulting Agreement Does Not
           Apply Here..................................................................................................2

          1.    Medtech's attempt to manufacture an issue of fact surrounding
              the termination of the Consulting Agreement should be rejected.........2

          2.    The Duane Defendants' continued employment after the date
              of sale did not trigger the non-competition clause ...............................4

          3    Medtech cannot acquire rights greater than those held by its
              predecessors ...........................................................................................5

    B.    The General Release Superseded the Confidentiality Provisions in
           the PII Agreement Because the Subject Matter Was the Same. ........................6

    Point II

    MEDTECH DOES NOT REFUTE THAT THE SAC FAILS TO ALLEGE
    ALL THE ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE
    WITH CONTRACT ..................................................................................................8

    Point III

    MEDTECH DOES NOT REFUTE THAT THE SAC FAILS TO ALLEGE ALL
    THE ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH
    ADVANTAGEOUS BUSINESS RELATIONSHIP/ECONOMIC ADVANTAGE ...8

                                                    <u>Page</u>

Point IV

MEDTECH HAS FAILED TO ALLEGE THE DISCLOSURE OF ANY INFORMATION THAT AMOUNTS TO A PROTECTIBLE TRADE SECRET ...... 9

III.    CONCLUSION ................................................................................................... 10

**TABLE OF AUTHORITIES**

Page

Arena Construction Co., Inc. v. Sackaris & Sons, 282 A.D.2d 489
 (2nd Dep't 2001) ..................................................................................................5

Egan v. Marsh & McLennan Companies, Inc., No. 07 Civ. 7134 (SAS),
 2008 WL 245511 (S.D.N.Y. Jan. 30, 2008) ...................................................4

Faulkner v. Beer, 463 F.3d 130 (2d Cir. 2006)................................................................9

First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763 (2d Cir. 1994).....................3

5-Star Management, Inc. v. Rogers, 940 F. Supp. 512 (E.D.N.Y. 1996) .........................3

G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233 (S.D.N.Y. 2001)...................3

Gilbraltar Petroleum Corp. v. Bank Sepah, 526 F. Supp. 560 (S.D.N.Y. 1981) ..............5

Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90 (1993).............................................................8

NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614 (1996) ..........8

Sunbeam Products, Inc., v. Wing Shing Products (BVI) Ltd., 311 B.R. 378
 (S.D.N.Y. 2004).................................................................................................2

## I. INTRODUCTION

Defendants Ray Duane and C.D.S. Associates, Inc. submit this reply memorandum of law in further support of their motion pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the claims alleged against them in the SAC and for other relief.[1]

The Duane Defendants hereby adopt the arguments set forth in the reply briefs submitted by DenTek and Kaplan, both dated December 14, 2007, in further support of their respective motions to dismiss the SAC. The arguments below reply solely to those raised by Medtech's opposition brief ("Opp Br.") in response to the unique arguments advanced by the Duane Defendants in their moving brief.

## II. ARGUMENT ON REPLY

### Point I

#### MEDTECH HAS NOT ALLEGED ANY FACTS SUFFICIENT TO AVOID DISMISSAL OF THE BREACH OF CONTRACT CLAIM

Medtech seeks to avoid dismissal of its breach of contract claim against the Duane Defendants, based on alleged breaches of the non-competition clause in the Consulting Agreement and the confidentiality clause in the PII Agreement, by arguing that: (1) the absence of allegation in the SAC describing how the Consulting Agreement was terminated creates an issue of fact as to whether the non-competition clause in the Consulting Agreement was triggered (Opp. Br. at 7-8); (2) by continuing to consult after the sale on Dental Concepts, the Duane Defendants triggered the non-competition clause (Opp. Br. at 9); (3) the assignment provision of the Consulting Agreement triggered the non-competition clause (Opp. Br. at 10); and (4) the General Release does not supersede

---

[1] Capitalized terms not defined herein shall have the same meaning as they did in the Duane Defendants moving brief, dated February 29, 2008 ("Mov. Br."). Exhibits referenced herein shall refer to the exhibits attached to the moving papers unless otherwise indicated.

the confidentiality provision in the PII Agreement (Opp. Br. 10-17). None of these arguments are supported by the allegations in the SAC or by the language of the Consulting Agreement or the PII Agreement.

A.   The Non-Competition Clause in the Consulting Agreement Does Not Apply Here.

   1.   Medtech's attempt to manufacture an issue of fact surrounding the termination of the Consulting Agreement should be rejected.

