<u>**ELECTRONICALLY FILED**</u>

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS, INC., | |
| Plaintiff, | 07 Civ. 3302 (KMK) (LMS) |
| v. | |
| RANIR, LLC, et al., | |
| Defendants. | |
| MEDTECH PRODUCTS, INC., | |
| Plaintiff, | |
| v. | |
| DENTEK ORAL CARE, INC., et al. | |
| Defendants. | |
| MEDTECH PRODUCTS, INC., | |
| Plaintiff, | |
| v. | |
| POWER PRODUCTS, INC., | |
| Defendant. | |

**DEFENDANT DENTEK ORAL CARE, INC.'S
OBJECTIONS TO THE REPORT & RECOMMENDATION
<u>OF MAGISTRATE JUDGE SMITH DATED JUNE 2, 2008</u>**

PROSKAUER ROSE LLP
James H. Shalek
  jshalek@proskauer.com
Alan Federbush
  afederbush@proskauer.com
Theodore K. Cheng
  tcheng@proskauer.com
1585 Broadway
New York, NY 10036-8299
(212) 969-3000

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ iii

BACKGROUND ........................................................................................................... 1

    A.    Procedural Posture ............................................................................... 1

    B.    DenTek's Motions to Dismiss and for a Protective Order Compelling
        Identification of Trade Secrets Allegedly Used by DenTek ................... 3

    C.    The June 2, 2008 Report and Recommendation ................................... 4

ARGUMENT ............................................................................................................... 5

I.    THE TRADE SECRET MISAPPROPRIATION CLAIM (COUNT XIII) SHOULD
    BE DISMISSED ............................................................................................ 5

    A.    The Conclusion That The SAC Sufficiently Alleges That Medtech
        "Possessed a Trade Secret" Is Erroneous ......................................... 6

        1.    The R&R's reliance upon an unspecified combination of
            information was error ................................................................. 6

        2.    Each of the alleged categories of trade secrets are not trade secrets ........... 10

            a.    Medtech's Adherence to Three Size Configurations ..................... 10

            b.    Medtech's Use of Certain Third-Party Vendors ........................... 10

                i.    Law firms used by Medtech and DenTek ........................... 11

                ii.    Tufts Dentists ................................................................. 12

                iii.    Item New Product Development ........................................ 13

                iv.    AGI/Klearfold .................................................................. 14

                v.    Stelray Plastic Products, Inc. ............................................ 14

            c.    Medtech's vague allusions to other trade secrets ........................ 15

    B.    The Conclusion That The Second Element of a Trade Secret
        Misappropriation Claim Was Alleged in the SAC Under New York Law Is
        Equally Flawed ................................................................................. 17

II.     IN THE ALTERNATIVE, MEDTECH SHOULD BE COMPELLED TO
        IDENTIFY ITS ALLEGED TRADE SECRETS WITH PARTICULARITY
        BEFORE ANY FURTHER TRADE SECRET DISCOVERY IS TAKEN ...................... 18

        A.     Courts Uniformly Require Identification of Trade Secrets With Particularity
               Before Permitting a Plaintiff to Proceed ............................................................. 19

        B.     Medtech's Vague Statement Of Its Trade Secrets Warrants Particularized
               Identification ........................................................................................................ 22

        C.     Conducting Limited Discovery Before the Identification of Medtech's
               Trade Secrets Continues to Impose Unfair, One-Sided Discovery Upon
               DenTek .................................................................................................................. 23

        CONCLUSION .................................................................................................................... 25

ELECTRONICALLY FILED

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Analog Devices, Inc. v. Michalski*,
    579 S.E.2d 449 (N.C. Ct. App. 2003) .................................................................................23

*Bell Atl. Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ........................................................................................................18

*Brass v. Am. Film Techs., Inc.*,
    987 F.2d 142 (2d Cir. 1993) ...............................................................................................11

*Cambridge Internet Solutions, Inc. v. Avicon Group*,
    No. 99-1841, 1999 WL 959673 (Mass. Super. Ct. Sept. 21, 1999) ...............................20, 21

*Colonize.com, Inc. v. Perlow*,
    No. 03-CV-466, 2003 WL 24256576 (N.D.N.Y. Oct. 23, 2003) .........................................16

*DataType Int'l Inc. v. Puzia*,
    797 F. Supp. 274 (S.D.N.Y. 1992) .....................................................................................16

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
    148 F. Supp. 2d 1322 (S.D. Fla. 2001).........................................................................19, 23

*Dura Global Techs., Inc. v. Magna Donnelly Corp.*,
    Civil Action No. 07-CV-10945-DT, 2007 WL 4303294 (E.D. Mich. Dec. 6, 2007).............20

*Earthweb Inc. v. Schlack*,
    71 F. Supp. 2d 299 (S.D.N.Y. 1999),
    *aff'd*, No. 99-9302, 2000 WL 1093320 (2d Cir. June 12, 2000) ..................................10, 16

*Engelhard Corp. v. Savin Corp.*,
    505 A.2d 30 (Del. Ch. 1986) ........................................................................................20, 21

*Great Lakes Carbon Corp. v. Koch Indus.*,
    497 F. Supp. 462 (S.D.N.Y. 1980)................................................................................11, 16

*Hudson Hotels Corp. v. Choice Hotels Int'l*,
    995 F.2d 1173 (2d Cir. 1993)..............................................................................................24

*IDX Sys. v. EPIC Sys.*,
    285 F.3d 581 (7th Cir. 2002) ..............................................................................................19

*Imax Corp. v. Cinema Techs, Inc.*,
    152 F.3d 1161 (9th Cir. 1998) ............................................................................................19

*In re Vertex Pharm., Inc. Sec. Litig.,*
  357 F. Supp. 2d 343 (D. Mass. 2005)................................................................11

*In re Wellbutrin SR/Zyban Antitrust Litig.,*
  281 F. Supp. 2d 751 (E.D. Pa. 2003)................................................................11

*Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,*
  920 F.2d 171 (2d Cir. 1990) ...............................................................................8

*Julie Research Labs. v. Select Photographic Eng'g, Inc.,*
  810 F. Supp. 513 (S.D.N.Y. 1992), *aff'd in relevant part,* 998 F.2d 65 (2d Cir. 1993) ..........7

*L-3 Commc'n Corp. v. Reveal Imaging Techs., Inc.,*
  No. 03-5810 BLS, 2004 Mass. Super. LEXIS 519 (Super. Ct. Dec. 2, 2004) ......................20

*Magellan Int'l Corp. v. Salzgitter Handel GmbH,*
  76 F. Supp. 2d 919 (N.D. Ill. 1999) ..................................................................24

*Microwave Research Corp. v. Sanders Assocs., Inc.,*
  110 F.R.D. 669 (D. Mass. 1986).......................................................................20

*N. Atl. Instruments, Inc. v. Haber,*
  188 F.3d 38, 43-44 (2d Cir. 1999) .....................................................................5

*Panther Sys. II, Ltd. v. Panther Computer Sys., Inc.,*
  783 F. Supp. 53 (E.D.N.Y. 1991).....................................................................10

*PepsiCo., Inc. v. Redmond,*
  54 F.3d 1262 (7th Cir. 1995) ...........................................................................17

