```
                                    1
0779medMS
         UNITED STATES DISTRICT COURT
   1     SOUTHERN DISTRICT OF NEW YORK
   2     -------------------------------x
         MEDTECH PRODUCTS INC.,
   3
                     Plaintiff,
   4
              v.                    07 Civ. 3302(LMS)
   5
         RANIR, LLC and
   6     CVS PHARMACY, INC.,
   7                 Defendants.
         -------------------------------x
   8     MEDTECH PRODUCTS INC.,
   9                 Plaintiff,
  10          v.
  11     DENTEK ORAL CARE, INC.,
  12                 Defendant.
  13     -------------------------------x
         MEDTECH PRODUCTS INC.,
  14                 Plaintiff,
  15          v.
  16     POWER PRODUCTS, INC.,
         d/b/a SPLINTEK,
  17                 Defendant.
  18     -------------------------------x
  19                              White Plains, N.Y.
                                  July 9, 2007
  20
         Before:
  21
                  THE HONORABLE LISA MARGARET SMITH,
  22
                                  Magistrate Judge
  23
  24     Proceedings recorded by
  25     electronic sound recording.

                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

```
                                    2
0779medMS
   1                       APPEARANCES
   2     ALSTON & BIRD, LLP
             Attorneys for Plaintiff
   3     W. EDWARD RAMAGE
   4     KARL GEERCKEN

   5     KIRKPATRICK & LOCKHART
             Attorneys for Defendant Power Products, Inc.
   6     KATHY DUTTON HELMER
   7     PRESTON, GATES & ELLIS, LLP
             Attorneys for Defendant Power Products, Inc.
   8     BARRY PICKENS
         Via Telephone
   9
  10     PROSKAUER ROSE
             Attorneys for Defendant DenTek Oral Care, Inc.
  11     JAMES SHALEK
  12     GREGORY J. SIECZKIEWICZ       - - -
  13          THE DEPUTY CLERK:  Your Honor, this is in the matter
  14     of Medtech versus Ranir, et al.  It's consolidated.
  15          Messrs. Geercken and Ramage for the plaintiff.
  16     Ms. Helmer is here, Mr. Sieczkiewicz and Mr. Shalek.
  17     Mr. Pickens is available by telephone.
  18          THE COURT:  Good morning.
  19          I've reviewed the file.  I've reviewed the transcript
  20     of the last appearance in which Judge Brieant resolved the
  21     issue of the preliminary injunction.  I've reviewed the motion
  22     for leave to file an amended complaint, the opposition from
  23     DenTek, and the reply to that.
  24          Is there anything else on the motion that I ought to
  25     be aware of?

                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

```
                                    3
0779medMS
   1          Who should I be looking to here?  Is it Mr. Ramage?
   2          MR. RAMAGE:  Mr. Ramage, your Honor.
   3          THE COURT:  Ramage.
   4          MR. RAMAGE:  That's right.  Mr. Galvin pronounced it
   5     the same way half my family does, so . . .
   6          With regard to that motion, I believe the briefing has
   7     been completed on that.
   8          There is another matter with regard to some timing of
   9     some depositions.  We filed a brief motion on that this
  10     morning, and I believe it would be an appropriate matter for
  11     the parties -- DenTek in this case, counsel for DenTek, and
  12     plaintiff -- to take up perhaps before your Honor for some
  13     guidance on that.
  14          There also was a preliminary housekeeping matter.
  15          We have severed with Ranir and CVS Pharmacy in this
  16     case.  They have been dismissed.  We were not sure of the
  17     procedure the Court would like us to follow with regard to
  18     correcting the caption.  I have simply identified several
  19     different ways in several different courts including just
  20     automatically making the correction, filing a stipulation to
  21     the correction.
  22          I ask the Court, what would you prefer in this case?
  23          THE COURT:  Typically, we don't worry about changing
  24     the caption.  We just let things go forward.  It's very
  25     complicated for the Clerk's Office to try to change things.

                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

```
                                    4
0779medMS
   1     And then they come in, in a variety of other ways.  So
   2     typically, we just leave it with the lead party, even though
   3     they're no longer in.
