

1800 REPUBLIC CENTRE
633 CHESTNUT STREET
CHATTANOOGA, TENNESSEE 37450
PHONE:  423.756.2010
FAX:  423.756.3447
www.bakerdonelson.com

T. O. HELTON
**Direct Dial**: 423.209.4194
**Direct Fax**: 423.752.9544
**E-Mail Address**: thelton@bakerdonelson.com

February 8, 2008

**<u>VIA UPS OVERNIGHT DELIVERY</u>**

Honorable Lisa M. Smith
United States Magistrate Judge
United States Courthouse
300 Quarropas St., Room 428
White Plains, NY  10601

Re:    <u>Medtech Products, Inc. v. DenTek Oral Care, Inc., et al.</u>, in the United States District
Court Southern District of New York.
Case No. 07 cv. 03302 (KMK) (LMS)

Dear Chief Magistrate Judge Smith:

We, together with Alston & Bird, represent Plaintiff Medtech Products Inc. ("Medtech") in the above-referenced matter.

The purpose of this letter is to request that the Court: a.) decline to limit discovery related to the identification of trade secrets; b.) require the parties to begin immediately providing discovery responsive to the June, 2007 requests; and c.) permit the parties to immediately push forward with full discovery concerning all issues. We also believe that the Court may rule at this time on the pending motions to dismiss as they are directed solely to allegations in the Second Amended Complaint.

At a hearing before this Court on December 21, 2007, originally scheduled for the purpose of oral argument of Defendants' Motions to Dismiss and various discovery matters, the Court:

1.) Ruled on two discovery disputes;

2.) Deferred argument on the Motions to Dismiss; and

3.)  Ordered Medtech to submit a plan of limited discovery, with Defendants given an opportunity to object.

The Court neither stated nor intimated that discovery at this time would be granted to any party other than Medtech. Indeed, because the Court limited discovery to the identification of trade secrets, logic would suggest that Medtech would be initiating the bulk, if not all, of the discovery requests.

421099

Honorable Lisa M. Smith
February 8, 2008
Page 2

Pursuant to the Court's order, Medtech filed its Discovery Plan with the Court on January 4, 2008, a copy of which is attached as **Exhibit A**.[1]

In DenTek's January 22 response, a copy of which is attached as **Exhibit B**[2], it:

1.) Argued that Medtech's requests were too broad, because it was alleged that Medtech sought information other than that calculated to identify trade secrets;

2.) Asserted that Medtech's Requests were too narrow, because it was alleged that in order to prove a trade secret claim, Medtech must show Defendant's use of the secret, Medtech had not asked for discovery about use of its trade secrets by Dentek, so Medtech was obviously admitting that its trade secret claim should be dismissed;

3.) Generally argued the merits of its Motion to Dismiss (an issue in no way related to the Court's Order and inappropriate for that letter); and

4.) Submitted a broad, virtually unlimited set of discovery that it sought from Medtech.

The Court has scheduled argument concerning these discovery issues for 2:30 p.m., February 14.

As the Court considers the relief which Medtech requests in this letter, several facts should be kept in mind:  a.) This case was filed April 24, 2007; b.) Medtech served discovery regarding its intellectual property claims on DenTek on June 7, 2007; c.) it took eight months for the parties to negotiate a Protective Order and still the Court was forced to resolve two issues; d.) to date, DenTek has produced no discovery; e.) the only discovery Medtech has been successful in obtaining is two depositions of non-parties (at the time) and 200 or so documents from such parties; and f.) the limitation of focus on "trade secrets" is artificial and far too narrow because while trade secrets are involved, there is also a great deal of "proprietary information" which may or may not be "trade secrets."

It is against this backdrop that the Court should consider the parties' current dispute about whether Medtech is entitled to discovery concerning its intellectual property claims.

**A.     THE DISCOVERY ON MEDTECH'S INTELLECTUAL PROPERTY CLAIMS SHOULD PROCEED IMMEDIATELY**

Medtech requested that this Court hold a conference with the parties to resolve whether this Court's limited discovery ruling of December 21, 2007 was intended to stop all discovery on Medtech's outstanding intellectual property claims.

On January 16, 2008, DenTek's position was that no discovery on the intellectual property claims could proceed until all the issues on the trade secret discovery and listing are resolved.

---

[1] Because the attachments to Exhibit A are extensive and the Court has copies, additional copies of those attachments have not been provided with this letter.

[2] Attachments to Exhibit B have been omitted for the reason given in Note 1.

Honorable Lisa M. Smith
February 8, 2008
Page 3

The following day, Medtech asked this Court for an informal conference to resolve this issue. DenTek refused to participate in the conference that the Court offered the parties on Thursday, January 24, 2008. (*See* e-mails attached as collective **Exhibit C**.) Despite DenTek's action, Medtech produced documents responding in part to DenTek's outstanding intellectual property claims on January 17, 2008. Medtech would have produced many more documents but for the total lack of cooperation of DenTek.

In its letter to the Court of January 22, 2008, DenTek offered a convoluted explanation for why discovery on the intellectual property claims should be stalled. It tried to parse this Court's language from the December 21, 2007 hearing to support its position. The protective order was the reason discovery was not started. Now that those issues are resolved, and a protective order has been submitted, there is no reason to delay discovery on the pending intellectual property claims that are ***not impacted by any of the outstanding motions***.

Medtech filed its Complaint for Injunctive Relief and Money Damages against DenTek over ten months ago. (*See* 4/24/2007 Complaint.) The Complaint alleged only DenTek had stolen Medtech's intellectual property, and sounded in trademark, patent, copyright and common law unfair competition. (*Id.*) In that context, both parties submitted document requests to the other that related ***solely*** to those intellectual property claims:

- DenTek's First Request for Production of Documents to Medtech, dated June 5, 2007, attached as **Exhibit D**;

- Medtech's First Set of Requests for Production of Documents and Things to DenTek, dated June 7, 2007, attached as **Exhibit E**;

(hereinafter, the "Intellectual Property Discovery".)

DenTek's and Kelly Kaplan's Motions to Dismiss the trade secret claims have nothing to do with the Intellectual Property Discovery. Therefore, there is no reason at all why the document discovery on the intellectual property claims should not proceed. ***The Intellectual Property Discovery will occur in all events because the intellectual property claims are not part of the motions to dismiss.***[3] Therefore, if discovery is to be "limited" in accordance with the Court's December 21, 2007 ruling, that limitation can relate only to the trade secret claims.

DenTek's actions regarding the Court's December 21 rulings are just the latest demonstration of its clear intent all along to postpone any discovery on the intellectual property claims. DenTek has time and again complained to this Court that discovery was being held up; Medtech has time and again

---

[3]     In its submission, DenTek placed some emphasis on the point that the motions to dismiss had been stayed. (*See* Ltr. from DenTek to Chief Magistrate Judge Smith at p. 2 ("In so ruling, the Court stayed the pending motions and focused the parties solely on the trade secret discovery . . . .").) However, as no "pending motions" have been made by either side to stay the intellectual property discovery that has been outstanding since June 2007, staying the motions to dismiss relating to the trade secret claims simply ***cannot have any bearing on that outstanding intellectual property discovery***. This is discovery that is going to have to happen at some point. DenTek is just stalling.

Honorable Lisa M. Smith
February 8, 2008
Page 4

informed the Court that the reason discovery was held up was solely because of the lack of a protective order governing the confidentiality of documents exchanged. DenTek's discovery shell game must end.

In preparation for the hearing that was scheduled for February 1, 2008, Medtech had the opportunity to fully analyze the importance and ramifications of this Court's rulings at the December 21, 2007 hearing, in the light of the above history, which outlines Medtech's frustration in obtaining discovery and DenTek's abuse of the process.

Based upon DenTek's intransigence on this point, Medtech anticipates that further efforts to obtain any discovery from DenTek and Ms. Kaplan will be resisted as well. Consequently, Medtech opposes any discovery process that is an interim measure. Medtech fully expects that the issue of what is meant by such a ruling is simply likely to lead to more delay, more disagreement, more cost, and more time spent by this Court addressing what it meant in the interim ruling. Medtech would prefer to push this case to a conclusion.

## B.  MEDTECH HAS SUFFICIENTLY PLEADED ITS TRADE SECRETS IN THIS CASE AND DOES NOT REQUIRE DISCOVERY TO DEFEND SUCCESSFULLY DEFENDANTS' MOTIONS TO DISMISS

Medtech's position has consistently been that the Second Amended Complaint in this case sufficiently identifies the trade secrets that are at issue in this case such that the parties may go forward with general discovery. (*See* Medtech's Resp. to DenTek's Motion for a Entry of a Protective Order at p. 2-3; Medtech's Resp. to DenTek's Motion to Dismiss at pp. 10-20.)

DenTek's Motion to Dismiss primarily claimed that "Medtech has failed to plead the existence of a cognizable trade secret" in the Second Amended Complaint. (DenTek's Mot. to Dismiss at p. 8). As a fall-back position, DenTek claimed that it was "not placed on fair notice as to the trade secrets at issue in this case" and that this Court should order that a list be prepared in order to limit discovery. (*Id.* at p. 28.)[4] In all events, the adequacy of the allegations in the Second Amended Complaint is all that is at issue in the Motions to Dismiss—and, that issue can be decided without "limited discovery" and the need for more delay and expense.

Ray Duane and Kelly Kaplan were involved in virtually every aspect of Medtech's business related to the NIGHTGUARD™ brand dental protector. (*Id.* at ¶ 41.) Mike Lesser, the former CEO of Dental Concepts LLC, has filed an affidavit with the Court to this effect, stating that Ray Duane and Kelly Kaplan "were broadly involved in the NIGHTGUARD™ business line, including brand development and marketing, and the formulation of strategic sales and market goals and initiatives. Throughout their employment, they also had the opportunity to become familiar with many of the Dental

---

[4] In support of that position, DenTek has cited *Xerox Corp. v. International Business Machines Corp.*, 64 F.R.P. 367 (S.D.N.Y. 1974). However, the facts of *Xerox* are quite different from the present matter. In *Xerox*, it was only after a year of pre-trial discovery that the Court ordered Xerox to specify its trade secrets in more detail. Although this case has been pending since April, 2007, DenTek has consistently and vigorously opposed all discovery. As a result, DenTek has provided no discovery—not a single document. This is hardly like *Xerox*.

Honorable Lisa M. Smith
February 8, 2008
Page 5

Concepts' consultants, brokers, designers, suppliers, product formulation and production sources, and marketing strategies." (Decl. of Michael Lesser at ¶ 7.)

