IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| _____<br>MEDTECH PRODUCTS INC.,<br>       Plaintiff,<br>     v.<br>RANIR, LLC AND CVS PHARMACY,<br>INC.,<br>       Defendants.<br>_____<br>MEDTECH PRODUCTS INC.,<br>       Plaintiff,<br>     v.<br>DENTEK ORAL CARE, INC.,<br>KELLY M. KAPLAN,<br>RAY DAUNE, AND<br>C.D.S. ASSOCIATES, INC.<br>       Defendants.<br>_____<br>MEDTECH PRODUCTS INC.,<br>       Plaintiff,<br>     v.<br>POWER PRODUCTS, INC.,<br>     d/b/a/ SPLINTEK,<br>       Defendant.<br>_____ | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)      Civil Action No. 07 CV 3302 (KMK)(LMS)<br><br>         ECF FILED |

**PLAINTIFF MEDTECH PRODUCTS INC.'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
REGARDING DEFENDANTS' MOTIONS TO DISMISS**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................ ii

I.     Medtech Asserts A Proper Claim for Tortious Interference With
       Contractual Relations Against DenTek and Duane. ........................................... 2

       A.     The SAC Alleges That DenTek and Duane Had Knowledge of the
              Contracts. ........................................................................................... 2

       B.     The SAC Contains Allegations of Improper Conduct On The Part
              of DenTek and Duane in Interfering With The Contracts At Issue,
              But It Is Not Necessary to Plead "Wrongful Means." ........................... 4

II.    Medtech Has Alleged A Proper Claim for Civil Conspiracy. ............................. 5

III.   Medtech Asserts a Proper Claim for Breach of Contract Against Kaplan
       and Duane for Breach of the Proprietary Information and Inventions
       Agreement. ................................................................................................... 9

CONCLUSION ........................................................................................................ 12

## <u>TABLE OF AUTHORITIES</u>

**Other Authorities**

*Brownstone Invest. Group, LLC v. Levey*, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007) ................................................................................................ 8

*Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07Civ7998 (HB), 2008 WL 1710910 (S.D.N.Y. 2008) .................................... 2, 4, 5

*CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345, 2007 WL 943352 (S.D.N.Y. March 29, 2007) ............................................................................ 9, 10

*Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 2008 WL 852787 (S.D.N.Y. 2008) ............................................................. 4

*First Federal Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F. Supp. 427, 443-44 (S.D.N.Y. 1986) ............................ 8

*Hecht v. Commerce Clearing House, Inc.*, 897 F.2d (2d Cir. 1990) ............................. 6

*In re Authentidate Holding Corp.*, No. 05CIV5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006) ............................................................ 2

*In re Dana Corp.*, No. 06-10354 (BRL), 2007 WL 3376882, (Bankr. S.D.N.Y. Nov. 6, 2007) .................................................................. 8

*In re Harvard Knitwear, Inc.*, 153 B.R. 617, 628 (E.D.N.Y. 1993) ............................. 7

*In re Houbigant Inc.*, 914 F. Supp 964, 990 (S.D.N.Y. 1995) ........................................ 5

*In re NASDAQ Market-Makers Antitrust Litigation*, 894 F. Supp. 703, 711 (S.D.N.Y. 1995) ................................................................................ 7

*In re Scottish Re Group Securities Litigation*, 524 F. Supp. 2d 370, 387-88 (S.D.N.Y. 2007) ................................................................................ 1

*International Minerals and Resources, Inc. v. Pappas*, No. 87Civ3988(PKL), 1992 WL 354504 (S.D.N.Y. 1992) ................................................. 3

*Mina Inv. Holdings LTD v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999) ............. 5

*Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998) ................... 6, 8

*Rahl v. Bande*, 328 B.R. 387, 422 (S.D.N.Y. 2005) ...................................................... 3

*Starr v. Time Warner, Inc.*, No. 07 Civ. 5871(DC), 2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007) ............................................................................ 3

*Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691 (S.D.N.Y. 1995) .......................... 8

*World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514,
532 (S.D.N.Y. 2001) ............................................................................................................. 5

