UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MEDTECH PRODUCTS, INC.,

                Plaintiff,

      v.

RANIR, LLC and CVS PHARMACY, INC.,

                Defendants.

---

MEDTECH PRODUCTS, INC.,               07 CV 3302 (KMK) (LMS)

                Plaintiff,

      v.

DENTEK ORAL CARE, INC.,
KELLY M. KAPLAN,
RAY DUANE, and
C.D.S. ASSOCIATES, INC.,

                Defendants.

---

MEDTECH PRODUCTS, INC.

                Plaintiff,

      v.

POWER PRODUCTS, INC.
  d/b/a SPLINTEK,

                Defendant.
------------------------------------------------------------ X

**DEFENDANT KELLY M. KAPLAN'S OBJECTIONS TO MAGISTRATE
JUDGE SMITH'S REPORT AND RECOMMENDATION DATED JUNE 2, 2008
REGARDING, AMONG OTHER THINGS, DEFENDANTS' MOTIONS
TO DISMISS THE SECOND AMENDED COMPLAINT**

                                    SALON MARROW DYCKMAN
                                    NEWMAN & BROUDY LLP
                                    *Attorneys for Defendant Kelly M. Kaplan*
                                    292 Madison Avenue, 6th Floor
                                    New York, New York 10017
                                    (212) 661-7100

# **TABLE OF CONTENTS**

ARGUMENT..................................................................................................................2

LEGAL STANDARD....................................................................................................2

    A.    THE REPORT ERRONEOUSLY CONCLUDED THAT
PLAINTIFF'S TRADE SECRET MISAPPROPRIATION
CLAIM AGAINST KAPLAN SHOULD NOT BE DISMISSED........................2

        i.    Plaintiff's Conclusory and Vague Allegations Do Not
Adequately Plead the Existence of Protectable Trade Secrets........................4

        ii.    Plaintiff Did Not Adequately Plead
Wrongful Use of Any Alleged Trade Secret.................................................10

        iii.    Plaintiff Did Not Sufficiently Identify Its Trade Secrets...............................12

    B.    THE REPORT ERRONEOUSLY CONCLUDES THAT
PLAINTIFF'S CLAIM AGAINST KAPLAN FOR ALLEGED
BREACH OF THE GENERAL RELEASE SHOULD PROCEED......................14

    C.    THE REPORT ERRONEOUSLY CONCLUDES THAT
PLAINTIFF SHOULD BE PERMITTED ADDITIONAL
DISCOVERY TO DETERMINE WHAT TRADE SECRETS
IT IS CLAIMING TO HAVE BEEN MISAPPROPRIATED...............................15

CONCLUSION............................................................................................................16

# TABLE OF AUTHORITIES

**Case**                                            **Page**

*Ashland Mgmt, Inc. v. Janien,*
82 N.Y.2d 395, 604 N.Y.S.2d 912 (1993)..................................................3, 5, 6

*ATSI Comms. Inc. v. Shaar Fund,*
493 F.3d 87, 98 (2d Cir. 2007).........................................................................13

*Bear Stearns Funding, Inc. v. Interface Grp.,*
361 F.Supp.2d 283 (S.D.N.Y. 2005)(Haight, S.J.)......................................7, 9

*Boyle v. Stephens, Inc.,*
No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780
(S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.)....................................................3, 7

*CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.,*
No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315
(S.D.N.Y. May 31, 1985)(Sweet, J.).................................................................11

*Data Comm. Dirmeyer,*
514 F.Supp. 26 (E.D.N.Y. 1981).......................................................................11

*Del Monte Fresh Produce Co. v. Dole Food Co.,*
148 F.Supp.2d 1322 (S.D. Fla. 2001)..............................................................16

*DeRubeis v. Witten Tech., Inc.,*
No. 1:06-CV-807-JTC, 2007 U.S. Dist. LEXIS 30047
(N.D. Ga. Apr. 23, 2007)...................................................................................16

*Gaetano Assocs. Ltd. v. Artee Collections, Inc.,*
No. 05 Civ. 3329, 2006 WL 302680 (S.D.N.Y. Oct. 25, 2006)...............12, 13

*Head Ski Co., Inc. v. Kam Ski Co., Inc.,*
158 F. Supp. 919 (D.C.Md. 1958)....................................................................11

