# Exhibit B

## TABLE OF CONTENTS

PRELIMINARY STATEMENT...................................................................1

FACTUAL BACKGROUND.....................................................................4

ARGUMENT.........................................................................................4

PLAINTIFF'S CLAIMS AGAINST KAPLAN MUST BE DISMISSED............…...4

A.    Applicable Legal Standard.....................................................................4

B.    Plaintiff's Claims Against Kaplan Are Legally Insufficient......................5

      I.    Plaintiff Cannot, As a Matter of Law, Prevail on its
               Trade Secret Misappropriation Claim Against Kaplan........................5

           a.    Plaintiff Has Not Identified Any Trade Secret
                    That Was Allegedly Misappropriated...............................5

                    (i)    Plaintiff's "Decision to Maintain and Emphasize
                          a Three-Size Platform" Is Not a Trade Secret...........8

                    (ii)   Neither the Identities of the Tufts Doctors or
                          Plaintiff's Association with Them Is a Trade Secret....12

                    (iii)  Neither the Identities of Plaintiff's
                          Counsel Or Plaintiff's Association with
                          Them Can Be a Trade Secret...............................13

                    (iv)  Other Purportedly Confidential Information
                          Plaintiff Fails Properly to Identify Also
                          Does Not Constitute a Trade Secret....................…...15

           b.    Plaintiff Cannot Point to Any Misappropriation by Kaplan...16

      II.   Plaintiff's Breach of Contract Claims Are Fatally Flawed.............19

      III.  Plaintiff's Cause of Action for Civil Conspiracy
               Should Be Dismissed Because New York Does
               Not Recognize the Tort of Civil Conspiracy...............................21

      IV.  Plaintiff Cannot Prevail On Its Claim Against Kaplan For
               Tortious Interference With a Prospective Economic Advantage…...23

**IV.    Kaplan is Entitled to Attorneys' Fees and Costs**........................26

**CONCLUSION**.............................................................................................27

## TABLE OF AUTHORITIES

### Cases

*4 Hour Wireless v. AT&T Wireless Servs., Inc.*,
  No. 01 Civ. 9133, 2002 U.S. Dist LEXIS 22680
  (S.D.N.Y. Nov. 21, 2002)(Owen, J.).............................................................23, 25

*A&A Jewelers Ltd. v. Bogarz, Inc.*,
  05 CV 0020E, 2005 U.S. Dist. LEXIS 33873
  (W.D.N.Y. Sep. 7, 2005).....................................................................................23

*Ace-Tex Corp., Sanitary Wiping Cloth Div. v. Rosenberg and Sanitary Wiping Co.*,
  No. 88-CV-1300A, 1992 U.S. Dist. LEXIS 20584
  (W.D.N.Y. Oct. 6, 1992).....................................................................................15

*Alexander & Alexander of New York, Inc. v. Fritzen*,
  68 N.Y.2d 968 (1986)(*mem.*)............................................................................21

*Ashland Mgmt, Inc. v. Janien*,
  82 N.Y.2d 395, 604 N.Y.S.2d 912 (1993)..........................................................6, 7

*ATSI Comms. Inc. v. Shaar Fund*,
  493 F.3d 87 (2d Cir. 2007).....................................................................................5

*Bear Stearns Funding, Inc. v. Interface Grp.*,
  361 F.Supp.2d 283 (S.D.N.Y. 2005)(Haight, S.J.)...............................................7

*Bemben v. Fuji Photo Film USA*,
  No. 01 Civ. 8616, 2004 U.S. Dist. LEXIS 8184
  (S.D.N.Y. May 10, 2004) (Freeman, Mag. J.).....................................................23

*Boyle v. Stephens, Inc.*,
  No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780
  (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.).........................................................6, 8

*Brownstone Inv. Grp., LLC v. Levey*,
  468 F.Supp. 2d 654 (S.D.N.Y. 2007)(Marrero, J.).............................................22

*CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.*,
  No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315
  (S.D.N.Y. May 31, 1985)(Sweet, J.).............................................................15, 18

*Conley v. Gibson*,
   355 U.S. 41 (1957)...............................................................................4

*Del Monte Fresh Produce Co. v. Dole Food Co.*,
   148 F.Supp.2d 1322 (S.D. Fla. 2001)...................................................6

*DeRubeis v. Witten Tech., Inc.*,
   No. 1:06-CV-807-JTC, 2007 U.S. Dist. LEXIS 30047
   (N.D. Ga. Apr. 23, 2007)....................................................................6

*Discover Grp., Inc. v. Am. Toner Prods.*,
   333 F. Supp. 2d 78 (E.D.N.Y. 2004)..............................................22, 23

*Evans v. New York Botanical Garden*,
   No. 02 Civ 3591, 2002 U.S. Dist. LEXIS 16434
   (S.D.N.Y. Sept. 4, 2002)(Sweet, J.).....................................................5

*Harsco Corp. v. Segui*,
   91 F.3d 337, 348 (2d Cir. 1996)........................................................19

*Hudson Hotels Corp. v. Choice Hotels, Int'l.*,
   995 F.2d 1173 (2d Cir. 1993)..............................................................7

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)......................................................4, 18, 23

*Kramer v. Time Warner Inc.*,
   937 F.2d 767 (2d Cir. 1991)...........................................................5, 11

*Kreiss v. McCown De Leeuw Co.*,
   37 F.Supp.2d 294 (S.D.N.Y. 1999)(Ward, J.).......................................20

*Linkco, Inc. v. Fujitsu, Ltd.*,
   230 F.Supp.2d 492 (S.D.N.Y. 2002)(Scheindlin, J.)...........................8, 15

*Marcus v. AT&T Corp.*,
   938 F.Supp. 1158 (S.D.N.Y. 1996)(Mukasey, J.)....................................11

*Martin v. Dickson*,
   No. 03-7917, 2004 U.S. App. LEXIS 10725 (2d Cir. Jun. 2, 2004)...........21

*Paper Corp. of the U.S. v. Schoeller Tech. Papers, Inc.*,
   724 F.Supp.110 (S.D.N.Y. 1989)(Sweet, J.)........................................23

*Private One of New York, LLC v. JMRL Sales & Serv., Inc.,*
  471 F.Supp.2d 216 (S.D.N.Y. 2007)(Townes, J.)............................................20

*Randa Corp. v. Mulberry,*
  No. 00 Civ. 4061, 2000 U.S. Dist. LEXIS 17014
  (S.D.N.Y. Nov. 22, 2000)(Preska, J.)......................................................4, 23

