# Exhibit C

# TABLE OF CONTENTS

PRELIMINARY STATEMENT……………………………………………………...1

ARGUMENT……………………………………………………………………….2

PLAINTIFF'S OPPOSITION TO KAPLAN'S MOTION
ADDS NOTHING TO PLAINTIFF'S INSUFFICIENTLY
PLED CLAIMS AGAINST KAPLAN……………………………………….…...2

I.     Plaintiff's Trade Secret Misappropriation Claim
       Cannot Survive Kaplan's Motion to Dismiss…………………………………2

       A.     The Public Availability of the Information Alleged by Plaintiff
              to Constitute Trade Secrets Mandates Dismissal……………………………2

       B.     Kaplan Is Not Advocating a Heightened Pleading Standard for
              Plaintiff's Trade Secrets Claims or Misleading the Court……………4

       C.     Plaintiff's Inference of Misappropriation is  Mere
              Surmise Unsupported by Any Factual Allegation…………………….12

II.    Plaintiff's Contract Claims Cannot Survive
       Kaplan's Motion to Dismiss…………………………………………………...13

III.   Plaintiff's Tortious Interference Claim
       Cannot Survive Kaplan's Motion to Dismiss…………………………………...16

IV.    Plaintiff's Civil Conspiracy Claim
       Cannot Survive Kaplan's Motion to Dismiss…………………………………...19

CONCLUSION……………………………………………………………………20

# TABLE OF AUTHORITIES

**Cases**

*4 Hour Wireless v. AT&T Wireless Servs., Inc.,*
   No. 01 Civ. 9133, 2002 U.S. Dist LEXIS 22680
   (S.D.N.Y. Nov. 21, 2002)(Owen, J.)...............................................19

*A&A Jewelers Ltd. v. Bogarz, Inc.,*
    05 CV 0020E, 2005 U.S. Dist. LEXIS 33873
   (W.D.N.Y. Sep. 7, 2005).........................................................16, 17

*Alexander & Alexander of New York, Inc. v. Fritzen,*
   68 N.Y.2d 968 (1986)(*mem.*).....................................................19

*ATSI Comms. Inc. v. Shaar Fund,*
   493 F.3d 87 (2d Cir. 2007).........................................................15

*Bear Stearns Funding, Inc. v. Interface Grp.,*
   361 F.Supp.2d 283 (S.D.N.Y. 2005)(Haight, S.J.)................................3

*Boosing v. Doorman,*
   148 A.D.2d 824, 133 N.Y.S.2d 910 (4th Dep't 1912)........................3, 12

*Boyle v. Stephens, Inc.,*
   No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780
   (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.)........................................3

*CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.,*
   No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315
   (S.D.N.Y. May 31, 1985)(Sweet, J.)...........................................10, 12

*CreditSights, Inc. v. Ciasullo,*
   No. 05 CV 9345, 2007 U.S. Dist. LEXIS 25850
   (S.D.N.Y. Mar. 26, 2007)(Batts, J.).............................................14

*Curto v. Bender,*
   No. 04 CV 26S, 2005 U.S.Dist.LEXIS 6236 (W.D.N.Y. Mar. 28, 2005)
   *aff'd* 231 Fed.Appx. 93 (2d Cir. 2007)..........................................11

*Estee Lauder Co., Inc. v. Batra,*
   430 F.Supp.2d 158 (S.D.N.Y. 2006)...........................................11, 12

*Eberhard Inv. Assocs., Inc. v. Santino*,
  01 Civ. 3840, 2003 U.S. Dist. LEXIS 16119
  (S.D.N.Y. Sep. 11, 2003)(McKenna, J.)..................................................7

*Gaetano Assocs. Ltd. v. Artee Collections, Inc.*,
  No. 05 CIV. 3329, 2006 U.S. Dist. LEXIS 77144
  (S.D.N.Y. Oct. 25, 2006)(Cote, J.).....................................................6

*Hassan v. Deutche Bank A.G.*,
  No. 05 Civ. 6555, 2007 U.S. Dist. LEXIS 72530
  (S.D.N.Y. Sept. 27, 2007)(Castel, J.)................................................16

*Hudson Hotels Corp. v. Choice Hotels, Int'l.*,
  995 F.2d 1173 (2d Cir. 1993)........................................................9, 11

*Integrated Cash Mgmt Servs., Inc. v. Cash Mgmt. Corp.*,
  732 F.Supp. 370 (S.D.N.Y. 1989)(Ward, J.).......................................10

*Kirch v. Liberty Media Corp.*,
  449 F.3d 388 (2d Cir. 2006)........................................................5, 16

*Kreiss v. McCown De Leeuw Co.*,
  37 F.Supp.2d 294 (S.D.N.Y. 1999)(Ward, J.)......................................14

*Paper Corp. of the U.S. v. Schoeller Tech. Papers, Inc.*,
  724 F.Supp.110, 120 (S.D.N.Y. 1989)(Sweet, J.)................................16

*SD Protection, Inc. v. DelRio*,
  498 F.Supp. 2d 576 (E.D.N.Y. 2007)................................................7

*Wolff v. Rare Medium, Inc.*,
  171 F.Supp. 2d 354 (S.D.N.Y. 2001)(Marrero, J.)................................5

*Xerox Corp. v. Int'l Bus. Machs. Corp.*,
  64 F.R.D. 367 (S.D.N.Y. 1974)(Edelstein, C.J.)................................5, 6

## **Statutes**

Fed R. Civ. P. 12...................................................................1, 7

Defendant Kelly M. Kaplan ("Kaplan")[1] respectfully submits this reply memorandum of law in further support of her motion[2] for an order: (a) pursuant to Fed. R. Civ. P. 12(b)(6), dismissing counts VIII (Breach of Contract – Proprietary Information and Inventions Agreement), IX (Breach of Contract – General Release), XII (Civil Conspiracy), XIII (Trade Secret Misappropriation) and XIV (Tortious Interference with Advantageous Business Relationship/Economic Advantage) of Plaintiff's Complaint against Kaplan in their entirety; (b) awarding Kaplan attorneys' fees and costs in accordance with the General Release; and (c) awarding Kaplan such other and further relief as this Court deems just and reasonable.