As a threshold matter, there can be no reasonable debate, and Medtech does not appear to dispute, that the parties did not intend for the non-competition clause to be applicable in all circumstances upon the termination or expiration of the Consulting Agreement. If that is what they intended, they certainly could have provided for that. See Sunbeam Products, Inc., v. Wing Shing Products (BVI) Ltd., 311 B.R. 378, 392 (S.D.N.Y. 2004) (a court should not read a contract to include omitted language where the parties were capable of including it). Instead, as applicable here, pursuant to ¶¶ 6(a) and 7(b), the non-competition clause did not apply if the Consulting Agreement were terminated by Medtech (or its predecessor) following the sale of Dental Concepts. (Exh. A. at ¶ 6(a) and ¶ 7(b).) Thus, the only question on this motion to dismiss is whether there is a legitimate issue of fact surrounding the circumstances under which the Consulting Agreement was terminated. Plainly, there is none.

Medtech readily acknowledges that the Duane Defendants were retained for the explicit purpose of positioning Dental Concepts for purchase by a strategic buyer (Opp. Br. at 4), and not for a sales position. Nonetheless, trying manufacture an issue of fact where none exists, Medtech argues that the Duane Defendants "ended the relationship," and rendered ¶ 7(b) inapplicable, when they "declined continued employment in a sales position that was offered by Prestige." (Opp. Br. at 8; see also Opp. Br. at 5, citing SAC

2

¶ 88.) The SAC does not contain any allegation, however, that the Duane Defendants voluntarily terminated the Consulting Agreement, an allegation critical to the survival of Medtech's breach of contract claim. Instead, Medtech contends that, even though the goal for which the Duane Defendants were hired (the sale of Dental Concepts) had been attained, by rejecting an inferior job opportunity having nothing to do with the reason they were hired (SAC ¶¶ 71, 87), the Duane Defendants terminated the Consulting Agreement and triggered the non-competition clause.

Without jusitifcation, Medtech seeks to have the omission of any explicit allegations regarding the circumstances surrounding the termination of the Consulting Agreement construed in its favor, asserting that because "nothing in the SAC states or implies" that Dental Concepts had exercised its "option" to terminate the Consulting Agreement pursuant to ¶ 6(a)(vi), the question of whether this provision applies cannot be decided on a motion to dismiss. (Opp. Br. at 7-8.) Even under the permissive pleading standards that govern a motion to dismiss for failure to state claim, Medtech cannot use its failure to plead necessary facts to its advantage by arguing that their absence gives rise to an issue of fact. G-I Holdings, Inc. v. Baron & Budd, 179 F. Supp. 2d 233, 264 (S.D.N.Y. 2001) ("It is inconsistent with the standards for resolving a motion to dismiss to have this Court draw inferences from facts not pleaded in the Complaint."); 5-Star Management, Inc. v. Rogers, 940 F. Supp. 512, 519 (E.D.N.Y. 1996) (an omission of fact regarding a pivotal element of a pleader's claim justifies the court to assume the non-existence of the operative fact, citing O'Brien v. DiGrazia, 544 F.2d 543, 546 n.3 (1st Cir. 1976)); see also First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) ("unwarranted deduction of fact" need not be accepted as true). Rather, in

3

light of Medtech's failure to allege that the Duane Defendants terminated the Consulting Agreement, this Court should reach the obvious conclusion to be derived from the allegations in the SAC, namely, that the Consulting Agreement was unilaterally terminated by Prestige, resulting in Duane being offered a different job, because the engagement for which the Duane Defendants were hired – to position Dental Concepts so that it could be acquired – was finished.

      2.    <u>The Duane Defendants' continued employment after the date of sale did not trigger the non-competition clause.</u>

Medtech's next, and far less compelling, argument is that the Duane Defendants triggered ¶ 7(c) of the Consulting Agreement by continuing to work for several weeks following the sale of assets in order to assist in transitioning Dental Concepts into Medtech (SAC ¶ 87), which, in turn, invoked the non-competition clause in ¶ 7(b). This argument should be rejected as a matter of law.[2]

Paragraph 7(c) of the Consulting Agreement provides:

> The provisions of Section 7 . . . shall survive the termination or expiration of this Agreement and/or the Term, ***irrespective of the reason therefor***, including without limitation ***under circumstances in which [the Duane Defendants] continue[ ] thereafter to be engaged by the [Dental Concepts]***.

(Exh. A. at ¶ 7(c), emphasis by Medtech in Opp. Br. at 9.) The first highlighted clause of this paragraph says simply that ¶ 7 shall survive the termination of the Consulting Agreement, regardless of why it was terminated. The non-competition obligations in ¶ 7(b), however, only apply if the Consulting Agreement was terminated by C.D.S. or

---

[2] "'The interpretation of an unambiguous contract is a question of law for the court, and the provisions of a contract addressing the rights of the parties will prevail over the allegations in a complaint.' <u>Egan v. Marsh & McLennan Companies, Inc.</u>, No. 07 Civ. 7134(SAS), 2008 WL 245511 at *4 (S.D.N.Y. 2008) (quoting <u>Taussig v. Clipper Group, L.P.</u>, 13 A.D.3d 166, (1st Dep't 2004). "At the motion to dismiss stage, where a plaintiff's 'factual allegations or legal conclusions are flatly contradicted by documentary evidence, they are not presumed to be true, or even accorded favorable inference[,]' in the context of a breach of contract action." <u>Id</u>.