*Pollstar v. Gigmania Ltd.,*
  170 F. Supp. 2d 974 (E.D. Cal. 2000) ...............................................................12

*Porous Media Corp. v. Midland Brake, Inc.,*
  187 F.R.D. 598 (D. Minn. 1999)......................................................................19

*S. Tepfer & Sons v. Zschaler,*
  269 N.Y.S.2d 552 (App. Div. 2d Dep't 1966).....................................................10

*Sit-Up Ltd. v. IAC/InteractiveCorp.,*
  No. 05 Civ. 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008)..................................9

*Struthers Scientific and Int'l Corp. v. Gen. Foods Corp.,*
  51 F.R.D. 149, 153 (D. Del. 1970)....................................................................19

*Three Dots, Inc. v. Lonny's Wardrobe, Inc.,*
  739 N.Y.S.2d 701 (App. Div. 1st Dep't 2002).....................................................10

*Van Prods. Co. v. Gen. Welding & Fabricating Co.*,
    213 A.2d 769 (Pa. 1965) ............................................................................... 10, 11

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443 (2002) ........................................................................24

*Xerox Corp. v. Int'l Bus. Machs. Corp.*,
    64 F.R.D. 367 (S.D.N.Y. 1974) ......................................................... 19, 21, 22, 23

**STATUTES**

21 C.F.R. § 807.95(d) ...........................................................................................12

28 U.S.C. § 636(b)(1)(C) ........................................................................................5

Ca. Code Civ. P. § 2109(d) ...................................................................................19

**OTHER AUTHORITIES**

5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216 (3d ed. 2004) ......................18

Fed. R. Civ. P. 72(b) ............................................................................................1

Fed. R. Civ. P. 72(b)(3) .........................................................................................5

3 *Milgrim on Trade Secrets*, § 14.02(2) (2003) ..........................................................19

ELECTRONICALLY FILED

Pursuant to Fed. R. Civ. P. 72(b), Defendant DenTek Oral Care, Inc. ("DenTek") respectfully submits the following objections to portions of the Report & Recommendation of Magistrate Judge Smith dated June 2, 2008 ("R&R"), a copy of which is annexed hereto as Exhibit A. In particular, DenTek seeks dismissal of Plaintiff Medtech Products, Inc.'s ("Medtech's") claim of trade secret misappropriation or, in the alternative, a protective order requiring Medtech to identify its purportedly misappropriated trade secrets before any further discovery is directed to Medtech's claim. By its own admission, Medtech is unable to identify any purported trade secret which DenTek has actually used. Furthermore, most, if not all, of the nebulous subject matter Medtech identifies as trade secrets and speculates may have been used by DenTek are not trade secrets as a matter of law. Contrary to established precedent, Medtech has been allowed to search for a claim rather than state one, conduct discovery without providing fair notice to DenTek of its claim, and impose needless burden and cost on a much smaller competitor with its shifting strategies, tactics, and claims.

## BACKGROUND

A.    Procedural Posture

Medtech filed this action on April 24, 2007, alleging patent, trademark and copyright infringement, unfair competition, unjust enrichment, and violations of New York General Business Law § 349(h). The case was subsequently consolidated with two others which have since settled. On May 31, 2007, Medtech told Judge Brieant that it intended to move for expedited relief on its trademark claims and then stipulated instead to an accelerated discovery schedule and early trial on all claims. Medtech did not honor the scheduling order to which it had stipulated, did not provide discovery on the claims it originally stated, and chose instead to pursue a different set of claims arising out of DenTek's hiring of two former employees of Medtech.

**ELECTRONICALLY FILED**

On June 6, 2007, Medtech moved for leave to file a First Amended Complaint ("FAC") adding new claims against DenTek for purportedly conspiring with Kelly M. Kaplan ("Kaplan"), a former employee of Medtech's predecessor-in-interest, to misappropriate unspecified Medtech trade secrets and cause Kaplan to breach her contractual obligations to Medtech respecting confidentiality.  At a hearing before Magistrate Judge Smith on July 9, 2007, during which its pending motion for leave to amend was discussed, Medtech sought discovery to attempt to support its trade secret misappropriation claims.  *See* Hrg. Tr. (July 9, 2007) at 4:10-5:23, 12:11-14:7 (excerpts annexed hereto as Ex. B).  It was quite clear that Medtech was seeking this discovery to investigate the possible existence of a trade secret misappropriation claim, rather than prove that one had already been properly asserted in the FAC.  Judge Smith nonetheless granted Medtech's request, permitting Medtech to obtain documents and deposition discovery from various third-parties.  *See id.* at 7:14-19; 16:21-23.

Thereafter, Medtech took the depositions of Raymond H. Duane ("Duane"), the other past employee of Medtech who consulted with DenTek, and two dentists affiliated with Tufts University School of Dental Medicine – Noshir R. Mehta ("Dr. Mehta") and Ayman Aboushala ("Dr. Aboushala") – on August 3, 20, and 21, 2007.  Then, on August 24, 2007, Medtech moved for leave to file a Second Amended Complaint ("SAC").  While retaining all of the claims alleged in the proposed FAC, the SAC sought to add Duane and C.D.S. Associates, Inc. ("CDS") -- the company through which Duane has provided consulting services --  as parties to the lawsuit along with DenTek and Kaplan.  The SAC incorporated the claims of the original complaint and added trade secret misappropriation, tortious interference with contractual relations, and tortious interference with advantageous business relationship.  In an Order dated September 28, 2007, Judge Smith granted Medtech leave to file this amended pleading.

ELECTRONICALLY FILED

Shortly thereafter, on October 19, 2007, Medtech filed a motion seeking preliminary injunctive relief based on its trade secret misappropriation and breach of contract claims. At a hearing before Judge Smith on October 30, 2007, DenTek explained why Medtech's preliminary injunction papers failed to identify anything that could possibly be a trade secret that had been misappropriated. *See* Hrg. Tr. (Oct. 30, 2007) at 6:13-11:18 (excerpts annexed hereto as Ex. C). After Medtech attempted and failed to identify any actual trade secret that had been purportedly misappropriated – much less articulate any irreparable harm and immediate need for injunctive relief – Judge Smith herself noted at that time that she was still "unclear what [Medtech was] alleging the trade secrets are," *id.* at 17:17-21, and further noted that "suspicion and surmise" is insufficient to permit a trade secret misappropriation claim from proceeding, *see id.* at 23:24-24:4. Judge Smith declined to schedule a preliminary injunction hearing, choosing instead to address defendants' anticipated motions.

     B.      DenTek's Motions to Dismiss and for a Protective Order Compelling
             Identification of Trade Secrets Allegedly Used by DenTek

On November 21, 2007, DenTek filed a motion to dismiss the counts relating to trade secret misappropriation, tortious interference, civil conspiracy, unfair competition, and unjust enrichment.[1] As an alternative to its motion to dismiss the trade secret claim, DenTek sought a protective order compelling specific identification of each alleged trade secret purportedly misappropriated by DenTek.