   4          And it is at least my practice that pleadings don't go
   5     in to the jury, anyway, so it's a matter of housekeeping that
   6     we don't have to worry about.  Don't spend any time worrying
   7     about it.
   8          All right.  So is there anything further you want to
   9     say in support of the motion to amend?
  10          MR. RAMAGE:  The only thing with regard to the motion
  11     to amend, your Honor, is very simply that we don't see any
  12     delay by granting the motion to amend.  We don't think that
  13     granting the motion to amend will slow this case down.
  14          Obviously, what we did with Judge Brieant was agree to
  15     a super rocket docket, a super accelerated case in discovery.
  16     All our depositions have to be completed by September 21st, and
  17     discovery concluded shortly thereafter.
  18          Ms. Kaplan's role and activities already are subject
  19     to discovery requests.  She's already been identified as a
  20     party of interest in this case.  She's going to be deposed in
  21     this case.  And I'd like Ms. Kaplan to be produced in this
  22     case.
  23          The only inefficiency is if we're required to file a
  24     separate lawsuit bringing these claims, with the likelihood or
  25     possibility that that case might end up being consolidated with

                   MARY M. STATEN, CSR, RPR, RMR
                          (914) 390-4027
```

## Page 5

1  this case. And simply, I'd ask that the motion be granted.
2      THE COURT: Do you have any response to the assertion
3  that you ought to be required to specify the -- I didn't see
4  anything in your reply -- the -- let me see if I can find
5  the -- that you ought to provide a detailed description of the
6  confidential information, purportedly proprietary, which was
7  misappropriated?
8      MR. RAMAGE: No, no. Ms. Kaplan was one of the
9  principal five officers of the company. She was vice
10  president, I believe, in charge of marketing. She had intimate
11  access to marketing information, manufacturing information,
12  business relationships, including business relationships with
13  the three doctors at Tufts that are the subject of the subpoena
14  and deposition set for after the 23rd of this month.
15      Without deposing her, without looking at her
16  information, we can't, your Honor, get more specific than that,
17  because she, quite frankly, had access to all the confidential
18  information of the company. What specifically she disclosed,
19  the contact relationships she has, she currently is the brand
20  manager for DenTek for this competing brand. Given the overall
21  circumstances, until we conduct some discovery, until we take
22  her deposition, until we see what documents she has provided to
23  DenTek, we can't get more specific than that.
24      THE COURT: Okay. Thank you.
25      Should I be looking to Mr. Shalek or Mr. Sieczkiewicz?

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

## Page 6

1  Is that close?
2      MR. SHALEK: Mr. Shalek. Thank you, your Honor.
3      Seen for what it is, I think Mr. Ramage's response is
4  a candid admission that there are no trade secrets or
5  confidential business information that they're able to
6  identify, and they have no business bringing in a new party and
7  raising a claim.
8      For example, he mentions business relationship with
9  three doctors. Those doctors have now been subpoenaed. They
10  are the leading experts in the world on the condition that is
11  at issue in this lawsuit, bruxism or grinding your teeth at
12  night. They're at Tufts Dental School and identifiable, well
13  known in the industry, easily identifiable.
14      However, the notion that there is anything
15  confidential about their existence, their knowledgeability and
16  approaching them for consultation is simply not something that
17  will withstand any kind of scrutiny, without some
18  identification of what it is that they claim was proprietary
19  still, and we have no way of judging relevance of their
20  request. We have no way of really assessing what impact this
21  kind of claim will have on the schedule.
22      So I think that if there is some kind of claim here,
23  it's very important that we hear what it is early in order to
24  allow us to conduct discovery properly and evaluate its impact.
25  And I would submit that what Mr. Ramage has identified would

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

## Page 7

1  not be sufficient to survive a motion for summary judgment.
2      And, your Honor, to be candid, if the Court were
3  inclined to grant leave to amend, we would immediately move for
4  a protective order seeking identification of the trade secrets
5  before moving forward with discovery.
6      THE COURT: What's the status with regard to
7  representation of the proposed new defendant?