Because of the breadth and depth of Duane's and Kaplan's exposure to virtually every aspect of Medtech's business, it is impossible to identify every aspect of Medtech's business that is or was a trade secret. Therefore, the following bullets from the Second Amended Complaint are merely illustrative of the types of information that are at issue in this case:

- Medtech's confidential and proprietary list of manufacturers which have the capabilities to manufacturer the specific product at issue, and valuable strategic information relating to those manufacturers, (Second Amended Complaint at ¶¶ 10, 52, 138, 139);

- Medtech's confidential and proprietary list of dental and other consultants who assisted Medtech with its product, (and thus, have the potential to aid an unscrupulous competitor to copy Medtech's product) and along with Medtech's valuable strategic information relating to those consultants, (id. at ¶¶ 10, 51, 55, 137, 140, 146);

- Medtech's confidential legal advice, as well as its regulatory strategies, submissions, and advice, (id. at ¶ 10, 57, 63, 64, 83, 84, 151-155, 160, 166-167);

- Medtech's confidential and proprietary strategy to maintain a three-size platform to its dental protector and other forward-looking marketing plans and concepts, (id. at ¶¶ 10, 89, 106, 122-124, 161-62);

- Medtech's confidential and proprietary research and development, (id. at ¶¶ 54, 55, 106);

- Medtech's confidential and proprietary cost and pricing information for strategic customers, including Wal-Mart, (id. at ¶¶ 278)

The Second Amended Complaint clearly and plainly shows the effect of Ray Duane's and Kelly Kaplan's association with DenTek: "DenTek, Duane and Kaplan used Medtech's confidential and proprietary [information] to virtually eliminate DenTek's development process and [accelerate its] competitive entry into the dental protector market," (Second Amended Complaint at ¶¶ 164, 128, 129), with full knowledge that a "window of opportunity existed to enter into the market with a one-size-fits-all device and gain shelf space in the largest retailer with minimal or no risk," (id. at ¶ 124).

As the above makes clear, this case is not simply a trade secret case. Rather, it is about proprietary and confidential information as well. Here, two of the defendants, Ray Duane and Kelly Kaplan, signed agreements that they would not disclose any of Medtech's confidential and proprietary information, and agreed that virtually everything in the organization was to be held as a trade secret. The Second Amended Complaint clearly pleads a claim against DenTek for inducing a breach of these agreements covering the confidential information. Therefore, any information regarding Medtech that was communicated between these parties is relevant to the claims that are made against these parties.

Honorable Lisa M. Smith
February 8, 2008
Page 6

## C.    MEDTECH SUBMITS THAT THIS COURT MAY DECIDE THE MOTIONS TO DISMISS AND PERMIT THE PARTIES GENERAL DISCOVERY REGARDING ALL ISSUES

DenTek has been stalling discovery for long enough. Therefore, Medtech makes the following proposals, which Medtech asks that the Court consider at the hearing currently scheduled for February 14th.

First, the Court should order the parties to immediately commence responding to outstanding requests for production of documents.

Second, as the pending motions to dismiss are directed toward the allegations in the Second Amended Complaint, Medtech believes that the Court may decide them without any further discovery. Unless the Court believes that oral argument is necessary, Medtech further suggests that this decision can be made on the extensive briefs submitted by all parties, many of those briefs exceeding the page limitation set out in the local rules. If oral argument is necessary, Medtech would request that any oral argument be held on February 14th, and that the Court would advise the parties of any time limitations that will be imposed on the parties' arguments.

Third, because of the seeming inability of the parties to reach any agreement even on routine matters, and the delays that has been caused by such disagreements, Medtech requests that the Court consider a mechanism for rapid decision of any disputes raised among the parties concerning discovery in this case.

Medtech would suggest that one of two alternate methods should be discussed. This Court could schedule regular conference calls (either weekly or biweekly) so that any disputes could be raised with the Court and decided. Another mechanism for resolving disputes could be directions from the Court regarding how a party can force a conference call with all parties and the Court if one of the parties believes that such a conference call is necessary to resolve a dispute.

Medtech looks forward to discussing these issues with the Court, and to bringing this to a more expeditious resolution that will be more cost effective for all parties involved.[5]

Very truly yours,

T. O. Helton
For the Firm

---

[5]    Medtech notes that DenTek copied District Court Judge Karas on its letter to the Court of January 22, 2008. Medtech is not sure of the purpose in copying the District Court on one side of part of the story of a discovery dispute that this Court ordered be submitted to it. Therefore, Medtech would request that this Magistrate Court inform the parties of the appropriateness of copying the District Court on further letter submissions to the Magistrate Judge, so that all parties can be sure of the standard that should be followed in copying Judge Karas.

421099

Honorable Lisa M. Smith
February 8, 2008
Page 7


TOH:pt


cc:     All counsel of record via email and overnight mail
        Michael A. Freeman via email and overnight mail

421099

# EXHIBIT A

# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-210-9444
www.alston.com

Karl Geercken                    Direct Dial: 212-210-9471        E-mail: karl.geercken@alston.com

January 4, 2008

*VIA HAND DELIVERY*

Honorable Lisa M. Smith
United States Magistrate Judge
United States Courthouse
300 Quarropas St., Room 428
White Plains, NY 10601

        Re:     *Medtech Products Inc. v. DenTek Oral Care, Inc. et al.*, 07-cv-3302
                (KMK)(LMS) (S.D.N.Y.)

Dear Chief Magistrate Judge Smith:

        In accordance with your bench ruling on December 21, 2007, Medtech Products
Inc. ("Medtech") is submitting its proposed discovery plan in preparation for the
preliminary injunction hearing. This discovery is focused on identifying trade secrets and
other confidential and proprietary information in advance of that injunction hearing and,
as the Court requested, is as limited and narrow as possible. Medtech understands that
this discovery will not foreclose later substantive discovery on all its claims.

        In that regard, Medtech proposes the following:

1.      Depositions.

        Medtech proposes to take the following depositions:

                (a) Kelly Kaplan;
                (b) DenTek 30(b)(6) deposition, in accordance with the proposed notice,
                attached as Exhibit 1 hereto;
                (c) third party Item New Product Development ("Item");
                (d) third party Stelray Plastic Products, Inc. ("Stelray"); and
                (e) third party Hogan & Hartson ("H&H").

        Medtech has already issued a third party subpoena to both Stelray and Hogan &
Hartson and, in accordance with this Court's order on December 21, 2007, will pursue

---

Atlanta • Charlotte • Dallas • New York • Research Triangle • Washington, D.C.

Honorable Lisa M. Smith
January 4, 2008
Page 2

those subpoenas in the jurisdictions from which they were issued.  Similarly, Medtech
will issue a subpoena to Item from the appropriate jurisdiction.

2.     Document Discovery.

       Medtech proposes document discovery consistent with the proposed Limited Set
of Requests for Production of Documents to Defendants Regarding Trade Secrets and
Confidential Information, attached as Exhibit 2 hereto.

       Medtech looks forward to proceeding as expeditiously as possible in this matter.

                                        Respectfully submitted,

                                        Karl Geercken

Enclosures

cc:    All counsel of record via email and overnight mail
       C.D.S. Associates and Ray Duane via email and overnight mail

# EXHIBIT B

1585 Broadway
New York, NY 10036-8299
Telephone 212.969.3000
Fax 212.969.2900

LOS ANGELES
WASHINGTON
BOSTON
BOCA RATON
NEWARK
NEW ORLEANS
PARIS
SÃO PAULO

# PROSKAUER ROSE LLP

Theodore K. Cheng
Attorney at Law

Direct Dial 212.969.3576
tcheng@proskauer.com

January 22, 2008

**By Hand**

The Honorable Lisa M. Smith
United States District Court
Southern District of New York
United States Courthouse
300 Quarropas Street, Room 428
White Plains, NY 10601-4150

Re:     *Medtech Products, Inc. v. DenTek Oral Care, Inc.*, No. 07 Civ. 3302 (KMK) (LMS)

Dear Judge Smith:

On behalf of Defendant DenTek Oral Care, Inc. ("DenTek"), in accordance with the Court's directive at the December 21, 2007 hearing, I respectfully submit this letter in response to the January 4, 2008 proposed discovery plan of Plaintiff Medtech Products, Inc. ("Medtech"). After setting forth the reasons why Medtech's proposed discovery plan does not comply with the Court's discovery rulings, DenTek submits its counterproposal for limited discovery of the trade secret and related claims.

<u>The Court's Discovery Rulings</u>

At the December 21, 2007 hearing, after resolving the parties' disputes over the proposed protective order governing the disclosure of confidential materials in this case, the Court inquired whether Medtech and DenTek were prepared to engage in the production of documents. *See* Hrg. Tr. at 30:22-31:19 (excerpts attached hereto as <u>Exhibit A</u>). DenTek's counsel represented that DenTek would "work promptly and produce documents, but that does not alleviate or ameliorate the concern that plaintiff has not identified the trade secrets," *id.* at 31:14-16, which the Court acknowledged.

The Court then determined that the appropriate procedure for proceeding in view of the parties' pending dismissal and preliminary injunction motions was for Medtech to "identify the limited discovery that it needs in order to be able to further identify the trade secrets upon which it relies and that that specification of those trade secrets should then be produced promptly . . .

**PROSKAUER ROSE LLP**

The Honorable Lisa M. Smith
January 22, 2008
Page 2

because, without that specification, it may very well be impossible to go forward, at least as to some of the causes of action." *Id.* at 32:4-6, 14-16. Specifically, the Court ruled that Medtech should

> provide not only an outline of the discovery that is needed, making it as concise and limited as possible and focused on the issue of trade secrets, but also a time line for seeking and obtaining production of that, along with a proposal of when the more specific identification and designation of the trade secrets upon which [Medtech is] relying both for [its] preliminary injunction motion and for . . . the second amended complaint.

*Id.* at 33:8-15. In so ruling, the Court stayed the pending motions and focused the parties solely on the trade secret discovery, noting that it did not want "to delay the case any more than necessary," but "that, procedurally, it's important for us to move in that direction." *Id.* at 33:20-22. Moreover, the Court encouraged the parties "to confer with each other to see if perhaps some of it, at least, can be done by agreement in terms of a schedule." *Id.* at 35:18-19.

<u>Response to Medtech's Proposed Discovery Plan</u>

Notwithstanding Medtech's representations to the contrary, its proposed discovery plan largely fails to comply with the Court's rulings.