Plaintiff Medtech Products Inc. ("Medtech") objects to certain provisions of the Report and Recommendation prepared by Magistrate Judge Lisa Margaret Smith on June 2, 2008 ("R & R"). (Docket No. 155.)[1] Magistrate Judge Smith recommends that Defendants' Motions to Dismiss be *granted* as to Medtech's claims of: (1) civil conspiracy against all Defendants, (2) tortious interference with contractual relations against DenTek and Duane, (3) tortious interference with business relationship/economic advantage against all Defendants, (4) breach of the PIIA against Duane, and (5) breach of the PIIA against Kaplan. (*Id.*)[2]

Medtech objects to the recommendation by Magistrate Judge Smith that Medtech's claims for civil conspiracy, tortious interference with contractual relations, and breach of the PIIA be dismissed.[3] Medtech incorporates in this pleading the arguments and legal authority contained in its Responses to Defendants' Motions to Dismiss (Docket Nos. 122, 139). However, if this Court should hold that any of Medtech's claims should be dismissed, that dismissal should be without prejudice and with leave for Medtech to amend its pleadings upon discovery of additional information supporting any dismissed claim. *See, e.g.*, *In re Scottish Re Group Securities Litigation*, 524 F. Supp. 2d 370, 387-88 (S.D.N.Y. 2007) ("[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead.") (int. cit. omit.); *see also*

---

[1] In her R & R, Magistrate Judge Smith recommends that this Court *deny* Defendants DenTek Oral Care, Inc.'s ("DenTek"), Kelly M. Kaplan's ("Kaplan"), Ray Duane's ("Duane"), and C.D.S. Associates, Inc.'s ("C.D.S.") (collectively, "Defendants") Motions to Dismiss Medtech's Second Amended Complaint ("SAC") on the following claims: trade secret misappropriation against all Defendants, unjust enrichment and unfair competition against DenTek, breach of the General Release against Kaplan and Duane, breach of the Consulting Agreement against Duane and C.D.S., and breach of the Proprietary Information and Inventions Agreement ("PIIA") against C.D.S. (R & R, p. 38.) Medtech agrees with these recommendations and they will not be discussed further.

[2] Medtech does not object to the Magistrate Judge's recommendation that Medtech's claim for tortious interference with business relationship/economic advantage be dismissed.

[3] Medtech further objects to the generic reference of THE DOCTOR'S® NIGHTGUARD™ brand dental protector in Magistrate Judge Smith's R & R. Medtech respectfully requests that the parties' respective products be referred to as "Medtech's Dental Protector" and "DenTek's Dental Protector."

*In re Authentidate Holding Corp.*, No. 05CIV5323, 2006 WL 2034644, *4 (S.D.N.Y. July 14, 2006).

**I.     Medtech Asserts A Proper Claim for Tortious Interference With Contractual Relations Against DenTek and Duane.**

Count X of Medtech's SAC[4] asserts a claim of tortious interference with contractual relations against DenTek based upon DenTek's improper inducing of Duane, C.D.S., and Kaplan to breach the confidentiality provisions contained within their Consulting Agreements, PIIA, and General Releases.  Count XI asserts a similar cause of action against Duane for his actions in causing Kaplan to breach the confidentiality provision of her General Release.

A claim for tortious interference with contractual relations must allege five elements: "(1) the existence of a valid contract between Concept One and a third party; (2) Plaintiffs' knowledge of that contract; (3) Plaintiffs' intentional procurement of a breach of that contract without justification; (4) actual breach of the contract and (5) resulting damages."  *Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07Civ7998 (HB), 2008 WL 1710910, *2 (S.D.N.Y. 2008).

In the R & R, Magistrate Judge Smith concluded that Medtech's claims for tortious interference with contractual relations against both DenTek and Duane should be dismissed because Medtech failed to adequately allege DenTek's and Duane's knowledge of the contracts and because there were no allegations that either of the Defendants used "wrongful means" to induce the breach of contract.  (R & R, pp. 24-28.)

**A.     The SAC Alleges That DenTek and Duane Had Knowledge of the Contracts.**

The question of whether DenTek and Duane knew of the contracts at issue raises a factual issue that is inappropriate for determination on a motion to dismiss.  *See, e.g., Rahl v.*

---

[4] All references to Counts pertain to the SAC.

*Bande*, 328 B.R. 387, 422 (S.D.N.Y. 2005) (noting that an allegation that defendant knew or should have known qualifies as a factual issue inappropriate for determination in a motion to dismiss).  As long as a plaintiff alleges that knowledge existed, then that allegation should be accepted as true for the purposes of a motion to dismiss.  *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871(DC), 2007 WL 4144627, *2 (S.D.N.Y. Nov. 21, 2007) ("the court must accept the factual allegations of the complaint as true and draw all reasonable inferences in favor of the plaintiff.").