*Hudson Hotels Corp. v. Choice Hotels, Int'l.,*
995 F.2d 1173 (2d Cir. 1993).............................................................................6

*Kirch v. Liberty Media Corp.,*
449 F.3d 388 (2d Cir. 2006).......................................................................13, 14

*Ring v. Estee Lauder,*
702 F.Supp. 76 (S.D.N.Y. 1988).......................................................................6

*Sit-Up Ltd. v. IAC/InteractiveCorp.*,
No. 05 Civ. 9292, 2008 U.S. Dist. LEXIS 12017
(S.D.N.Y. Feb. 20, 2008)..................................................................................8

*Smith v. Local 819 I.B.T. Pension Plan*,
291 F.3d 236 (2d Cir. 2002)............................................................................13

*Struthers Scientific and Int'l. Corp. v. Gen. Foods Corp.*,
51 F.R.D. 149 (D.Del. 1970)...........................................................................16

*Wolff v. Rare Medium, Inc.*,
171 F. Supp. 2d 354 (S.D.N.Y. 2001)(Marrero, J.).........................................13

*Xerox Corp. v. Int'l Bus. Machs. Corp.*,
64 F.R.D. 367(S.D.N.Y. 1974)(Edelstein, C.J.)..............................................15

## **Statutes**

Fed. R. Civ. P. 12(b)(6)..................................................................................6,8

Fed. R. Civ. P. 72(b)(2)....................................................................................1

Fed. R. Civ. P. 72(b)(3)....................................................................................2

28 U.S.C. § 636(b)(1)(C)...............................................................................1,2

TO: **THE HONORABLE KENNETH M, KARAS,
UNITED STATES DISTRICT JUDGE**

Defendant Kelly M. Kaplan ("Kaplan"), by and through her attorneys, Salon Marrow Dyckman Newman & Broudy LLP, and pursuant to 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), hereby objects to the Report and Recommendation of Hon. Lisa M. Smith, U.S. Mag. J. dated June 2, 2008, regarding, among other things, Kaplan's motion to dismiss Plaintiff's claims against her in their entirety (the "Report").[1] Specifically, Kaplan objects to those portions of the Report: (a) denying her motion to dismiss with respect to Plaintiff's claim for misappropriation of trade secrets (the "Trade Secret Claim") and breach of a General Release executed between Kaplan and Dental Concepts, LLC, Plaintiff's predecessor-in-interest ("DC")[2], on or about November 14, 2005 (the "General Release"; the claim hereinafter referred to as the "Contract Claim")[3]; (b) concluding that Plaintiff should be permitted to take yet additional discovery to help it identify what trade secrets it has claimed to have been misappropriated; and (c) containing various erroneous conclusions upon which Magistrate Judge Smith relied to support her recommendations that the Trade Secret Claim and the Contract Claim not be dismissed (including, but not limited to, the conclusion that extraneous materials submitted by Kaplan of which judicial notice can properly be taken[4] should not be considered in determining Kaplan's motion to dismiss.) Kaplan does not object to

---

[1] A copy of the Report, that was served on the parties for the first time via ECF on June 3, 2008, is attached hereto as Exhibit A.
[2] As used hereinafter, the term Plaintiff shall be deemed to include DC.
[3] A copy of the General Release is annexed to Plaintiff's Second Amended Complaint as Exhibit H, and is specifically incorporated herein.
[4] In support of her objections to the Report, Kaplan specifically incorporates herein the papers she submitted in initial support of her motion to dismiss on November 21, 2007 (including her memorandum of law (the "Initial MOL"), *see* Exhibit B hereto), and her reply memorandum of law dated December 14, 2007 (the "Reply MOL"), Exhibit C hereto, and all other documents she relied upon in support of her motion to dismiss.

Magistrate Judge Smith's findings that Plaintiff's claims against Kaplan for civil conspiracy, tortious interference with economic advantage and breach of a Proprietary Information and Inventions Agreement dated September 13, 1999 (the "PIA") should be dismissed.

Kaplan hereby adopts and specifically incorporates herein the contents of the respective objections to the Report filed by defendants DenTek Oral Care, Inc. ("DenTek") and Ray Duane and CDS Associates, Inc. (the "Duane Defendants"), and offers the arguments made therein in further support of her application. For all the reasons set forth in those documents and in Kaplan's papers submitted in support of her motion to dismiss and for the to be discussed below, Kaplan respectfully requests that this Court modify the Report and dismiss Plaintiff's Complaint against her in its entirety, award her attorneys' fees, and grant her such other and further relief as it deems just and proper.