*Struthers Scientific and Int'l. Corp. v. Gen. Foods Corp.,*
  51 F.R.D. 149 (D.Del. 1970)...................................................................6

*Ring v. Estee Lauder,*
  702 F.Supp. 76 (S.D.N.Y. 1988),
  *aff'd per curiam,* 874 F.2d 109 (2d Cir. 1989)............................................10

*Scala v. Sequor Grp., Inc.,*
  No. 94 Civ. 0449, 1995 U.S. Dist. LEXIS 4969
  (S.D.N.Y. Apr. 14, 1995)(Preska, J.).....................................................21, 22

*Thomas v. Westchester Cty. Health Care Corp.,*
  232 F. Supp. 2d 273 (S.D.N.Y. 2002)(Marrero, J.)........................................5

*Wolff v. Rare Medium, Inc.,*
  171 F.Supp. 2d 354 (S.D.N.Y. 2001)(Marrero, J.).......................................25

*Xerox Corp. v. Int'l Bus. Machs. Corp.,*
  64 F.R.D. 367 (S.D.N.Y. 1974)(Edelstein, C.J.)...........................................6

## **Statutes**

Fed. R. Civ. P. 12.....................................................................1, 4, 5, 11

Fed. R. Evid. 201.............................................................................5

## **Treatises**

Restatement of Torts § 757...............................................................6, 11

Defendant Kelly M. Kaplan ("Kaplan") respectfully submits this memorandum of law in support of her motion for an order: (a) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing counts VIII (Breach of Contract – Proprietary Information and Inventions Agreement), IX (Breach of Contract – General Release), XII (Civil Conspiracy), XIII (Trade Secret Misappropriation) and XIV (Tortious Interference with Advantageous Business Relationship/Economic Advantage) of plaintiff Medtech Products Inc.'s ("Plaintiff's" or "Medtech's")[1] Second Amended Complaint for Injunctive Relief and Monetary Damages (the Complaint")[2] against Kaplan in their entirety; (b) awarding Kaplan attorneys' fees and costs in accordance with a general release executed on or about November 14, 2005 by Kaplan, on one hand, and Plaintiff's predecessor-in-interest Dental Concepts, LLC ("DC"), on the other (the "General Release"); and (c) awarding Kaplan such other and further relief as this Court deems just and reasonable.

## PRELIMINARY STATEMENT

Plaintiff's 68 page Complaint is replete with scandalous allegations supported by nothing more than pure speculation and conjecture. The "facts" Plaintiff alleges against Kaplan are particularly flimsy. Specifically, Plaintiff seems to contend that it should prevail against Kaplan simply because Kaplan left Plaintiff's employ, and, eight months later, joined defendant DenTek Oral Care, Inc. ("DenTek"), a company that markets a one-size-fits-all dental protector that is admittedly different from Plaintiff's dental

---

[1] In light of the allegation in the Complaint that DC is Plaintiff's predecessor-in-interest, *see* Complaint at ¶ 7, Kaplan will use the term Plaintiff to refer to Medtech and/or DC.

[2] In light of the fact that this case is no longer an ECF case because of defendant Ray Duane's appearance *pro se* and in order to avoid burdening the Court with unnecessary papers, the Complaint and the exhibits thereto are not attached to the accompanying declaration of John Paul Fulco dated November 21, 2007 ("Fulco Decl.") as an exhibit. Nevertheless, Kaplan specifically incorporates herein the Complaint and the exhibits thereto, which appear collectively on the docket sheet for this lawsuit as Item #66. Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in the Complaint or in the Fulco Decl.

Next, Plaintiff asserts breach of contract claims on two separate agreements signed by Kaplan, namely, a Proprietary Information and Inventions Agreement dated September 13, 1999 (the "Proprietary Information Agreement") and the General Release, which Kaplan executed in connection with the sale of DC to Plaintiff's parent company. First, Plaintiff's contract claim based on the Proprietary Information Agreement necessarily fails because the Proprietary Information Agreement was (or, at the very least, its confidentiality provisions were) superseded by the General Release, a subsequent agreement on the same subject matter, between the same parties, containing a merger and integration clause. Second, Plaintiff's claim that Kaplan divulged any "confidential" information to DenTek is merely conclusory and not sufficiently supported by any factual allegations, and, furthermore, flatly belied by other allegations Plaintiff makes throughout the Complaint.

Plaintiff's claim for civil conspiracy must fail because no such cause of action is recognized in New York and, in any event, this claim amounts to no more than a repetition of Plaintiff's legally insufficient trade secret misappropriation and breach of contract claims.

Finally, Plaintiff's tortious interference claim also misses the mark because Plaintiff fails adequately to plead that Kaplan acted solely out of malice or used dishonest, unfair or improper means to "interfere" with Plaintiff's alleged relationship with the Tufts Doctors (defined in the Complaint as Drs. Noshir Mehta, Gerard Kugel and Ayman Aboushala) and that such "interference" caused injury to the relationship.

Because Plaintiff's claims against Kaplan do not pass muster even under the generous pleading standards of this Circuit, Kaplan respectfully requests that they be

dismissed in their entirety.  Plaintiff further requests that she be awarded attorneys' fees and costs in accordance with the provision of the General Release which specifically provides for an award of attorneys' fees to the prevailing party.

### FACTUAL BACKGROUND

The facts relevant to this motion are those alleged in the Complaint which must be assumed true for purposes of this motion, pursuant to Fed. R. Civ. P. 12(b), and the exhibits to the Fulco Decl. of which this Court is respectfully requested to take judicial notice, all of which are expressly incorporated herein.

### ARGUMENT

### PLAINTIFF'S CLAIMS AGAINST
### KAPLAN MUST BE DISMISSED

**A.    Applicable Legal Standard**

It is well-settled that on a motion to dismiss made pursuant to Fed.R.Civ.P. 12(b)(6), all factual allegations in the complaint must be accepted as true and all inferences must be drawn in the light most favorable to the non-moving party. *Randa Corp. v. Mulberry*, No. 00 Civ. 4061, 2000 U.S. Dist. LEXIS 17014, *4 (S.D.N.Y. Nov. 22, 2000)(Preska, J.)  Nevertheless, a complaint must be dismissed if "it appears beyond doubt that plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  To this end, it is well-settled that "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to [defeat] a motion to dismiss." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) (*quoting Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002))  Instead, a complaint must allege "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to

relief above the speculative level.'" *ATSI Comms. Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007)

While in considering a motion to dismiss, the Court must generally limit itself to facts alleged in the complaint and documents attached thereto or incorporated therein, it may also consider extrinsic materials of which judicial notice may be taken. *Kramer v. Time Warner Inc.,* 937 F.2d 767, 773 (2d Cir. 1991); Fed. R. Evid. 201. Specifically, the Court may take judicial notice of public records when deciding a 12(b)(6) motion. *Thomas v. Westchester Cty. Health Care Corp.*, 232 F. Supp. 2d 273, 276 (S.D.N.Y. 2002)(Marrero, J.)(finding that "the Court may take judicial notice of the records of state administrative procedures, as these are public records, without converting a motion to dismiss to one for summary judgment."); *accord Evans v. New York Botanical Garden*, No. 02 Civ 3591, 2002 U.S. Dist. LEXIS 16434, *11-12 (S.D.N.Y. Sept. 4, 2002)(Sweet, J.)