## PRELIMINARY STATEMENT

**"The most important consideration is whether the information was secret."** Plaintiff's MOL[3] at 11 (emphasis added).

**"The issue of whether the information discussed by DenTek was within the public realm is ultimately irrelevant to this Motion to Dismiss."** Plaintiff's MOL at 21-22 (emphasis added).

These two blatantly contradictory and irreconcilable statements by Plaintiff, appearing pages apart in its prolix memorandum of law, summarize the entirety of that 36 page document. Faced with the fundamental law of trade secrets, *i.e.* that they must, inconveniently, be secrets, Plaintiff embarks on a fact-free sojourn through the village of

---

[1]    Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to them in Ms. Kaplan's memorandum of law dated November 21, 2007 submitted in initial support of this motion ("Kaplan's Initial MOL").

[2]    Kaplan has sought to file her Initial MOL under seal because it referred to and discussed exhibits from Plaintiff's complaint which were filed under seal. However, Plaintiff has not sought a sealing order for its opposition, which freely discusses contents of numerous documents Plaintiff has caused to be filed under seal. Therefore, this memorandum of law, which merely responds to Plaintiff's opposition, is not filed under seal.

[3]    Medtech Prodcuts' [sic] Inc.'s Response to Defendants DenTek Oral Care, Inc.'s, Kelly M. Kaplan's, Ray Duane's and C.D.S. Associates, Inc.'s Motions to Dismiss

130114

surmise to the state of speculation, and finally, in the Land of Nod, makes the incredible announcement, that secrecy is "ultimately irrelevant" to a determination of whether a trade secret exists.

None of the many pages of things that might have been can rehabilitate Plaintiff's defective complaint or can obscure the fact that Plaintiff has failed to allege the misappropriation by Kaplan of a single cognizable trade secret or any nonpublic information of Plaintiff.

The remaining causes of action, dependent as they are on misappropriation allegations, likewise must fail. Moreover, as demonstrated in Kaplan's Initial MOL and herein, Plaintiff's contract claims must fail because Plaintiff has failed to plead a cognizable breach of either agreement, and because the Proprietary Inventions Agreement was superseded as a matter of law. Plaintiff's tortious interference[4] claim fails for failure to plead an essential element of the tort; and Plaintiff's civil conspiracy claim must fall because no such independent cause of action exists in New York.

In sum, all claims against Kaplan should be dismissed.

## ARGUMENT

### PLAINTIFF'S OPPOSITION TO KAPLAN'S MOTION ADDS NOTHING TO PLAINTIFF'S INSUFFICIENTLY PLED CLAIMS AGAINST KAPLAN

**I.    Plaintiff's Trade Secret Claim Cannot Survive Kaplan's Motion to Dismiss**

**A.    The Public Availability of the Information Alleged by Plaintiff to Constitute Trade Secrets Mandates Dismissal**

As Plaintiff admits, the secrecy of information alleged to be a trade secret is the single most important, deciding factor on a motion to dismiss. It is well-settled in this Circuit that a defendant who demonstrates that information alleged to constitute a trade

---

[4]    This term is used as defined in Kaplan's Initial MOL at 23, n. 7.

secret is not "secret," is entitled, as a matter of law, to dismissal. *Bear Stearns Funding, Inc. v. Interface Grp.*, 361 F.Supp.2d 283, 305 (S.D.N.Y. 2005)(Haight, S.J.)(dismissing trade secret misappropriation claim because information alleged to be a trade secret was not actually kept secret); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1997 U.S. Dist. LEXIS 12780, * 14-15 (S.D.N.Y. Aug. 25, 1997)(Scheindlin, J.)(dismissing trade secret misappropriation claim because the information sought to be protected was either a new marketing technique or a new product concept – neither of which is protectable under New York law – and in any event in the public domain)   Furthermore, it is black letter law in New York that information that can easily be ascertained or duplicated by others, cannot, as a matter of law, constitute a trade secret. *Boosing v. Doorman*, 148 A.D.2d 824, 133 N.Y.S.2d 910 (4th Dep't 1912)(dismissing complaint alleging a trade secret in a customer list consisting of information readily available from public directories or public display of business places).

While it is true that Plaintiff is entitled to every favorable inference on this motion, the Court is not required to credit allegations by Plaintiff that are demonstrably false.  Kaplan has demonstrated that each and every "trade secret" Plaintiff has alleged in its Complaint to have been misappropriated by Kaplan was in the public domain, or **at the very least**, could have easily been ascertained or duplicated by others.[5]  *See* Kaplan's Initial MOL at 8-16.  Nevertheless, Plaintiff has contended that it should be permitted to proceed to discovery in a vain attempt to adduce evidence to show that information which is public is somehow "secret."  Put another way, Plaintiff submits that Kaplan, an

---

[5]   Plaintiff's silence on the documents relied on by Kaplan evidencing the public availability of information Plaintiff has alleged to constitute trade secrets speaks volumes.  Plaintiff does not so much as attempt to challenge the public documents relied upon by Kaplan, nor the Court's ability to take judicial notice of those public documents, instead claiming that they are irrelevant on a motion to dismiss.

individual with limited resources, should be required to defend suit against a major corporation even though she has demonstrated conclusively that the alleged "trade secrets" she is accused of misappropriating were in the public domain, and thus, could not, under any circumstances, constitute trade secrets. This contention is absurd.