4

terminated by Dental Concepts for "Just Cause." There is nothing which expands the scope of that clause or the Duane Defendants's obligations depending on how the Consulting Agreement was terminated. The second highlighted clause states only that, if the Duane Defendants continue their engagement after the Consulting Agreement is terminated, the provisions of ¶ 7 apply once the engagement finally ends. There is nothing in this clause which alters or expands the scope of ¶ 7(b) if the engagement continues; the parties agreed simply that ¶ 7(b) as written would continue to apply. Medtech's argument that the Duane Defendants somehow agreed to greater restrictions on their future employment activities simply because they did not walk out the door the day the company's assets were sold is illogical and not supported by the language of the document.

        3.    <u>Medtech cannot acquire rights greater than those held by its predecessors.</u>

While it is not disputed that Medtech would be entitled to the benefits arising under the Consulting Agreement as the successor to Dental Concepts, Medtech's rights can be no greater that those held by Dental Concepts or Prestige. <u>Gilbraltar Petroleum Corp. v. Bank Sepah</u>, 526 F. Supp. 560, 561 (S.D.N.Y. 1981) (assignee can have no greater rights to sue than its assignor); <u>Arena Construction Co., Inc. v. Sackaris & Sons</u>, 282 A.D.2d 489 (2nd Dep't 2001) (assignee "stands in the shoes" of its assignor). Medtech's assertion that the language in the Consulting Agreement, stating that it "shall be binding upon and inure to the benefit of" any successor of Dental Concepts (Opp. Br. at 4-5 and 10, citing Exh. A at ¶ 8), subjects the Duane Defendants to a some sort of "long term" obligation beyond the scope and term of the Consulting Agreement is untenable. All it means is that whatever rights are held by or restriction imposed upon

5

Dental Concepts, including its inability to enforce the non-competition clause if the Consulting Agreement was terminated following a sale of the assets of Dental Concepts (Exh. A at ¶ 7(b)), applies equally to Medtech.

B.  **The General Release Superseded the Confidentiality Provisions in the PII Agreement Because the Subject Matter Was the Same.**

In their moving brief, the Duane Defendants argued that they cannot be liable for breach of contract based upon the confidentiality provisions of the PII Agreement, which was incorporated into the Consulting Agreement, because that agreement was supplanted by the General Release and, thus, ceased to exist. (Mov. Br. at 10-11.) Medtech counters that: (1) the subject matter of the General Release and the PII Agreement cannot be the same because they include different parties (Opp. Br. at 14); and (2) the confidentiality provisions of the General Release are far narrower, and serve a different purpose, than the provisions contained in the PII Agreement (Opp. Br. at 13-17). Both of these contentions lack merit.[3]

First, Medtech's conclusion that the General Release, the PII Agreement and the Consulting Agreement cannot cover the same subject matter because they include different parties is flawed in that it ignores the obvious fact that Duane was the only employee of C.D.S. that rendered any services to Dental Concepts under the Consulting Agreement. (Exh. A at ¶ 2(b): "The Consultant shall provide its services to [Dental Concepts] solely through Duane.") Other than Duane, there was no other person at C.D.S. who could have disclosed confidential information or alleged trade secrets, which means that by having Duane sign the General Release with its confidentiality provision, Medtech achieved the same result as if both of the Duane Defendants had signed the

---

[3] The Duane Defendant also adopted and incorporate by reference the arguments set forth Kaplan's Reply Memorandum of Law, dated December 14, 2007, at 13-15, which are equally applicable here.

6

General Release. Accordingly, the decision not to have C.D.S. also sign the General Release does not establish that the subject matter of that documents differed from the similar provisions in the Consulting Agreement and the PII Agreement.[4]

Second, Medtech's assertion that the confidentiality provision in General Release is different from those in the Consulting Agreement and the PII Agreement is wholly undermined by Medtech's allegations in the SAC, which describe the confidentiality clause in the General Release, like those in the PII Agreement, as "further evidence of the efforts that Dental Concepts made to keep [its proprietary] information confidential." (SAC ¶¶ 76-77; see also ¶¶ 40-46.) Indeed, an examination of the confidentiality provision in the PII Agreement as compared to the one contained in the General Release, shows that both documents were intended to protect the identical categories of information from being disclosed, namely, all manufacturing, marketing and sales information. For example, where the PII Agreement contained specific categories of information, e.g., "marketing plans and opportunities, cost and pricing data, strategies, forecasts and customer lists" (Exh. A. to Exh. A at ¶ C), the General Release covered this same information under the more general description of "confidential information and material concerning manufacturing, distribution, marketing, [and] sales . . . ." (Exh. B at ¶ 7.) These are distinctions without a difference. Both the PII Agreement, incorporated into the Consulting Agreement, and the General Release were intended to prevent the disclosure of confidential information, and, as such, the General Release supplanted the