At a hearing held on December 21, 2007, Judge Smith suggested that Medtech "identify the limited discovery that it needs in order to be able to further identify the trade secrets upon which it relies and that that specification of those trade secrets should then be produced promptly … because, without that specification, it may very well be impossible to go forward, at least as to

---

[1] Kaplan, Duane, and CDS also filed motions to dismiss with respect to the claims alleged against them.

3

some of the causes of action." *See* Hrg. Tr. (Dec. 21, 2007) at 32:4-6, 14-16 (excerpts annexed

hereto as Ex. D). Judge Smith also stayed the pending motions, noting that the case should not be

delayed more than necessary," but "that, procedurally, it's important for us to move in that

direction." *Id.* at 33:20-22.

Then, in a complete about-face, Medtech wrote Judge Smith a letter, setting forth its

position that the Court could decide the pending motions to dismiss without any further discovery

directed to trade secrets. *See* Letter from T. O. Helton, Esq. to The Honorable Lisa M. Smith

(Feb. 8, 2008) at 4-5 (annexed hereto as Ex. E). Judge Smith consequently took the parties'

motions under advisement.

C.      The June 2, 2008 Report and Recommendation

On June 2, 2008, Judge Smith issued her R&R on the defendants' motions. Judge Smith

ruled in DenTek's favor on Counts X, XII, and XIV (alleging conspiracy and interference with

contractual relations) and against DenTek on Counts IV and V (unfair competition and unjust

enrichment unrelated to trade secret misappropriation). DenTek does not object to any of these

rulings and recommendations. However, Judge Smith also concluded that Medtech had

sufficiently alleged a trade secret misappropriation claim in Count XIII under New York law. *See*

R&R at 8-13. Furthermore, on DenTek's alternative request for a protective order compelling

more specific disclosure of Medtech's alleged trade secrets before any further trade secret

discovery is taken, Judge Smith concluded that "Medtech should be allowed limited discovery on

the trade secret claim prior to being required to identify the precise trade secrets it is alleging were

misappropriated," and that, "after Medtech's limited discovery on the trade secret claim, DenTek

is entitled to receive a list of the specific trade secrets Medtech is alleging were misappropriated

forthwith." *Id.* at 37. For the reasons that follow, DenTek objects to these rulings.

In particular, DenTek seeks a specific identification of the trade secrets allegedly used by DenTek now so that it may assess whether they are in fact trade secrets under the factors that apply under New York law, whether any use was ever made by DenTek of any such "secrets," and to forestall needless burden and expense. Medtech's past actions in this case demonstrate less of a desire to prepare the issues for trial than impose very considerable litigation costs on a much smaller competitor with shifting theories, shifting demands, and a desire to rummage through the files of the defendant looking for further claims it cannot now make.

### ARGUMENT

When considering objections to a Magistrate Judge's ruling on a dispositive matter, a district judge "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *accord* 28 U.S.C. § 636(b)(1)(C).

## I. THE TRADE SECRET MISAPPROPRIATION CLAIM (COUNT XIII) SHOULD BE DISMISSED

Judge Smith correctly recognized that to state a claim for trade secret misappropriation under New York law, a plaintiff must establish the following elements: "(1) that it possessed a trade secret, and (2) that the defendants used that trade secret in breach of an agreement, confidential relationship or duty, or as a result of discovery by improper means." *See* R&R at 8-9 (citing *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir. 1999)). Medtech's trade secret claim fails on both counts. Medtech has stated that the SAC is a complete statement of its trade secrets, Hrg. Tr. (Feb. 14, 2008) at 7:18-25 (excerpts annexed as Ex. F), yet the document was not filed under seal because nothing in it was confidential. In short, Medtech has no trade secrets. By its own admissions, Medtech cannot now allege the second element (*see* p. 17 *infra*), and the R&R was mistaken in concluding that the first element might be met by some unspecified combination of things alleged.

ELECTRONICALLY FILED

Judge Smith has consistently recognized that Medtech's allegations are thin and fail to adequately identify individual trade secrets that have purportedly been misappropriated. In leaning over backwards to provide Medtech yet another opportunity to state a claim by postulating that some unstated combination of elements might be a trade secret, the R&R needlessly expands a case that has already been greatly over-litigated by Medtech in a way that is fundamentally unfair to DenTek. Medtech has to identify each trade secret purportedly used by DenTek, whether a combination of elements or otherwise, before it can state a claim and before discovery is conducted. Otherwise, the relevance of discovery requests cannot be judged, DenTek cannot investigate whether the alleged trade secret is a trade secret under applicable legal criteria, and DenTek will be improperly burdened by a larger competitor with needless and costly discovery.

A.    The Conclusion That The SAC Sufficiently Alleges That Medtech "Possessed a Trade Secret" Is Erroneous

1.    The R&R's reliance upon an unspecified combination of information was error

At the July 9, 2007 hearing, Judge Smith inquired of Medtech's counsel why it should not have to first identify the misappropriated information in detail. *See* Hrg. Tr. (July 9, 2007) at 5:2-7. Medtech admitted that it could not do so without discovery. *Id.* at 20-23. The Court then permitted Medtech to take the discovery it sought. Medtech followed with the SAC and, on October 19, 2007, filed a motion for a preliminary injunction, asserting that the defendants were misappropriating its alleged trade secrets.

Yet, despite the additional discovery and the filing of both the SAC and its preliminary injunction motion, Judge Smith still stated to Medtech's counsel at the October 30, 2007 hearing: "I'm still not clear what you're alleging the trade secrets are." Hrg. Tr. (Oct. 30, 2007) at 17:17-18. At the December 21, 2007 hearing, the supposed trade secrets were no clearer. So, Medtech told the Court that it needed more discovery, this time directed to one of DenTek's lawyers, Hogan & Hartson, "to find out which of the information Ms. Kaplan passed on or DenTek may

6

**ELECTRONICALLY FILED**

have used." Hrg. Tr. (Dec. 21, 2007) at 7:7-8. Judge Smith responded that Medtech should

identify the limited discovery it still needed "in order to be able to further identify the trade secrets

upon which it relies and that that specification of those trade secrets should then be produced

promptly so that … the motions to dismiss and the motion for a preliminary injunction can then be

considered." *Id.* at 32:4-8. Judge Smith also expressly stated that, "without that specification, it

may very well be impossible to go forward." *Id.* at 14-15. In short, it was entirely clear – through

December 21, 2007 – that Medtech had not yet set out in any pleading or statement to the Court

that it "possessed a trade secret," much less one that it could allege had been misappropriated.

Then, Medtech's counsel did an about-face. Medtech elected not to pursue trade secret

discovery, and, at Medtech's request, discovery was allowed to proceed on all the other claims in

the case. In relation to misappropriation, Medtech's counsel chose to rely upon the contents of the

SAC, stating: "The first 48 pages are factual issues. It is in those 48 pages that we describe the

trade secrets that we have in this case…. No amount of discovery is going to illuminate those

provisions of the complaint as far as the motion to dismiss is concerned." Hrg. Tr. (Feb. 14, 2008)

at 7:18-25 (excerpts annexed as Ex. F). These 48 pages of the SAC were not filed under seal

because nothing in them is confidential, *see* Dkt. ## 53, 66, and counsel's statement that they

contain a complete statement of Medtech's "trade secrets" is an admission that its "trade secrets"

are not secrets at all. As noted in the R&R, "the most important consideration in determining

whether a piece of information qualifies as a trade secret is whether the information was actually a

secret." R&R at 9. Moreover, even an inadvertent or accidental disclosure causes the trade secret

to no longer be protected. *Julie Research Labs. v. Select Photographic Eng'g, Inc.*, 810 F. Supp.