8      MR. SHALEK: We know that she has spoken with outside
9  counsel and selected somebody that she likes. Whether that has
10  actually been finalized, in terms of crossing the "T"s and
11  dotting the "I"s, I don't know yet, your Honor.
12      THE COURT: So you're not representing her.
13      MR. SHALEK: I am not.
14      THE COURT: Well, Mr. Ramage, perhaps the right thing
15  to do, then, is to allow you to do your initial discovery, and
16  then allow you to make the motion. And I'll extend the date
17  for amending the complaint. And then, quite frankly, we'll
18  have to re-open depositions and go back and do things all over
19  again once she's in the case.
20      MR. SHALEK: Your Honor, on the discovery, we've got
21  four third-party subpoenas outstanding. They were served in
22  violation of the scheduling order to which we both agreed.
23  First, they were served too early. Second, they were served
24  before the responses to document requests. And third, we had
25  agreed for -- the order specified that party depositions would

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

## Page 8

1  go forward first.
2      We also weren't consulted before the subpoenas were
3  served, and extended the courtesy of discussing dates. So what
4  we have now are four subpoenas out there, which we think were
5  served in violation.
6      But if the Court's inclined to go forward, that's
7  fine. But we don't think it's appropriate, one, for them to
8  simply rummage through the files of third parties or our
9  client, identifying what it is that they're looking for, in
10  terms of confidential business information. That's not the way
11  the system works, is that you go out on a fishing expedition
12  looking for a claim. There has to be some indication of a
13  wrong and what was done wrong to lay out the parameters of
14  relevance.
15      And so that's the first issue.
16      And the second issue is, on the scheduling of these
17  third-party subpoenas, we would like to have the opportunity to
18  confer with the other side and pick some dates that are
19  convenient to all parties concerned. Although our belief is
20  that it's more efficient to wait until Ms. Kaplan is in the
21  case to move forward and she's represented. These depositions
22  impact her, as well.
23      THE COURT: Well, we're not -- if we're waiting until
24  they have enough information to be able to withstand a motion,
25  then we're not holding other things in abeyance pending the

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

10

0779medMS

1  possibility that Ms. Kaplan will subsequently be brought into
2  the case. That's just not happening. We're moving forward
3  with discovery with the parties that are currently in. And if
4  it's necessary to go back and redo what's already been done and
5  re-open depositions, then that's what we'll have to do. But
6  I'm not going to hold things in abeyance pending the
7  possibility of something that may or may not happen.
8       MR. SHALEK: I understand that, your Honor. But right
9  now, there is no "trade secret" claim in the case. That was
10 not in the original complaint. So technically, there is no
11 claim in the case directed to purported misappropriation of
12 confidential business information by anyone.
13      So you know —
14      THE COURT: Well, what are these subpoenas? I haven't
15 seen them. I don't know what you're talking about with any
16 specificity.
17      MR. SHALEK: Okay. They subpoenaed a former sales
18 representative of the plaintiff, who was a consultant for
19 Defendant DenTek for a two-month period. And they're basically
20 going on a fishing expedition, hoping to find some movement of
21 their confidential information into DenTek, and they assert a
22 document request and subpoena, as well. That's one.
23      The other three subpoenas, which we just got last
24 Friday afternoon, are essentially directed to three doctors at
25 Tufts Medical School that have done some consulting for both

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

1  parties. And I assume that their theory is that there is
2  something confidential about these world-renowned experts on
3  this particular area. But what it is, we don't know.
4       And you know, as I mentioned, we're at a loss, your
5  Honor, because right now, there is no claim directed to
6  misappropriation of confidential information, and we have no
7  idea what it is they're talking about, what they claim that
8  we've taken, and why these people's depositions would be
9  relevant to something that's in the case.
10      MR. RAMAGE: Your Honor, if I may address very briefly
11 the four individuals.
12      The first individual is Ray Duane, Raymond Duane. He
13 is far more than a former salesperson for Dental Concepts.