*First,* Medtech's proposal is not designed to resolve whether the trade secret and related claims can continue to be prosecuted in this action. In the introduction to its proposed document requests (Exhibit 2), Medtech states that its requests are "narrowly tailored to identify only the trade secret and other confidential and proprietary information that will be in issue." Oddly, Medtech then states that it "does not address the disclosure and use of Medtech's information," something Medtech has earlier admitted it does not know and without which Medtech has no claim at all. Prop. Doc. Req. at 2.

It is well settled that a plaintiff claiming a misappropriation of a trade secret must prove not only that it possessed a trade secret, but also that the defendant improperly appropriated that trade secret and used it. *See, e.g., Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc.,* 920 F.2d 171, 173 (2d Cir. 1990). Medtech just last month contended in its motion papers that it needs discovery regarding how DenTek allegedly used its purported trade secrets. *See, e.g.,* Pl.'s Prot. Order Mem. at 3 ("Until Medtech has time to fully explore the issues in this case, it will not know what information was ultimately acquired and used by DenTek."); *id.* at 6 ("Medtech needs and is entitled to discovery to establish what portion, if not all, of its

**PROSKAUER ROSE LLP**

The Honorable Lisa M. Smith
January 22, 2008
Page 3

confidential and proprietary information has been disclosed to DenTek.").[1] Thus, in failing to request any discovery directed towards the disclosure and use of its alleged trade secrets by DenTek, Medtech is essentially conceding that DenTek's motion to dismiss Medtech's trade secret claims will almost assuredly prevail.

*Second*, Medtech's proposed discovery plan evinces little effort to tailor its requests narrowly to accomplish the goals set forth by the Court. Indeed, the very language Medtech employs suggests that it intends to rifling through the entirety of DenTek's files relating to the products at issue. For example, in one request, Medtech seeks the following:

> Documents and electronically stored information that reflect or relate to any development, design, strategic planning, marketing positioning, communications, or other steps toward creating a dental protector by DenTek both (a) before the hiring of Duane or Kaplan; (b) after the hiring of Duane; and (c) after the hiring of Kaplan.

Prop. Req. No. 3. As drafted, the request literally encompasses every document relating in any way to DenTek's nightguard before April 24, 2007 (the relevant time period called for in its requests). *See also* Prop. Req. No. 17 (seeking documents "relating to the product development of the DenTek dental protector. . . ."). Other requests are patently overbroad and not drafted in a manner consistent with the Court's rulings. *See, e.g.,* Prop. Req. No. 5 (seeking documents "that DenTek received from or through Kaplan and/or Duane that summarize, reference, or otherwise relate to bruxism or teeth grinding market information or data"); Prop. Req. No. 8 (seeking documents "in DenTek's possession, custody, or control that relate to Medtech").[2] Another request ignores facts already adduced by Medtech in discovery thus far:

> Documents and electronically stored information relating to communications with any consultant to DenTek regarding the design and

---

[1]  These assertions, of course, demonstrate the futility of Medtech's preliminary injunction motion, as even Medtech itself apparently does not know that its claims are likely to succeed. *See id.* at 9 (admitting that "[i]t does not know the extent to which this information actually has been passed onto DenTek or the other defendants").

[2]  In that regard, Medtech's proposed Request No. 11 incorporates by reference numerous requests for documents (organized into 7 categories) from defendant Raymond Duane, without any attempt to narrow or limit them to comply with the Court's discovery rulings. Moreover, Medtech has already taken discovery from Mr. Duane. In proposed Request No. 12, Medtech also incorporates by reference another 47 document requests stemming from the then third-party subpoena to now defendant Kelly Kaplan. Again, Medtech has made no substantive effort to narrow or limit these requests.

**PROSKAUER ROSE LLP**

The Honorable Lisa M. Smith
January 22, 2008
Page 4

development of the DenTek dental protector. This request includes, but is not limited to, any communications with Drs. Noshir Mehta, Ayman Aboushala, and Gerard Kugel, as well as Ronald Spencer.

Prop. Req. No. 19. With respect to Drs. Mehta, Aboushala, and Kugel – otherwise known as the Tufts dentists – Medtech learned in the depositions last August that they were retained by DenTek solely to provide DenTek with technical expertise about nightguards and to help in obtaining FDA approval for the product, and not about Medtech or its product. *See* Mehta Dep. Tr. 59:9-11, 74:1-13, 80:4-81:11, 82:3-24 (excerpts annexed as Cheng Decl., Ex. O).

Medtech's proposed Rule 30(b)(6) deposition subjects suffer from similar infirmities. For example, Medtech purports to need testimony from DenTek on its "pricing (per unit) to Wal-Mart for the DenTek dental protector . . . ." Prop. Sub. No. 14. Even assuming that Medtech's decision to maintain its three-size configuration for nightguards was a proprietary strategy, DenTek's pricing to Wal-Mart for its own nightguard is wholly irrelevant to the limited discovery being authorized at this time. Moreover, Medtech's request to have DenTek produce a witness to testify as to "DenTek's search for documents and electronically stored information in response to the Limited Discovery served contemporaneously with this Deposition Notice," Prop. Sub. No. 11, is a pointless sideshow.

Furthermore, Medtech now suddenly seeks discovery from Item New Product Development ("Item"), an entirely new third-party. Although Item was discussed in the parties' motion papers, Medtech never previously indicated any need to seek discovery from this party. Additionally, although Medtech previously issued a third-party subpoena to Stelray Plastic Products, Inc. ("Stelray") on or about July 6, 2007, to our knowledge, it has never enforced the subpoena or otherwise pursued discovery against Stelray in the intervening six months. Involving these two entities in the limited discovery plan would necessarily entail further delays in the schedule and impede an expeditious resolution of the pending motions.

*Finally*, Medtech fails to provide any proposed timeframe or schedule for either obtaining the discovery it purports to need or ultimately identifying and designating the alleged trade secrets upon which it is relying to support its preliminary injunction motion and the Second Amended Complaint, as required by the Court's discovery rulings.

In a telephone conference attended only by counsel for DenTek and Medtech on January 16, 2008, Medtech demanded, among other things, that DenTek's production of documents should commence immediately, including those documents responsive to Medtech's previous requests relating to its patent, trademark, and copyright claims. However, there is significant overlap between the documents relevant to Medtech's intellectual property claims and its trade secret and related claims. Thus, producing documents relating to the former claims would necessarily permit Medtech to engage in a fishing expedition into DenTek's files on the trade

PROSKAUER ROSE LLP

The Honorable Lisa M. Smith
January 22, 2008
Page 5

secret claims, thereby accomplishing an end-run around the Court's discovery rulings. Although Medtech stated a large number of claims in its initial complaint – sounding in patent, trademark, copyright, and unfair competition – it has never been content to litigate the claims it originally brought in this action, even after claiming a need for injunctive relief and stipulating to an expedited schedule. The parties should determine what the pleadings will look like after the limited discovery proposed by the Court and then move forward with discovery.

    As this Court's rulings made clear, the only discovery authorized by the Court at this time is the limited and focused discovery relating to Medtech's trade secret claims, in light of the parties' pending motions. Moreover, the scope and schedule of that discovery will be determined through the parties' respective submissions and the discussions with the Court on February 1, 2008. *See* Hrg. Tr. at 35:22-24. In the telephone call, Medtech also proposed a one-month discovery period for completing both the production of documents and depositions. However, such a schedule is patently unreasonable and impracticable, given the amount of information Medtech is now seeking and DenTek itself may seek in return.

                    DenTek's Proposed Modifications to Medtech's Proposed Discovery Plan

    Notwithstanding the foregoing, in the interests of proceeding expeditiously towards a resolution of the pending motions before the Court, DenTek proposes the following modifications to Medtech's discovery plan.

    With regards to Medtech's need for discovery, aside from the subpoena to third-party Hogan & Hartson LLP (discussed below), the Court's discovery rulings can best be accomplished by propounding limited discovery solely on DenTek, subject to reasonable limitations on their scope and the assertion of any applicable privileges or immunities from disclosure. If the purported trade secrets were not disclosed to DenTek and then further used by DenTek in the manufacture, marketing, and sales of its nightguard, then Medtech's claims will necessarily fail. The essential element of any trade secret claim is that the defendant possessed a trade secret improperly and used or disclosed it. Consequently, the analysis starts with what DenTek possesses, not others. Directing discovery to DenTek will enhance efficiency and minimize delay.

    Thus, at this time, Medtech should not be permitted to take the proposed depositions of, or propound document requests or subpoenas upon, Ms. Kaplan or the two third-parties (Item and Stelray). Medtech also should not be permitted to propound further document requests against Mr. Duane and defendant C.D.S. Associates, Inc. Including these depositions and requests at this time will only serve to prolong discovery and increase litigation costs.

    With respect to the subpoena issued to Hogan & Hartson, this Court ruled at the December 21, 2007 hearing that any enforcement of that subpoena should be directed to the

**PROSKAUER ROSE LLP**

The Honorable Lisa M. Smith
January 22, 2008
Page 6

United States District Court for the District of Columbia. *See* Hrg. Tr. at 11:12-24. Moreover, DenTek objects to the proposed deposition of a Hogan & Hartson representative as cumulative, overly burdensome, and needlessly expensive and, thus, not encompassed within the "concise and limited" discovery this Court ordered. *Id.* at 33:9. However, so as to avoid potential motion practice in the District of Columbia, if Medtech agrees to forego this deposition, DenTek is prepared to compromise and withdraw its current objections to the subpoena by authorizing Hogan & Hartson to produce responsive documents, subject to reasonable limitations on their scope and the assertion of any applicable privileges or immunities from disclosure.

With regards to an appropriate schedule for the limited discovery, DenTek proposes that the parties be provided 60 days within which to complete producing documents. During that time, DenTek will produce documents responsive to Medtech's proposed requests, subject to reasonable limitations on their scope (as noted in attached <u>Exhibit B</u>) and the assertion of any applicable privileges or immunities from disclosure. For its part, Medtech should (a) provide answers to interrogatories relating to its trade secrets (including, but not limited to, Interrogatory Nos. 24 and 25, which were previously propounded and are annexed as Reply Cheng Decl., Ex. S); and (b) produce all documents that relate to the existence and alleged misappropriation of its trade secrets that formed the bases for filing its Second Amended Complaint and preliminary injunction motion.