The SAC contains the following allegations concerning DenTek's and Duane's knowledge of the contracts at issue:

1. DenTek knew or should have known of the valid contracts between Duane and Dental Concepts/Medtech and Kaplan and Dental Concepts/Medtech. (SAC, ¶ 258.)

2. DenTek is a sophisticated entity well aware of the industry practice of securing confidentiality agreements, as evidenced by its own conduct with Duane, Kaplan and the Tufts Doctors.  (*Id.*, ¶ 259.)

3. Duane knew or should have known of the valid contract between Kaplan and Dental Concepts/Medtech.  (*Id.*, ¶ 265.)

Since Medtech has specifically pled that DenTek and Duane had, or should have had, knowledge of these two contracts, and because "the court must accept the factual allegations of the complaint as true," for the purposes of the Motions to Dismiss, DenTek's and Duane's argument that there is no claim of knowledge must fail.  *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871(DC), 2007 WL 4144627 (S.D.N.Y. Nov. 21, 2007); *see also International Minerals and Resources, Inc. v. Pappas*, No. 87Civ3988(PKL), 1992 WL 354504, *3 (S.D.N.Y. 1992) (noting in context of summary judgment motion that "[i]n determining whether defendants had the requisite knowledge, the Court must consider whether any information received by defendants was sufficient to put them on notice that a valid contract had been executed.").  Because the element of knowledge was sufficiently pled, Medtech's claims for tortious interference with contract

should not be dismissed. However, even if this Court should determine that the requisite knowledge was not pled in Medtech's SAC, leave should be granted for Medtech to amend its pleadings. By way of example, Medtech would incorporate documents it has obtained from DenTek through discovery that relate to DenTek's possession of, or access to, certain confidential documents from Dental Concepts.

> **B.**     **The SAC Contains Allegations of Improper Conduct On The Part of DenTek and Duane in Interfering With The Contracts At Issue, But It Is Not Necessary to Plead "Wrongful Means."**

Counts X and XI contain claims for tortious interference with existing contracts – the Consulting Agreement, the PIIA, and the General Releases. Because these claims involve allegations concerning existing contracts instead of future, potential contracts or potential business relations, Medtech is under no obligation to plead "wrongful means":

> It must be emphasized that to state a claim for tortious interference with contract under New York law, Defendant need not allege malice on the part of Plaintiffs or that Plaintiffs used wrongful means to procure the breach. Defendant need only allege facts that show that Plaintiffs' procurement of the breach was without justification. This is the signal difference between a claim for tortious interference with business relations, which requires that the tortfeasor acted "solely out of malice" or used "wrongful means," and a claim for tortious interference with contract, which requires only "improper" conduct.

*Cerveceria*, 2008 WL 1710910 at *4; *see also Darby Trading Inc. v. Shell Intern. Trading and Shipping Co. Ltd.*, 2008 WL 852787, *11 (S.D.N.Y. 2008) ("the 'wrongful means' standard was meant to require 'proof of more culpable conduct on the part of the interferer' in cases where no binding contract had been violated.").

Whether interference with a contract is "without justification," which has also been called interference by "improper means," involves an intensive factual inquiry that requires consideration of numerous factors that "include the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the

motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of." *Cerveceria*, 2008 WL 1710910 at *4. Given the extensive analysis that must be performed to determine if the interference was without justification, courts have been reluctant to grant motions to dismiss on this issue. *See*, *e.g.*, *Cerveceria*, 2008 WL 1710910 at *5 ("In any event, as a rule, whether the actions of one party or the other were improper or justified ought not be decided [on a motion to dismiss]."); *Mina Inv. Holdings LTD v. Lefkowitz*, 184 F.R.D. 245, 251 (S.D.N.Y. 1999) (noting that the issue of when interference with contracts will be deemed "improper" is a "factually sensitive issue"). The SAC contains numerous allegations that pertain to the factors listed above, such as the nature of interference, relationships of the parties, terms of the contracts interfered with, and the interests involved, but a determination of whether DenTek and Duane acted "improperly" in interfering with the contracts at issue is not properly the subject of a motion to dismiss.