## ARGUMENT

## LEGAL STANDARD

A Magistrate Judge's recommendations on a dispositive motion are reviewed *de novo* to determine if they have been properly objected to. Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(C).

**A.  THE REPORT ERRONEOUSLY CONCLUDED THAT PLAINTIFF'S TRADE SECRET MISAPPROPRIATION CLAIM AGAINST KAPLAN SHOULD NOT BE DISMISSED**

Kaplan respectfully submits that Magistrate Judge Smith's conclusion that Plaintiff adequately stated a claim for trade secret misappropriation against Kaplan (or any other defendant for that matter) is erroneous as a matter of law. A plaintiff seeking to

prevail on a trade secret misappropriation claim must demonstrate: (a) that it possessed a trade secret; and (b) that defendant is using that trade secret in breach of an agreement, confidence or duty. *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780, * 14-15 (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.).

The standard New York Courts apply in determining whether an idea or concept constitutes a trade secret is as follows:

> There is no generally accepted definition of a trade secret but that found in section 757 of Restatement of Torts, comment b has been cited with approval by this and other courts. It defines a trade secret as "any formula, pattern, device or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. The restatement suggests that in deciding a trade secret claim several factors should be considered:
>
>> (1) the extent to which the information is known outside [the] business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of information to the business and its competitors; the amount of effort or money expended by the business in developing the information; the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Ashland Mgmt, Inc. v. Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917 (1993) (internal citations omitted; brackets in original)

As set forth in the Initial MOL, Plaintiff's Trade Secret Claim must fail because in its Second Amended Complaint (the "Complaint"), Plaintiff pleads neither a legally cognizable trade secret nor any misappropriation by Kaplan – other than the conclusory allegations that she "disclosed" Plaintiff's "trade secrets" or "confidential" or

"proprietary" information, or "knowledge" she gained because she was formerly employed by DC, all of which, even cumulatively, are simply insufficient to support the Trade Secret Claim.

### i. Plaintiff's Conclusory and Vague Allegations Do Not Adequately Plead the Existence of Protectable Trade Secrets

Much like the Complaint, the Report also fails to specify which trade secrets of Plaintiff were allegedly misappropriated by Kaplan. Instead, the Report lists general categories of information that have been held by other Courts to constitute trade secrets of other plaintiffs; acknowledges that Plaintiff did not plead any specific trade secrets that fall into any of those categories, but nevertheless determines that the Trade Secret Claim survive because Plaintiff might have a trade secret in a compilation of such unspecified (and worse, publicly available) information:

> Although certain aspects of a product would easily be ascertainable upon inspection once the product is placed on the market, such as the design of a product, have been found to not constitute trade secrets see Linko, Inc. v. Fujitsu, Ltd., 230 F. Supp. 2d 492, 498-99 (S.D.N.Y. 2002), and marketing concepts, new product ideas and business possibilities and goals have likewise been found not to constitute trade secrets, id. at 499-500, *lists of suppliers*, Howard Berger Co. and Ye, 272 A.D.2d 445 (2d Dep't 2000); **strategic information regarding price, distribution, and marketing; brand strategies**, Estee Lauder Co. v. Batra, 430 F. Supp. 2d 158, 175-176 (S.D.N.Y. 2006); and **confidential business relationships**, A&G Healthplans, Inc. v. Nat. Network Servs., Inc., No. 99 CV 12153 (GBD), 2003 WL1212933, *3 (S.D.N.Y. Mar. 14, 2003), have been found to constitute trade secrets. In addition, "[i]t is well-settled that 'a trade secret can exist in a combination of characteristics and components, each of which, in unique combination, affords a competitive advantage and is a protectable secret.'" Integrated Cash Mgmt. Servs., Inc. v. Digital Transactions, Inc., 732 F. Supp. 370, 376 (S.D.N.Y. 1989) (quoting Imperial Chem. Indus. Ltd. v. Nat. Distillers & Chem. Corp., 342 F.2d 737, 742 (2d Cir. 1965)), aff'd, 920 F.2d 171 (2d Cir. 1990).