**B.    Plaintiff's Claims Against Kaplan Are Legally Insufficient**

    **I.    Plaintiff Cannot, As a Matter of Law, Prevail on its
        Trade Secret Misappropriation Claim Against Kaplan**

        **a.    Plaintiff Has Not Identified Any Trade Secret
            That Was Allegedly Misappropriated**

As a threshold matter, Plaintiff's trade secret claim fails for lack of specificity. While Plaintiff attempts to paint quite a scandalous picture by alleging repeatedly throughout its lengthy pleading that Kaplan divulged Medtech's "confidential and proprietary material" to DenTek, Plaintiff fails to allege any particular, cognizable trade secrets allegedly disclosed by Kaplan. Instead, Plaintiff generally alleges that its trade secrets included, but were not limited to "manufacturing cost details, test data, and other

information about the design and manufacturing process for its dental protectors."
Complaint at ¶¶275 and 278. Plaintiff's broad stroke allegations regarding "confidential
and proprietary information of Medtech" are facially insufficient to support a trade secret
misappropriation claim.[3]

Even assuming that Plaintiff had properly identified the Alleged Trade Secrets, it
is clear that none of the information alleged to have been divulged is a protectable trade
secret. A plaintiff seeking to prevail on a trade secret misappropriation claim must
demonstrate a) that it possessed a trade secret; and b) that defendant is using that trade
secret in breach of an agreement, confidence or duty. *Boyle v. Stephens, Inc.*, No. 97 Civ.
1351, 1997 U.S. Dist. LEXIS 12780, * 14-15 (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.)
The oft-cited Court of Appeals case of *Ashland Mgmt, Inc. v. Janien*, 82 N.Y.2d 395, 604
N.Y.S.2d 912 (1993) succinctly sets forth the standard New York Courts apply in
determining whether an idea or concept constitutes a trade secret:

> There is no generally accepted definition of a trade secret but that found in
> section 757 of Restatement of Torts, comment b has been cited with
> approval by this and other courts. It defines a trade secret as "any
> formula, pattern, device or compilation of information which is used in
> one's business and which gives him an opportunity to obtain an advantage
> over competitors who do not know or use it. The restatement suggests that
> in deciding a trade secret claim several factors should be considered:

---

[3]  Indeed, the very essence of adequately stating a trade secret misappropriation claim is specifically
identifying the trade secret alleged to have been misappropriated. *Xerox Corp. v. Int'l Bus. Machs.
Corp.*, 64 F.R.D. 367, 371-372 (S.D.N.Y. 1974)(Edelstein, C.J.)("At the very least, defendant is
entitled to know the bases for plaintiff's charges against it.") Other jurisdictions are in accord
with New York on this point. *See e.g. Del Monte Fresh Produce Co. v. Dole Food Co.*, 148
F.Supp.2d 1322, 1323 (S.D. Fla. 2001) (discussing that both California law and Florida law
require trade secrets to be identified with reasonable particularity); *Struthers Scientific and Int'l.
Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149 (D.Del. 1970)(requiring particularized statement for
trade secret claim and stating that "[the] matter cannot be left to pure speculation and conjecture");
*DeRubeis v. Witten Tech., Inc.*, No. 1:06-CV-807-JTC, 2007 U.S. Dist. LEXIS 30047 (N.D. Ga.
Apr. 23, 2007)(requiring plaintiff to identify with particularity its trade secrets prior to proceeding
with discovery)

> (1) the extent to which the information is known outside [the] business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by the business to guard the secrecy of the information; (4) the value of information to the business and its competitors; the amount of effort or money expended by the business in developing the information; the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Ashland*, 82 N.Y.2d at 407, 604 N.Y.S.2d at 917 (internal citations omitted; brackets in original)

As an initial matter, Plaintiff cannot demonstrate that any of the Alleged Trade Secrets was in fact a secret. In order to constitute a trade secret, information must first and foremost be a secret. *Id.; accord Hudson Hotels Corp. v. Choice Hotels, Int'l.*, 995 F.2d 1173 (2d Cir. 1993) Plaintiff's allegations are legally insufficient most significantly because the Complaint and public records of which this Court may properly take judicial notice demonstrate *conclusively* that the information was public, or at the very least, could have easily been ascertained or duplicated by others. While the existence of a trade secret can often be a question of fact, the Court must dismiss a trade secret misappropriation claim if it is evident from the pleadings or the facts that the information was not kept secret. *Bear Stearns Funding, Inc. v. Interface Grp.*, 361 F.Supp.2d 283, 305 (S.D.N.Y. 2005)(Haight, S.J.) That is precisely the case here.

Nowhere in the Complaint does Plaintiff properly or adequately identify the "trade secrets" it claims to have been diverted. Nevertheless, to afford the Complaint a most generous reading, Kaplan will treat each category of information Plaintiff claims to be "confidential and proprietary" as if it has been alleged to constitute a trade secret, and

demonstrate that Plaintiff does not have a legally cognizable trade secret in any of the broad categories of information it has claimed to have been "diverted."

(i)    <b>Plaintiff's "Decision to Maintain and Emphasize<br>a Three-Size Platform" Is Not a Trade Secret</b>

Plaintiff appears to allege a trade secret in its "proprietary strategy to maintain its three-size platform."  Complaint at ¶11. Essentially, Plaintiff absurdly contends that its "decision" to continue marketing a product it had already marketed for years – and not a different product – constituted a trade secret.  In addition to being absurd, Plaintiff's allegation is squarely contradicted by the applicable case law.  It is well-settled in this Circuit that marketing concepts and new product ideas are not trade secrets. *See Boyle*, 1997 U.S. Dist. LEXIS 12780 at *14-15.  Similarly, information consisting simply of business possibilities and goals is not a trade secret. *See Linkco, Inc. v. Fujitsu, Ltd.*, 230 F.Supp.2d 492, 500 (S.D.N.Y. 2002)(Scheindlin, J.)