Plaintiff admits that what "must be shown by the pleader is that the claims asserted are plausible." *See* Plaintiff's MOL at 4. Because it is irrefutable that Plaintiff's trade secret misappropriation claim against Kaplan is simply not plausible, Kaplan is entitled to dismissal.

**B.    Kaplan Is Not Advocating a Heightened Pleading Standard for Plaintiff's Trade Secret Claims or Misleading This Court**

While Plaintiff summarily disposes of the pivotal issue of *secrecy* (or rather, the demonstrated availability to the public) of its alleged trade *secrets* in one sentence by making a conclusory statement in direct contravention of applicable case law (*i.e.* "[t]he same holds true for Kaplan's arguments because, although while she did not resort to the filing of improper documents like DenTek, the public nature of information cannot be decided on a motion to dismiss[,]" *see* Plaintiff's MOL at 21-22), Plaintiff spends 8 pages responding to the first paragraph of Kaplan's Initial MOL which merely points out that the Complaint fails sufficiently to identify any particular, legally cognizable trade secret. Plaintiff contends that Kaplan is advocating a heightened pleading standard for Plaintiff's trade secret claims, and even goes as far as accusing Kaplan of misleading the Court.

To be clear, Kaplan has not contended, as Plaintiff claims, that Plaintiff's trade secret misappropriation claim is fatally defective because Plaintiff has not set forth each and every item of information alleged to constitute a trade secret, "how [she] used it and when [she] disclosed it." Nor is Kaplan advocating a new specificity requirement for

pleading trade secrets and demanding that "**all** the facts and circumstances surrounding the alleged misappropriation [...] be pled before any meaningful discovery." Plaintiff's MOL at 1 (emphasis added). Instead, Kaplan contends that Plaintiff's trade secret misappropriation claim fails because the Complaint fails to allege that Kaplan misappropriated anything that constitutes a single, legally protectable trade secret.

Although federal pleading requirements are to be construed liberally, "liberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader." *Wolff v. Rare Medium, Inc.*, 171 F.Supp. 2d 354, 358 (S.D.N.Y. 2001)(Marrero, J.) Thus, Kaplan is required, at a minimum, to have notice of one legally cognizable trade secret Plaintiff alleges she misappropriated. Here Plaintiff has made blanket assertions of misappropriation. However, as demonstrated at length in Kaplan's Initial MOL, the Complaint fails to allege the "misappropriation" of anything other than public information. Accordingly, all that remains is the bare allegation that Kaplan revealed to DenTek "confidential and proprietary information" of Medtech. Such bare allegations are "conclusory allegations masquerading as factual conclusions[,]" and, as such, are, as a matter of law, insufficient to defeat Kaplan's motion to dismiss. *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006).

Plaintiff claims that *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-372 (S.D.N.Y. 1974)(Edelstein, C.J.) is distinguishable from the case at hand because it was decided after a year of discovery.[6] Plaintiff commenced this action more than seven

---

[6] Plaintiff claims that Kaplan cited *Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371-372 (S.D.N.Y. 1974)(Edelstein, C.J.) for the principle that "[a]t the very least, defendant is entitled to know the bases for plaintiff's charges against it." However, that is merely a sentence Kaplan selected to quote in the parenthetical following the citation for the case because it is representative

months ago, and has had the opportunity since then to conduct depositions including that of Duane, and two of the Tufts Doctors.  In light of the fact that Plaintiff has alleged that Duane conducted a conspiracy over many months in which he revealed numerous of Plaintiff's "trade secrets" to DenTek and that Kaplan somehow misappropriated "trade secrets" because of a single e-mail sent to Dr. Mehta, Plaintiff certainly should be able at this point to articulate at least a single, legally cognizable "trade secret" "misappropriated" by Kaplan.  Indeed, in *Xerox*, the Court required plaintiff to "identify in detail <u>all</u> trade secrets and confidential information alleged to have been misappropriated by the defendant" before the parties could continue with discovery. (emphasis added).  Here, incredibly, Plaintiff contends it does not have to identify one cognizable trade secret until discovery is complete.  It is obvious that Plaintiff seeks to conduct a fishing expedition, based upon sheer speculation, in the hope that some witness, somewhere, will tell Plaintiff what its "trade secrets" are.