---

[4] While Medtech is correct that C.D.S. cannot individually argue that the General Release supplanted the Consulting Agreement and PII Agreement because C.D.S. is not a party to the General Release (Opp. Br. 14), the reality is that if the Court finds that Duane is not liable for divulging trade secrets, the same result would have to follow for C.D.S. because Duane was its only active employee.

7

confidentiality provisions of the earlier agreements.  Accordingly, the Duane Defendants cannot be held liable for breaching provisions in agreements that are no longer extant.

**Point II**

MEDTECH DOES NOT REFUTE THAT THE SAC FAILS TO ALLEGE ALL THE ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH CONTRACT

The Duane Defendants' moving brief asserts that Medtech's cause of action against Duane for tortious interference with contractual relations, arising from his supposedly having "procured Kaplan's breach" of her General Release, fails to state a claim because, among other things, the SAC fails to allege the essential element that Duane intentionally induced Kaplan to breach her General Release. (Mov. Br. at 12-13, citing Kronos, Inc. v. AVX Corp., 81 N.Y.2d 90, 94 (1993).)  Medtech offers no opposition to this argument, thereby conceding that the Duane Defendants are correct. Accordingly, Medtech's claim against Duane for tortious interference with contract should be dismissed.

**Point III**

MEDTECH DOES NOT REFUTE THAT THE SAC FAILS TO ALLEGE ALL THE ELEMENTS OF A CLAIM FOR TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIP/ECONOMIC ADVANTAGE

The Duane Defendants also argued in their moving brief that Medtech had failed to state a claim for tortious interference with advantageous business relationship/ economic advantage because Medtech had not alleged the required element of conduct by the Duane Defendants that rose to the level of "wrongful means" as defined by the New York Court of Appeals in NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 621 (1996) (citing Guard-Life Corp. v. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980)). (Mov. Br. at 13-14.)  Medtech, once again, has conceded that

8

the Duane Defendants are correct by failing to respond to this argument or otherwise identifying allegations in the SAC that that could establish "wrongful means." Accordingly, Medtech's claim for tortious interference with advantageous business relationship/economic advantage should be dismissed.

### Point IV

### MEDTECH HAS FAILED TO ALLEGE THE DISCLOSURE OF ANY INFORMATION THAT AMOUNTS TO A PROTECTIBLE TRADE SECRET

Medtech did not respond directly the Duane Defendants' arguments as to why Medtech's claim for misappropriation of trade secrets should be dismissed because the Duane Defendants have incorporated the arguments of the other defendants, which have already been fully briefed. (Opp. Br. at 17.) "As an aside," however, Medtech challenges the propriety of the Duane Defendants' reliance on a list of alleged trade secrets derived from the SAC (see Mov. Br. at 7) instead of what is supposedly a more complete list of purported trade secrets contained in a letter brief from Medtech's counsel to the Court, dated February 8, 2008. (Opp. Br. at 17.) As a threshold matter, although the Court may, in limited circumstances, consider materials outside the four corners of the complaint on a motion to dismiss, see Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006), Medtech should not be permitted to rely on legal argument by its counsel to bolster the allegations in the SAC. More importantly, however, should the Court choose to examine Medtech's counsel's letter and compare it to the list of alleged trade secrets identified in the Duane Defendants' moving papers (Mov. Br. at 7), it is readily apparent that the lists do not substantially vary from one another. If, as Medtech asserts, the Duane Defendants' list of trade secret appears to be nothing more than a "strawman" that

9

can easily be torn down (Opp. Br. at 17), this is because none of the information defendants have been accused of divulging constitutes a protectible trade secret.

### III. CONCLUSION

For the foregoing reasons, as well as those set forth in the Duane Defendants' moving brief, the SAC should be dismissed against the Duane Defendants for failure to state a claim against them, and this Court should grant leave to allow the Duane Defendants to submit a motion to recover their attorneys' fees and litigation costs.

Dated: New York, New York
April 3, 2008

Respectfully submitted,

GREENBERG FREEMAN LLP


By:  /s/ *Michael A. Freeman*
Michael A. Freeman (MAF-9600)
24 West 40th Street, 17th Floor
New York, NY  10018
(646) 366-0881
*Attorneys for Defendants Ray Duane
and C.D.S. Associates, Inc.*