513, 520 (S.D.N.Y. 1992), *aff'd in relevant part*, 998 F.2d 65 (2d Cir. 1993).

Reticent to dismiss Medtech's claim at the pleading stage, Judge Smith found colorable

allegations of trade secrets where she previously could not. In particular, Judge Smith relied on

**ELECTRONICALLY FILED**

the premise that "it is well-settled that a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." R&R at 10 (citing *Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.*, 732 F. Supp. 370, 376 (S.D.N.Y. 1980)). While apparently agreeing that nothing in particular had been adequately pleaded as a trade secret, Judge Smith concluded that the cumulative effect of that public information might somehow be protectable by Medtech because DenTek "was able to create a competing nightguard on an expedited basis because of the knowledge it gained from Kaplan and Duane, thereby cutting out the research and development phase of the process." R&R at 12. This last part of the analysis was incorrect for the reasons that follow, and Count XIII should consequently be dismissed because no trade secret has been adequately pleaded.

At best, the SAC alleges three categories of purported trade secret information, each addressed in greater detail below. First, the SAC contends that Medtech's decision to maintain its three-size configuration for nightguards, despite retailer interest in a one-size-fits-all product, was a proprietary strategy. *See, e.g.,* SAC ¶ 11. Second, the SAC contends that Medtech's use of certain third-party vendors and advisors – *i.e.*, manufacturers, attorneys, and dentists – regarding the design and approval of an over-the-counter ("OTC") nightguard is a protectable trade secret. *See, e.g., id.* ¶ 41. Finally, the SAC broadly asserts that Medtech's confidential and proprietary information includes "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for" the NIGHTGUARD™ dental protector device. *Id.* ¶¶ 41, 275.

Yet, contrary to Judge Smith's premise, nowhere does the SAC allege what "combination" of these publicly known facts constitutes Medtech's alleged trade secret. "New York and Second Circuit law establish that compilation trade secrets are protectable but … the law requires the trade

**ELECTRONICALLY FILED**

secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique." *Sit-Up Ltd. v. IAC/InteractiveCorp.*, No. 05 Civ. 9292 (DLC), 2008 WL 463884, *10 (S.D.N.Y. Feb. 20, 2008). In *Sit-Up*, the court concluded that

> sit-up has not demonstrated the way in which the various components fit together as building blocks in order to form the unique whole, and thus has not raised a triable issue of fact as to its unique combination.
>
> ***
>
> Here, sit-up has offered no such concrete evidence that its business method uniquely strung together certain elements in a particular way. Rather, sit-up would have the Court infer that, because it ran a successful falling-price auction business, its combination of various, possibly secret, data and business protocols must have been unique. Raising the specter of trade secret appropriation in this manner does not substitute, however, for evidence that the more than one hundred individually identified alleged trade secrets were somehow combined by sit-up to form a unique whole.

*Id.* at *9-10. As in *Sit-Up*, the SAC utterly fails to allege any combination of the purportedly misappropriated information that is unique to Medtech, much less used by DenTek. Medtech simply alleges a laundry list of independently unprotectable items, none of which are confidential, and does not allege that DenTek even used much of this information (for example, there is no allegation that DenTek ever hired Proman, Natter & Natter, or Hyman Phelps). Nor does much of the information identified by Medtech even relate to the products in issue.[2]

In sum, the specific "combination of characteristics or components" which Medtech claims to be a trade secret allegedly used by DenTek is not actually identified within the SAC. Consequently, it fails to state a claim, and the R&R erred in recommending the denial of DenTek's motion to dismiss Count XIII (trade secret misappropriation).

---

[2] For example, Medtech claims it used AGI/Klearfold "for another dental protector device," SAC ¶ 139, not the DOCTOR'S NIGHTGUARD. Item was "identified and contacted to provide certain information about designing a dental accessory for Dental Concepts," *id.* at ¶ 51, but is never alleged to have worked on the DOCTOR'S NIGHTGUARD.

    2.    <u>Each of the alleged categories of trade secrets are not trade secrets</u>

        a.    <u>Medtech's Adherence to Three Size Configurations</u>

Medtech's adherence to a "strategy" of maintaining three separate sizes for nightguards was no secret. Walmart conveyed it to DenTek before DenTek ever contacted Duane or Kaplan. *See* SAC ¶ 122; R&R at 27. In the ten years that Medtech's nightguard has been on the OTC market, *see* SAC ¶ 47, Medtech has never changed its three-size configuration, *see, e.g., id.* ¶ 11, and a simple scan of retailers' shelves during the time when DenTek was developing its own nightguard in late 2006 would have revealed that Medtech's nightguard was available in three distinct sizes. Even the R&R properly recognized that "aspects of a product that would be easily ascertainable upon inspection once the product is placed on the market," cannot be a trade secret. *See* R&R at 9; *see also Earthweb Inc. v. Schlack*, 71 F. Supp. 2d 299, 315 (S.D.N.Y. 1999) (holding that needs of a particular customer are not confidential), *remanded for clarification by*, 205 F.3d 1322 (2d Cir.), *aff'd*, No. 99-9302, 2000 WL 1093320 (2d Cir. June 12, 2000); *Van Prods. Co. v. Gen. Welding & Fabricating Co.*, 213 A.2d 769, 776 (Pa. 1965) (finding "knowledge of the need, use and demand for" a product is not a trade secret.)

        b.    <u>Medtech's Use of Certain Third-Party Vendors</u>

Under New York law, knowledge of the identities of a company's vendors does not constitute a protectable trade secret, and their employment by another does not constitute any unlawful misappropriation. *See, e.g., Panther Sys. II, Ltd. v. Panther Computer Sys., Inc.*, 783 F. Supp. 53, 70 (E.D.N.Y. 1991) ("In general, the identity of suppliers is not a trade secret entitled to protection since they can be readily learned in any productive industry."); *accord Three Dots, Inc. v. Lonny's Wardrobe, Inc.*, 739 N.Y.S.2d 701, 702 (App. Div. 1st Dep't 2002); *S. Tepfer & Sons v. Zschaler*, 269 N.Y.S.2d 552, 553 (App. Div. 2d Dep't 1966).