14      Let me give the Court just a very quick background.
15      Medtech, plaintiff in this case, acquired Dental
16 Concepts by acquisition in November of 1995, and paid a
17 handsome sum for that acquisition.
18      THE COURT: Your motion says 2005. Should it —
19      MR. RAMAGE: Excuse me. 2005. I'm sorry.
20      It's been a long morning on a plane, your Honor, and
21 I'm a little bit dehydrated.
22      And subsequent to that, right at the time they
23 acquired, there were five primary individuals leading Dental
24 Concepts, two of whom, Carol Kaplan and Ray Duane, have been
25 discussed this morning.

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

11

0779medMS

1       Ray Duane, I believe he was the vice president in
2  charge of marketing?
3       MR. SHALEK: Sales.
4       MR. RAMAGE: Sales. Excuse me. He's vice president
5  in charge of sales. Carol Kaplan was the one vice president in
6  charge of marketing.
7       And, in fact, in January of this year, we, through
8  some e-mail conversation, he told us that he had done, in fact,
9  a limited two-month consulting gig with DenTek, and we didn't
10 think anything of it at the time. We thought it was over.
11      We were surprised about three weeks ago — and this is
12 the reason for the subpoena that we filed two and a half weeks
13 ago. We were surprised to find Mr. Duane representing DenTek
14 at a National Association of Chain Drugstores conference in
15 Boston, along with Carol Kaplan. In fact, he's listed in the
16 attendance program as a consultant representing DenTek Oral
17 Care, Inc.
18      Given the circumstances, he, like Carol Kaplan, signed
19 a release agreement at the time of the acquisition. They were
20 paid a handsome amount of money in order to maintain the
21 information of Dental Concepts in confidentiality.
22      We believe that Carol Kaplan — that's the reason for
23 the amendment — has violated that confidential agreement.
24 Given Mr. Duane's involvement at this point, which is a
25 surprise to us, we hear that he may, in fact, have also

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

12

0779medMS

1  violated that agreement. However, we don't want to sue him
2  unnecessarily. We don't want to bring him in as a defendant or
3  in any lawsuit anywhere without trying to determine whether or
4  not — what his involvement is with DenTek.
5       If, in fact, the defendants are correct and his
6  involvement is minimal, he hasn't disclosed anything to DenTek,
7  then we will have — quickly get in and out of the depositions.
8  We'll be able to review a small limited amount of documents
9  under the subpoena, and that will be the end of it. We can
10 proceed forward.
11      There are two parts to all of these subpoenas, your
12 Honor. There is request for production of documents, which we
13 are entitled to have; and then the issue that we're discussing
14 here, which is the timing of the actual depositions themselves.
15 And we are very willing to be flexible with regard to the
16 timing of those.
17      Mr. Duane's case, we wanted his deposition as quickly
18 as possible, because we have here one of the top five former
19 officers all of a sudden showing up representing a defendant in
20 a lawsuit — excuse me — representing a company that we have
21 sued, and who has just entered into the market with a competing
22 product. (unintelligible) infringes trademark rights, patent
23 rights, copyrights, and, basically, is engaged in unfair
24 competition.
25      The Tufts individuals —

MARY M. STATEN, CSR, RPR, RMR
(914) 390-4027

## Page 13

1  By the way, Mr. Duane, because of his relationship
2  with DenTek at this point, we don't really think of him as a
3  true third party. In fact, DenTek's counsel has said that they
4  will be representing Mr. Duane. In fact, they did file a
5  response to the subpoena duces tecum on Friday. In that
6  response, they did say that they would be producing some
7  documents.
8  There is a draft protective order that the parties
9  have routed around. We're awaiting comments back from the
10  defendants. And as soon as we have that agreement by all
11  parties and entered by the Court, then we can actually get to
12  the document production.
13  With regard to the Tufts doctors, they also are not
14  true third parties. They had a consulting -- confidential
15  consulting agreement with Dental Concepts prior to the
16  acquisition. And, in fact, Medtech was involved with about
17  eight months of negotiations with these three Tufts doctors to
18  do continued work for them until they backed out at the last
19  minute, claiming that they had an unspecified agreement with an
20  unspecified -- excuse me. I think it was an unspecified
21  company. They said they can't go into this. Why they didn't
22  bring it up sometime in the prior eight months, we don't know.