Thereafter, DenTek proposes that the parties be provided 45 days in which to complete depositions. During that time, DenTek will produce one or more witnesses in response to Medtech's proposed Rule 30(b)(6) deposition notice, subject to reasonable limitations on the subject areas of questioning (as noted in attached <u>Exhibit C</u>) and the assertion of any applicable privileges or immunities from disclosure. Medtech should also afford DenTek depositional discovery of Medtech through a Rule 30(b)(6) deposition likewise directed to the issues that formed the bases for filing its Second Amended Complaint and preliminary injunction motion, namely, (i) the threshold issues respecting the existence of a trade secret (*i.e.*, facts directed to the existence of a trade secret, such as ownership, reasonable steps to maintain secrecy, ability to afford a competitive advantage; *see also Hudson Hotels Corp. v. Choice Hotels Int'l*, 995 F.2d 1173, 1176 n.1 (2d Cir. 1993) (factors under New York law to determine whether a trade secret exists)) and (ii) the bases of Medtech's claim that its trade secrets were misappropriated and used by DenTek. Two weeks after Medtech completes the Rule 30(b)(6) deposition it noticed, it should identify with particularity the alleged trade secrets at issue and upon which it relies for both its Second Amended Complaint and preliminary injunction motion. The parties may then submit supplemental briefing on the pending motions as appropriate.

In sum, DenTek submits that, at this time, the limited discovery authorized by the Court should comprise only the following:

**PROSKAUER ROSE LLP**

The Honorable Lisa M. Smith
January 22, 2008
Page 7

- DenTek to produce documents in response to Medtech's proposed requests, subject to reasonable limitations on their scope and the assertion of any applicable privileges or immunities from disclosure;

- DenTek to produce one or more witnesses in response to Medtech's proposed Rule 30(b)(6) deposition notice, subject to reasonable limitations on the subject areas of questioning and the assertion of any applicable privileges or immunities from disclosure;

- DenTek to authorize Hogan & Hartson to produce documents, subject to reasonable limitations on their scope and the assertion of any applicable privileges or immunities from disclosure, if Medtech agrees to forego the deposition of a Hogan & Hartson representative;

- Medtech to answer DenTek's interrogatories relating to its trade secrets, produce documents supporting its claim to each given trade secret (and identify them as such), and produce one or more witnesses in response to a Rule 30(b)(6) deposition notice; and

- Documents to be produced within 60 days, followed by 45 days in which to complete depositions, two weeks after which Medtech shall identify with particularity its alleged trade secrets actually at issue in this case.

Respectfully submitted,

Theodore K. Cheng

Attachments

cc:    The Honorable Kenneth M. Karas (by hand)
       All counsel and parties of record (by e-mail and first-class mail)

# EXHIBIT C

**From:**     Federbush, Alan [AFederbush@proskauer.com]
**Sent:**     Wednesday, January 23, 2008 6:42 PM
**To:**       Sanko, Clinton
**Cc:**       JFulco@salonmarrow.com; freeman@greenbergfreeman.com
**Subject:**  RE: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS (S.D.N.Y.)

Clinton -

Your understanding of my email is incorrect.  As your email acknowledges, the Court has not as yet ordered any conference prior to the February 1, 2008 conference.  Thus, we fail to see how you would interpret our email as "refusing" to participate in a conference that has not been ordered.   Nor, as was the actual point of my email, is it "simply" that we disagree with your position, but rather, we believe a conference is not necessary because it is plainly an issue that will be taken up on February 1, 2008.

Alan

---

**From:** Sanko, Clinton [mailto:csanko@bakerdonelson.com]
**Sent:** Wednesday, January 23, 2008 5:07 PM
**To:** Federbush, Alan
**Cc:** JFulco@salonmarrow.com; freeman@greenbergfreeman.com; Cheng, Theodore K.; Shalek, James H.; Helton, Thomas; Geercken, Karl
**Subject:** RE: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS (S.D.N.Y.)

Alan--

Could you please confirm my understanding of your e-mail below that DenTek is refusing to participate in the conference tomorrow morning, even though the Court indicated that it can hear the issue at that time, simply because you disagree with our position?

If that is the case, we will inform the Court that DenTek is refusing to participate and ask that the Court order a conference.

Thank you in advance for your prompt response to this e-mail,

Clinton

---

**From:** Federbush, Alan [mailto:AFederbush@proskauer.com]
**Sent:** Wednesday, January 23, 2008 3:23 PM
**To:** Sanko, Clinton
**Cc:** JFulco@salonmarrow.com; CDSFIX@aol.com; freeman@greenbergfreeman.com
**Subject:** RE: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS (S.D.N.Y.)

Clinton —

Very well, thanks for the clarification.  We now understand the "narrow issue" you seek the court to resolve through an additional conference is, as set forth in your January 17, 2008 letter,

"whether all discovery was being held in abeyance while the more limited discovery process was underway relating to Medtech's claims that DenTek misappropriated certain trade secrets and confidential information."

We advised you of our position on this in our phone conference last week, further advised you that we saw no need to burden the court with an additional conference, and reiterated our position in our letter to the court yesterday. Our position has not changed.

The issue of what discovery is or is not going forward at this time is already the scheduled subject of the February 1, 2008 conference. That conference is the appropriate time to resolve any disputes as to what discovery is to be permitted. Thus, a call with the court in advance of that date is unnecessary and we do not wish to burden the court by asking it to resolve matters on a piecemeal basis. As I advised in my January 22, 2008 email, after reviewing DenTek's objections and proposed modifications to Medtech's Limited Discovery proposal, if Medtech sees an opportunity for any compromise positions in advance of the February 1 conference, we are open to your suggestions.

Regards,
Alan

Alan Federbush| PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
Voice: 212.969.3211 | Fax: 212.969.2900
afederbush@proskauer.com | www.proskauer.com

---

**From:** Sanko, Clinton [mailto:csanko@bakerdonelson.com]
**Sent:** Wednesday, January 23, 2008 11:34 AM
**To:** Federbush, Alan
**Cc:** JFulco@salonmarrow.com; CDSFIX@aol.com; freeman@greenbergfreeman.com; Helton, Thomas; Geercken, Karl
**Subject:** RE: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS (S.D.N.Y.)

Alan—

You are absolutely correct. I attached the January 4 letter, when I intended to attach the January 17, 2008 letter (now attached). The purpose of the call was to discuss the narrow issue raised in that letter.

Thank you for your e-mail so that we could clarify that for everyone.

I look forward to hearing from you on who will be appearing for DenTek and how to reach them.

Clinton

**Clinton P. Sanko**
Associate
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
Direct: 423.209.4168
Fax: 423.752.9580
E-mail: csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients across the U.S. and abroad
from offices in Alabama, Georgia, Louisiana, Mississippi, Tennessee, Washington, D.C.
and a representative office in Beijing, China.

---

**From:** Federbush, Alan [mailto:AFederbush@proskauer.com]
**Sent:** Wednesday, January 23, 2008 11:27 AM
**To:** Sanko, Clinton
**Cc:** JFulco@salonmarrow.com; CDSFIX@aol.com; freeman@greenbergfreeman.com
**Subject:** FW: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS
(S.D.N.Y.)

Clinton –

The purpose of your call to the Court is unclear. You state that it is to "discuss the
narrow issue raised in Medtech's attached letter." However, the attachment was
Medtech's January 4, 2008 letter setting forth Medtech's proposed Limited
Discovery Plan.

Please advise immediately if it is Medtech's intent to argue the merits of the
proposed plan at this conference. If so, we intend to ask the court to adjourn the
conference until the already scheduled date for that purpose – February 1, 2008.

Regards,
Alan

Alan Federbush| PROSKAUER ROSE LLP
1585 Broadway | New York, NY 10036-8299
Voice: 212.969.3211 | Fax: 212.969.2900
afederbush@proskauer.com | www.proskauer.com

---

**From:** Sanko, Clinton [mailto:csanko@bakerdonelson.com]
**Sent:** Tuesday, January 22, 2008 5:56 PM
**To:** Shalek, James H.; Federbush, Alan; Cheng, Theodore K.; Sieczkiewicz, Gregory J.; John Fulco;
pgunay@salonmarrow.com; CDSFIX@aol.com
**Cc:** Helton, Thomas; Geercken, Karl
**Subject:** FW: Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS
(S.D.N.Y.)

Dear Counsel and Parties--

We understand from Chief Magistrate Judge Smith's courtroom deputy that the Court is available
this Thursday morning at 10:00 a.m. (January 24, 2008) to discuss the narrow issue raised
in Medtech's attached letter. At the Court's request, only one attorney from each party may
participate in the call.

Please let me know who can participate at that time for the call so that we can inform the Court of
the attorneys that will be participating for each party.

Thank you in advance,

Clinton

**Clinton P. Sanko**
Associate
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
1800 Republic Centre
633 Chestnut Street
Chattanooga, TN 37450
Direct: 423.209.4168
Fax: 423.752.9580
E-mail: csanko@bakerdonelson.com
www.bakerdonelson.com

Baker, Donelson, Bearman, Caldwell & Berkowitz P.C. represents clients across the U.S. and abroad
from offices in Alabama, Georgia, Louisiana, Mississippi, Tennessee, Washington, D.C.
and a representative office in Beijing, China.

---

**From:** Ford, Vickie

**Sent:** Friday, January 04, 2008 3:28 PM

**To:** 'Shalek, James H.'; Federbush, Alan; 'tcheng@proskauer.com'; Sieczkiewicz, Gregory J.; 'jfulco@salonmarrow.com';
'pgunay@salonmarrow.com'; 'cdsfix@aol.com'

**Subject:** Medtech Products Inc. v. DenTek Oral Care, Inc., et al., 07-cv-03302-KMK-LMS (S.D.N.Y.)

Dear Counsel and Parties,

   Please see the attached.

Regards,

*Vickie Ford*
*Alston & Bird LLP*
*90 Park Avenue*
*New York, NY 10016*
*Direct Tel: 212-210-9465*
*Direct Fax: 212-922-3865*

   <<Ltr to Judge Smith 01-03-08.PDF>> <<Exhibit 1 to Ltr to Judge Smith 01-03-08.PDF>>
   <<Exhibit 2 to Ltr to Judge Smith 01-03-08.PDF>>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
To ensure compliance with requirements imposed by U.S.
Treasury Regulations, Proskauer Rose LLP informs you that
any U.S. tax advice contained in this communication
(including any attachments) was not intended or written to
be used, and cannot be used, for the purpose of (i)
avoiding penalties under the Internal Revenue Code or (ii)
promoting, marketing or recommending to another party any
transaction or matter addressed herein.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
This message and its attachments are sent from a law firm
and may contain information that is confidential and
protected by privilege from disclosure. If you are not the
intended recipient, you are prohibited from printing,
copying, forwarding or saving them. Please delete the
message and attachments without printing, copying,

forwarding or saving them, and notify the sender
immediately.