## II.     Medtech Has Alleged A Proper Claim for Civil Conspiracy.

Count XII asserts a claim of civil conspiracy against all Defendants. The requirements for a claim for civil conspiracy, are: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury. *World Wrestling Federation Entertainment, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001). In addition to these elements, a viable underlying tort must also be pled. *In re Houbigant Inc.*, 914 F. Supp 964, 990 (S.D.N.Y. 1995). In the R & R, Magistrate Judge Smith recommends that Medtech's claim of civil conspiracy be dismissed because she believes that the SAC does not contain allegations

- 5 -

concerning the first element listed above – an agreement between Defendants to engage in tortious conduct.  (R & R, pp. 22-24.)

Medtech's allegations regarding an agreement among DenTek, Duane, Kaplan, and C.D.S. are sufficient to meet the liberal pleading requirements of Federal Rule of Civil Procedure 8(a).  *See, e.g., Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157 (S.D.N.Y. 1998); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n. 4 (2d Cir. 1990) ("On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy.").

The SAC contains the following relevant allegations:

A. On or about August 25, 2006, DenTek and Duane finalized the terms of their arrangement and signed an agreement pursuant to which Duane agreed to assist DenTek with the development of an OTC bruxism device to compete with THE DOCTOR'S® NIGHTGUARD™; (SAC, ¶ 120.)

B. By virtue of Duane and Kaplan's inside information, DenTek was able to virtually eliminate the development time normally associated with entering into a new line of products; (*Id.* ¶ 128.)

C. After their engagement, and in accordance with their plan, DenTek, Duane, and Kaplan systematically called upon and recruited various persons and companies known to Duane and Kaplan only because they had the confidential and proprietary information that they had from their time at Dental Concepts, and because of Duane's clandestine activities; (*Id.* ¶ 130.)

D. To Medtech's disadvantage, DenTek, Duane and Kaplan used Medtech's confidential and proprietary [sic] to virtually eliminate DenTek's development process and competitive entry into the dental protector market; and (*Id.* ¶ 163.)

E. Upon information and belief, DenTek, Duane, C.D.S., and Kaplan conspired, agreed, and planned to use Medtech's confidential and proprietary information in violation of Duane's, C.D.S.'s and Kaplan's valid confidentiality agreements and New York law. (*Id.* ¶ 270.)

Medtech has alleged that DenTek solicited Duane's employment for the express purpose of using Medtech's trade secrets to create a product which would compete with THE DOCTOR'S® NIGHTGUARD™ brand dental protector (SAC, ¶¶ 111, 114, 130.), and that, in furtherance of that same goal, DenTek and Duane acted together to solicit Kaplan's employment

in order to obtain the trade secret information that she possessed. (*Id.*, ¶¶ 130, 133.)  Thus, the SAC clearly establishes that two of Medtech's former key employees were solicited by DenTek to improperly create a competing dental protector, that DenTek, Duane, and Kaplan used Medtech's trade secrets to rush their product to completion, and that the end result of Defendants' plan and collaboration was a dental protector that was completed within a period of time that would not have been possible without the wholesale use of Medtech's trade secrets. These allegations sufficiently establish that each of the Defendants acted in concert to use Medtech's trade secrets, and as a result, Medtech's claim for civil conspiracy should survive Defendants' Motions to Dismiss.

In the alternative, even if this Court should find that Medtech has failed to sufficiently allege an agreement between Defendants to commit a tortious act, Defendants' Motions to Dismiss this claim should still be denied.  The allegations in the SAC were made at a time when virtually no discovery had taken place, and thus any requirement that Medtech state with specificity the exact time, place, and manner of the agreement between DenTek, Duane, and Kaplan is unrealistic:

> It should be recognized that the nature of conspiracies often makes it impossible to provide details at the pleading stage.  A plaintiff therefore should be allowed to resort to the discovery process and not easily be subject to dismissal of his complaint alleging conspiracy.

*In re Harvard Knitwear, Inc.*, 153 B.R. 617, 628 (E.D.N.Y. 1993); *see also In re NASDAQ Market-Makers Antitrust Litigation*, 894 F. Supp. 703, 711 (S.D.N.Y. 1995) ("great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of the pleading.").