Report at 9-10 (emphasis supplied). Specifically, the Report recommends that this Court determine that Plaintiff has sufficiently pled trade secrets because it alleged in the Complaint:

> (a) "that Kaplan and Duane were involved in '**brand development and marketing**' and '**formulation of strategic sales and market goals and initiatives**'";
>
> (b) "that [Kaplan and Duane] were 'intimately familiar with **[DC's] consultants, brokers, designers, suppliers, product formulation and production sources, and marketing strategies**,'";
>
> (c) "that [Kaplan and Duane] were privy to **business plans** for marketing the Nightguard and Kaplan was included in high-level discussions about **the strategy for the Nightguard**";
>
> (d) "that [Kaplan and Duane] had 'access to ... **manufacturing cost details, drawings, test data, and other information about the design and manufacturing process** for the dental protectors"; and
>
> (e) "that [Kaplan and Duane] knew Medtech's **strategic decision to maintain its three-size-platform**; and

Report at 11-12 (emphasis supplied). Thus, the Report essentially concludes that the first prong of the trade secret analysis, *i.e.* the existence of a trade secret, was sufficiently pled because Plaintiff made the conclusory allegations in the Complaint that while associated with DC, Kaplan had access to Plaintiff's "strategic decision to maintain its three-size platform" and various general categories of information which, can constitute trade secrets of "a" plaintiff.

Of course, as demonstrated in the Initial MOL, Plaintiff's alleged "strategic decision to maintain its three-size platform" is not a "strategic decision" to do anything but is merely lack of a decision by Plaintiff to start manufacturing a one-size-fits-all product when it had been manufacturing and selling its dental protector in three sizes for years. That Plaintiff's dental protector came in three sizes was public information; thus,

133756                                    5

Case 7:07-cv-03302-KMK-LMS   Document 160   Filed 06/19/2008   Page 10 of 20

that it would continue to do so could not have been a secret, let alone a trade secret. *See e.g. Ashland Mgmt, Inc. v. Janien*, 82 N.Y.2d 395, 407, 604 N.Y.S.2d 912, 917 (1993)("In order to constitute a trade secret, information must first and foremost be a secret.") Furthermore, given that Plaintiff already had a dental protector in the market that came in three sizes, the idea of a one-size-fits-all dental protector was neither "novel" nor "original", and thus, could not have been a trade secret also for that reason. *Ring v. Estee Lauder*, 702 F.Supp. 76, 77 (S.D.N.Y. 1988), *aff'd per curiam*, 874 F.2d 109 (2d Cir. 1989).[5]

Kaplan has demonstrated in the papers she submitted in support of her motion, as a matter of law, Plaintiff did not have one single trade secret in any of the other broad categories of information relied upon by Magistrate Judge Smith in concluding that the Trade Secret Claim is supportable. *See e.g.* Exhibit B at 8-16. However, the Report categorically ignores Kaplan's analysis, primarily because it erroneously determines "the secrecy of particular information **is** an issue of fact, and **cannot be decided at the motion to dismiss stage**." *See* Report at 12 (emphasis supplied). Kaplan also objects to this conclusion, and respectfully submits that it is squarely contradicted by case law.

It is well settled that in order to constitute a trade secret, information must first and foremost be a secret. *Ashland* at 407, 604 N.Y.S.2d 917; *accord Hudson Hotels Corp. v. Choice Hotels, Int'l.*, 995 F.2d 1173 (2d Cir. 1993); *see also* Report at 9,

---

[5] Even if Plaintiff had kept its supposed "strategy" to maintain the three-size-platform confidential, that information would, at best, be either a "marketing concept" or a "new product idea" (or rather, lack thereof), and thus, still would not qualify as a trade secret. *See Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780, * 14-15 (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.). Plaintiff also cannot claim existence of a trade secret in a demand by a customer for a one-size-fits-all product. *Linkco, Inc. v. Fujitsu, Ltd.*, 230 F.Supp.2d 492, 500 (S.D.N.Y. 2002)(Scheindlin, J.)("Information consisting simply of business possibilities and goals" does not constitute a trade secret.) *See also* Initial MOL at 8-11 for additional discussion on why the "decision to maintain the three-size-platform" is, as a matter of law, not a trade secret.