Furthermore, there is nothing secret about Plaintiff's strategy regarding "the three-size platform."  *See* copies of the Hearing Transcript, the transcript of a hearing conducted before the Food and Drug Administration ("FDA") on October 12, 2005 in connection with DC's application for FDA approval for its dental protector and documents provided to the panel in connection with the hearing (the "Panel Materials"), copies of which are attached to the Fulco Decl. as **Exhibits "A"** and **"B"**, respectively. The Hearing Transcript reads, in relevant part, as follows:

> DR. ZERO:    Is the device – you said there were three different sizes.  Is one intended to be for children?
>
> [Michael Lesser, the former DC Chief Executive Officer who is alleged to have recruited both Duane and Kaplan, *see* Complaint at ¶¶ 27-28]: No, no. We specifically say in the labeling that it's not to be used for children. The three sizes are for adults, obviously, women, and men, but the device

also – in the instructions it allows the device to be cut if it's a little too long. You know, it's not the kind of material that cannot be trimmed. So, if there is any risk of it going too far back, it can be cut, but not for children.

CHAIRPERSON SUZUKI: Dr. O'Brien.

DR O'BRIEN: Are there any studies comparing the accuracy of the fit of these devices compared to the traditional ones, which are made by impression taking?

MR. [LESSER]: No, sir.

DR. O'BRIEN: Also is there any clinical data that exists that shows the noncompliance with the use of the device?

One of the problems with mouthguards is that if they don't fit right, they won't report it. They won't complain, but they just won't wear them.

MR. [LESSER]: Well, nothing formal on that. We do have and have had all the years we've been on the market **an unconditional money back guarantee, and the usual retail price for this product is 24.99 in retail stores. So at $25, I think if somebody wants something that is unsatisfactory, they're probably more likely to send it back to us.**

What we find is that most often the complaints are not of it didn't fit or it wasn't comfortable. Most often, it's **"I'm sending you back the medium because I really need a large."**

But we don't have a historical record of compliance and noncompliance, no.

CHAIRPERSON SUZUKI: Thank you.

Other questions? Ms. Howe.

MS HOWE: I have a question about the sizing. On the packaging, how do you advise the consumer to select one of the three sizes?

MR. [LESSER]: We use height and body weight as rough guidelines, and we know that it's not as accurate a measurement, but that's the reason we offer them a money back guarantee if they take the wrong size.

CHAIRPERSON SUZUKI: Dr. Zuniga.

DR. ZUNIGA: Just for my clarification, your indications for differences between the Nightguard and the BruxGuard are few or are they the same? Are they slightly different?

MR. [LESSER]: They're the same. They're the same product with different labeling.

Hearing Transcript 58-61.

That Plaintiff's dental protector comes in three sizes is no secret. *See e.g.* Complaint, Exs. J and K. Furthermore, it is undisputable in light of the Hearing Transcript dated October 12, 2005[4], that: a) Plaintiff's commitment to the three-size-platform was no secret; b) Plaintiff did not take any measures to guard the secrecy of this information; c) the sizing guidelines provided by Plaintiff were not necessarily reliable, and could easily lead a consumer to pick the wrong fit; d) any company seeking to enter the market with a three-size platform would also have to offer a money back guarantee to stay competitive against Plaintiff; and e) introducing a one-size fits all dental protector would not only prevent customer confusion, but also provide its manufacturer with a tremendous competitive advantage by cutting down on costs relating to returns for the wrong size and enhancing consumer and retailer satisfaction. To deserve trade secret protection under New York law, an idea or concept must be novel or original, *see Ring v. Estee Lauder*, 702 F.Supp. 76, 77 (S.D.N.Y. 1988), *aff'd per curiam,* 874 F.2d 109 (2d Cir. 1989). The truth is that, in the face of customer complaints, Plaintiff stubbornly continued to pursue a bad business strategy and now seeks to avoid the business consequences by blaming others, and asking them to pay for its mistakes. Marketing

---

[4]    The Panel Materials specifically provide that "this package will not be made public until one business day before the meeting, i.e. **October 7, 2005**. On this day the agenda roster and this package will be posted on the Internet at http://www.fda.gov/cdrh/panel. After the meeting the [Hearing Transcript] and summary minutes will also be posted on this web site." Panel Materials at 2 (emphasis added.)

fumbles are not trade secrets. The idea of a one-size-fits-all dental protector, much less a "decision" not to produce such a protector, clearly is not.

As set forth above, this Court may properly take judicial notice of the Hearing Transcript and Panel Materials because they are public records. *See e.g. Marcus v. AT&T Corp.*, 938 F.Supp. 1158, 1164-1165 (S.D.N.Y. 1996)(Mukasey, J.)(taking judicial notice of tariffs filed with the FCC on a 12(b)(6) motion even though the documents were not included in or attached to the complaint). It should be noted that Kaplan is not requesting that the Court take judicial notice of the Hearing Transcript and the Panel Materials for the truth of the information contained therein. *See Kramer* at 773. Instead, Kaplan is merely offering the availability of those documents to demonstrate that the information Plaintiff so vehemently contends is a trade secret is already in the public domain. The Hearing Transcript also demonstrates the disingenuousness of Plaintiff's position in claiming a trade secret in information it voluntarily released into the public domain.

Plaintiff's claim of a trade secret in the idea of a one-size-fits-all dental protector fails for another reason. Given that Plaintiff alleges that the one-size-fits-all alternative to Medtech's three-size dental protector was proposed by "the world's largest retailer[,]" *see* Complaint at ¶122 (and rejected by Plaintiff), it is impossible to comprehend how it is Plaintiff who asserts a property right in the idea or why the Complaint fails even to attempt to cure this fatal flaw by alleging that the world's largest retailer kept its interest in a one-size-fits-all product (or Plaintiff's refusal to respond to its need) a secret. Nor is there any allegation anywhere in the Complaint that Plaintiff requested that "the world's largest retailer" not make the same request from another retailer, an allegation Plaintiff cannot possibly make given that it admits not having succumbed to the retailer's

"pressure for … a one-size-fits-all device[.]" *Id.* at ¶122. Furthermore, Plaintiff's conscious decision not to manufacture and market a one-size-fits-all product demonstrates that Medtech itself did not consider this suggestion to have any business value to its business, or, for that matter, to the business of its competitors. *See* Restatement of Torts § 757.

Thus, it is clear that Plaintiff cannot, under any circumstances, prove a legally cognizable trade secret in any information relating to its "three-size-platform" or the void and opportunity in the marketplace for a one-size-fits-all product.