Plaintiff cites *Gaetano Assocs. Ltd. v. Artee Collections, Inc.*, No. 05 CIV. 3329, 2006 U.S. Dist. LEXIS 77144 (S.D.N.Y. Oct. 25, 2006)(Cote, J.) for the proposition that "all a trade secret must do at the complaint stage is provide fair notice to the opposing party, faulty claims are appropriately identified through discovery and summary judgment motions."  Plaintiff's MOL at 5.  However, as Plaintiff admits, *Gaetano* involved a case where the defendants, who sought to amend their answer to assert a counterclaim for trade secret misappropriation under Massachusetts law, had sufficiently

---

of the case's holding.  Kaplan correctly cited *Xerox* to support her contention that "the very essence of adequately stating a trade secret claim is specifically identifying the trade secret alleged to have been misappropriated."  Kaplan's Initial MOL at 6, n.3.  Kaplan also did not, as Plaintiff contends, purposefully "neglect" to quote the very next sentence following the quote above, which, contrary to Plaintiff's contention, is "[t]he burden is upon the plaintiff to specify those charges, not upon the defendant to guess what they are[,]" a statement that further corroborates Kaplan's position. *Id.*

described in their proposed answer and counterclaims the very trade secrets at issue, the time period during which they were obtained and the general method by which they were allegedly acquired. The Court permitted the defendants leave to amend their answer to assert a counterclaim for misappropriation of trade secrets stating that defendants were not required, as the plaintiffs contended, in their pleading to "explain how the list of names or quantities of fabric sold constitutes a trade secret, what steps defendants took to preserve the secrecy of the information or how plaintiffs improperly obtained the alleged trade secret." *Id.* at *7.[7]

Similarly, *Eberhard Inv. Assocs., Inc. v. Santino*, 01 Civ. 3840, 2003 U.S. Dist. LEXIS 16119 (S.D.N.Y. Sep. 11, 2003)(McKenna, J.) is also distinguishable. While the *Eberhard* opinion did contain the language quoted by Plaintiff that "[w]hile the allegations of the third claim are certainly not as specific as they should be as to what [the opposing parties] have done, the Court, again, cannot say that there is no claim suggested[,]" there, the Court specifically held that the pleader's unsupported allegations were inadequate properly to support a trade secret misappropriation claim, and granted the opposing parties' motion pursuant to Fed.R. Civ. P. 12(e) for a more definite statement of facts supporting the claim. 2003 U.S. Dist. LEXIS 16119 at *13. Here, it is clear that such an exercise would be futile. This action has been pending for more than

---

[7]  Also inapposite is *SD Protection, Inc. v. DelRio*, 498 F.Supp. 2d 576 (E.D.N.Y. 2007), a case where the issue was not the viability of a claim for trade secret misappropriation, but rather, the enforceability of a restrictive covenant in an employment contract. In that context, the Court denied defendant's motion to dismiss because, among other things, the reasonableness of the geographic limitation in the covenant could not be resolved on defendant's motion to dismiss. While the Court reserved trade secret analysis until after discovery, it also noted a) that the issue would be reached only upon a finding that the covenant was reasonable; and b) that plaintiff did not **fully** have to reveal its trade secrets to plead them with sufficient specificity. Here, Plaintiff's trade secret claims are pled as a separate cause of action, and are supported merely by vague references to "confidential and proprietary information of Plaintiff." If Plaintiff had a valid cause of action, by now, it would surely have supplemented its allegations with factual support without **fully** revealing its alleged trade secrets. Thus, *SD Protection* is clearly not on point.

seven months and Plaintiff has at the very least conducted significant discovery with respect some key witnesses. Nevertheless, Plaintiff has still been unable to plead in its **Second Amended** Complaint a more factually supported claim.

As discussed above and in Kaplan's Initial MOL, because Plaintiff's claim for trade secret misappropriation fails to give Kaplan fair notice regarding any cognizable trade secrets alleged to have been misappropriated by Kaplan, it must fail.

Instead of identifying trade secrets it claims to have been misappropriated by Kaplan, Plaintiff's MOL instead presents a lengthy tutorial containing categories of information which it claims have been held in this Circuit to qualify as trade secrets. Plaintiff's MOL at 12. Plaintiff makes no serious attempt to tie these categories to any factual allegations in the Complaint. Indeed, it is impossible to discern from the morass of suggestion exactly what Plaintiff's MOL is alleging with respect to this list.

Herewith, Plaintiff's list:

1. *Knowledge of brand strategies, confidential products in development and product innovations scheduled for next year*
2. *Confidential information about the development stages of products in the pipeline*
3. *Strategic information/forward looking plans regarding business development, investment, geographic expansion, and new product development*
4. *Financial outlook and marketing strategies*
5. *"Price points" and the scope and pricing of various services,*
6. *Trial and Error*
7. *Specific experience and knowledge about product architecture and design gained through working on a particular product*
8. *Confidential customer, supplier and consultant lists*

Plaintiff's MOL at 12.

The Complaint is devoid of any allegation that Kaplan misappropriated *brand strategies, products in development and product innovations scheduled for next year*. Even if the Complaint could be read to contain such an allegation, in order to earn trade

secret protection, information must be used secretly and continuously in trade. *See Hudson Hotels Corp. v. Choice Hotels Int'l., Inc.,* 995 F.2d 1173, 1177 (2d Cir. 1993). Once the information is reduced to a product (or public information as the case may be), it can no longer be afforded trade secret protection. *Id.* To the extent that anything in the Complaint could be deemed to refer to *brand strategies*, Plaintiff admits that the same were effectively reduced to a marketing campaign and disseminated to the public through advertisements, on nationally syndicated radio networks and shows, and on cable television. *See* Complaint at ¶¶ 99-100. In addition, despite claiming that as a result of her employment with Dental Concepts, Kaplan was privy to the continued "strategic thinking" of Plaintiff, Plaintiff does not allege that Kaplan had any as yet undisclosed information or any other *strategic information/forward looking plans* to pass on to DenTek at the time she became associated with DenTek, allegedly no earlier than September 2006. In fact, Plaintiff seems to claim the opposite by alleging that Kaplan attempted to extract such information (which she apparently did not have) from the Tufts Doctors.