The identities of the professionals and companies DenTek hired to assist in the development of its own nightguard were all in the public domain, and Medtech has failed to identify what additional information, if any, was improperly disclosed and actually used. These vendors are all free to ply their trade like everyone else, and DenTek is entirely free to make use of their general skills and knowledge. *See, e.g.*, *Great Lakes Carbon Corp. v. Koch Indus.*, 497 F. Supp. 462, 468-71 (S.D.N.Y. 1980) (holding that agreements with suppliers, the needs and capacities of various divisions of the employer's business, production and other economic data and operating conditions, and trading and commercial practices are not trade secrets); *Van Prods.*, 213 A.2d at 776 (finding that information relating to "'material sources and costs,' and 'the suppliers and accounts payable,' is "something that would be learned in any productive industry" and is not a trade secret).

i.    Law firms used by Medtech and DenTek

The SAC alleges that DenTek improperly employed the law firm of Hogan & Hartson, LLP to seek FDA approval for its nightguard device because Medtech's predecessor-in interest, Dental Concepts, had retained that firm, among others, to seek approval for OTC marketing of its nightguard. *See* SAC ¶¶ 63, 151-55. Yet, Dental Concepts' FDA submission identifies Hogan & Hartson on the very first page, *see* Section 510(k) Premarket Notification Submission and Approval for Doctor's NightGuard (*available at* http://www.fda.gov/cdrh/pdf5/K053580.pdf) (annexed as Cheng Decl., Ex. D) (Dkt. #113),[3] and the FDA issued its approval on March 3, 2006.

---

[3]    DenTek respectfully requests that the Court take judicial notice under Fed. R. Evid. 201 of the foregoing public record from the FDA's website. *See, e.g., In re Vertex Pharm., Inc. Sec. Litig.*, 357 F. Supp. 2d 343, 352 n.4 (D. Mass. 2005) (taking judicial notice of an FDA policy posted on the FDA's website); *In re Wellbutrin SR/Zyban Antitrust Litig.*, 281 F. Supp. 2d 751, 754 n.2 (E.D. Pa. 2003) (taking judicial notice of an FDA report published on the agency's website). *See also Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993) (In determining the sufficiency of a plaintiff's claim for Rule 12(b)(6) purposes, it is appropriate

**ELECTRONICALLY FILED**

*See id.* This summary document, along with the FDA's substantial equivalence determination, was made public within 30 days of that date. *See* 21 C.F.R. § 807.95(d). This information is easily found on the FDA website with search terms such as "nightguard" and was publicly available long before DenTek began developing its nightguard in Fall 2006. Furthermore, Hogan & Hartson is well known for its work with medical devices before the FDA. *See* Hogan & Hartson website (*available at* http://www.hhlaw.com/medicaldevices/) (annexed as Cheng Decl., Ex. E) (Dkt. #113); s*ee also, Pollstar v. Gigmania Ltd.*, 170 F. Supp. 2d 974, 978 (E.D. Cal. 2000) (taking judicial notice of contents of website). Presumably, Hogan & Hartson checked conflicts and protected its clients' confidences to the extent there were any. Further still, the SAC utterly fails to identify what supposedly confidential information belonging to Dental Concepts, if any, was improperly used by Hogan & Hartson in the course of its representation of DenTek. Accordingly, no trade secret misappropriation claim can be premised on DenTek's retention of law firms.[4]

### ii.    Tufts Dentists

The SAC further alleges that Dental Concepts sought the technical expertise of three Tufts University dentists, and that "Kaplan and Duane personally called and solicited the Tufts Doctors to work for DenTek." SAC ¶¶ 55, 130(d). The SAC generally alleges that the Tufts dentists "received confidential information about Medtech's strategy with the NIGHTGUARD™ brand dental protector and with certain of Medtech's customers" after having been engaged by DenTek.

---

to take judicial notice and consider documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.)

[4]    The SAC also alleges that the law firms of Natter & Natter and Hyman, Phelps & McNamara, P.C. were retained by Dental Concepts "to advise it regarding the intellectual property of Dental Concepts." SAC ¶ 57; *see also* SAC ¶ 63. Neither was actually engaged by DenTek and the SAC is devoid of any allegations that DenTek engaged these firms or learned any confidential information about Dental Concepts from either firm. Accordingly, no trade secret misappropriation claim can be premised on these particular firms.

**ELECTRONICALLY FILED**

*Id.* ¶ 146. However, once again, even after Medtech had deposed two of these dentists, the SAC fails to identify what information belonging to Medtech, if any, was actually disclosed or used by the Tufts dentists in the course of their working relationship with DenTek.

These are world-renowned experts on the condition of bruxism, which the products in issue are designed to treat. Moreover, Dr. Mehta's October 12, 2005 testimony at a hearing of the FDA Dental Products Panel in support of Dental Concepts' 510(k) application is publicly available on the FDA's website. *See* FDA website (*available at* http://www.fda.gov/ohrms/ dockets/ac/05/transcripts/2005-4182t2.pdf) (annexed as Cheng Decl., Ex. G) (Dkt. #113). Thus, the identity of these doctors was always public and further disclosed to the public by Medtech.

### iii.    Item New Product Development

The SAC also alleges that Dental Concepts contacted Item New Product Development "to provide certain information about designing a dental accessory for Dental Concepts," and that Duane "called Item, who was known to him because of his association with Dental Concepts." SAC ¶¶ 51, 130(a). Medtech fails to state what that "certain information" was. Moreover, the SAC alleges that DenTek hired Item to design its nightguard device, *see id.* ¶ 137, but fails to allege – because Medtech cannot – that Dental Concepts had previously retained Item in connection with the design and development of its own nightguard device. Medtech, of course, knew that it had not done so before filing its amended pleading and, thus, knew that it had no colorable basis for premising any misappropriation claim on Item. Regardless, the SAC naturally fails to identify what information belonging to Dental Concepts, if any, was improperly disclosed to Item, and then to DenTek by Item, as a result of that engagement.

Moreover, Item was founded over 20 years ago and is well known to professionals in the consumer goods packaging industry for its reputation and capabilities. *See* Item website

(*available at* http://www.itemnpd.com/ contentmgr/showdetails.php/id/46) (annexed as Cheng

Decl., Ex. H) (Dkt. #113). As such, the existence of Item is well known and publicly available.

### iv.   AGI/Klearfold

Similarly, the SAC generally alleges that "Duane and Kaplan also engaged AGI/Klearfold,

the packager used by Dental Concepts for another dental protector device." SAC ¶ 139. As the

SAC implicitly concedes, AGI/Klearfold did not, in fact, perform any packaging work for

Medtech's nightguard device, the product in issue, but rather for a completely different product.

The SAC fails to identify what information belonging to Dental Concepts, if any, was improperly

disclosed to DenTek as a result of that engagement and purportedly misappropriated when

AGI/Klearfold supplied packaging to DenTek for an entirely different product.

AGI/Klearfold is an award-winning industry leader in packaging – a well known and easily

ascertainable public fact. *See, e.g.,* AGI/Klearfold website (*available at*

http://www.agiklearfold.com/awards/index.html) (annexed as Cheng Decl., Ex. I) (Dkt. #113). It

is part of MeadWestvaco, one of the most well known packaging companies in the world. *See,*

*e.g.*, MeadWestvaco website (*available at* http://www.meadwestvaco.com/packaging.nsf/v/

consumerPackagingGroup) ("We are the world's largest supplier of media packaging; the number

one U.S. supplier of folding cartons to the pharmaceutical market; and the second largest U.S.

supplier of packaging for cosmetics.") (annexed as Cheng Decl., Ex. J) (Dkt. #113). The identity

of this supplier is not a trade secret, and nothing that AGI/Klearfold did for Medtech on a different

type of product is specifically identified as a trade secret, much less allegedly disclosed to

DenTek.