23  Given all the circumstances of what has now occurred
24  since that time, namely, the introduction of a competing
25  product that we claim infringes our patent, and the fact that

## Page 14

1  DenTek has achieved approval from the FDA now for
2  over-the-counter sales -- in fact, they used the same law firm
3  that we used the prior year -- we have strong suspicions that
4  the Tuft doctor may have -- Tufts doctors may have information
5  that is relevant to this case. If, in fact, it turns out that
6  they don't, we've gotten them out of the way early on in the
7  case, and we can move on.
8  And the date for those, your Honor, has now been set.
9  I believe we have noticed those for the week of the 23rd,
10  beginning the week of the 23rd.
11  THE COURT: July 23rd.
12  MR. RAMAGE: July 23rd.
13  THE COURT: Mr. Shalek?
14  MR. SHALEK: Yes, your Honor.
15  I think in the first instance, Mr. Ramage has been
16  very candid in saying that what he hopes to do is go and find a
17  violation, rather than prove one that's been raised by the
18  pleadings.
19  If, in fact, the Court is inclined to allow discovery
20  to go forward of these parties, what we have in the case is a
21  patent, a trademark and a copyright claim, along with some
22  general unfair competition that relates to that. We still
23  don't know what the confidential information that they claim
24  has been taken, as we still don't have it in the pleading.
25  But what we would propose is that if they go forward

## Page 15

1  with those depositions that they be required, before they be
2  permitted to amend the complaint, to identify with specificity
3  what, in fact, the trade secrets and confidential business
4  information is.
5  Our position, your Honor, is, frankly, they should
6  have to do it today in order to go forward. But if the Court
7  is inclined to let these depositions go forward, to let them
8  try and find something, we think it's only fair that before we
9  get into a new lawsuit, we know what it's about.
10  And, your Honor, relative to scheduling, Mr. Ramage
11  has said the depositions have been -- subpoenas have been set
12  for the 23rd, 24th, 25th. We weren't even consulted before
13  these subpoenas were served. And I think it just is a matter
14  of courtesy that counsel ought to work with us in finding some
15  available dates.
16  I know, for example, that Mr. Duane's available the
17  26th or 27th, but not available the specific date they
18  subpoenaed him. They draw up the subpoena on him on June 30th
19  with a return date on document production on July 6th, and
20  deposition on July 10th.
21  THE COURT: Ms. Helmer, I think you're up, if you have
22  anything to add.
23  MS. HELMER: No, your Honor. We are -- pardon me,
24  your Honor. We represent Medtech/Power Products, Inc. We're
25  are not involved with the patent claims or the "trade secret"

## Page 16

1  claims that are at issue between the plaintiff and DenTek?
2  (Pause)
3  THE COURT: Might I inquire. In the transcript before
4  Judge Brieant, there was some indication, Mr. Ramage and
5  Mr. Shalek, that your clients were talking about a possible
6  disposition. Is that no longer a possibility?
7  MR. RAMAGE: In fact, we're meeting, your Honor, this
8  afternoon at 2:30.
9  And by the way, the 26th, 27th, if that is a date that
10  the defendant's counsel is saying will be acceptable to
11  Mr. Duane, that's perfectly acceptable with us, as well.
12  THE COURT: Well, it's not my practice to micromanage
13  dates unless counsel are so completely at odds with one another
14  that they can't do it themselves. Especially with this number
15  of attorneys, it ends up being very difficult, and I'd like to
16  leave it in counsel's hands.
17  What I suggest is that while you're here, you talk to
18  each other, you find some dates that everybody can work out,
19  and then try to find within those dates some dates that the
20  various witnesses can reach.
21  I'm going to order the motion to amend held in
22  abeyance, pending some initial discovery. I'm going to allow
23  the discovery to go forward.
24  It seems to me that it is sufficiently related to the
25  pleadings and, certainly, the proposed pleadings, that it falls