========================================================================

# EXHIBIT D

**COPY RECEIVED**

OND_____
BM_____
PM_____
BH 6/5/07
BY PLL
**ALSTON & BIRD LLP**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS, INC., <br>           Plaintiff, <br><br> v. <br><br> RANIR, LLC, et al., <br>           Defendants. | 07 CV 03302-UA-LMS |

MEDTECH PRODUCTS, INC.,
          Plaintiff,

v.

DENTEK ORAL CARE, INC.,
          Defendant.

MEDTECH PRODUCTS, INC.,
          Plaintiff,

v.

POWER PRODUCTS, INC.,
          Defendant.

## DENTEK ORAL CARE INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO MEDTECH PRODUCTS, INC.

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, DenTek Oral Care, Inc. ("DenTek") hereby requests that the Plaintiff Medtech Products, Inc. ("Medtech" or the "Plaintiff") produce to the offices of Proskauer Rose LLP, 1585 Broadway, New York, New York 10036, for inspection and copying the documents requested herein within thirty (30) days after service of this Request.

### DEFINITIONS

1.    As used herein, the term "Complaint" means Medtech Products, Inc.'s Complaint Against Defendant DenTek filed on or about April 24, 2007.

2.    "DenTek" means DenTek Oral Care, Inc. and any present or former officer, director, employee, agent, or representative of DenTek unless otherwise stated.

3.      "You," "your," "Medtech," or "the Plaintiff" mean plaintiff Medtech Products, Inc.

4.      As used herein, the term "identify" means (a) with respect to a person:  state his or her

full name, present or last known address and telephone number, and present or last known

employer, position and business address or, if such information is not known, state information

sufficient to identify and locate him or her; (b) with respect to a corporation or other entity:  state

its name, address and telephone number; and (c) with respect to a document:  state the authors,

addressees, date, title, or other description sufficient to identify it, and state its present or last

known custodian or location.

5.      The term "document," in addition to the definitions provided in Federal Rule of Civil

Procedure 34, which are expressly incorporated herein, includes e-mails, computer files, and

tape, audio or video recordings of any type.

6.      The term "concerning" means relating to, referring to, reflecting, describing, evidencing,

constituting and providing substantiation for or support for.

7.      The "'051 Patent" means U.S. Patent No. 6,830,051.

8.      The "Trademark Application" and the "'556 Trademark Application" mean pending

federal trademark application for "Nightguard", Serial Number 77/056,556, in the United States

Patent and Trademark Office.

9.      The "Copyright Registration" and the "'309 Registration" mean U.S. Copyright

Registration Number TX 6-536-309 issued by the United States Registrar of Copyrights.

10.     The term "Prior Art" shall mean all things, patents, published patent applications,

publications, disclosures, sales, offers for sale, prior uses or other acts or occurrences included

within the broadest meaning of 35 U.S.C. §§ 102 and 103.

11.     The "Asserted Trade Dress" means Plaintiff's alleged trade dress rights as alleged in the Complaint.

12.     The "Asserted Mark" means Plaintiff's alleged trademark rights as alleged in the Complaint.

13.     The term "dental protector" includes all intra-oral devices or appliances used or designed to treat or prevent bruxism.

14.     "Marked Goods" means all goods bearing the Asserted Trade Dress or the Asserted Mark developed, sold, licensed, distributed, advertised, manufactured, or otherwise exploited by or under the direction of Plaintiff.

15.     "Accused Products" means any and all products developed, distributed, or sold by DenTek that Plaintiff alleges infringes the '051 Patent, the Copyright Registration, the Asserted Trade Dress and/or the Asserted Mark.

16.     The term "Allegedly Infringed Works" means any allegedly infringed written work of authorship as alleged in the Complaint.

17.     The term "Allegedly Infringing Works" means any allegedly infringing written work of authorship as alleged in the Complaint.

## INSTRUCTIONS

1.     In producing documents, the Plaintiff is requested to furnish all documents known or available to him regardless of whether the documents are possessed:  directly by the Plaintiff, his agents, employees, representatives, or investigators; by the Plaintiff's current or former attorneys or their agents, employees, representatives or investigators; or by any other legal entities controlled by or in any manner affiliated with the Plaintiff.

3

2.     If any documents cannot be produced in full, the Plaintiff is requested to produce the documents to the extent possible, specifying the reasons for the inability to produce the remainder.

3.     If, after producing documents, the Plaintiff obtains or becomes aware of any further documents responsive to these Document Requests, it is required to produce such additional documents as required by Federal Rule of Civil Procedure 26(e).

4.     If any document is claimed to be immune from discovery on the grounds of privilege or work-product doctrine, the Plaintiff shall provide the following information with respect to each such document:

      a.     Type of document (*e.g.*, letter, memoranda, etc.).

      b.     Name of author or preparer.

      c.     Name of recipient.

      d.     Date of recording or preparation.

      e.     Description of the subject matter and content of the document sufficient to identify it.

      f.     The reason for the claim of privilege.

      g.     If any document is produced in redacted form, that portion of the document which is redacted should be identified and the response should, with respect to each such redaction, identify the basis for producing the document in redacted form.

5.     Pursuant to Federal Rule of Civil Procedure 34(b), documents should be organized and labeled to correspond with the categories in these Document Requests.

4

## DESCRIPTION OF DOCUMENTS TO BE PRODUCED

**Request No. 1**

All documents establishing Plaintiff's ownership of the '051 patent, including but not limited to documents relating to any negotiation, acquisition, and transfer of rights therein.

**Request No. 2**

All contracts with or concerning Frank Lesniak.

**Request No. 3**

All contracts with or concerning Michael S. Lesser.

**Request No. 4**

All documents and things pertaining to the preparation and prosecution of the '051 patent, including but not limited to, invention disclosures, drafts of the applications and other materials prepared for sending to the Patent and Trademark Office ("PTO"), papers sent to or received from the PTO, notes and memoranda of interviews (telephonic, in person, or otherwise), and correspondence or memoranda with any person.

**Request No. 5**

All drafts of the patent application that led to the '051 patent, whether or not filed with the U.S. Patent and Trademark Office, including those drafts having annotations or commentary thereon by the inventors.

**Request No. 6**

All documents authored by, sent by, sent to, or received by the inventors of the '051 patent concerning the '051 patent or the application for the '051 patent.

**Request No. 7**

     All documents concerning a description of the invention claimed in any claim of the '051 patent that were sent to, received by, or used by counsel in preparation or prosecution of the patent application which led to the '051 patent.

**Request No. 8**

     All documents concerning a description of the invention claimed in any claim of the '051 patent that were prepared by the inventors.

**Request No. 9**

     Copies of all foreign counterparts of the '051 patent, including file histories.

**Request No. 10**

     Copies of any patent applications (U.S., foreign, or under any international convention) claiming priority to the '051 patent.

**Request No. 11**

     All documents concerning any allegations or notices of infringement of the '051 patent by Plaintiff to any company or individual.

**Request No. 12**

     Documents sufficient to identify any legal proceedings involving the '051 patent.

**Request No. 13**

     All documents (including contentions, analyses, advice, opinions, prior art searches) concerning:

     (a) The subject matter disclosed and claimed in the '051 patent;

     (b) The scope of the claims of the '051 patent;

     (c) The validity or enforceability of the '051 patent;

6

(d) Infringement of the '051 patent; or

(e) The patentability of any subject matter described in the '051 patent.

**Request No. 14**

All manufacturing, distribution, supply, sales, promotion, marketing or licensing agreements with any third party relating to any product made by or on Plaintiff's behalf embodying the invention(s) claimed in the '051 patent.

**Request No. 15**

Copies of any licenses granted to third parties for the '051 patent and documents or correspondence relating to the negotiation of those licenses.

**Request No. 16**

All documents showing any royalties or other payments collected from third parties who have taken or been given licenses from Plaintiff for the '051 patent.

**Request No. 17**

All documents concerning any monetary damages that the Plaintiff allegedly suffered or will suffer as a result of any of the claims asserted against DenTek in this lawsuit or the matters alleged in the Complaint.

**Request No. 18**

All documents concerning any other damages that the Plaintiff allegedly suffered or will suffer as a result of any of the claims asserted in this lawsuit or the matters alleged in the Complaint.

**Request No. 19**

All documents and things concerning whether notices in accordance with 35 U.S.C. § 287 have been placed on any devices sold by, on behalf of, or under license from Plaintiff, that embody the invention(s) claimed in the '051 patent.

**Request No. 20**

All documents which relate to or support in any way any allegation that infringement of the '051 patent by DenTek has been or is willful, deliberate, or intentional.

**Request No. 21**

A sample of each product made, sold, or distributed by or on Plaintiff's behalf embodying the invention(s) claimed in the '051 patent.

**Request No. 22**

Videotapes, films, DVDs, computer disks, or other media depicting each and any product embodying the invention(s) claimed in the '051 patent in use or in fabrication.

**Request No. 23**

Documents sufficient to demonstrate the volume of Plaintiff's, or any licensee's under the '051 patent, sales (in both dollars and units) of any product made by or on Plaintiff's behalf embodying the invention(s) claimed in the '051 patent by year since the year each such product was first offered for sale.

**Request No. 24**

Plaintiff's annual (or other relevant accounting period) balance sheets, income and financial statements, expense statements, and profit and loss statements related to or including sales of any product made by or on Plaintiff's behalf embodying the invention(s) claimed in the '051 patent since 2004.

8

**Request No. 25**

Documents sufficient to identify the total amount spent by Plaintiff on promotion, in the United States, of any dental protector within the scope of the claims of the '051 patent.

**Request No. 26**

All documents used in Plaintiff's promotion or marketing of any dental protector falling within the scope of the claims of the '051 patent, such as but not limited to advertising, brochures, catalogs, product specifications, press releases, website literature, or journal, newspaper, or magazine articles.

**Request No. 27**

All documents relating to or sufficient to determine the profit Plaintiff has made or will make on any dental protector falling within the scope of the claims of the '051 patent by year since 2004, including but not limited to documents summarizing Plaintiff's sales and/or gross and net profit margins on those sales.

**Request No. 28**

All documents and things pertaining to the portion of the profits Plaintiff realizes from the sale of dental protectors that allegedly should be credited to the purported invention of the '051 patent as distinguished from non-patented elements.