In fact, courts within this jurisdiction have acknowledged the difficulties in requiring any degree of specificity regarding an agreement between defendants accused of civil conspiracy –

and for this reason have often refused to dismiss claims that do not include specific references to an agreement:

> The lack of an express allegation of an agreement is not fatal to the plaintiffs' conspiracy claims.  The courts have held that disconnected acts, when taken together, may satisfactorily establish a conspiracy and in most cases, in fact, courts infer a conspiracy from indirect evidence.

*First Federal Sav. and Loan Ass'n of Pittsburgh v. Oppenheim, Appel, Dixon & Co.*, 629 F. Supp. 427, 443-44 (S.D.N.Y. 1986) (int. cit. omit.); *Toto v. McMahan, Brafman, Morgan & Co.*, 1995 WL 46691 (S.D.N.Y. 1995); *see also Piccoli*, 19 F. Supp. 2d at 173 ("[plaintiff] has alleged the existence of a conspiracy among the defendants . . . . [n]o more is required."); *but see Brownstone Invest. Group, LLC v. Levey*, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007).

Since Medtech's civil conspiracy claim is being examined in the context of a motion to dismiss, it presents a very different issue than was before the court in *In re Dana Corp.*, which was cited by Magistrate Judge Smith in her R & R.  *See* No. 06-10354 (BRL), 2007 WL 3376882, *7 (Bankr. S.D.N.Y. Nov. 6, 2007); (R & R, p. 24.)  *In re Dana* dealt with a motion for summary judgment on a claim for civil conspiracy, and that motion was filed after nearly four years of discovery had taken place.  *Id.* at *4.  For the purposes of summary judgment and after several years of discovery, the court stated that if the only evidence the plaintiff had of a civil conspiracy was the fact that its former employees went to work for the defendant, then that was insufficient to create a viable cause of action.  *Id.* at *7.  In the present case, the allegations contained in the SAC make numerous references to the plan hatched among DenTek, Duane, and Kaplan to utilize Medtech's trade secrets in order to improperly manufacture and market a competing dental protector.  Each of the Defendants used Medtech's trade secret information, such as the identity of its suppliers, in furtherance of their plan.  (*See*, *e.g.*, SAC, ¶ 130.)  Under

applicable precedent, these allegations establish that the tortious actions taken by Defendants are sufficient to state a cause of action for civil conspiracy.

### III.   Medtech Asserts a Proper Claim for Breach of Contract Against Kaplan and Duane for Breach of the Proprietary Information and Inventions Agreement.

Count VII states a claim for breach of contract against C.D.S. and Duane for breach of both the Consulting Agreement and PIIA.  (SAC, ¶¶ 229-238.)  Count VIII alleges a breach of contract claim against Kaplan for her breach of the PIIA.  (*Id.* at 239-245.)  Count IX asserts a breach of contract claim against both Kaplan and Duane for their breach of the General Release.  (*Id.* at ¶¶ 246-255.)   In the R & R, Magistrate Judge Smith recommends the following concerning Medtech's breach of contract claims:

> A.  Count VII – Medtech alleged a viable cause of action for breach of contract against C.D.S. and Duane for breach of the Consulting Agreement.  However, the terms of the PIIA were superseded by the General Release and, thus, Medtech's claim for breach of contract against Duane for breach of the PIIA should be dismissed.  Since C.D.S. was not a party to the General Release, Medtech's claim for breach of the PIIA against C.D.S. should not be dismissed.
>
> B.  Count VIII – Since the terms of the General Release were superseded by the PIIA, Medtech's claim against Kaplan for her breach of the PIIA should be dismissed.
>
> C.  Count IX – Medtech states a proper claim for breach of contract against Duane and Kaplan for their breach of the General Release.

(R & R, p. 38.)  Medtech submits that the terms of the General Release do not supersede the PIIA, and that its claims for breach of the PIIA are proper causes of action.

A subsequent agreement will supersede a prior contract only if the subsequent agreement either pertains to "precisely the same subject matter" as the prior contract or contains "definitive language indicating it revokes, cancels, or supersedes that specific [prior] contract." *CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345, 2007 WL 943352, *6 (S.D.N.Y. March 29, 2007) (holding that later contract that contained integration clause and had "broadly associated subject matter" in common with prior agreement did not supersede the prior agreement).  If the

- 9 -

two contracts at issue have "obviously dissimilar purposes" and the later contract fails to specifically revoke the earlier contract, then the earlier contract is not superseded. *Id.* at *8.