133756                                    6

acknowledging that "the most important consideration in determining whether a piece of information qualifies as a trade secret is whether the information was actually a secret." Thus, while the existence of a trade secret can often be a question of fact, the Court in fact must dismiss a trade secret misappropriation claim on a 12(b)(6) motion if it is evident from the pleadings or the facts that the information was not kept secret. *Bear Stearns Funding, Inc. v. Interface Grp.*, 361 F.Supp.2d 283, 305 (S.D.N.Y. 2005)(Haight, S.J.)(dismissing trade secret misappropriation claim because information alleged to be a trade secret was not actually kept secret); *see also Boyle,* 1997 U.S. Dist. LEXIS 12780, * 14-15 (dismissing trade secret misappropriation claim because the information sought to be protected was either a new marketing technique or a new product concept – neither of which is protectable under New York law – and in any event in the public domain).

Also erroneous is Magistrate Judge Smith's finding that a combination of Plaintiff's vague allegations is sufficient to plead a trade secret allegedly because "it is well settled that a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain." Report at 11. As a threshold matter, Plaintiff's complaint does not allege a trade secret in any "combination of characteristics or components." Even if it had, Plaintiff would still have had to sufficiently specify the underlying information to demonstrate that it can be cumulated to form a unique combination that is worthy of trade secret protection. *See Sit-Up Ltd. v. IAC/InteractiveCorp.,* No. 05 Civ. 9292, 2008 U.S. Dist. LEXIS 12017 (S.D.N.Y. Feb. 20, 2008).

While the Report relies heavily on *Head Ski Co., Inc. v. Kam Ski Co., Inc.,* 158 F. Supp. 919 (D.C.Md. 1958) in arriving at this conclusion, *Head Ski* is easily

distinguishable. First, *Head Ski* is not a case that addresses the sufficiency of the allegations in a trade secret misappropriation claim. Instead, in *Head Ski,* Plaintiff sought injunctive relief after a special master had issued an extensive report (that he had prepared after visiting plants for both plaintiff and defendants, observing their respective methods of operation and studying their competing products), concluding, among other things, that defendants were using many of plaintiff's trade secrets that they had learned while working for the plaintiff and that they could not have produced their competing product "at all" if it had not been for their use of plaintiff's trade secrets. In fact, the *Head Ski* opinion specifically states that other manufacturers in the United States and Europe had tried to compete with the plaintiff's product but had failed "despite their knowledge and experience." *Id.* at 924. Here, there was no allegation that DenTek could not have entered the market with its competing product if it were not for the alleged disclosure of Plaintiff's "trade secrets." Rather, Plaintiff only alleged that disclosure of its so-called trade secrets assisted DenTek in bringing its product to the market faster.

Furthermore, Kaplan also respectfully submits that it was error for Magistrate Judge Smith to decline to take into consideration extrinsic materials submitted by Kaplan of which judicial notice could have properly been taken (*i.e.* the Hearing Transcript and Panel Materials, as those terms are defined in the Initial MOL). In this regard, the Report states the following:

> In addition, it should be noted that Kaplan submits transcripts, briefing material, and panel materials from a dental products hearing conducted on October 12, 2005, before the Food and Drug Administration, which she argues the Court may take judicial notice of and consider for the purposes of her 12(b)(6) motion because they are public records. Kaplan Memorandum in Support at pages 5, 7. Medtech does not dispute the Court's consideration of Kaplan's additional materials. However, a court may take judicial notice of public records on a motion to dismiss "only to

133756                                     8

> establish the existence of the [record], not for the truth of the facts asserted in [it]." Although she argues otherwise, Kaplan submits the additional submissions for the purposes of informing the Court of their contents and not simply to alert the Court of their existence. See Kaplan's Memorandum in Support at pages 8-11. Thus, I will not consider Kaplan's exhibits in determining her motion to dismiss under 12(b)(6).

Report at 7, n. 5.[6]

However, even a cursory review of the materials submitted by Kaplan in support of her application shows that they were used not to establish the truth of their contents, but rather to show that the very information claimed to constitute trade secrets was undeniably in the public domain. Thus, the only relevant inquiry was whether or not the information contained in those documents, whether or not true, was kept secret. Even if all the information contained in the extrinsic materials relied upon by Kaplan had been untrue, the very existence of such information in the public domain would still demonstrate that the information could not, as a matter of law, have constituted trade secrets. *See e.g. Bear Stearns* at 305 (dismissing trade secret misappropriation claim because information alleged to be a trade secret was not actually kept secret).