### (ii)    Neither the Identities of the Tufts Doctors or Plaintiff's Association with Them Is a Trade Secret

Also demonstrably false is Plaintiff's contention that "[t]he fact that the Tufts Doctors were working with Dental Concepts and Medtech was confidential information [and] DenTek only knew of this relationship as a result of Kaplan's and Duane's efforts." *See* Complaint at ¶140.[5]  In fact, the Hearing Transcript evidences that Plaintiff itself knows this contention to be false since Plaintiff was the party that released this information into the public domain as early as October of 2005. *See* Hearing Transcript at 115, where Dr. Noshir Mehta (one of the Tufts Doctors) makes a public appearance on behalf of Dental Concepts:

> DR. MEHTA: [...]  My name is Noshir Mehta, and if I can just get my slides up here, I can make my presentation.
>
> Thank you, Mr. Chairman, distinguished panel.  Thank you for allowing me to present before you.

---

[5]    To be clear, nowhere in the Complaint does Plaintiff directly allege a trade secret in either the identities of the Tufts Doctors or their association with Plaintiff.  Nevertheless, given Plaintiff's broad, sweeping allegations that "proprietary and confidential information" of Plaintiff constituted trade secrets allegedly misappropriated by Defendants, Kaplan will demonstrate that this information is also not a trade secret.

Let me first introduce myself.  My name is Noshir Mehta.  I am a periodontist.  I'm Professor and Chairman, however, of the Department of General Dentistry through no fault of mine, and I'm Director of the Craniofacial Pain Center at Tufts University School of Dental Medicine.

I graduated from the Perio Department with Irving Glickman in 1971, and I got my Master's in '73 and my research from that time on has been in occlusion and bruxism.

In 1976, I started a small craniofacial pain group at Tufts, and we have grown into a fairly large and substantial group since that time.  We see an average of about 2,000 patients a year, new patients a year, and have been doing so.  We have a graduate program, a Master's in craniofacial, and we also run the clinics in the predoctoral program at Tufts where students are run through our program so that they understand about orifical pain and both from a peripheral issue and from a central nerve issue.

Enough about me.  **Let me just state from the start that I am a consultant here for Dental Concepts.  They have paid me over time when they have consulted me to look at their mouthguard and also come up with some guidelines for the labeling,** at which point I told them that they didn't have to ask me as much because all they had to do was to go to the American Academy of Periodontology Guidelines for periodontal issues, the orifical pain guidelines for orificial pain issues and of course, the ADA for some bruxing issues.

However, given that they still wanted me, I have been helping them in those guidelines since.

Hearing Transcript p. 115-117 (emphasis added.)  Thus, it is again indisputable that neither the identity of Dr. Mehta (who heads the Craniofacial Pain Center at Tufts University School of Dental Medicine) nor his (or, for that matter, his colleagues') association with Plaintiff could have been a secret.  Given that Dr. Mehta's significant expertise in the area of dental medicine and experience before the FDA were public information as early as October of 2005, Plaintiff cannot claim (and in fact has not claimed) that a company seeking consultants for dental products would not easily be able to ascertain the identities of the Tufts Doctors, or have contacted them without the assistance of Kaplan.

**(iii)    Neither the Identities of Plaintiff's Counsel or
Plaintiff's Association with Them Can Be a Trade Secret**

The very notion that the identity of well-recognized intellectual property and regulatory counsel could constitute the trade secret of any client who chose to make such a claim is, we believe, absurd on its face and unsupportable in law and would create a constant stream of litigation. Nevertheless, as shown below, even if such identity could constitute a trade secret, as to Hogan & Hartson, such information was public knowledge well before Kaplan's engagement by DenTek. As to other intellectual property counsel, the Complaint is devoid of any factually supportable allegation that Kaplan "used" that information.

The Complaint makes clear that Plaintiff's association with Hogan & Hartson could not have been a trade secret given that it became public information (at the latest) on April 2, 2006.[6]  *See* Exhibit I to the Complaint, a copy of the FDA approval notification for Plaintiff's dental protector, an additional copy of which is also annexed to the Fulco Decl. as **Exhibit "C"**. By Plaintiff's own admissions, this was only two months after Kaplan left Plaintiff's employ, and six months before Kaplan was "recruited" by Kaplan to work for DenTek. *See* Complaint at ¶¶87 and 133. Thus, Plaintiff's claim that Kaplan misappropriated a trade secret in connection with DenTek's hiring of Hogan & Hartson is patently false and is also internally inconsistent with other assertions in the Complaint.

With respect to Plaintiff's other intellectual property counsel, Natter & Natter and Hyman Phelps, the Complaint is devoid of any allegation that the identity or the reputation of either of these law firms is not public information. Furthermore, since

---

[6]    Because the notification is dated March 3, 2006, it had to have been made available to the public on or before April 2, 2006. *See* 21 C.F.R. § 807.95.

14

Plaintiff does not even allege that DenTek retained either firm to perform any services for DenTek, *see* Complaint at ¶¶151-155, it is impossible for Kaplan to have "used" any information relating to such counsel in breach of a duty she owed to Plaintiff.

**(iv)   Other Purportedly Confidential Information Plaintiff Fails Properly to Identify Also Does Not Constitute a Trade Secret**

Plaintiff also seems to assert trade secrets in the identities of Item, a designer that was allegedly "identified" but apparently not used by Plaintiff, and was allegedly hired by DenTek to design its dental protector; Stelray, the injection molder used by Plaintiff; and AGI/ Klearfold, the packager used by Plaintiff for another dental protector. *See* Complaint at ¶¶51 and 137-139. Again, Plaintiff does not allege that the identity of any of those companies was not readily ascertainable to those in the trade, which is necessary properly to support Plaintiff's trade secret misappropriation claim. *See e.g. Ace-Tex Corp., Sanitary Wiping Cloth Div. v. Rosenberg and Sanitary Wiping Co.*, No. 88-CV-1300A, 1992 U.S. Dist. LEXIS 20584, *21-22 (W.D.N.Y. Oct. 6, 1992)

Further, Plaintiff appears to admit that it did not even use Item. As discussed above, information consisting simply of a business possibility is not a trade secret. *See e.g. Linkco* at 500. Finally, given Plaintiff's allegations that Kaplan was recruited to work for DenTek in or around mid October 2006, around the time she attended a meeting with the Tufts Doctors in Boston, where the Tufts Doctors were presented with DenTek's **finished** one-size-fits-all dental protector, *see* Complaint at ¶¶144-145, it is clear that DenTek had already identified and used Stelray and AGI/Klearfold to manufacture and package DenTek's one-size-fits-all dental protector by the time Kaplan joined the company.