The Complaint also does not claim that Plaintiff had any *confidential products in development and product innovations scheduled for next year* or, for that matter, any *products in the pipeline.* To the contrary, Plaintiff admits its determination to maintain its three-size-platform despite market pressures, and argues that its plans not to improve or change its dental protector or to enter the one-size-fits-all market should somehow be afforded trade secret protection.[8]  Of course, Plaintiff's MOL fails to cite a case for its

---

[8]    Not surprisingly, Plaintiff's MOL does not address the arguments raised by Kaplan regarding the absurdity of Plaintiff's contention that its "strategy" to continue to produce a three-size product constitutes a "trade secret."

contention that "the lack of" any product innovations or products in the pipeline can constitute a trade secret.

As discussed in Kaplan's Initial MOL, Plaintiff's allegations against Kaplan of misappropriation of any information relating to the design, molding, packaging or sizing of the product are belied by Plaintiff's own allegation that Kaplan joined DenTek and took over the dental protector project only in or about October 2006, at the same time DenTek presented the Tufts Doctors with its finished product. Plaintiff attempts in its opposition to reconcile its internally inconsistent statements by alleging that prior to the date she was "officially" hired by DenTek, Kaplan was already "actively" working with DenTek because she attempted to "solicit" the Tufts Doctors as early as September 2006, one month before she was officially hired. Notably, Plaintiff's Complaint is also devoid of any allegation that Kaplan, the Vice President of Marketing for DC, had such intricate and highly technical knowledge of Medtech's product design that within a matter of a month, DenTek was able to reduce to a finished product her *specific experience and knowledge about product architecture and design gained through working on a particular product* or *trial and error*.[9]

The Complaint also does not allege that Kaplan had any information regarding the *financial outlook* of Plaintiff and its *price points*. Further, even if the same were alleged, as discussed in Kaplan's Initial MOL, "knowledge of the inner workings of a company, including the intricacies of business operations and general financial information does not qualify as a trade secret." *CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.,*

---

[9]     *Integrated Cash Mgmt Servs., Inc. v. Cash Mgmt. Corp.,* 732 F.Supp. 370 (S.D.N.Y. 1989)(Ward, J.), the case relied on by Plaintiff to claim a trade secret in these categories of information involved such highly technical information contained in computer programs.

No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315, *7 (S.D.N.Y. May 31, 1985)(Sweet, J.) (*citing Data Comm. Dirmeyer*, 514 F.Supp. 26, 33 (E.D.N.Y. 1981))

Finally, as shown in Kaplan's Initial MOL at 8-16 and above, the identities of Plaintiff's suppliers and consultants are in the public domain and cannot therefore constitute a trade secret, a fact that Plaintiff does not dispute and therefore concedes. *Curto v. Bender*, No. 04 CV 26S, 2005 U.S.Dist.LEXIS 6236 at 50 (W.D.N.Y. Mar. 28, 2005) *aff'd* 231 Fed.Appx. 93 (2d Cir. 2007) (Failure to address substantive issues in opposition to a motion to dismiss results in a presumed concession of said issues.). In any event, Plaintiff has identified only three business contacts and not a supplier list which could possibly have been used "secretly" or "continuously" in trade. *See Hudson Hotels*, 995 F.2d at 1177. Finally, the Complaint also does not allege that the identities of Plaintiff's *customers* are confidential, which in any event would be a laughable contention in light of the fact that Plaintiff's customers are simply the stores (mostly major retail chains) which sell its dental protector, and thus, are readily determinable from outside sources.

*Estee Lauder Co., Inc. v. Batra*, 430 F.Supp. 2d 158 (S.D.N.Y. 2006) heavily relied on by Plaintiff is readily distinguishable. That case, as Plaintiff admits, involved a preliminary injunction motion decided after significant misconduct by defendant was revealed in expedited discovery. Specifically, the defendant had started working for plaintiff's competitor while still employed by plaintiff, had used time that he was supposed to devote to plaintiff's projects to work on competitor's projects, had used plaintiff's computer and e-mail to work on such projects (even going as far as drafting the competitor's business strategy on plaintiff's computer), had attempted to solicit plaintiff's

employees and had misled plaintiff into believing he would not be leaving its employ when he was already working for the competitor. The Court held that under those circumstances, the plaintiff had demonstrated irreparable injury especially in light of the defendant's demonstrated lack of forthrightness. Here, no such showing has been made or, as demonstrated above and in Kaplan's Initial MOL, can be made. Accordingly, Plaintiff's reliance on *Estee Lauder* is wholly misplaced.

Plaintiff has simply not alleged misappropriation by Kaplan of anything that remotely resembles a trade secret or of any information not in the public domain.[10]

**C.    Plaintiff's Inference of Misappropriation is Mere Surmise Unsupported by Any Factual Allegation**

Plaintiff has repeatedly admitted that the sole basis of its claims against Kaplan is her association with DenTek subsequent to her association with DC, by virtue of which she had acquired some alleged confidential information of Plaintiff. *See e.g.* Complaint at ¶ 8 stating "[i]n or around late-May, 2007, Medtech discovered that Kaplan was working for DenTek and immediately filed a Motion to Amend its Complaint to allege that the similarities of the DOCTOR'S NIGHTGUARD dental protector and the DenTek dental protector products resulted from the misuse of Medtech's confidential and proprietary information given to DenTek" (emphasis added); *see also* Plaintiff's MOL at 16, stating "[g]iven the wide array of trade secret information that Kaplan was exposed to while employed by Dental Concepts, there can be no credible argument that Medtech's

---

[10] It should also be noted that the law does not permit Plaintiff to cast a net over everything Kaplan may have been exposed to as a result of her employment with DC, and characterize it all as "trade secrets." Despite Plaintiff's contentions to the contrary, "[t]he employee leaving an employer's service cannot leave the experience or knowledge there acquired, and saving the matter of trade secrets […], these are legitimate additions to her personal equipment, which she has a perfect right to use for her own benefit." *Boosing*, 148 A.D.2d at 827, 133 N.Y.S. at 912; *see also CCS Comm.*, 1985 U.S. Dist LEXIS 19315 at *7.