### v.   Stelray Plastic Products, Inc.

Likewise, the SAC alleges that Dental Concepts retained Stelray Plastic Products, Inc. to

manufacture its nightguard device, and that Duane contacted Stelray "to interview them as

**ELECTRONICALLY FILED**

potential molders and to help him develop a dental protector for DenTek." SAC ¶¶ 52, 130(b). However, Dental Concepts' allegations regarding its use of Stelray as a manufacturer are limited to a device they marketed to dentists in 2001. *Id.* ¶ 54. The SAC contains no allegations identifying the manufacturer of the product at issue. Thus, the SAC is only able to allege that DenTek hired Stelray to manufacture its nightguard device, *see id.* ¶ 138, but not that Medtech has any proprietary rights in any information used by Stelray, much less for the benefit of DenTek.

Stelray, too, has long been recognized as an established leader in precision injection molding for over 50 years and, thus, well known to product development professionals. *See* Stelray website (*available at* http://www.stelray.com/company.htm) (annexed as Cheng Decl., Ex. L) (Dkt. #113). Accordingly, no trade secret misappropriation claim can be premised on DenTek's retention of Stelray.[5]

c.    Medtech's vague allusions to other trade secrets

The SAC broadly asserts protectable interests in "the design, manufacturing, marketing and sale of the NIGHTGUARD™ dental protector device," *see* SAC ¶ 41, as well as "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors." *Id.* ¶ 275.

The Magistrate recognized that the design of a product placed on the market, marketing concepts, new product ideas, and business possibilities and goals are not susceptible to trade secret protection. *See* R&R at 9. Nonetheless, her reliance on Medtech's averments to the effect that Duane and Kaplan may have had "access to" or been "privy to" various Medtech business data, *s*ee R&R at 11 (*citing* SAC ¶¶ 9, 89, 123, 277), and that DenTek was therefore "able to truncate its

---

[5]    The SAC also alleges that Duane contacted Proman Products, which was purportedly identified to him by Riordan. *See* SAC ¶ 130(b). However, the SAC is otherwise devoid of any allegations that DenTek learned any confidential information about Dental Concepts from Proman Products or, indeed, that DenTek ever hired Proman Products at all.

evaluation and vetting process" so that it created a competing product on an expedited basis, led

her to conclude erroneously that Medtech had sufficiently set out a trade secret misappropriation

claim. *See id.* at 11-12 (*citing* SAC ¶¶ 129, 163).

Medtech's claims are heavy on vague accusations and light on specifics. Nowhere does

the SAC ever identify the confidential and proprietary information Duane and Kaplan purportedly

misappropriated from Dental Concepts, if any, or the manner in which it was inappropriately

disclosed to DenTek, if ever. *Cf. DataType Int'l Inc. v. Puzia*, 797 F. Supp. 274, 283 (S.D.N.Y.

1992) ("'[K]nowledge of the intricacies of [plaintiff's] business operation . . . does not qualify for

protection as a trade secret.'"); *Great Lakes*, 497 F. Supp. at 470 ("Not all information acquired by

the employee during the course of his employment which may be pertinent to his employer's

business is worthy of protection.")

Medtech cannot rely on the doctrine of inevitable disclosure, which posits that, "once

employees have knowledge of a competitor's confidential information, it is almost impossible to

compartmentalize that knowledge and avoid using it when they go to work on a similar job in the

same industry." *Colonize.com, Inc. v. Perlow*, No. 03-CV-466, 2003 WL 24256576, at *5-6

(N.D.N.Y. Oct. 23, 2003). New York courts recognize that, "in its purest form, the inevitable

disclosure doctrine treads an exceedingly narrow path through judicially disfavored territory."

*Earthweb*, 71 F. Supp. 2d at 310.

In view of the lack of specific allegations of how Duane and Kaplan used Medtech's

confidential information on behalf of DenTek, it appears that Judge Smith implicitly and

erroneously relied on the inevitable disclosure doctrine. In the absence of specific factual

allegations substantiating its so-called confidential and proprietary information, Medtech's attempt

to establish a trade secret misappropriation claim – based solely on the fact that Duane and Kaplan

accepted positions at a competing entity and assisted that competitor in developing a competing

16

product – is fatally deficient.  *PepsiCo., Inc. v. Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995)

("The mere fact that a person assumes a similar position at a competitor does not, without more,

make it 'inevitable that he will use or disclose trade secret information' so as to demonstrate

irreparable injury.")

      B.    The Conclusion That the Second Element of a Trade Secret Misappropriation
              Claim Was Alleged in the SAC Under New York Law Is Equally Flawed

      The R&R erred by concluding that "Medtech has adequately alleged wrongful use of the

alleged trade secrets by … DenTek," s*ee* R&R at 12, because Medtech itself has admitted that it

cannot identify what purported trade secret was acquired or used by DenTek.  Specifically, in its

Response to DenTek's Motion For Entry Of A Protective Order and Order Compelling Disclosure

Of Alleged Trade Secrets (Dkt. #118), Medtech stated:

> Until Medtech has time to fully explore the issues in this case, it <u>will not know</u>
> what information was ultimately acquired and used by DenTek.

(Dkt. #118, at 3, emphasis added.)

> Medtech needs and is entitled to discovery to establish what portion, if not all, of its
> confidential proprietary information has been disclosed to DenTek.  Without an
> opportunity to conduct discovery, Medtech will be left to guess –

(*Id.* at 6.)  Thus, the R&R relies only on Medtech's allegations that DenTek "called upon" various

Medtech suppliers known to Duane and Kaplan due to their association with Dental Concepts.

R&R at 13.  But the ultimate conclusion ignores the fact that the SAC does not allege that DenTek

actually used many of these vendors, much less improperly (*i.e.*, no allegation that DenTek

engaged Proman, Natter & Natter, or Hyman Phelps; no allegations that DenTek received any

Dental Concepts' information from these vendors, nor Item, Stelray, AGI/Klearfold, or the Tufts

Doctors).  Thus, there simply is no connection in the SAC between any of this information – much

of which was not even used by Dental Concepts to bring its own product to market – and DenTek.

In sum, as a matter of law, Count XIII must be dismissed because Medtech has failed to identify any individually protectable trade secret or, as Judge Smith proposed, a unique combination of publicly known information that affords Medtech a competitive advantage, let alone how that purported information was inappropriately acquired or used by DenTek, a fact Medtech admits it does not know.  Instead, Medtech's ill-founded theory rests on the speculative assumption that, by matching certain personnel and well known third-party vendors, and due to the success of DenTek's product development process, some unspecified trade secret information belonging to Medtech must have inevitably been misappropriated by DenTek.  Such a theory has no basis in law (or fact), and, thus, the claim is fatally deficient.  *See Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (holding that the factual allegations in a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)") (citations omitted); *see also* 5 C. Wright & A. Miller, *Federal Practice and Procedure* § 1216, at 235-36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action.")  Medtech's trade secret misappropriation claim should be dismissed.