**Request No. 29**

All documents sufficient to determine Plaintiff's cost of manufacturing, distributing, importing, marketing or selling any dental protector falling within the scope of the claims of the '051 patent, including but not limited to costs of materials, labor, overhead, and freight.

**Request No. 30**

All price lists or other documentation establishing prices, including any available discount terms, for any dental protector falling within the scope of the claims of the '051 patent since 2004.

**Request No. 31**

All documents relating to the quality or performance characteristics of any Medtech dental protector falling within the scope of the claims of the '051 patent, including but not limited to documents relating to quality control tests and customer complaints or comments.

**Request No. 32**

All documents relating to customer surveys or other feedback from customers regarding any Medtech dental protector falling within the scope of the claims of the '051 patent.

**Request No. 33**

All documents and things pertaining to any advantages or improved results achieved by products embodying the subject matter claimed in the '051 patent.

**Request No. 34**

All documents relating to any internal, or third party, market studies for dental protectors.

**Request No. 35**

All documents that show or evidence a lost customer, lost sale or sales opportunity by Plaintiff for dental protectors due to a sale or offer for sale of a DenTek dental protector accused of infringing the '051 patent and documents that show the dollar amount Plaintiff attributes to each loss.

**Request No. 36**

All documents concerning or identifying any unsuccessful attempts by Plaintiff to sell dental protectors to a third party since 2004 wherein DenTek made a sale to that third party of a dental protector accused of infringing the '051 patent.

**Request No. 37**

All documents and things identifying any non-infringing alternatives to the '051 patent.

**Request No. 38**

All documents relating to the manufacturing capacity of any plant owned, leased, operated, or contracted by Plaintiff at which any dental protector falling within the scope of the claims of the '051 patent is manufactured.

**Request No. 39**

All documents that refer or relate to Plaintiff's pre-Complaint investigation of the allegations contained in the Complaint.

**Request No. 40**

All documents concerning any DenTek product alleged to infringe the '051 patent that were reviewed by Plaintiff or its counsel prior to initiating this action.

**Request No. 41**

All documents relating to tests, examinations, studies, inspections, analyses or opinions (including opinions of counsel) to determine the alleged infringement of any dental protectors made or sold by or on behalf of DenTek, performed by or on behalf of Plaintiff before filing the Complaint.

11

**Request No. 42**

Separately segregated from any documents produced in response to the previous request, all documents relating to tests, examinations, studies, inspections, analyses or opinions (including opinions of counsel) to determine the alleged infringement of any dental protectors made or sold by or on behalf of DenTek, performed by or on behalf of Plaintiff since filing the Complaint.

**Request No. 43**

All documents containing any form of comparison between any of Plaintiff's dental protectors that Plaintiff contends fall within the scope of the claims of the '051 patent and DenTek's dental protectors accused of infringing the '051 patent.

**Request No. 44**

All documents and things reviewed or relied upon by Plaintiff or its counsel in determining, prior to filing the Complaint, that the '051 patent is allegedly infringed by a DenTek product.

**Request No. 45**

All documents and things relating to any expert (or other consultant) you have retained or considered retaining in anticipation or preparation for this action or other proceedings against DenTek relating to the '051 patent, including (a) all communications with such expert(s); (b) all documents reviewed or relied upon by such expert(s) in connection with his retention or proposed retention; and (c) any report, declaration, test results or statement of opinions expressed by the expert.

**Request No. 46**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the Shore A hardness of any DenTek product accused of infringing the '051 patent.

**Request No. 47**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the percentage by weight of vinyl acetate of any DenTek product accused of infringing the '051 patent.

**Request No. 48**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the Vicat softening temperature of any resin in any DenTek product accused of infringing the '051 patent.

**Request No. 49**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the presence of an ethylene vinyl acetate copolymer in any DenTek product accused of infringing the '051 patent.

**Request No. 50**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the presence of a pilot channel in any DenTek product accused of infringing the '051 patent.

13

**Request No. 51**

All documents concerning any measurement, determination or analysis, made before the filing of the Complaint, of the presence or height of a footing in any DenTek product accused of infringing the '051 patent.

**Request No. 52**

All documents relating to the first use (experimental or otherwise), sale or offer for sale within the United States of a dental protector encompassing the technology claimed in the '051 patent.

**Request No. 53**

All Prior Art (as that term is defined above) relevant to the '051 patent in Plaintiff's possession regardless of the source, including without limitation, results of prior art searches or literature searches.  In this request, the term "relevant" should be construed to include any item that Plaintiff will rely on to construe the scope of the claims of the '051 patent.

**Request No. 54**

All Prior Art known to Frank Lesniak or Michael S. Lesser prior to filing the application that led to the '051 patent that pertains to the subject matter of the '051 patent, regardless of whether such art was cited to the PTO.

**Request No. 55**

All documents known to Frank Lesniak or Michael S. Lesser or in their possession prior to filing the application that led to the '051 patent that pertain to any dental protectors commercially-available at that time or prior.

14

**Request No. 56**

      All documents and things concerning the conception of the invention(s) claimed in the '051 patent including, but not limited to, inventor's notebooks, notes, memos, emails, letters, reports, project proposals, timelines, drawings, sketches, product specifications, schematics, technical or operational manuals and prototypes.

**Request No. 57**

      All documents and things concerning the reduction to practice of the invention(s) claimed in the '051 patent including, but not limited to, inventor's notebooks, notes, memos, emails, letters, reports, project proposals, timelines, drawings, sketches, product specifications, schematics, technical or operational manuals, prototypes, and laboratory or other test results.

**Request No. 58**

      All documents and things concerning the design, engineering, development and testing of the invention(s) claimed in the '051 patent including, but not limited to, inventor's notebooks, notes, memos, emails, letters, reports, project proposals, timelines, drawings, sketches, product specifications, schematics, technical or operational manuals, prototypes, and laboratory or other test results.

**Request No. 59**

      All documents concerning the date of invention of any invention claimed in the '051 patent, including all documents concerning diligence between conception and reduction to practice.

**Request No. 60**

      All documents relating to the interpretation, scope or meaning of any claim or limitation of the '051 patent.

**Request No. 61**

All documents in which Plaintiff or anyone acting on Plaintiff's behalf has previously set out a position relating to the interpretation, scope or meaning of any claim or limitation of the '051 patent.

**Request No. 62**

All documents reflecting or relating to the first use of the Asserted Mark.

**Request No. 63**

All documents reflecting or relating to Plaintiff's business plans relating to the Marked Goods, or any future use of the Asserted Mark.

**Request No. 64**

All documents relating to any consumer complaints or reports that Plaintiff contends constitute evidence of consumer confusion between any of the Marked Goods and products marketed and sold by DenTek.

**Request No. 65**

All documents relating to any market research, focus groups, or other consumer studies done by or on behalf of Plaintiff relating to the Marked Goods.

**Request No. 66**

All license agreements, assignments, or other documents in which Plaintiff conveyed or received any rights relating to the Asserted Mark.

**Request No. 67**

All documents concerning or comprising communications between Plaintiff and any third party, including advertising agencies, licensees, brokers, sellers, distributors, or vendors, relating to any advertising, promotion, or marketing of any Marked Goods.

16

**Request No. 68**

All documents relating to the production costs of the Marked Goods.

**Request No. 69**

Documents sufficient to show the demographic characteristics (including, without limitation, profession, location, age, gender, income, and ethnicity) of the consumers to whom Plaintiff (a) sold or rendered; (b) sells or renders; and/or (c) intends or plans to sell or render, the Marked Goods.

**Request No. 70**

Documents sufficient to show the channels of trade through which the Marked Goods have been, are being, and are intended to be marketed, sold, or offered for sale.

**Request No. 71**

All documents concerning any trademark search investigations, consumer surveys, opinions, opinion letters, registrability searches, availability searches, infringement searches, market research, focus groups, confusion studies, or any other consumer research (individually or collectively, "Research") regarding the Asserted Trade Dress, the Asserted Mark, and/or the Marked Goods and/or the Accused Products including documents sufficient to show who requested the Research, when the Research was requested, who conducted the Research, and when the Research was conducted.

**Request No. 72**

All documents concerning any incidents in which a consumer was confused between the Marked Goods and the Accused Products, including information about who the consumer was and when and how Plaintiff became aware of the confusion.

**Request No. 73**

One sample of each advertisement, display, and item of promotional or marketing material used in connection with the Marked Goods.

**Request No. 74**

One sample of each Marked Good.

**Request No. 75**

Documents sufficient to identify the total dollar amount expended by Plaintiff in connection with the advertising or promotion of the Asserted Mark or the Asserted Trade Dress.

**Request No. 76**

All documents concerning the Accused Products, including all documents concerning Plaintiff's knowledge or awareness of the Accused Products, including how Plaintiff became aware of the Accused Products, and all Plaintiff's internal communications concerning the Accused Products.

**Request No. 77**

To the extent not called for in any other Document Request, all documents concerning communications with any third party, including any wholesaler, retailer, manufacturer, customer, or any other individual or entity, regarding DenTek and/or the Accused Products.

**Request No. 78**

All documents concerning any registration of the Asserted Mark with the United States Patent and Trademark Office.

**Request No. 79**

All documents, including but not limited to pleadings, deposition transcripts, and testimony transcripts, concerning all opposition or cancellation proceedings filed before the

18

Trademark Trial and Appeal Board to any trademark application on the basis that it was confusingly similar to the Asserted Mark.

**Request No. 80**

All documents, including but not limited to pleadings, deposition transcripts, and any settlements thereof, concerning any lawsuits filed by Plaintiff in which there was an allegation that DenTek or any third party had infringed the Asserted Mark or the Asserted Trade Dress.

**Request No. 81**

All documents concerning the enforcement, policing, or defense efforts taken by you concerning the Asserted Mark or the Asserted Trade Dress, including but not limited to all documents concerning the sending of so-called "cease and desist letters" and any settlement agreements or consent agreements relating thereto.

**Request No. 82**

All documents concerning any evidence that customers or any other third parties have come to identify the Asserted Mark or the Asserted Trade Dress with Plaintiff.

**Request No. 83**

All documents concerning any evidence that customers or any other third parties have come to identify the alleged mark "NightGuard" with Marked Goods.

**Request No. 84**

Documents sufficient to show Plaintiff's gross and net profits, before and after taxes, derived from the Marked Goods from inception through the date of response to these Requests.

**Request No. 85**

Documents sufficient to show the weekly and monthly market share of each of the Marked Goods since inception through the date of response to these Requests.

19

**Request No. 86**

Documents sufficient to show the price(s) for each of the Marked Goods for each week or month since Plaintiff introduced the Marked Goods into the marketplace through the date of response to these Requests.