The PIIA and the General Release were intended to serve different purposes and, accordingly, cover different subject matters. Both Kaplan and Duane executed the PIIA in 1999, at the beginning of their employment with Dental Concepts. (SAC, ¶ 42.) The PIIA covers a wide range of restrictions placed on information and inventions that are learned or obtained during the course of Kaplan's and Duane's employment with Dental Concept. More specifically, the PIIA:

- Acknowledges a "relationship of confidence and trust" between Dental Concepts, Kaplan, and Duane regarding information;

- Acknowledges Kaplan and Duane possess information held by Dental Concepts that has commercial value;

- Extensively defines Proprietary Information;

- Provides that Proprietary Information is owned by Dental Concepts;

- Requires Kaplan and Duane to keep all Proprietary Information in confidence and trust;

- Mandates disclosure to Dental Concepts of any improvements/inventions conceived or learned by Kaplan or Duane during their employment;

- States that all Inventions are the property of Dental Concepts; and

- Requires that, upon termination, Kaplan and Duane return all information to Dental Concepts.[5]

(SAC, Exs. C, D.)

On the other hand, the General Release stands in stark contrast to the expansive scope of the PIIA. The General Release was executed by Kaplan and Duane at the end of their

---

[5] In its Response to Duane's Motion to Dismiss (Docket No. 139), Medtech quotes at length from the PIIA in establishing the different subject matter contained within the General Release and PIIA.

employment with Dental Concepts and contains only the following narrow provision related to confidential information:

> <u>Confidential Information</u>. [Kaplan and Duane] agrees that it will not use, divulge, sell or deliver to or for any other person, firm or corporation other than the Company [Dental Concepts] and its respective subsidiaries, affiliates, successors and assigns any confidential information and material (statistical or otherwise) relating to the Company's business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information. On or before the Effective Date, Employee will surrender to the Company all lists, books and records of or in connection with the Company's business and all other property belonging to the Company.

(SAC, Ex. G (at p. 3, ¶ 7); Ex. H (at p. 3, ¶ 7).)  Also, the General Release states that it represents the full agreement of the parties regarding "the subject matter hereof" – however, the General Release does not refer to the PIIA.  (*Id.*)

The General Release is intended to apply to use of information after the employment of Kaplan and Duane had ended.  (*Id.*)  Consequently, there are numerous obligations contained within the PIIA that are not dealt with in the General Release, such as (1) the acknowledgement that Kaplan and Duane would "have access to confidential information vital to the business of the Company and its Affiliates" and that they had a "relationship of confidence and trust" with respect to information; (2) the acknowledgement that Dental Concepts possesses information that "has commercial value in the business in which the Company is engaged;" (3) the definition of "Proprietary Information" that defines what the parties meant by that term; (4) the provision detailing that "All Proprietary Information shall be the sole property of the Company and its assigns, and the Company and its assigns" and that Kaplan and Duane assigned all their rights to such information to the company; (5) their agreement to disclose any improvements that are related or used or useful to Dental Concepts; (6) their agreement that all Inventions are the property of Dental Concepts; and (7) their agreement to not take with them "any documents, data

or property or any description or any reproduction of any of the foregoing containing or pertaining to any Proprietary Information and/or Inventions." (*Id.*) Because the scope of the PIIA is much more extensive than the General Release, Medtech submits that the PIIA is not superseded by the General Release and that Medtech's claims against Kaplan and Duane for breach of the PIIA should not be dismissed.

<u>**CONCLUSION**</u>

The Court should approve the R & R of Magistrate Judge Smith regarding Medtech's claims for trade secret misappropriation against all Defendants, unjust enrichment and unfair competition against DenTek, breach of the General Release against Kaplan and Duane, breach of the Consulting Agreement against Duane and C.D.S., and breach of the Proprietary Information and Inventions Agreement against C.D.S. The Court should not adopt Magistrate Judge Smith's recommendation that Medtech's claims for civil conspiracy against all Defendants, tortious interference with contractual relations against DenTek and Duane, and breach of the PIIA against Duane and Kaplan be dismissed.

Dated: June 19, 2008

     New York, New York

Respectfully submitted,

ALSTON & BIRD LLP

By:   s/ Karl Geercken
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

Todd R. David, GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com

Thomas O. Helton, TN BPR No. 01929
Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
thelton@bakerdonelson.com
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.

- 13 -