By way of example, the Hearing Transcript relied upon by Kaplan shows that Plaintiff did not keep secret its association with the Tufts Doctors because it released this information into the public domain as early as 2005 by having Dr. Mehta, the head of the Tufts Doctors' practice, represent DC at an FDA hearing.[7] Thus, Kaplan did not use the Hearing Transcript to prove the truth of any of Dr. Mehta's statements, but rather to show that the Tufts Doctors' association with Plaintiff could not have been a trade secret

---

[6] Notably, as acknowledged in the Report, while Plaintiff unnecessarily made a motion to strike DenTek's memorandum of law because of its reliance on other extrinsic materials, it did not even object to the use of the materials offered by Kaplan in support of her motion.

[7] Contrary to public record, the Report in fact concluded that Plaintiff had sufficiently pled misappropriation by Kaplan because, Plaintiff had alleged, among other things that Kaplan "solicited the Tufts Doctors." Report at 13.

because it was indisputably in the public domain. Accordingly, Kaplan respectfully submits that the Report should have taken judicial notice of the documents submitted by Kaplan in support of her motion. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991)(permitting consideration of extraneous documents where they are "relevant not to prove the truth of their contents but to determine what the documents stated"); *see also* Fed. R. Evid. 201.

### ii. Plaintiff Did Not Adequately Plead Wrongful Use of Any Alleged Trade Secret

The Report also erroneously concludes that the second prong of the trade secret test was adequately pled. In this respect, the Report provides the following:

> With regard to the second element of Medtech's trade secret misappropriation claim, I conclude, and respectfully recommend that Your Honor should conclude, that Medtech has adequately alleged wrongful use of the alleged trade secrets by Kaplan, Duane and DenTek. Specifically, Medtech alleges, *inter alia*, that "DenTek, Duane, and **Kaplan systematically called upon and recruited various persons and companies known to Duane and Kaplan only because they had confidential and proprietary information they had from time to time at Dental Concepts.....**" Medtech goes on to allege that Duane called Item, Stelray, and Proman Products, who were suppliers known to Duane only because of his association with Dental Concepts, and that **Kaplan solicited the Tufts Doctors to do work for DenTek's nightguard as consultants and advised DenTek of Medtech's strategic decision to maintain its three-size platform**, despite the confidentiality agreements each entered into at the beginning of their employment with Dental Concepts and the General Releases they each entered into at the end of their employment with Dental Concepts. Furthermore, as noted supra, Medtech alleges that DenTek used **inside information** gleaned from Duane and Kaplan **to "eliminate the development time normally associated with entering into a new line of products**." Such allegations are sufficient to put Defendants on notice of the second element of Medtech's trade secret misappropriation claim.

Report at 13-14 (emphasis supplied).

As demonstrated above, the foregoing conclusions are wrong first and foremost because they do not identify any legally cognizable trade secrets that could in fact have been misappropriated.[8] Simply put, if a company does not have a protectable ownership interest in certain information, then the use of such another by another cannot possibly be wrongful.

Furthermore, the conclusory statement that DenTek was "able to create a competing nightguard on an expedited basis because of **the knowledge** it gained from Kaplan and Duane, "thereby cutting out the research and development phase of the process" is also not sufficient to sustain a claim for misappropriation of a trade secret. Thus, Kaplan objects to the Report's use of this allegation as a basis for concluding that Defendants had misappropriated anything. The allegation that Kaplan – an individual who never agreed not to compete with Plaintiff subsequent to leaving its employ – used knowledge she gained as a result of her association with Plaintiff to the advantage of a subsequent employer, without more, is insufficient to allege wrongful use. It is well settled that "not all information acquired during a period of employment qualifies as a trade secret or as confidential." *CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.*, No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315, *7 (S.D.N.Y. May 31, 1985)(Sweet, J.)(denying motion for preliminary injunction seeking to enjoin use of allegedly confidential information of plaintiff because plaintiff failed to offer any proof for its conclusory allegations in the complaint that defendant used plaintiff's confidential information). For example, "knowledge of the inner workings of a company, including

---

[8] By way of example, the allegation that DenTek misappropriated Plaintiff's "strategic decision to maintain its three-size platform" is laughable because it essentially claims that DenTek somehow "wrongfully" used knowledge that Plaintiff would not be making any changes in its product to enter the market with an innovative and more convenient product. That is not trade secret misappropriation, it is fair market competition.