Plaintiff seems to forget that "not all information acquired during a period of employment qualifies as a trade secret or as confidential." *CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.*, No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315, *7 (S.D.N.Y. May 31, 1985)(Sweet, J.)(denying motion for preliminary injunction seeking to enjoin use of allegedly confidential information of plaintiff because plaintiff failed to offer any proof for its conclusory allegations in the complaint that defendant used plaintiff's confidential information) For example, "knowledge of the inner workings of a company, including the intricacies of business operations and general financial information does not qualify as a trade secret." *Id.* (*citing Data Comm. Dirmeyer*, 514 F.Supp. 26, 33 (E.D.N.Y. 1981)) "Nor are customer names protectable if they are readily ascertainable from outside sources." *Id.*

**b.    <u>Plaintiff Cannot Point to Any Misappropriation by Kaplan</u>**

Even assuming that the Alleged Trade Secrets were in fact trade secrets, and they are demonstrably not, Plaintiff's misappropriation claim against Plaintiff fails because Plaintiff has not made one single allegation that would support a finding of any wrongdoing, that is, misappropriation by Kaplan.

Despite repeatedly alleging that Kaplan divulged Medtech's confidential and proprietary information to DenTek, *see* Complaint ¶¶8, 9, 11, 12, and *passim*, Plaintiff fails to provide a scintilla of factual support for this bare, conclusory allegation. Specifically with respect to Kaplan, the Complaint alleges the following "facts" relating to her employment with Plaintiff:

-    Kaplan joined Dental Concepts on or about September 13, 1999 and at that time, executed an employment agreement and the Proprietary Information Agreement. Complaint ¶¶37, 42;

- At the time of her hiring as Vice President of Marketing of Dental Concepts, Kaplan was working for a pharmaceutical company and was considered by Dental Concepts management to be an ideal hire; Complaint ¶¶7, 28;

- Kaplan was aware of management's goal to build the value of Dental Concepts so it could be sold and had a direct economic incentive in any such sale; *see e.g.* Complaint ¶¶30, 38, 39, 65, 66;

- Kaplan was heavily involved in pitching Dental Concepts to potential acquirers and participated in meetings with those companies. Complaint ¶¶66, 70;

- Kaplan received a transaction bonus when Dental Concepts was sold to Prestige and, executed the General Release in connection with the sale. Complaint ¶¶72, 79;

- Kaplan worked after the acquisition of Dental Concepts as a consultant to Medtech and assisted in the integration of Dental Concepts into Prestige. Complaint ¶7;

- Kaplan declined a position offered by Prestige, indicating that she was going to work for StaiNo, LLC, a manufacturer of various oral care products and left Medtech in February 2006. Complaint ¶¶89, 91;

The Complaint also alleges the following "facts" regarding information to which

Kaplan was privy as a result of her association with Plaintiff:

- Kaplan had substantial access to confidential and proprietary information and material relating to DC. Complaint ¶9, 40;

- Kaplan was involved extensively in Plaintiff's dental protector business including brand development and marketing, formulation of strategic sales and market goals and initiatives and was aware of DC's consultants, brokers, designers, suppliers, product formulation, production sources and market strategies. Complaint ¶41;

- Kaplan knew of Medtech's "proprietary strategy" to maintain its three-size platform and "as a result" knew that a window of opportunity existed to enter the market with a one-size fits all product. Complaint ¶¶11, 123, 124;

- Kaplan had a relationship (through Richard Riordan as the liaison) with Frank Lesniak, a chemist hired by Dental Concepts in or around 2001 to design an improved dental protector. Complaint ¶54;

- Kaplan was the primary liaison between Dental Concepts its intellectual property counsel (Natter & Natter) and regulatory counsel (Hyman Phelps and Hogan & Hartson) and was, thus privy to confidential legal advice by counsel. Complaint ¶ 64;

- Kaplan was included in discussions within Medtech regarding the future of THE DOCTOR'S NIGHTGUARD and was privy to the strategic thinking of Medtech as of February 2006. Complaint ¶89;

Finally, Plaintiff makes only the following factual allegations relating to Kaplan's engagement by DenTek, which are thus the *only* factual allegations upon which Plaintiff bases its assertion that Kaplan breached her duty to keep confidences of Plaintiff:

- Kaplan was recruited by Duane (who personally recommended her to DenTek) in or around mid-October, 2006 to work as a project leader on the development of DenTek's dental protector Complaint ¶¶133, 156

- Plaintiff believes that Kaplan had executed a confidentiality agreement prior to her engagement by DenTek. Complaint ¶43;

- (Based on a September 5, 2006 e-mail she sent to Dr. Mehta in which Kaplan asked him allegedly "critical strategic questions" regarding Plaintiff) Kaplan called and solicited the Tufts Doctors (who had not been formally or exclusively retained by Medtech) to work for DenTek and provide information and feedback on the one-size fits all dental protector that DenTek was developing. Complaint ¶¶130(d); 133, 142

It is plain from the foregoing that the Complaint is utterly devoid of a single factually supported allegation that Kaplan divulged any cognizable trade secret or confidential, proprietary (or even nonpublic) information of Medtech. It is well settled in this Circuit that general statements of a plaintiff that a defendant has knowledge of confidential information and trade secrets of plaintiff are not enough to establish misappropriation. *CCS Comm. Control*, 1985 U.S. Dist LEXIS 19315 at *6, *see also Kirch* at 398. Thus, the bare, conclusory allegation that Kaplan breached the General Release by divulging Plaintiff's confidential information cannot and should not be credited.

Tellingly, there is no non-compete or non-solicitation covenant in Kaplan's employment agreement with Plaintiff. Thus, Plaintiff cannot contend that it had a reasonable expectation that Kaplan would not continue being employed in the same industry (even more specifically, in connection with a project involving a competing dental protector) after leaving Plaintiff. That Kaplan used to be an employee of Medtech, and subsequently started working for another business that also manufactured a dental protector, which she was not barred from doing, and had every right to do, simply cannot support a conclusory claim that she misappropriated the company's trade secrets, or otherwise breached *any* duty to Medtech.

Accordingly, Plaintiff's trade secret misappropriation claim must necessarily fail, as a matter of law, because Plaintiff has pled neither a trade secret nor any misappropriation by Kaplan.

**II.**      **Plaintiff's Breach of Contract Claims Are Fatally Flawed**

In order to state a claim for breach of contract under New York law, a plaintiff has to properly plead: (a) the existence of an agreement; (b) adequate performance of the contract by the plaintiff; (c) breach of contract by the defendant and (d) damages. *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996).