Second Amended Complaint fails to adequately allege that Kaplan <u>misappropriated</u> that same information." (emphasis added). These admissions prove conclusively that Plaintiff's claims against Kaplan cannot stand. The fact that Kaplan may have had confidential information of Plaintiff does not mean that any of the information constituted a trade secret, nor does it automatically mean that Kaplan misappropriated such information. Equally flawed is Plaintiff's argument that Kaplan's alleged efforts to "glean" information from Tufts Doctors, <u>seven months after she left DC</u>, provides proof that [she] misappropriated trade secret information that was revealed to her <u>during the time in which she was a high level employee of [DC].</u>" *Id.* at 18. As this Court noted at the October 30, 2007 conference, such "suspicion and surmise" is simply not sufficient to salvage Plaintiff's fatally deficient Complaint.

For the foregoing reasons, Plaintiff's trade secret misappropriation claim against Kaplan must be dismissed in its entirety.

**II.    <u>Plaintiff's Contract Claims Cannot Survive Kaplan's Motion to Dismiss</u>**

Both the General Release and the Proprietary Inventions Agreement claims should be dismissed because of failure to allege misappropriation of any nonpublic information. The Proprietary Inventions Agreement is separately distinguishable because it is superseded by the General Release.

Despite Plaintiff's claims to the contrary, it is also clear that the confidentiality provisions of the Proprietary Inventions Agreement did not survive execution of the General Release. While it is true that an entire contract will not be superseded by a subsequent contract that is not on the same subject matter unless it specifically revokes the prior contract, to the extent that a subsequent contract does not pertain precisely to the

same subject matter as a previous contract, it will still supersede those terms of the previous contract specifically pertaining to the same subject matter. *Kreiss v. McCown De Leeuw Co.*, 37 F.Supp.2d 294, 301, n.8 (S.D.N.Y. 1999)(Ward, J.)

The entirety of the Proprietary Information Agreement addresses Kaplan's confidentiality obligations in connection with her association with Plaintiff's predecessor-in-interest, DC. Because the General Release specifically covers "confidential information," *see id.* at ¶7, Plaintiff cannot now argue that the entire Proprietary Inventions Agreement was not superseded by the General Release. [11]

Plaintiff's reliance on *CreditSig'nts, Inc. v. Ciasullo*, No. 05 CV 9345, 2007 U.S. Dist. LEXIS 25850 (S.D.N.Y. Mar. 26, 2007)(Batts, J.) to support its contention that the Propritary Inventions Agreement survived the General Release is misplaced. In fact, *CreditSights* supports Kaplan's position by specifically citing and limiting the holding of *Kreiss* as follows:

> [T]he fact that a subsequent contract contains provisions which are of the same subject matter as those in an earlier agreement is not sufficient to supersede the entire contract; rather, **a subsequent agreement supersedes only those terms of the earlier contract that are of the same subject matter**. *Kreiss v. McCown De Leeuw & Co.*, 37 F.Supp.2d 294 (S.D.N.Y. 1999)(holding that when the subject matter of a subsequent agreement does not cover the specific award to Plaintiffs of equity and stock options, the agreement does not supersede the earlier agreement in that regard).

*CreditSights*, 2007 U.S. Dist. LEXIS 25850 at *18-19 (emphasis added).

Plaintiff contends in its opposition that the two agreements were for "obviously dissimilar purposes." Plaintiff's MOL at 23. However, Plaintiff has already admitted in its Complaint that the General Release merely contained a reiteration of Kaplan's

---

[11] As set forth in Kaplan's Initial MOL, the only breach of the Proprietary Information Agreement by Kaplan that Plaintiff has alleged in the Complaint is the purported disclosure by Kaplan of allegedly confidential information of Plaintiff.

confidentiality obligations under the Proprietary Inventions Agreement. In a section under the heading **"DUANE AND KAPLAN REAFFIRM THEIR CONFIDENTIALITY OBLIGATIONS AND EXECUTE A GENERAL RELEASE OF DENTAL CONCEPTS"** the Complaint states that "[t]he General Release[ is] further evidence of the efforts that Dental Concepts made to keep [Plaintiff's allegedly confidential and proprietary material] confidential." *Id.* at ¶ 77. Thus, Plaintiff's argument that the confidentiality provisions of the Proprietary Inventions Agreement survived the General Release, which by Plaintiff's own admissions, reaffirmed Kaplan's confidentiality obligations vis-à-vis Plaintiff, should not be credited.

Even assuming *arguendo* that the Proprietary Inventions Agreement survived the execution of the General Release, Plaintiff's contract claims against Kaplan are still inadequate. Plaintiff has merely alleged in the Complaint, without any factual support, that Kaplan "breached" the General Release and the Proprietary Inventions Agreement because she allegedly "divulged" "confidential and proprietary information" of Plaintiff. "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Comms. Inc. v. Shaar Fund*, 493 F.3d 87, 98 (2d Cir. 2007). Here, Plaintiff has simply not done so.[12]

---

[12] With respect to Plaintiff's conclusory contention that it has sufficiently pled a breach of the General Release because allegedly "the reasonable inference that evidence may show that [Kaplan's] relationship [with DenTek] began earlier[,]" Kaplan respectfully refers this Court to the discussion on Point IC above, and Point B(II) of Kaplan's Initial MOL, and submits that this is yet more speculation and surmise.