## II.     IN THE ALTERNATIVE, MEDTECH SHOULD BE COMPELLED TO IDENTIFY ITS ALLEGED TRADE SECRETS WITH PARTICULARITY BEFORE ANY FURTHER TRADE SECRET DISCOVERY IS TAKEN

Should Medtech's misappropriation claim survive DenTek's motion to dismiss, DenTek objects to the recommendation in the R&R that Medtech be afforded limited discovery on its trade secret misappropriation claim *before* it is compelled to identify the alleged trade secrets at issue in this case with particularity.  Such a procedure is contrary to established law.  Medtech waived its right to proceed in this fashion back in February, stating that further discovery would be of no benefit to its ability to state a claim, and Medtech has already taken more discovery than that to

which it was entitled on this issue.  Medtech is not entitled to rummage through DenTek's internal documents looking to see if there is anything that might give it a claim.  DenTek has also not been provided fair notice of Medtech's purportedly misappropriated trade secrets such that it can itself take discovery and defend against these baseless allegations.  Consequently, the R&R continues to impose unfair, one-sided discovery upon DenTek.

    A.    Courts Uniformly Require Identification of Trade Secrets
                With Particularity Before Permitting a Plaintiff to Proceed

Contrary to the conclusion reached in the R&R (at 36), the general rule is to require the plaintiff to identify its trade secrets with particularity *before* permitting a trade secret misappropriation claim to proceed.  *See, e.g., Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) ("At the very least, a defendant is entitled to know the bases for plaintiff's charges against it.  The burden is upon the plaintiff to specify those charges, not upon the defendant to guess at what they are."); *Struthers Scientific and Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 153 (D. Del. 1970) ("[plaintiff] should…specifically describe what particular combination of components it has in mind, how these components are combined, and how they operate in a unique combination.")[6]  Otherwise, the defendant and the Court can have no

---

[6]    *See also Imax Corp. v. Cinema Techs, Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (stating that "plaintiff should describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade"); *IDX Sys. v. EPIC Sys.*, 285 F.3d 581, 583-84 (7th Cir. 2002) (holding that forty-three page description of underlying methods and processes and the interrelationships among various features making up a software package was not specific enough because it did not separate trade secrets from other information that goes into any software package); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F. Supp. 2d 1322, 1325-26 (S.D. Fla. 2001) (ordering plaintiff to specifically identify the particular trade secrets that formed the basis of its claims); *Porous Media Corp. v. Midland Brake, Inc.*, 187 F.R.D. 598, 599-600 (D. Minn. 1999) (ordering plaintiff to list the trade secrets allegedly misappropriated with sufficient specificity, as adequate discovery could not be conducted in the absence of specific disclosure); *see also* 3 Milgrim, *Milgrim on Trade Secrets* § 14.02(2) (2003).  California has also enacted a version of the Uniform Trade Secrets Act containing an express provision requiring upfront disclosure of alleged trade secrets.  *See* Ca. Code Civ. P. §

**ELECTRONICALLY FILED**

understanding as to what information is relevant to the case, leaving the plaintiff carte blanche to propound overly broad and unduly burdensome discovery upon the defendant.

Accordingly, a court should enter a protective order governing the plaintiff's disclosure of its alleged trade secrets and compel the plaintiff to disclose its trade secrets with particularity. *See, e.g., Dura Global Techs., Inc. v. Magna Donnelly Corp.*, Civil Action No. 07-CV-10945-DT, 2007 WL 4303294, at *2-5 (E.D. Mich. Dec. 6, 2007) (ordering plaintiff to identify the trade secrets that are the subject of its claim for trade secret misappropriation and staying discovery of defendant's trade secret information until after plaintiff's disclosure); *L-3 Commc'n Corp. v. Reveal Imaging Techs., Inc.*, No. 03-5810 BLS, 2004 Mass. Super. LEXIS 519, at *34 (Super. Ct. Dec. 2, 2004) (granting motion for protective order and compelling service of " a statement specifically identifying those trade secrets that form the basis of their trade secret misappropriations claims before any discovery may be had on those claims"); *Engelhard Corp. v. Savin Corp.*, 505 A.2d 30, 33 (Del. Ch. 1986) (granting a protective order holding discovery in abeyance until plaintiff served and filed a trade secret statement identifying its claimed trade secrets); *accord Cambridge Internet Solutions, Inc. v. Avicon Group*, No. 99-1841, 1999 WL 959673, at *1 (Mass. Super. Ct. Sept. 21, 1999) (ordering plaintiff to provide a more definite statement of the specific trade secrets at issue in lieu of dismissing the plaintiff's claim); *Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 672-74 (D. Mass. 1986) (denying plaintiff's motion to compel discovery of all blueprints and samples of defendant's products where plaintiff had failed to establish a factual basis for its claim of misappropriation of trade secrets).

---

2109(d) ("In any action alleging the misappropriation of a trade secret …, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with reasonable particularity.").

**ELECTRONICALLY FILED**

Two important rationales support this general rule. First, requiring specific disclosure of the trade secrets at issue will prevent a competitor – like Medtech here – from asserting generalized allegations in a lawsuit so as to rummage through a competitor's confidential and proprietary information. *Cf. Cambridge Internet Solutions*, 1999 WL 959673 at *2 ("A plaintiff has no cognizable trade secret claim until it has adequately identified the specific trade secrets that are at issue. Such identification is necessary to ensure that plaintiffs are not using an unmeritorious lawsuit to discover a competitor's trade secrets.") Requiring a plaintiff to specifically identify the trade secrets at issue is necessary to "strike a balance between a plaintiff's right to discovery and a defendant's right to be protected against devastating injury which may result if it develops that plaintiff's claim is without substance." *Id.* at *2 (holding that plaintiff failed to identify allegedly misappropriated source codes, work processes, and customer deliverables with the requisite specificity).

Second, specific disclosure of the trade secrets at issue in this case will also enable both the parties and the Court to determine the outside parameters of relevant discovery. *See Xerox*, 64 F.R.D. at 371 ("until [specific identification of plaintiff's trade secrets] is done, neither the court nor the parties can know, with any degree of certainty, whether discovery is relevant or not"); *Engelhard*, 505 A.2d at 33 (specific identification of plaintiff's trade secrets is necessary "to clarify the issues involved in the dispute"). This clarification will undoubtedly help focus discovery and minimize discovery disputes, rather than lead to the inevitable inability of the parties to come to agreement as to the proper scope of responsive documents. Because Medtech alleges that DenTek misappropriated its trade secrets, the parameters of discovery on this claim should be limited to determining whether any of Medtech's purported trade secrets are part of DenTek's nightguard technology. As such, Medtech must identify the specific allegedly unique

**ELECTRONICALLY FILED**

trade secrets that form the basis for its claim with sufficient particularity *before* further discovery is permitted.  Judge Smith's conclusion to the contrary was erroneous.

      B.     Medtech's Vague Statement Of Its Trade Secrets
                Warrants Particularized Identification

An order compelling more specific disclosure before any further discovery takes place is amply supported by Medtech's prior, unsuccessful attempts to identify its alleged trade secrets. For example, the SAC is replete with vague allegations directed towards the alleged misappropriation of trade secrets.  *See, e.g.*, SAC ¶ 41 (alleging misappropriation of "design, manufacturing, marketing and sale of the NIGHTGUARD™ dental protector device"); *id.* ¶ 275 (alleging misappropriation of the "manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors").  Yet, allusions to such broad concepts provide no guidance whatsoever regarding the parameters of Medtech's claim because such characteristics are inherent in any product.