**Request No. 87**

All documents concerning the effect of the Accused Products on promotion of the Marked Goods, and/or sales of Marked Goods.

**Request No. 88**

All documents concerning the effect of the Accused Products on consumer perception of the Plaintiff, the Marked Goods, the Asserted Trade Dress, and/or the Asserted Mark.

**Request No. 89**

All documents concerning any registration or attempts to register Plaintiff's Asserted Mark with the United States Patent and Trademark Office or any foreign trademark office.

**Request No. 90**

A copy (or, if more practicable, color photocopy) of all versions or variations of Plaintiff's Asserted Mark.

**Request No. 91**

A copy (or, if more practicable, color photocopy) of the mark used in connection with any third-party dental protectors using a mark purportedly similar to that of Plaintiff's Asserted Mark.

**Request No. 92**

A copy (or, if more practicable, color photocopy) of all marks that include both the words "night" and "guard" or the word "nightguard".

**Request No. 93**

All third party documents of which Plaintiff is aware that include both the words "night" and "guard" or the word "nightguard" in relation to dental protectors.

**Request No. 94**

All documents concerning actions taken by you prior to filing this lawsuit to communicate to DenTek your belief that DenTek has infringed Plaintiff's Asserted Mark.

**Request No. 95**

All documents concerning any claim or allegation of infringement made by Plaintiff against third parties concerning Plaintiff's Asserted Mark.

**Request No. 96**

All documents regarding how, in Plaintiff's view, Plaintiff's Asserted Mark is properly used as a trademark.

**Request No. 97**

All documents concerning any interference, opposition, or cancellation proceedings instituted in the United States Patent and Trademark Office in connection with any registration or attempt to register Plaintiff's Asserted Mark.

**Request No. 98**

All documents relating to incidents of actual confusion between Plaintiff or any of Plaintiff's dental protectors and DenTek or any of DenTek's dental protectors.

**Request No. 99**

Documents sufficient to identify your 20 largest customers, based on total revenues, for each dental protector identified in the Complaint and for all other Marked Goods offered for sale in the United States.

21

**Request No. 100**

Documents sufficient to show the organization of Plaintiff (e.g., an organization chart) and sufficient to identity all persons responsible for: (1) marketing the dental protectors identified in the Complaint; (2) protection of Plaintiff's Asserted Mark; (3) deciding whether or not to enforce your rights under Plaintiff's Asserted Mark for each of the last ten years preceding the date of these Requests; and (4) the development, design, marketing, approval, and decisions to enforce your rights under Plaintiff's Asserted Mark for each of the dental protectors identified in the Complaint.

**Request No. 101**

All documents concerning Defendant's purported access to the Allegedly Infringed Works.

**Request No. 102**

All documents concerning any similarities and/or differences between any Allegedly Infringed Works and any Allegedly Infringing Works.

**Request No. 103**

All documents concerning Plaintiff's allegations that any Allegedly Infringed Works was/were used, in whole or in part, in any Allegedly Infringing Works.

**Request No. 104**

All documents, including but not limited to communications and reports (including any draft(s) thereof), sent by, received by, or exchanged between any expert, on the one hand, and Plaintiff on the other hand, concerning any Allegedly Infringed Works or any Allegedly Infringing Works.

**Request No. 105**

All documents concerning communications between the Plaintiff and any third party (*i.e.*, not one of the parties to this action) concerning DenTek's purported access to the Allegedly Infringed Works, and/or any alleged similarities and/or differences between the Allegedly Infringed Works and the Allegedly Infringing Works.

**Request No. 106**

All documents Plaintiff reviewed or relied upon in preparing those allegations contained in the Complaint concerning DenTek's purported access to the Allegedly Infringed Works and/or any alleged similarities and/or differences between the Allegedly Infringed Works and the Allegedly Infringing Works.

**Request No. 107**

All documents concerning Plaintiff's alleged ownership of the copyrights in Allegedly Infringed Works.

**Request No. 108**

All documents that identify any other owner(s), and the percentage of ownership of such other owner(s), of the copyrights in the Allegedly Infringed Works.

**Request No. 109**

All documents, including contracts, agreements and licenses, concerning Plaintiff's acquisition of any rights in any work used in the creation of the Allegedly Infringed Works.

**Request No. 110**

All documents concerning copyright applications, certificates of registration and/or other filings or communications with the United States Copyright Office, or any equivalent agency in any foreign country, concerning the Allegedly Infringed Works, including copies of any

materials deposited in the United States Copyright Office, or any equivalent agency in any foreign country, as a purported "deposit copy" of the Allegedly Infringed Works.

**Request No. 111**

All documents concerning revenues generated from the use or exploitation of the Allegedly Infringed Works, including all accounting and royalty statements and reports concerning the use or exploitation of the Allegedly Infringed Works.

**Request No. 112**

All documents concerning the value of the Allegedly Infringed Works, including the effect or lack thereof of the infringement alleged in the Complaint on that value.

**Request No. 113**

All documents concerning any licenses issued, or requests for licenses, to use or exploit the Allegedly Infringed Works.

**Request No. 114**

All documents concerning any effort by anyone to license the Allegedly Infringed Works, or any other literary composition allegedly owned, in whole or in part, by Plaintiff, for use in conjunction with a dental protector.

**Request No. 115**

All documents concerning the creation of the Allegedly Infringed Works, including any documents concerning whether or not the Allegedly Infringed Works are original works of authorship.

**Request No. 116**

All documents or other tangible things that Plaintiff believes embody the Allegedly Infringed Works, including (a) as they first existed; (b) as they were first published; (c) as they were first published in the United States; and (d) any variations of any of the foregoing.

**Request No. 117**

All documents concerning the decision to register or attempt to register the Copyright Registration with the United States Copyright Office or any foreign copyright office.

**Request No. 118**

All documents concerning any claim that any work other than the Allegedly Infringing Works infringes the copyrights in the Allegedly Infringed Works.

**Request No. 119**

All documents concerning the circumstances under which Plaintiff first suspected that the Allegedly Infringing Works contained any portion of Allegedly Infringed Works, including all documents concerning the date(s) of such suspicion.

**Request No. 120**

All documents concerning the circumstances under which Plaintiff first came into possession, custody, and/or control of, the Allegedly Infringing Works, including all documents concerning the date(s) thereof.

**Request No. 121**

All documents sufficient to evidence the date of the Allegedly Infringed Works first:  (a) publication; and (b) publication in the United States.

25

**Request No. 122**

    All documents and things relating to the development, publication, and copyright registration of Medtech's "At-Home Fitting Instructions" and all previous versions and subsequent drafts and revisions of the same.

**Request No. 123**

    Documents that support or contradict Medtech's assertion that the alleged copyrights in the asserted "At-Home Fitting Instructions" have monetary value.

**Request No. 124**

    Documents sufficient to identify (including current contact information) any investors, owners or shareholders of Plaintiff and any entities in which Plaintiff holds an ownership interest.

**Request No. 125**

    Documents sufficient to set forth the organizational structure of Plaintiff, including the names of all officers, directors, management and key personnel.

**Request No. 126**

    All documents concerning the document retention and destruction policies of Plaintiff.

**Request No. 127**

    Copies of all documents produced in response to any document request served on Plaintiff by any other defendant in this action.

**Request No. 128**

    All documents that Plaintiff intends to rely upon at trial.

**Request No. 129**

    All documents concerning Plaintiff's claim that Plaintiff is entitled to injunctive relief.

**Request No. 130**

All documents concerning the damages Plaintiff contends to have suffered as a result of DenTek's alleged infringement, including any study, report, analysis, survey, or any draft(s) thereof, whether prepared by Plaintiff, an outside consultant or expert, or any other person, about any damages, injury, or harm suffered by Plaintiff, and/or benefits to DenTek as a result of any conduct or action of DenTek.

**Request No. 131**

All documents Plaintiff reviewed or relied on in preparing the Complaint.

**Request No. 132**

All documents on which Plaintiff will rely to prove the assertions contained in the Complaint.

**Request No. 133**

All documents relating to the allegation in Paragraph 4 of the Complaint that Medtech dental protectors offer superior protection and comfort.

**Request No. 134**

All documents concerning communications between the FDA and the Plaintiff relating to any Medtech dental protector.

**Request No. 135**

All documents concerning communications with the FDA relating to FDA approval of a Medtech dental protector on or about March 3, 2006.

**Request No. 136**

All documents concerning knowledge by the FDA of over-the-counter sales of Medtech's dental protectors prior to March 3, 2006.

27

**Request No. 137**

The most recent *curriculum vitae* of any expert retained by Plaintiff in connection with this action.

**Request No. 138**

All documents concerning any expert or consultant who will offer a witness statement at trial.

**Request No. 139**

To the extent not already called for, all documents identified in response to Defendant's First Set of Interrogatories.

**Request No. 140**

To the extent not already called for, all documents that Plaintiff referred to or relied on in responding to Defendant's First Set of Interrogatories.

**Request No. 141**

All documents relating to the placement or display of DenTek's dental protector adjacent to or otherwise in proximity to Medtech's dental protector in retail stores throughout the United States.

**Request No. 142**

All documents relating to the allegation in Paragraph 38 of the Complaint that DenTek's dental protector is displayed adjacent to Medtech's dental protector in retail stores throughout the United States.

**Request No. 143**

All documents relating to the allegation in Paragraph 39 of the Complaint that retailers and consumers will be confused into purchasing DenTek's dental protector when they want Medtech's dental protector.

**Request No. 144**

All documents and things concerning the design, engineering, development and testing done by or on behalf of Medtech relating to a dental protector designed to protect the teeth from the detrimental effects of bruxism.

**Request No. 145**

All documents and things concerning the design, engineering, development and testing done by or on behalf of Medtech relating to a dental protector designed to protect the jaw from the detrimental effects of bruxism.