133756                                                              11

the intricacies of business operations and general financial information does not qualify as a trade secret." *Id.* (*citing Data Comm. Dirmeyer*, 514 F.Supp. 26, 33 (E.D.N.Y. 1981)).

Here, there is not one single trade secret found or pled and the only allegation is that knowledge Kaplan acquired as a result of her employment with Plaintiff was used to assist DenTek to bring its competing product to the market more expeditiously than it otherwise would have. This allegation is wholly insufficient to plead wrongful use by Kaplan of anything.

### ii. Plaintiff Did Not Sufficiently Identify Its Trade Secrets

Kaplan also objects to the conclusion in the Report that the Trade Secret claim is sufficiently pled because there is no "'universal rule" that a plaintiff asserting a trade secret misappropriation claim must **disclose** the precise trade secrets it alleges were misappropriated before being allowed to proceed with the claim." Report at 12, n. 6; *see also id.* at 36 where Magistrate Judge Smith relies upon this conclusion to determine Plaintiff should be permitted to take additional "limited" discovery to determine its allegedly misappropriated "trade secrets". This conclusion is erroneous because it confuses sufficiently identifying a trade secret with fully revealing it. Contrary to the conclusions contained in the report, the law clearly demands more than conclusory allegations that a plaintiff owned certain trade secrets and that they were "disclosed" by a Defendant.[9]

---

[9] To be clear, Kaplan has not contended that Plaintiff must disclose all of the details of its trade secrets to sufficiently plead a claim for misappropriation of any trade secret. However, if Plaintiff has a good faith basis for claiming that defendants misappropriated its trade secrets, then, it must already know which such alleged secrets are in possession of DenTek. It is telling that Plaintiff has thus far been unable to identify a single specific trade secret allegedly misappropriated.

133756                                                    12

Magistrate Judge Smith cites *Gaetano Assocs. Ltd. v. Artee Collections, Inc.,* No. 05 Civ. 3329, 2006 WL 302680, * 2 (S.D.N.Y. Oct. 25, 2006) to support the general proposition that "a plaintiff need not reveal the alleged trade secrets in the complaint." Report at 12, n. 6. However, *Gaetano* is easily distinguishable from the case at hand. In that case, the Court determined that defendants could amend their answer to assert a counterclaim for trade secret misappropriation under Massachusetts law because their proposed answer and counterclaims sufficiently described "the very trade secrets at issue, the time period during which they were obtained and the general method by which they were allegedly acquired." Thus, the Court held that defendants were not required, as the plaintiffs contended, in their pleading to "explain how the list of names or quantities of fabric sold constitutes a trade secret, what steps defendants took to preserve the secrecy of the information or how plaintiffs improperly obtained the alleged trade secret." *Id.* at *7. Unlike in *Gaetano,* here, the pleading at issue is devoid of any specific trade secret claimed to have been misappropriated. While Plaintiff may not have needed to reveal every detail of every trade secret it was claiming to have been misappropriated, it was certainly required to give adequate notice of what it was that Plaintiff was claiming to have been misappropriated.

For the foregoing reasons and those discussed in Kaplan's motion papers and in the papers submitted by other defendants in support of their respective motions to dismiss and objections to the Report, even under the liberal federal pleading standards, Plaintiff's allegations fall well short of supporting a trade secret misappropriation claim. *See e.g. Wolff v. Rare Medium, Inc.,* 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001)(Marrero, J.)("[L]iberal construction has its limits, for the pleading must at least set forth sufficient

133756                                    13

information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader."); *see also Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss.")(*quoting Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)); *accord ATSI Comms. Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007) (A complaint must allege "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'").

### B. THE REPORT ERRONEOUSLY CONCLUDES THAT PLAINTIFF'S CLAIM AGAINST KAPLAN FOR ALLEGED BREACH OF THE GENERAL RELEASE SHOULD PROCEED

Kaplan respectfully submits that the Report correctly concluded that Plaintiff's claim against her for breach of the PIA should be dismissed. However, Kaplan objects to the conclusion that Plaintiff's Contract Claim (based on the General Release) should move forward.