Plaintiff first asserts a breach of contract claim based on Kaplan's alleged breach of the Proprietary Information Agreement. This claim is fatally flawed first and foremost because the confidentiality provisions of the Proprietary Information Agreement could not have survived the execution of Kaplan's General Release. The General Release, executed on November 14, 2005, over 6 years after the Proprietary Inventions Agreement executed between the same parties, provides as follows:

129617                                            19

<u>Entire Agreement</u>.  The parties hereto acknowledge that this Release constitutes **a full, final, and complete settlement of their differences** and **supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements or negotiations between or among them relating to the subject matter hereof**, and affirmatively state that there are no other prior or contemporaneous agreements, exchanges, representations, arrangements, or understandings, written or oral, between or among them relating to the subject matter hereof other than as set forth herein, **and that this release contains the sole and entire Release between them with respect to the subject matter hereof**.

General Release, ¶10 (bold emphasis added.)

In New York, a subsequent contract regarding the same subject matter supersedes the prior contract even in the absence of an integration and merger clause from the subsequent contract. *Private One of New York, LLC v. JMRL Sales & Serv., Inc.*, 471 F.Supp.2d 216, 223 (S.D.N.Y. 2007)(Townes, J.)  Furthermore, to the extent that a subsequent contract does not pertain precisely to the same subject matter as a previous contract, it will still supersede those terms of the previous contract specifically pertaining to the same subject matter. *Kreiss v. McCown De Leeuw Co.*, 37 F.Supp.2d 294, 301, n.8 (S.D.N.Y. 1999)(Ward, J.) The General Release specifically covers "confidential information," *see id.* at ¶7, the alleged disclosure of which is the *only* breach by Kaplan Plaintiff alleges with respect to both the Proprietary Information Agreement and the General Release.  Complaint at ¶¶ 241 and 250.  Thus, Plaintiff cannot prevail on a breach of contract claim based on the confidentiality provisions of the Proprietary Inventions Agreement because those provisions did not survive the execution of the General Release.

Plaintiff's breach of contract claim based on General Release fails for a different reason, *i.e.* Plaintiff's failure sufficiently to plead a breach, or damages resulting from that alleged breach.  As demonstrated above, as a matter of law, Plaintiff cannot show

that Kaplan divulged any information to DenTek that was not available to the public at large, and the breach of contract claim fails for this reason alone.  Furthermore, Plaintiff alleges that Kaplan was recruited for DenTek by Duane around mid-October 2006 and took over DenTek's dental protector project around late October or early November, *see* Complaint at ¶¶133 and 156, and that around the time DenTek hired Kaplan, it also presented to the Tufts Doctors **its finished product**. *Id.* at ¶145. Thus, any "confidential information" relating to the design, molding, packaging or sizing of the product had already become embodied in DenTek's dental protector by the time Kaplan came on board, and as such, could not have been disclosed by Kaplan.

For these reasons, the breach of contract claim must be dismissed as a matter of law.

**III.    Plaintiff's Cause of Action for Civil Conspiracy Should Be Dismissed Because New York Does Not Recognize the Tort of Civil Conspiracy**

It is well settled that New York does not recognize an independent tort of civil conspiracy. *See Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)(*mem.*) ("[A]s we long ago held, a mere conspiracy to commit a tort is never itself a cause of action."); *see also Scala v. Sequor Grp., Inc.*, No. 94 Civ. 0449, 1995 U.S. Dist. LEXIS 4969, *30 (S.D.N.Y. Apr. 14, 1995)(Preska, J.)  Plaintiff's civil conspiracy claim is merely duplicative of its breach of contract and trade secret misappropriation claims, and as such, must be dismissed for the reasons discussed above. *See e.g. Martin v. Dickson*, No. 03-7917, 2004 U.S. App. LEXIS 10725 (2d Cir. Jun. 2, 2004)(upholding lower court's dismissal of plaintiff's cause of action for conspiracy to defraud because "[a] cause of action sounding in civil conspiracy … stands or falls with the underlying tort.")

In fact, Plaintiff admits the redundancy of this count. In paragraphs 270 and 271 of the Complaint, Plaintiff specifically alleges that Kaplan should be held liable to Plaintiff for civil conspiracy because she allegedly "conspired, agreed and planned to use Medtech's confidential and proprietary information in violation of [her] valid confidentiality agreement[] and New York law[,]" and that she "revealed to DenTek confidential and proprietary information belonging to Medtech in violation of [her] confidentiality agreements[.]"

In this Circuit, allegations of a conspiracy are proper only to the extent they "connect[s] the actions of the defendants with an actionable injury and [establish] that these actions flow from a common scheme or plan." *Scala* at * 30. Here, Plaintiff has not made any allegations which would connect Kaplan's actions with the actions of the other defendants other than the general, conclusory and unsupported allegations: a) that Kaplan was recruited by Duane to work for DenTek and b) that Kaplan "conspired" and "agreed" with other defendants to cause injury to Plaintiff. Those baseless allegations are plainly insufficient even to support an underlying tort because they do not set forth "specific times, facts and circumstances of the alleged conspiracy." *Brownstone Inv. Grp., LLC v. Levey*, 468 F.Supp. 2d 654, 661 (S.D.N.Y. 2007)(Marrero, J.).

Because Plaintiff's cause of action seeking damages for civil conspiracy is no more than a repetition of its unsupported trade secret misappropriation and breach of contract claims, it too should be dismissed.

### IV.    Plaintiff Cannot Prevail On Its Claim Against Kaplan For Tortious Interference With a Prospective Economic Advantage

Plaintiff's claim against Kaplan for tortious interference with a prospective economic advantage[7], based on her purported conduct relating to the Tufts Doctors, must also be dismissed. A plaintiff seeking to assert a claim for tortious interference in this Circuit bears a heavy burden. *Bemben v. Fuji Photo Film USA*, 01 Civ. 8616, 2004 U.S. Dist. LEXIS 8184, * 8-9 (S.D.N.Y. May 10, 2004) (Freeman, Mag. J.) Specifically, the plaintiff must allege that (1) it had a business relationship with a third party; (2) the defendant knew of that relationship and intentionally interfered with it; (3) the defendant acted solely out of malice; or used dishonest, unfair or improper, (*i.e.* wrongful) means; and (4) the defendant's interference caused injury to the relationship. *Kirch* at 400 (*citing Carvel Corp. v. Noonan*, 350 F.3d 6, 17 (2d Cir. 2003))