### III.    Plaintiff's Tortious Interference Claim
###         Cannot Survive Kaplan's Motion to Dismiss

Plaintiff's arguments regarding the sufficiency of its tortious interference claim are equally flawed. As discussed in Kaplan's Initial MOL, a claim for tortious interference is facially defective unless a plaintiff has asserted, among other things, that defendant either acted *solely* out of *malice* or used wrongful means. *Paper Corp. of the U.S. v. Schoeller Tech. Papers, Inc.*, 724 F.Supp.110, 120 (S.D.N.Y. 1989)(Sweet, J.) *Kirch v. Liberty Media Corp.*, 449 F.3d. 388, 400 (2d Cir. 2006); *A&A Jewelers Ltd. v. Bogarz*, Inc., 05 CV 0020E, 2005 U.S. Dist. LEXIS 33873, *4-5 (W.D.N.Y. Sep. 7, 2005)(emphasis added). Plaintiff admits this by stating that "[i]f there are allegations that the conduct of the defendants was either criminal, independently tortious or wrongful, then there is no need to establish that the intent to interfere with the business relationship was the sole reason behind that interference." Plaintiff's MOL at 28 (*citing Hassan v. Deutche Bank A.G.*, No. 05 Civ. 6555, 2007 U.S. Dist. LEXIS 72530 (S.D.N.Y. Sept. 27, 2007)(Castel, J.)).

Notably, Plaintiff also admits that it has not alleged that Kaplan purportedly interfered with its relationship with the Tufts Doctors for the *sole* purpose of causing injury to Plaintiff. *See* Plaintiff's MOL at 28-30, where Plaintiff argues that its tortious interference claim is supported by other purportedly: a) "wrongful", or b) independently tortious conduct – and not by Kaplan's alleged desire to inflict injury to Plaintiff.

With respect to allegedly "wrongful conduct" by Kaplan, the Complaint does not even come close to the requisite showing. As Plaintiff acknowledges, in order sufficiently to support a claim for tortious interference, the "wrongful conduct" alleged

has to rise to the level of "physical violence, **fraud[13] or misrepresentation**, civil suits and criminal prosecutions and some degrees of economic pressure.[14]" Plaintiff's MOL at 29 (emphasis in original). Notwithstanding this stringent standard, Plaintiff argues that the Complaint sufficiently alleges wrongful conduct on Kaplan's part because "**the true nature of the work that was to be performed by the Tufts Doctors was kept hidden from them by Defendants until a conflict between those doctors and Medtech arose.**" *Id.* at 29 (emphasis added.)

However, the Complaint alleges the exact opposite with respect to Kaplan. According to the Complaint, while Kaplan left Plaintiff's employ in or around February 2006, Medtech continued throughout 2006 to meet and negotiate with the Tufts Doctors. Complaint ¶¶ 89, 105. Also according to the Complaint, on September 5, 2006, Kaplan reached out to the Tufts Doctors "ask[ing] critical strategic questions regarding Medtech" such as "Are you doing any work with Prestige? The Doctor's Nightguard or Bruxguard?" *Id.* ¶ 142. Thus, at the very least, the Tufts Doctors knew as of September 5, 2006 that Kaplan was no longer associated with Medtech. Similarly, by Plaintiff's own account, "[i]n or around late August or early September, Kaplan and Duane personally called and solicited the Tufts Doctors **to work for DenTek and provide information and feedback on the one-size-fits-all dental protector that Dentek was developing**." *Id.* at ¶ 130(d)(emphasis added). Accordingly, not only can Plaintiff not claim any misrepresentation or omission by Kaplan, but it cannot now backtrack on its

---

[13] Even though Plaintiff has placed bold emphasis on the word "fraud," clearly, here, there were no allegations of fraud. Nor can Plaintiff now contend that the unsupported allegations it made against Kaplan in the Complaint comport with the specificity requirements for pleading fraud under Rule 9.

[14] As set forth in Kaplan's Initial MOL, persuasion alone does not adequately constitute economic pressure in this regard even if it is knowingly directed at interference with a business relation. *Id.* at 24 (citing *A&A Jewelers*, 2005 U.S. Dist. LEXIS 33873 at *4-5)

own allegation that Kaplan revealed to the Tufts Doctors as early as late August or early September 2006: a) that she had become associated with DenTek, and b) that she was seeking their assistance in connection with a one-size-fits-all dental product that DenTek was developing.[15] Thus, even if Plaintiff's allegations are fully credited, it is clear that Plaintiff has not adequately pled any misconduct by Kaplan, let alone misrepresentation rising to the level of "wrongful conduct" Plaintiff is required to demonstrate to support its tortious interference claim.