As a matter of law, Medtech cannot put the cart before the horse by claiming that it does not yet know the trade secrets DenTek allegedly took.  Besides, Medtech had been afforded nearly five months of pre-filing discovery in the form of documents and depositions and had filed two amended complaints *and* a preliminary injunction motion – all purporting to allege the trade secrets at issue.  Yet, in hearing after hearing before Judge Smith, Medtech has been unable to articulate to the Court's satisfaction – let alone DenTek's – the nature, scope, and content of its alleged trade secrets.

A complaint is not a permit to attempt to find a case that the plaintiff did not have in mind when it commenced the action.  *Cf. Xerox*, 64 F.R.D. at 371 ("Xerox should be able to identify in detail the trade secrets and confidential information alleged to have been misappropriated by IBM.").  Thus, Medtech should be compelled to make this particularized identification before any

further discovery is conducted.  Absent such disclosure, DenTek is not placed on fair notice of the scope of the claims in this litigation, and Medtech would be permitted to engage in an unwarranted fishing expedition into DenTek's own business information, necessarily placing into doubt the relevancy of Medtech's anticipated discovery requests and imposing an undue burden and expense to DenTek in responding to them.  *Cf. Xerox*, 64 F.R.D. at 371-72 ("[I]t is doubtful whether Xerox can undertake a meaningful discovery program, which includes its attempts to trace the flow of trade secrets and confidential information through IBM, without first identifying which trade secrets and what confidential information IBM has misappropriated.")

Particularized identification of alleged trade secrets means more than generalized and passing references to concepts that purportedly contain trade secrets.  As one court aptly put it, "a plaintiff must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur."  *Analog Devices, Inc. v. Michalski*, 579 S.E.2d 449, 453-54 (N.C. Ct. App. 2003) (rejecting plaintiff's trade secret claims notwithstanding its reference and production of schematics and documents because it failed to show what, if anything, in those schematics is particularly deserving of protection); *see also Del Monte*, 148 F. Supp. 2d at 1325-26 (granting defendant's motion to compel, and finding that plaintiff's references to the defendant's use of pesticides and fungicides was not sufficiently specific because it was "not clear what aspect of Del Monte's pesticide and fungicide techniques are trade secrets").

C.    Conducting Limited Discovery Before the Identification of Medtech's Trade
        Secrets Continues to Impose Unfair, One-Sided Discovery Upon DenTek

Under the R&R, the parties are compelled to undergo limited discovery on Medtech's trade secret misappropriation claim in advance of any specific identification of the alleged trade

secrets at issue in this case. Such a procedure continues the needless, costly, and unfair imposition of one-sided discovery upon DenTek.

Medtech has already had the benefit of months of pre-filing discovery, and Judge Smith has afforded Medtech numerous opportunities to identify its alleged trade secrets – all to no avail. In the face of these repeated failures, Medtech should not be permitted to conduct even more discovery – limited or not – on speculative claims.

Further, because DenTek is bereft of any understanding as to the particular trade secrets that are at issue in this case, it is simultaneously unable to participate and propound discovery upon Medtech. For example, DenTek is entitled to documents and interrogatory responses from Medtech concerning the existence and alleged misappropriation of the trade secrets that formed Medtech's bases for filing the SAC and its preliminary injunction motion. Medtech should also afford DenTek depositional discovery through Rule 30(b)(6) directed to (i) the threshold issues respecting the existence of a trade secret (*i.e.*, facts directed to the existence of a trade secret, such as ownership, the reasonable steps taken to maintain secrecy, and the ability to afford a competitive advantage; *see also Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 n.1 (2d Cir. 1993) (setting forth factors under New York law to determine whether a trade secret exists));[7] and (ii) the bases for Medtech's claim that its trade secrets were misappropriated and used by DenTek. Without knowing the identity of the trade secrets at issue and upon which Medtech relies, however, DenTek is effectively rendered incapacitated from obtaining the

---

[7]   Indeed, aside from a few conclusory allegations in a single paragraph, the SAC is devoid of any allegations substantiating these efforts. *See* SAC ¶ 276. The trade secret misappropriation claim is dismissible on this ground alone. *See, e.g., Magellan Int'l Corp. v. Salzgitter Handel GmbH*, 76 F. Supp. 2d 919, 927-28 (N.D. Ill. 1999); *cf. Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1454 (2002) (affirming denial of preliminary injunction and noting that the movant's identification of "new product information" as a trade secret was "too broad to enforce because it does not differentiate between truly secret information (such as formulas and product design) and new product information which has been publicly disclosed.")

information necessary to challenge the existence and alleged misappropriation of those trade secrets because it cannot even properly formulate discovery requests or take depositions of fact witnesses.

Therefore, to the extent that any portion of Medtech's trade secret misappropriation claim survives dismissal, this Court should enter a protective order and compel Medtech to identify the trade secrets at issue with particularity before proceeding with any further discovery on that claim.

## CONCLUSION

For the foregoing reasons, DenTek respectfully requests that the Court sustain its objection and dismiss Medtech's trade secret misappropriation claim (Count XIII) in its entirety with prejudice. To the extent that any portion of Medtech's trade secret misappropriation claim survives dismissal, DenTek also respectfully requests that the Court sustain its objection and enter an order compelling Medtech to provide more specific disclosure with respect to its alleged trade secrets that are at issue in this case before any further discovery on that claim continues.

Dated: June 19, 2008                            PROSKAUER ROSE LLP


                                                By:_____/s/ Alan Federbush_____
                                                James H. Shalek
                                                Alan Federbush
                                                Theodore K. Cheng
                                                1585 Broadway
                                                New York, NY 10036-8299
                                                (212) 969-3000

                                                *Attorneys for Defendant DenTek Oral Care, Inc.*

25

**ELECTRONICALLY FILED**

## CERTIFICATE OF SERVICE

I hereby certify that on June 19, 2008, I caused a true and correct copy of **DEFENDANT DENTEK ORAL CARE, INC.'S OBJECTIONS TO THE REPORT & RECOMMENDATION OF MAGISTRATE JUDGE SMITH DATED JUNE 2, 2008** to be served upon the following parties by use of the Court's ECF system:

*Attorneys for Plaintiff Medtech Products, Inc.:*

> Karl Geercken
> ALSTON & BIRD LLP
> 90 Park Avenue
> New York, NY 10016
>
> AND
>
> Thomas O. Helton
> BAKER, DONELSON, BEARMAN
>   CALDWELL & BERKOWITZ, P.C.
> 1800 Republic Centre
> 633 Chestnut Street
> Chattanooga, TN  37450-1800

*Attorney for Defendant Kelly Kaplan:*

> John P. Fulco
> Salon Marrow Dyckman Newman & Broudy LLP
> 292 Madison Avenue
> New York, NY 10017

*Attorney for Defendants Ray Duane and CDS Associates:*

> Michael A. Freeman
> Greenberg Freeman LLP
> 24 West 40th Street - 17th Floor
> New York, NY 10018

                                        _____
                                        s/ Alan Federbush