Dated: June 5, 2007                         PROSKAUER ROSE LLP

                               By:    _Alan Federbush_
                                      James H. Shalek
                                      Alan Federbush
                                      1585 Broadway
                                      New York, New York 10036-8299
                                      (212) 969-3000 (phone)
                                      (212) 969-2900 (fax)

                                      *Attorneys for Defendant*
                                      *DenTek Oral Care, Inc.*

29

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2007, I caused a true and correct copy of **DENTEK**

**ORAL CARE, INC.'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO**

**MEDTECH PRODUCTS, INC.** to be served upon the following parties by the method

indicated:

*Attorneys for Plaintiff Medtech Products, Inc.:*

Karl Geercken                                    (BY HAND)
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016

       AND

W. Edward Ramage                                 (BY OVERNIGHT MAIL)
BAKER, DONELSON, BEARMAN
   CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, TN 37201

*Attorneys for Consolidated Defendant Power Products, Inc.:*

Kathy Dutton Helmer                              (BY MAIL)
Kirkpatrick & Lockhart Preston Gates Ellis, LLP
One Newark Center, 10th Floor
Newark, NJ 07102

*Attorneys for Consolidated Defendant Ranir, LLC.:*

Rebecca Marie McCloskey                          (BY MAIL)
Wilmer Cutler Pickering Hale & Dorr LLP
399 Park Ave
New York, NY 10022

                         _Alan Federbush_

                         Alan Federbush

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WESTCHESTER DIVISION

| | | |
|---|---|---|
| **MEDTECH PRODUCTS INC.,**<br>**90 North Broadway**<br>**Irvington, New York 10533** | ) ) ) ) | **07 CV 03302-UA-LMS** |
| **Plaintiff,** | ) ) ) | **PLAINTIFF MEDTECH** |
| **vs.** | ) ) ) | **PRODUCTS INC.'S FIRST SET OF**<br>**REQUESTS FOR PRODUCTION** |
| **DENTEK ORAL CARE, INC.**<br>**307 Excellence Way**<br>**Maryville, Tennessee 37801** | ) ) ) ) | **OF DOCUMENTS AND THINGS**<br>**TO DENTEK ORAL CARE, INC.** |
| **Defendant.** | ) ) ) | |

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Plaintiff Medtech

Products Inc. ("Plaintiff") hereby requests that Defendant Dentek Oral Care, Inc. ("Defendant")

produce the following documents and things in its possession, custody or control to Alston &

Bird LLP, 90 Park Avenue, New York, New York 10016, within thirty (30) days of service

hereof.

### INSTRUCTIONS

1.     The following requests are deemed to be continuing and Plaintiff requests that if,

after responding to these requests, Defendant acquires knowledge or information responsive to

any of these requests, Defendant provide Plaintiff with such information.

2.     If Defendant contends that any of the following requests are objectionable in

whole or in part, Defendant shall state with particularity each objection and the reasons for the

objection.

3.     If Defendant withholds any information or document responsive to any request, Defendant shall provide and identify: (a) any basis for privilege or immunity from discovery asserted; (b) all documents that contain or refer to the information; (c) all individuals having knowledge of the information; (d) the subject matter and general nature of the information; (e) all facts that are alleged to support the assertion of privilege or immunity; and (f) the information called for by Local Civil Rule 26.2

4.     If Defendant finds the meaning of any term in these requests to be unclear, Defendant shall assume a reasonable meaning, state the meaning assumed, and respond to the request according to the assumed meaning.

## **<u>DEFINITIONS</u>**

A.     Plaintiff incorporates by reference the uniform definitions and rules of construction as required by Rule 26.3 of the Local Rules of the United States District Court for the Southern District of New York.

B.     The terms "Defendant", "you", "your person(s)" and "your(s)" refer to Defendant Dentek Oral Care, Inc., and where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries or affiliates.

C.     The term "entity" means a person or group of persons organized for a specific purpose (e.g. a corporation).

D.     The term "any" shall be construed as "any and all."

E.     The term "Plaintiff's Product" shall mean Plaintiff's patented dental protector designed to protect the teeth and jaw from the detrimental effects of bruxism and sold under the trademarks THE DOCTOR'S® NIGHTGUARD™.

F.     The term "Defendant's Product" shall mean the dental protector for nighttime tooth grinding or bruxism that is or was sold by you under the name "NIGHTGUARD" or variants thereof.

G.     The term "Plaintiff's Patent" shall mean U.S. Patent No. 6,830,051.

H.     The term "relate" means concerning, referring to, describing, evidencing, constituting or otherwise relating in any way to the subject matter with respect to which the term is used.

I.     The terms "trademark" and "service mark" are used interchangeably and each term should be construed to include the other, as well as any use or designation which may be described as a trade name, trade style, business name, an assumed or fictitious name or a corporate name.

## REQUESTS

**REQUEST NO. 1:**     Produce all documents and things identified or relied upon in Defendant's Answers to Plaintiff's First Set of Interrogatories to Defendant.

**REQUEST NO. 2:**     Produce all documents and things, including but not limited to all sketches, drawings and specifications, relating to or concerning the conception, design, construction and manufacture of Defendant's Product.

**REQUEST NO. 3:**     Produce all documents and things relating to or concerning Defendant's decision to use the mark "NIGHTGUARD," "NIGHT GUARD," or any variant thereof.

**REQUEST NO. 4:**     Produce all documents and things, including but not limited

to all communications, received from or sent to the United States Food and Drug Administration related to Defendant's Product.

**REQUEST NO. 5:**        Produce all documents and things that were prepared by, provided to, reviewed by, relied upon, or used in any way by any expert or consultant, including draft reports and declarations, and any documents provided to any such expert or consultant relating to any of the issues in this proceeding.

**REQUEST NO. 6:**        Produce all documents and things that relate to or concern Plaintiff's Product.

**REQUEST NO. 7:**        Produce all documents and things, including but not limited to annual reports, 10K submissions, financial statements, profit and loss statements, budgets, cost analyses, profit analyses, and general ledgers, or any other document, that relate to or concern, or that may be utilized to determine, Defendant's costs, revenue, and/or profits for Defendant's Product for any years in which Defendant has manufactured, used, sold, offered to sell, and/or distributed Defendant's Product.

**REQUEST NO. 8:**        Produce all documents and things constituting, evidencing, involving or referring to costs, profits, profit projections, market research or forecasts of the demand for any dental protector.

**REQUEST NO. 9:**        Produce all documents and things concerning, recording or relating to Defendant's advertising, intended advertising, promotion, and/or intended promotion of Defendant's Product, including but not limited to a sample of each and every different

advertisement and/or item of promotional material, press releases, radio scripts and other media advertising.

**REQUEST NO. 10:**     Produce all documents and things concerning or relating to any contracts, agreements, with any third party regarding or relating to any advertising, promotion, or marketing of the Defendant's Product, including but not limited to contracts or agreements with any advertising agencies, licensees, brokers, sellers, distributors, or vendors.

**REQUEST NO. 11:**     Produce all documents and things that record, refer to, or relate to any searches, investigations, studies, analyses, or inquiries conducted by or on behalf of Defendant, or by any person acting for or on its behalf, relating to the right to use the mark "NIGHTGUARD," "NIGHT GUARD," or any variant thereof, including but not limited to, all trademark search reports and documents related thereto.

**REQUEST NO. 12:**     Produce all documents and things concerning or relating to any instance or occurrences of a likelihood of confusion and/or actual confusion as between Defendant and Plaintiff and/or as between any goods offered by Defendant and any goods offered by Plaintiff.

**REQUEST NO. 13:**     Produce all documents and things concerning or relating to any research, reports, surveys, or studies conducted by or on behalf of Defendant of consumer perception of the mark "NIGHTGUARD," "NIGHT GUARD," or any variant thereof, or of Defendant's Product or Plaintiff's Product.

**REQUEST NO. 14:**     Produce all documents and things concerning or relating to any communications between Defendant and any third party regarding the subject matter of this

litigation.

**REQUEST NO. 15:**    Produce all documents and things concerning or relating to creation of the Defendant's "At-Home Fitting Instructions" for use with Defendant's Product.

**REQUEST NO. 16:**    Produce all documents and things that relate to or concern Plaintiff's Patent.

**REQUEST NO. 17:**    Produce all documents and things concerning or relating to any research, reports, surveys, or studies conducted by or on behalf of Defendant regarding or relating to Plaintiff's Patent.

**REQUEST NO. 18:**    Produce all documents and things you have received from, sent to, or that concern or relate to any person who was an employee or officer at any time of Dental Concepts LLC, including, but not limited to, Kelly Kaplan, Richard Riordon, Mike Lesser and Ray Duane.

**REQUEST NO. 19:**    Produce all documents and things you have received from, sent to, or that concern or relate to any faculty advisors or consultants at any academic institution or university, including, but not limited to, the Tufts University School of Dental Medicine.

**REQUEST NO. 20:**    Produce all documents that concern or relate to any consulting agreement, employment contract, sales commission agreement or incentive compensation arrangement with any person regarding sales of Defendant's Product.

**REQUEST NO. 21:**    Produce documents sufficient to show or identify the channels of trade through which the Defendant's Product has been, is being, and is intended to be

marketed, sold, or offered for sale.

**REQUEST NO. 22:**        Produce all documents and things concerning or relating to any contracts, agreements or sales activities associated with the following entities or trade accounts:

(a)    Wal-Mart Stores
(b)    Kmart Stores
(c)    Target Corporation
(d)    McKesson Corporation
(e)    CVS Pharmacy

This request includes but is not limited to any proposals or offers with the above-referenced entities or accounts.

Dated: June 7, 2007

Respectfully submitted,

ALSTON & BIRD LLP

By: _____
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com

Admitted *Pro Hac Vice*

Of Counsel:

Todd R. David , GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

Carl M. Davis II, GA Bar Number
207710
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
P.C.1800
Six Concourse Parkway
Suite 3100
Atlanta, Georgia  30328
(678) 406-8700
cdavis@bakerdonelson.com

Micheline Kelly Johnson, TN BPR No.
13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing PLAINTIFF MEDTECH PRODUCT INC.'S FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS AND THINGS TO DENTEK ORAL CARE, INC. was served this 7th day of June, 2007 on all counsel or parties of record as follows:

James H. Shalek
Proskauer Rose LLP
1585 Broadway
New York, NY 10036-8299
*Attorneys for Dentek Oral Care, Inc.*
(via HAND DELIVERY)

Rebecca M. McCloskey
Wilmer Cutler Pickering Hale and Dorr LLP
399 Park Avenue
New York, NY 10022
*Attorneys for Defendant Ranir, LLC*
(via FIRST CLASS MAIL)

Karen Feisthamel, Esq.
One CVS Drive
Woonsocket, RI 02895
*General Counsel for CVS Pharmacy, Inc.*
(via FIRST CLASS MAIL)

Kathy Dutton Helmer
Kirkpatrick & Lockhart Preston Gates Ellis LLP
One Newark Center – 10th Floor
Newark, NJ 07102
*Attorneys for Power Products, Inc. (d.b.a. Splintek)*
(via FIRST CLASS MAIL)

Amy Manning