This conclusion is erroneous for the same very same reasons discussed above which demonstrate that the Trade Secret Claim should not be sustained because the Report specifically relies on the erroneous finding that Plaintiff sufficiently alleged disclosure of trade secrets as the *sole* justification for the conclusion that the Contract Claim should not be dismissed:

> **[B]ecause I have already concluded supra that the Amended Complaint sufficiently alleges that [...] Kaplan disclosed trade secrets**, I likewise conclude, and respectfully recommend that Your Honor should conclude, that the Amended Complaint also sufficiently alleges a breach of contract claim[] involving the confidentiality provision[] of [the General Release].

133756                                    14

Report at 22 (emphasis supplied). Thus, the Contract Claim must be dismissed for the reasons discussed above that demonstrate the Trade Secret Claim should be dismissed.

Furthermore, as discussed in the Initial MOL and the Reply MOL, the Complaint contains no more than conclusory allegations that Kaplan "breached" the General Release by "disclosing" or "divulging" "confidential" or "proprietary" information of Plaintiff. Such allegations are no more than "conclusory allegations or legal conclusions masquerading as factual conclusions," and cannot suffice to defeat a motion to dismiss. *Kirch* at 398 (2d Cir. 2006).

Finally, as discussed above, that DenTek's competing dental protector was brought to market more expeditiously because of "knowledge" obtained from Kaplan is also not sufficient, without more, to support Plaintiff's Contract Claim. Thus, this claim must also be dismissed.

### C. THE REPORT ERRONEOUSLY CONCLUDES THAT PLAINTIFF SHOULD BE PERMITTED ADDITIONAL DISCOVERY TO DETERMINE WHAT TRADE SECRETS IT IS CLAIMING TO HAVE BEEN MISAPPROPRIATED

Kaplan also objects to the portion of the Report concluding that Plaintiff should be allowed "limited discovery on its trade secret claim prior to being required to identify the precise secrets it is alleging were misappropriated." Report at 37. Plaintiff has already been given an opportunity to take discovery for the specific purpose of determining what trade secret, if any, it was claiming to have been misappropriated. Nevertheless, even after a second amendment, the Complaint fails to identify any trade secret allegedly misappropriated. Moreover, at a February 14, 2008 conference before Magistrate Judge Smith, Plaintiff itself took the position that it did not need any additional discovery for purposes of opposing defendants' various motions to dismiss. It

is respectfully submitted that Plaintiff, which is now on its Second Amended Complaint, should not be given yet another opportunity to take additional discovery so that it can finally figure out and identify the "trade secrets" it meant to claim have been misappropriated in its 68 page Complaint.[10]

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the papers offered in the respective objections filed by DenTek and Duane Defendants and all other documents submitted by and/or relied upon by Kaplan in support of her motion to dismiss, Kaplan respectfully requests that the Court modify the Report so as to dismiss this action against her in its entirety, and reward Kaplan attorneys' fees in connection with this action, and grant her such other and further relief as this Court deems just and proper.

Dated: New York, New York
June 19, 2008

SALON MARROW DYCKMAN
NEWMAN & BROUDY LLP
*Attorneys for Defendant Kelly M. Kaplan*

BY: JOHN PAUL FULCO, P.C.

John Paul Fulco (JF-2168)
Petek Gunay (PG-2695)
292 Madison Avenue
New York, New York 10017
Tel: (212) 661-7100
Fax: (212) 661-3339

---

[10] In the event that this Court determines that Plaintiff's trade secret claims should not be dismissed, Kaplan respectfully submits that Plaintiff should first be required to identify with particularity which trade secrets it claims to have been misappropriated before proceeding with discovery. *See e.g. Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-372 (S.D.N.Y. 1974)(Edelstein, C.J.)(requiring identification of trade secrets because "[a]t the very least, defendant is entitled to know the bases for plaintiff's charges against it."); *Del Monte Fresh Produce Co. v. Dole Food Co.*, 148 F.Supp.2d 1322, 1323 (S.D. Fla. 2001) (discussing that both California law and Florida law require trade secrets to be identified with reasonable particularity); *Struthers Scientific and Int'l. Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149 (D.Del. 1970)(requiring particularized statement for trade secret claim and stating that "[the] matter cannot be left to pure speculation and conjecture"); *DeRubeis v. Witten Tech., Inc.*, No. 1:06-CV-807-JTC, 2007 U.S. Dist. LEXIS 30047 (N.D. Ga. Apr. 23, 2007)(requiring plaintiff to identify with particularity its trade secrets prior to proceeding with discovery)

133756                                                     16