If such a claim is based on suspicion alone it is, as a matter of law, insufficient, and must be dismissed. *See e.g. 4 Hour Wireless v. AT&T Wireless Servs., Inc.*, No. 01 Civ. 9133, 2002 U.S. Dist LEXIS 22680, *6-7 (S.D.N.Y. Nov. 21, 2002)(Owen, J.) Additionally, if a defendant's actions are intended at least in part to advance her own economic interests, a tortious interference claim cannot stand "unless the means [employed by defendant] include criminal or fraudulent conduct." *Paper Corp. of the U.S. v. Schoeller Tech. Papers, Inc.*, 724 F.Supp.110, 120 (S.D.N.Y. 1989)(Sweet, J.)(dismissing claim for tortious interference for failure to state a claim and providing "wanton, willful and outrageous" conduct is not actionable in New York); *accord Randa*

---

[7] This tort is also called tortious interference with business advantage, business relations, economic relations or prospective economic advantage. *Discover Grp., Inc. v. Am. Toner Prods.*, 333 F. Supp. 2d 78, 86, n. 3 (E.D.N.Y. 2004) For convenience purposes, and because Plaintiff has not pled against Kaplan a tortious interference with contract claim, the tort will hereinafter be referred to as "tortious interference."

*Corp.*, 2000 U.S. Dist. LEXIS 17014 at *16 (S.D.N.Y. Nov. 22, 2000)(Preska, J.); *see also Discover Grp.* at 86 (the allegations evidencing wrongful means must be particularly strong where competitors are involved); *see also A&A Jewelers Ltd. v. Bogarz, Inc.*, 05 CV 0020E, 2005 U.S. Dist. LEXIS 33873, *4-5 (W.D.N.Y. Sep. 7, 2005)("'Wrongful means' is defined under New York law as 'physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure [but not] persuasion alone although it is knowingly directed at interference with the [business relations.]'")

As an initial matter, this claim fails because Plaintiff does not contend that any Defendant acted **solely** with the intent to harm Plaintiff. Plaintiff in fact admits this. (*See* Complaint at ¶288 stating "Defendants acted <u>with intent to harm</u> Medtech[,]" and not **solely** with the intent to harm Medtech.) Nor are there any allegations in the Complaint of fraudulent or criminal conduct by any of the defendants. Thus, the claim is facially insufficient against all defendants.

Moreover, the only allegation Plaintiff makes with respect to Kaplan's purported "interference" with Plaintiff's relationship with the Tufts Doctors is that she "personally called and solicited the Tufts Doctors" based on a September 5, 2006 e-mail she sent to Dr. Mehta allegedly posing "critical strategic questions regarding Medtech." Complaint at ¶142-143; Ex. P. As demonstrated above, even if this allegation is to be believed, it falls miserably short of adequately supporting a tortious interference claim. In addition, it is simply inconsistent with Plaintiff's own contention that Duane called and solicited Kaplan to work for DenTek in or around mid-October of 2006, at least a month after Kaplan allegedly sent this correspondence. *See* Complaint at ¶133.

In a transparent attempt to further confuse the issues, Plaintiff also alleges that Defendants "did not inform the Tufts Doctors of the true goals and purposes of the relationship" and that "if the goals reflected in Exhibit N had been conveyed to the Tufts Doctors, DenTek would have been unsuccessful in procuring any consulting relationship with the Tufts Doctors." Complaint at ¶ 288. Leaving aside the absurdity of the claim that the Tufts Doctors, who are, by Plaintiff's own admission, established experts in the field of dentistry, could not have appreciated the possibility that DenTek's convenient "one-size-fits-all" dental protector would be a strong competitor to Medtech's three size dental protector, by Plaintiff's own account Exhibit N is an "Objective Sheet" whereby Duane set out the goals for his consulting agreement with DenTek. According to Plaintiff, this agreement was "finalized" on August 25, 2006, months before Kaplan was allegedly "recruited" by Duane and months before Kaplan joined DenTek. Nowhere in the Complaint is there any allegation that Kaplan even knew of the existence of Exhibit N, let alone that she wrongfully concealed from the Tufts Doctors information contained in it. *See also Wolff v. Rare Medium, Inc.*, 171 F.Supp.2d 354 (S.D.N.Y. 2001)(Marrero, J.)(dismissing tortious interference with economic advantage claim based on an alleged misrepresentation for failure to state "wrongful means")

Finally, Plaintiff's allegation that Tufts Doctors "never agreed on the terms of a written agreement because DenTek insisted upon an exclusivity agreement with DenTek" further supports dismissal. If the Tufts Doctors were averse to working exclusively with one company, they could not have declined to work on Medtech's dental protector because of their association with DenTek, and, at best, Defendants **intended** to interfere

with Plaintiff's relationship with them, but failed to cause any **injury** to Plaintiff, a crucial element to a tortious interference claim.

For the foregoing reasons, it is respectfully submitted that the support for Plaintiff's claim that Kaplan tortiously interfered with Plaintiff's business relationship with the Tufts Doctors does not even add up to suspicion, and, accordingly, the claim must be dismissed. *See 4 Hour Wireless* 2002 U.S. Dist LEXIS 22680 at *6-7.

**V.      Kaplan is Entitled to Attorneys' Fees and Costs**

Finally, Kaplan respectfully requests that she be awarded her attorneys' fees and costs in accordance with her General Release. *See* Complaint, Ex. H, a copy of Kaplan's General Release, which provides, in relevant part, as follows:

> Future Legal Actions: In the event either party to this Release commences and action, at law or in equity, to enforce any right under any provision of this release or to compel compliance with any provision of this release, [Kaplan] and [Plaintiff] agree that the prevailing party in any such action shall be entitled to recover form the opposite party all reasonable attorney's fees [sic] and costs incurred in connection with such action.

*Id.* at par. 6.  Thus, it is respectfully submitted that this Court should award Kaplan her reasonable attorneys' fees and costs in connection with this action.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the accompanying Fulco Decl. and the Exhibits thereto, Kaplan respectfully requests that this Court enter an Order dismissing the Complaint as against Kaplan in its entirety, awarding Kaplan the costs and disbursements of this action, including reasonable attorneys' fees and granting Kaplan such other and further relief as it deems just and proper.

Dated: New York, New York
      November 21, 2007

SALON MARROW DYCKMAN
NEWMAN & BROUDY LLP
*Attorneys for Defendant Kelly M. Kaplan*

BY: JOHN PAUL FULCO, P.C.

John Paul Fulco (JF-2168)
Petek Gunay (PG-2695)
292 Madison Avenue
New York, New York 10017
Tel: (212) 661-7100
Fax: (212) 661-3339

129617

27