Plaintiff's argument that "the solicitation and procurement of the services of the Tufts Doctors amounted to a misappropriation of Medtech's trade secrets by DenTek and Kaplan" and that, "also provides a basis for the tortious interference claim, as the misappropriation of trade secrets satisfies the independent tort prerequisite for bringing this claim" also does not hold water. Plaintiff's MOL at 30. Kaplan has already established that neither the identities of the Tufts Doctors nor their association with Medtech was a secret, let alone a trade secret. *See* Kaplan's Initial MOL at 12-13. Further, even if "confidential information regarding Medtech that those doctors possessed" could constitute a trade secret – and Kaplan respectfully submits that it cannot – Plaintiff has admitted that Kaplan was trying to obtain such information, and thus, could not have already had it as late as September 2006, some seven months after she left

---

[15]    Furthermore, Plaintiff's allegation that the true nature of the work to be performed by Tufts Doctors for DenTek was kept hidden until a conflict between the doctors and Medtech arose is also belied by the Complaint. According to Plaintiff, subsequent to Kaplan sending her September 5, 2006 e-mail to Dr. Mehta, the Tufts Doctors attended a meeting with DenTek in Boston (in or around October 2006) during which they were presented with DenTek's finished one-size-fits-all dental protector <u>and</u> on or about October 12, 2006, they signed a confidentiality and nondisclosure agreement with DenTek. Complaint at ¶¶ 142, 144, 145. Thus, it is irrefutable that the Tufts Doctors knew at the latest by October 2006 the reasons for DenTek seeking their assistance. Notwithstanding the foregoing, the Tufts Doctors allegedly continued to negotiate with Medtech throughout 2006, and only notified Medtech of a potential conflict in December 2006. *Id.* at ¶¶ 105, 149.

Dental Concepts. Thus, unless the Tufts Doctors revealed to Kaplan those alleged trade secrets, an allegation Plaintiff has not made here, Kaplan could not have "misappropriated" those trade secrets.

For the reasons set forth above and because well-settled precedent mandates dismissal of tortious interference claims supported merely by suspicions, *see e.g. 4 Hour Wireless v. AT&T Wireless Servs., Inc.*, No. 01 Civ. 9133, 2002 U.S. Dist LEXIS 22680, *6-7 (S.D.N.Y. Nov. 21, 2002)(Owen, J.), Plaintiff's claim for tortious interference against Kaplan should also be dismissed.

## IV.    Plaintiff's Civil Conspiracy Claim Cannot Survive Kaplan's Motion to Dismiss

Plaintiff's *independent* cause of action for civil conspiracy against Kaplan is also fatally flawed because New York does not recognize an *independent* cause of action for civil conspiracy. *See e.g. Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)(*mem.*) In other words, where allegations of a civil conspiracy made to support an independent, well-pled cause of action for a recognized tort may be proper, a cause of action alleging civil conspiracy simply is not. Moreover, as shown in Kaplan's Initial MOL, Plaintiff's trade secret misappropriation and breach of contract claims, the causes of action upon which Plaintiff's civil conspiracy allegations purportedly rest, are not viable.[16] Thus, this claim should be dismissed for those reasons alone. *See* Kaplan's Initial MOL at 21-22.

To the extent this Court determines that Plaintiff has sufficiently pled its trade secret misappropriation and breach of contract claims against Kaplan – and Kaplan

---

[16] Plaintiff also appears to argue in its MOL that its tortious interference claim against Kaplan is an additional tort upon which it based its claim for civil conspiracy, even though this claim is not made in the Complaint. That cause of action also cannot provide support for Plaintiff's conspiracy claim argument for the reasons discussed in Kaplan's Initial MOL and Point III above.

respectfully submits it should not – the Complaint still fails adequately to connect the actions of the alleged cohorts to provide support for those claims.  To legitimize its civil conspiracy claim, Plaintiff argues that Kaplan "officially joined DenTek and Duane in their efforts to create the infringing product." Plaintiff's MOL at 27.  However, there is no underlying infringement claim asserted against Kaplan, so this argument cannot properly support allegations of a civil conspiracy against her.  Similarly, Plaintiff's allegation that "all three Defendants had a clear agreement to create and market a product intended to compete with THE DOCTOR'S NIGHTGUARD brand dental protector, **meeting the first element requiring an agreement between the Defendants**" is also absurd. *Id.*  An agreement to create and market of a product intended to compete with Plaintiff's dental protector is not a tortious act, and thus, also cannot properly support claims of a civil conspiracy.[17]  Plaintiff's final try to patch up its defective pleading by claiming that Kaplan and Duane admitted contact with each other also fails, for, in reality, all that Plaintiff has claimed in its Complaint is that Duane "solicited" Kaplan.[18]

## CONCLUSION

For all the foregoing reasons, as well as those set forth in papers submitted in initial support of this motion, Kaplan respectfully requests that this Court enter an Order dismissing the Complaint as against Kaplan in its entirety, awarding Kaplan the costs and disbursements of this action, including reasonable attorneys' fees and granting Kaplan such other and further relief as it deems just and proper.

---

[17]    For the very same reasons, Plaintiff's argument that "that all three Defendants were in agreement as to their goal of producing an infringing product is apparent given the employer/employee relationship that existed and the fact that DenTek specifically hired Duane and Kaplan for the purposes of creating and marketing the infringing product" is also not an argument that furthers Plaintiff's civil conspiracy claim.

[18]    In fact, Plaintiff has even asserted a separate cause of action against Duane for tortious interference with Kaplan's contract with Plaintiff.

Dated: New York, New York
       December 14, 2007

SALON MARROW DYCKMAN
NEWMAN & BROUDY LLP
*Attorneys for Defendant Kelly M. Kaplan*

BY: JOHN PAUL FULCO, P.C.

John Paul Fulco (JF-2168)
Petek Gunay (PG-2695)
292 Madison Avenue
New York, New York 10017
Tel: (212) 661-7100
Fax: (212) 661-3339