**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| _____ | |
| **MEDTECH PRODUCTS INC.,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| **RANIR, LLC AND CVS PHARMACY,** ) | |
| **INC.,** ) | |
| **Defendants.** ) | |
| _____ ) | |
| **MEDTECH PRODUCTS INC.,** ) | **Civil Action No. 07 CV 3302 (KMK)(LMS)** |
| **Plaintiff,** ) | |
| **v.** ) | **ECF FILED** |
| **DENTEK ORAL CARE, INC.,** ) | |
| **KELLY M. KAPLAN,** ) | |
| **RAY DAUNE, AND** ) | |
| **C.D.S. ASSOCIATES, INC.** ) | |
| **Defendants.** ) | |
| _____ ) | |
| **MEDTECH PRODUCTS INC.,** ) | |
| **Plaintiff,** ) | |
| **v.** ) | |
| **POWER PRODUCTS, INC.,** ) | |
| **d/b/a/ SPLINTEK,** ) | |
| **Defendant.** ) | |
| _____ ) | |

**PLAINTIFF MEDTECH PRODUCTS INC.'S RESPONSE TO
DENTEK ORAL CARE INC.'S AND KELLY KAPLAN'S OBJECTIONS TO
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION DATED JUNE 2, 2008**

Table of Contents

Page

I.    IN THEIR OBJECTIONS, DENTEK AND KAPLAN ATTEMPT TO
      REWRITE THE PROCEDURAL HISTORY OF THE CASE TO CREATE
      AN IMPRESSION OF UNFAIRNESS AND GAIN A SUBSTANTIVE
      ADVANTAGE. .................................................................................................1

      A.    DenTek's Attempts to Claim "Unfairness" In this Proceeding are Not Only
            Inappropriate, but Untrue. .....................................................................................3

      B.    DenTek's and Kaplan's Efforts Were Designed to Confuse the Standards of
            Review Applicable to the Defendants' Objections to the R&R. ............................4

II.   MAGISTRATE JUDGE SMITH PROPERLY RECOMMENDED THAT
      THIS COURT SHOULD REFUSE TO DISMISS MEDTECH'S TRADE
      SECRET CLAIMS. ..........................................................................................5

      A.    The Well-Established Standard of Review Does Not Require a Complainant to
            Plead With Specificity Every Trade Secret That Was Misappropriated by a
            Defendant. ..............................................................................................................6

      B.    Kaplan's and DenTek's Misguided Analysis Claiming a Heightened Pleading
            Standard, and Insufficient Allegations of Trade Secret Misappropriation, Has
            No Legal or Factual Support. .................................................................................9

            1.    DenTek and Kaplan continually misrepresent the well-pleaded
                  allegations of Medtech's SAC and the standards under which it must be
                  analyzed. ........................................................................................................9

            2.    Kaplan's attempts to distinguish the *Head Ski* case relied upon by
                  Magistrate Judge Smith are without merit. ................................................10

            3.    DenTek and Kaplan misconstrue the authority upon which they heavily
                  rely. ..............................................................................................................12

      C.    Defendants' Objections Should Be Ruled Insufficient and This Court Should
            Adopt the R&R. ....................................................................................................13

III.  DENTEK'S CONTINUED AND IMPROPER RELIANCE UPON
      EXTRINSIC EVIDENCE THAT WAS PROPERLY EXCLUDED FROM
      CONSIDERATION BY MAGISTRATE JUDGE SMITH. ......................................13

      A.    Background of the Motion to Strike, DenTek's Reliance on Extraneous
            Evidence, and the R&R's Exclusion of the Evidence............................................13

      B.    The R&R Should Not be Reconsidered as to the Exclusion of this Evidence.......14

Table of Contents
(continued)

Page

IV.    **MAGISTRATE JUDGE SMITH APPROPRIATELY RECOMMENDED THAT MEDTECH'S SAC STATES A LEGALLY SUFFICIENT CAUSE OF ACTION AGAINST KAPLAN FOR BREACH OF THE GENERAL RELEASE.**............................................................................................**16**

V.    **MEDTECH IS ENTITLED TO PURSUE DISCOVERY PRIOR TO IDENTIFYING THE PRECISE PARAMETERS OF THE TRADE SECRETS THAT THE DEFENDANTS MISAPPROPRIATED AND USED.**..........................**16**

    A.    DenTek's Moving Standard from "Universal Rule" to "General Rule" Demonstrates Its Failure to Show that the Ruling was "Clearly Erroneous or Contrary to the Law." ..........................................................................17

    B.    The Precedent Shows that the R&R's Recommendation on Identification of Trade Secrets is Not Clearly Erroneous or Contrary to the Law. ..........................18

VI.    **THIS COURT SHOULD ADOPT THE MAGISTRATE COURT'S R&R REGARDING THE ISSUES DISCUSSED IN THIS RESPONSE.**............................**19**

# TABLE OF AUTHORITIES

**Cases**

A.*O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 538-39 (6th Cir. 1934) ............................................................................................................ 11

*Allen v. WestPoint-Pepperell Inc.*, 945 F.2d 40, 44 (2d Cir. 1991) ............................. 15

*Bear Stearns Funding, Inc. v. Interface Grp.*, 361 F. Supp. 2d 283 (S.D.N.Y. 2005) ................. 8

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ...................................... 8

*Boyle v. Stephens Inc.*, 1997 WL 529006 (S.D.N.Y. 1997) ............................................. 8

*Eberhard Investment Associates, Inc. v. Santino*, No. 01 Civ.3840 LMM, 2003 WL 22126846 (S.D.N.Y. Sept. 12 2003) .......................................................................... 8

*Estee Lauder Co., Inc. v. Batra*, 430 F. Supp. 2d 158, 175 (S.D.N.Y. 2006) ................... 7

*Gaetano Associates LTD v. Artee Collections, Inc.*, 2006 WL 3026080 (S.D.N.Y. Oct. 25, 2006) .......................................................................................................... 6, 7

*Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) .................................................................................................................. 16

*Head Ski Co., Inc. v. Kam Ski Co., Inc.*, 158 F. Supp. 919 (D.C. Md. 1958) ............... 7, 10, 11, 12

*Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 672 (D. Mass. 1986) .................................................................................................................. 18

*Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ........ 15

*Omni Food Sales v. Boan*, 2007 WL 2435163 (S.D.N.Y. 2007) ...................................... 7

*Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814 (JBS), 2007 WL 1756027 (D.N.J. June 18, 2007) ............................................................................ 8

*SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. July 20, 2007) ............... 7, 13

*Sit-Up Ltd. V. IAC/InteractiveCorp.* No. 05 Civ. 9292 (DLC), 2008 WL 463884 (S.D.N.Y. Feb. 20, 2008) ............................................................................ 12, 13

*Struthers Sci. and Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 154 (D. Del. 1970) ............. 18

*Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ............................................. 15

<u>Table of Authorities</u>
(continued)

*Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974)...........................18

## Rules

Fed. R. Civ. P. 72(a) .........................................................................................................14, 17

Fed.R.Civ. P. 37 .......................................................................................................................5

Fed.R.Civ.P. 12(b)(6)....................................................................................................... passim

Fed.R.Civ.P. 26 ........................................................................................................................5

Fed.R.Civ.P. 26(c) ..................................................................................................................16

Fed.R.Civ.P. 37(a) ..................................................................................................................16

Fed.R.Civ.P. 72(a) ....................................................................................................................5

Fed.R.Civ.P. 8(a)(2) ..................................................................................................................8

## Regulations

28 U.S.C. § 636(b)(1)(A) ..............................................................................................5, 13, 15, 17

28 U.S.C. § 636(b)(1)(C) ...........................................................................................................5

Plaintiff Medtech Products Inc. ("Medtech") files this Response to Defendant Kelly Kaplan's ("Kaplan") Objections to Magistrate Judge Smith's Report and Recommendation dated June 2, 2008 ("R&R") (Docket No. 160) and DenTek Oral Care's ("DenTek") Objections to the R&R (Docket No. 158).[1]  Collectively, Kaplan, Duane, CDS and DenTek are referred to as the "Defendants" and the Objections in Docket Nos. 160, 158 and 157 at p. 8 are referred to as the "Defendants' Objections".

## I.    IN THEIR OBJECTIONS, DENTEK AND KAPLAN ATTEMPT TO REWRITE THE PROCEDURAL HISTORY OF THE CASE TO CREATE AN IMPRESSION OF UNFAIRNESS AND GAIN A SUBSTANTIVE ADVANTAGE.

The Defendants' Objections repeat arguments that Kaplan and DenTek made in their motions to dismiss and DenTek's Motion for Entry of a Protective Order.  Defendants have filed *over 150 pages of briefs* devoted to these same arguments.[2]  Medtech responded to these arguments,[3] and filed a Motion to Strike DenTek's motion because it improperly included evidence that could not be considered in deciding a motion to dismiss.  (Docket No. 116.)  After a careful and thorough consideration of the motion, Magistrate Judge Smith issued the following recommendations as to Kaplan and DenTek:

---

[1]    The R&R is found at Docket No. 155.  This Response also addresses the Objections of Defendants Ray Duane ("Duane") and C.D.S. Associates, Inc. ("CDS") (the "Duane Defendants") to the extent that the Duane Defendants "adopt[ed] and incorporat[ed] by reference the arguments contained in Dentek and Kaplan's respective objections to the R&R as to why this Court should not adopt [the R&R]," (Docket No. 157 at p. 8).

[2]    This includes *the Objections*, Docket Nos. 158 (DenTek's Objections (25 pages)) and 160 (Kaplan's Objections (20 pages)), *the original briefings of Kaplan and DenTek*, Docket Nos. 111 (DenTek's Memorandum of Law in Support of Motion to Dismiss and Motion for Entry of a Protective Order (38 pages)), 160-3 (Kaplan's Memorandum of Law in Support of Motion to Dismiss (27 pages)), (DenTek's Reply (18 pages)); and 160-4 (Kaplan's Reply Brief (21 pages)), and *the briefings of the Duane Defendants*, Docket Nos. 139 (Duane Defendants' Memorandum of Law in Support of Motion to Dismiss at pp. 7-9) and 148 (Reply at pp. 9-10).

[3]    A copy of Medtech's Response to the Defendants' Motions to Dismiss is attached hereto as **Exhibit 1**; Medtech's Response to DenTek's Motion for Entry of a Protective Order is attached as **Exhibit 2**.  Those pleadings are incorporated herein, as if fully set forth.

| | REPORT AND RECOMMENDATION ("R&R") (DOCKET NO. 155) | OBJECTION |
|---|---|---|
| 1 | "I agree with Medtech that the exhibits offered in support of DenTek's motion should not properly be considered on a motion to dismiss under Rule 12(b)(6) . . . [but] such drastic measures as those recommended by Medtech need not be taken.  I will simply exclude DenTek's improper exhibits for the purposes of this motion," R&R p. 7; | No Objections by any Party. |
| 2 | "I will not consider Kaplan's exhibits in determining her motion to dismiss under 12(b)(6)," *id.* p. 7; | By Kaplan, Docket No. 160 at pp. 8-10. |
| 3 | "that Defendants' motions to dismiss Medtech's trade secret misappropriation claims against them should be denied," *id.*, p. 13; | By Kaplan, Docket No. 160 at pp. 2-14; by DenTek, Docket No. 158 at pp. 1-18. |
| 4 | "that Medtech's claim against . . . Kaplan for breach of the PIIAs should be dismissed," *id.* p. 21; | By Medtech, Docket No. 159 at pp. 9-12. |
| 5 | "that the Amended Complaint sufficiently alleges that. . . [Kaplan]  disclosed trade secrets . . . [and] sufficiently alleges a breach under the breach of contract claims involving the confidentiality provisions . . . Kaplan's General Release[]," *id.* at p. 22; | By Kaplan, Docket No. 160 at pp. 14-15. |
| 6 | "that Plaintiff has not sufficiently alleged an agreement among the Defendants to engage in such tortious conduct survive Defendants' motion to dismiss the civil conspiracy claim," *id.* at p. 23; | By Medtech, Docket No. 159 at pp. 5-9. |
| 7 | "that DenTek's motion to dismiss Medtech's tortious interference with contractual relations claim against it should be granted," *id.* at p. 27; | By Medtech, Docket No. 159, at pp. 2-4 |
| 8 | "that Defendants' motion to dismiss the tortious interference with business relations claim should be granted," *id.* at p. 31; | No Objections by any Party. |
| 9 | that Medtech's claims for unfair competition and unjust enrichment against DenTek are sufficiently pleaded to survive DenTek's Motion to Dismiss, *id.* at p. 35; | No Objections by any Party. |
| 10 | "that there is no 'universal rule' that a plaintiff asserting a trade secret misappropriation claim must disclose the precise trade secrets it alleges were misappropriated before being allowed to proceed with the claim . . . [and] that Medtech should be allowed limited discovery on the trade secret claim prior to being required to identify the precise trade secrets it is alleging were misappropriated," *id.* at pp. 36. | By DenTek, Docket No. 158 at pp. 18-25; by Kaplan, Docket No. 160 at pp. 19-20. |

2

Kaplan's Objections raise issues regarding recommendations two (2), three (3), five (5) and ten (10), and DenTek's Objections dispute recommendations three (3) and ten (10).

### A.    DenTek's Attempts to Claim "Unfairness" In this Proceeding are Not Only Inappropriate, but Untrue.

In a tell-tale sign that its Objections lack merit, DenTek focuses much of its effort on mischaracterizing the procedural history of this case.    (Docket No. 158 at pp. 1-4, 6-8.)    As a result, DenTek fails to address meaningfully the substance of the only document relevant to a motion to dismiss—the Second Amended Complaint, Docket No. 66 ("SAC")—and focuses on insisting to the District Court that things are not going well.    DenTek's attempts are designed to create an impression that these proceedings have been unfair.[4]    In an effort to fashion this impression, DenTek takes comments by Magistrate Judge Smith out of context.[5]

---

[4]    This is not the first time that DenTek has submitted something to the District Court intended to convey its "unfairness" impression.  On January 22, 2008 DenTek, without any explanation, copied the District Court on one discovery filing out of many that had been filed by the parties with Magistrate Judge Smith.  (*See* 1/22/2008 Ltr. from Cheng to Smith, copying Judge Karas.)  In that letter, DenTek made a similar implication about the conduct of the proceedings.  At the February 14, 2008 hearing, counsel for Medtech noted this fact and sought Magistrate Judge Smith's guidance on what should be copied to the District Court.  (2/14/2008 at pp. 19-20, **Exhibit 3** hereto.)

[5]    For instance, DenTek makes much of the comments made by Magistrate Judge Smith at the October 30, 2007 and December 21, 2007 hearings. (*see* Docket No. 158 at pp. 3-4, 6-7.)  In describing these comments, DenTek says "it was entirely clear – through December 21, 2007 – that Medtech had not yet set out in any pleading or statement to the Court that it 'possessed a trade secret . . . .'" and that "[r]eticent to dismiss Medtech's claim at the pleading stage, Judge Smith found colorable allegations of trade secrets where she previously could not".  (*Id.*)  These comments by Magistrate Judge Smith, however, were made in reference to the Preliminary Injunction Motion that Medtech had filed on October 19, 2007, and proceedings in connection with that motion.  (*See* Docket Nos. 73 & 74).  Magistrate Judge Smith has been completely consistent on this point.  (*See* R&R at p. 37 (holding that a more particular list would be necessary "in order to defend against Medtech's preliminary injunction motion and for both sides to prepare for the evidentiary hearing to be held in conjunction with the motion").)  The level of specificity that is required to proceed with a preliminary injunction motion is an entirely separate question from the level of specificity for a complaint.  Magistrate Judge Smith made these comments before considering any detailed argument on these issues, and in the context of deciding to hold the Motion for Preliminary Injunction in abeyance.  The Magistrate Judge's decision was also made after DenTek and Kaplan insisted that their forthcoming motions would show that no cognizable trade secret claim existed.  Obviously, after considering for six months the voluminous pleadings and argument, Magistrate Judge Smith's reasoned determination in the R&R of the claims should control over off-handed statements made in a different procedural context, for a different motion, and under a different standard.

3

Medtech's claims have evolved because the extent of DenTek's misconduct came to light after the initial complaint was filed. In April 2007, Medtech's claims at the beginning of the lawsuit started focused on the intellectual property that had been misappropriated by DenTek because that was all Medtech could discover. However, in June 2007, through limited discovery from third parties, Medtech learned that DenTek had brought the infringing dental protector to market with two former high-level employees of Dental Concepts LLC, the company that Medtech had purchased for a price of around $31 million.[6]  (*See, e.g.,* SAC ¶¶ 27-46, 65-71.) When it filed this lawsuit, Medtech had no way of knowing the full scope and extent of DenTek's, Duane's and Kaplan's hidden misconduct. The scope of the claims is driven by the breadth of the Defendants' misconduct.

**B.      DenTek's and Kaplan's Efforts Were Designed to Confuse the Standards of Review Applicable to the Defendants' Objections to the R&R.**

DenTek's procedural posturing is also designed to gain a substantive advantage by confusing the standards applicable to the various holdings of the R&R. In proceedings before the Magistrate Judge, DenTek filed as one submission its motion which was styled:

> DenTek's Motion for (A) Partial Dismissal of the Second Amended Complaint and (B) Entry of a Protective Order and Order Compelling Disclosure of Alleged Trade Secrets.

(Docket Nos. 109 and 111.)   DenTek's Motion to Dismiss (Part A) is a ***dispositive motion***, brought pursuant to FED. R. CIV. P. 12(b)(6); the Motion for Protective Order (Part B) is a ***non-dispositive discovery motion***, brought pursuant to FED. R. CIV. P. 26(c) and 37(a). (Docket No. 109.) Similarly, the Motion to Strike filed by Medtech is a non-dispositive motion, alleging that

---

[6]      Although not relevant to this motion, this procedural background has been outlined by Medtech in several submissions. *See, e.g.,* Docket No. 42 (setting forth the procedural posture and discovering Mr. Duane's association with DenTek in June 2007; SAC at ¶¶ 125 ("DenTek and Duane intentionally kept their association and development of the dental protector a secret from the trade generally, and from Medtech specifically."); Medtech's Response to the Defendants' Motions to Dismiss, **Exhibit 1**, at pp. 2-4; Docket No. 74 at pp. 1-19.

filings made in connection with its motion to dismiss inserted improper "evidence" into the record. (Docket Nos. 116 and 117.)

In the Objections, Kaplan and DenTek attempt to obscure the standards of review and have its motion for protective order, a discovery motion, reviewed under the *de novo* standard of review applicable to a dispositive motion. (*See* Docket Nos. 160 at p. 2 (citing *de novo* standard only); 158 at p. 5 (same).) This ignores the clear language of 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a), which require that the R&R recommendations on the motion to strike (points one (1) and two (2) above) and the motion for a protective order (point ten (10) above) be reviewed under a "***clearly erroneous or is contrary to the law***" standard. Moreover, DenTek ignores Magistrate Judge Smith's holding by referencing in its argument the improperly submitted documents, which the Magistrate Judge excluded. (Docket No. 158 at pp. 11-15 (making numerous references to the Cheng Declaration).) Thus, the argument below will first clarify the standard of review applicable to each of the motions.

## II.     MAGISTRATE JUDGE SMITH PROPERLY RECOMMENDED THAT THIS COURT SHOULD REFUSE TO DISMISS MEDTECH'S TRADE SECRET CLAIMS.

Medtech agrees with Defendants that the R&R's proposal that the trade secret claims not be dismissed is subject to the *de novo* standard of review set forth in 28 U.S.C. § 636(b)(1)(C). However, Medtech strongly disagrees with Defendants' misapplication of the permissive pleading standard under Rule 12(b)(6). The Defendants improperly insist on a heightened pleading standard that would require Medtech to particularly identify in its complaint every specific trade secrets at issue in this case. This alleged "standard" has no support in the law.

DenTek's "particularity" contention was the primary argument advanced, both in its motion to dismiss argument under Rule 12(b)(6) and its Motion for a Protective Order under Rules 26 and 37. (*Compare* Docket No. 158 at p. 9 ("[T]he specific 'combination of

characteristics or components' which Medtech claims to be a trade secret allegedly used by DenTek is ***not actually identified*** within the SAC." (emphasis added)), *with* p. 25 ("[T]he general rule is to require the plaintiff to ***identify its trade secrets with particularity*** before permitting a trade secret misappropriation claim to proceed." (emphasis added)).)  Kaplan's and DenTek's "belts and suspenders" approach insists that Medtech must tell the Court, with precision, every single thing that DenTek stole and used before Medtech is allowed any discovery at all.  As Magistrate Judge Smith found, this argument is counterintuitive and finds no support under the *Federal Rules of Civil Procedure* or the applicable case law.

The remainder of Defendants' Objections repeats the same flawed arguments that were briefed extensively in their submissions in support of the Motions to Dismiss, and were carefully considered by Magistrate Judge Smith in her R&R.  Defendants' arguments improperly weigh their version of the evidence, rather than reading the SAC in the light most favorable to Medtech, as the non-moving party.

> **A.    The Well-Established Standard of Review Does Not Require a Complainant to Plead With Specificity Every Trade Secret That Was Misappropriated by a Defendant.**

Defendants cannot avoid the well-established principle in the 2nd Circuit and the State of New York that a complaint alleging trade secret misappropriation is not required ***to specify the trade secrets at issue***.  There is no rule under New York law that trade secrets be specifically identified in a complaint in order for those claims to survive a motion to dismiss.  *Gaetano Associates LTD v. Artee Collections, Inc.*, 2006 WL 3026080, *1 (S.D.N.Y. Oct. 25, 2006).  In *Gaetano*, this Court rejected arguments similar to those made by Defendants here, stating:

> Plaintiff contends that the claim is defective because defendants have not explained "how the list of names or quantities of fabric sold constitutes a trade secret, what steps defendants took to preserve the secrecy of the information or how plaintiffs improperly obtained the alleged trade secret."  **Under the notice pleading standard, however, defendants are not required to do so.**  The

proposed answer and counterclaims describe the trade secrets at issue, the time period during which they were obtained, and the general method (conspiracy with a former [defendant's] employee) by which [the plaintiff] allegedly acquired them.

*Id.* at *2 (emphasis added); *see also SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 586 (E.D.N.Y. July 20, 2007) (refusing to require a plaintiff to identify trade secrets in its complaint: "**Naturally, [the plaintiff] has no obligation to reveal those [trade] secrets in the Complaint simply to prove that they exist.**") (emphasis added); *Omni Food Sales v. Boan*, 2007 WL 2435163 (S.D.N.Y. 2007) (rejecting argument that plaintiff's claim that "papers" were taken from it must fail because "papers" cannot constitute a trade secret: "Defendants are splitting hairs.  **The level of specificity sought by Defendants is not required at this stage.**") (emphasis added).   It was on the basis of this authority that Magistrate Judge Smith made her recommendation that Medtech's claim for trade secret misappropriation survive the Defendants' Motions to Dismiss.  (R&R, pp. 8-13.)

Moreover, Medtech identified several categories of trade secret information in its SAC.  (R&R, p. 9-10.)   Courts have repeatedly found that such descriptions have constituted protectable trade secret information.  Under New York law, trade secrets have been broadly defined as "any formula, pattern, device or **compilation of information** which is used in one's business, and **which gives [the owner] the opportunity to obtain an advantage over competitors who do not know or use it**." *Estee Lauder Co., Inc. v. Batra*, 430 F. Supp. 2d 158, 175 (S.D.N.Y. 2006) (emphasis added); *see also Head Ski Co., Inc. v. Kam Ski Co., Inc.*, 158 F. Supp. 919 (D.C. Md. 1958) ("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret.").

In any event, whether the trade secret allegations of a complaint are sufficient to defeat a motion to dismiss is generally a question of fact.  *See, e.g.*, *Eberhard Investment Associates, Inc.*

*v. Santino*, No. 01 Civ.3840 LMM, 2003 WL 22126846, *4 (S.D.N.Y. Sept. 12 2003) ("Whether Mr. Santino's 'trade secret,' i.e., principally the source code for the Portfolio Management System, is not a trade secret because of publication is a factual issue not resolvable on a Fed.R.Civ.P. 12(b)(6) motion."); *see also Oswell v. Morgan Stanley Dean Witter & Co., Inc.*, No. 06-5814 (JBS), 2007 WL 1756027, *7, n.6 (D.N.J. June 18, 2007) (denying motion to dismiss because "[a]t the summary judgment phase, [the defendant] will have the opportunity to argue that no genuine issue of material fact exists regarding whether the information was publicly known or readily available and therefore not protectible as a trade secret.").[7] Given this precedent and the liberal standard of notice pleading set forth in Fed.R.Civ.P. 8(a)(2), Magistrate Judge Smith was correct in determining that Medtech's claim for trade secret misappropriation should not be dismissed. Fed. R. Civ. P. 8(a)(2) (requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.") (*int. cit. omit.*).

---

[7]     Kaplan's arguments that this Court should determine whether Medtech's trade secret information was kept secret is not supported by the authority she cites. In her Objections, Kaplan cites *Bear Stearns Funding, Inc. v. Interface Grp.*, 361 F. Supp. 2d 283 (S.D.N.Y. 2005) and *Boyle v. Stephens Inc.*, 1997 WL 529006 (S.D.N.Y. 1997) – both of which involved undisputed facts regarding the plaintiffs' decision to publicly disclose the only information claimed to constitute a trade secret. *Bear Stearns Funding, Inc.*, 361 F. Supp. 2d at 305 (noting that "the determination of whether a trade secret exists is often a question of fact" but dismissing trade secret misappropriation claim where claimant permitted opposing party to freely disseminate alleged trade secret information); *Boyle*, 1997 WL 529006, *5 ("having distributed an in-depth description of the [trade secret] concept throughout the United States, plaintiff can hardly argue that it has been kept 'secret'."). As opposed to the two cases cited by Kaplan, the issue of secrecy regarding the compilation of information that constitutes a trade secret in this case does not involve undisputed facts and is not properly disposed of on a motion to dismiss.

**B.    Kaplan's and DenTek's Misguided Analysis Claiming a Heightened Pleading Standard, and Insufficient Allegations of Trade Secret Misappropriation, Has No Legal or Factual Support.**

In their Objections, the Defendants have characterized the arguments that they made in their motions to dismiss as irrefutable or not considered.  For instance, after many out-of-context quotations from Magistrate Judge Smith, DenTek argues that the Court was "[r]eticent to dismiss Medtech's claim at the pleading stage" and "found colorable allegations of trade secrets where she previously could not."[8]  (Docket No. 158 at p. 7.)   Kaplan claims that Magistrate Judge Smith "categorically ignores Kaplan's analysis . . . ."  (Docket No. 160 at p. 6.)  In light of the 39-page R&R, neither of these statements is supportable; Magistrate Judge Smith fully considered these arguments, and found them deficient.  In fact, the findings of Magistrate Judge Smith were supported and Kaplan and DenTek have simply [1] *misrepresented* what the SAC actually pleads and the legal standard under which must be analyzed; [2] *inadequately distinguished* the clear authority that holds compilations of information can be taken in the aggregate to constitute a trade secret; and [3] *misconstrued* the holdings of the authority that they cite.

**1.    DenTek and Kaplan continually misrepresent the well-pleaded allegations of Medtech's SAC and the standards under which it must be analyzed.**

Medtech pleaded that Mr. Duane and Ms. Kaplan, as high-level employees of the predecessor company, had "substantial access to confidential and proprietary information regarding the NIGHTGUARD™ dental protector device."  (SAC ¶ 40.)  In both its Response to the Motions to Dismiss, as well as its February 8, 2008 letter to Magistrate Judge Smith, Medtech submitted a list of "illustrative" types of information that would be at issue in this case.

---

[8]        *See, supra,* note 4.

(**Exhibit 1** at pp. 10-20; Docket No. 158-6 at p. 5.)  The Defendants continually ignore what the SAC actually says, and how Medtech itself characterizes its claims, in favor of repeating their inaccurate "categories of purported trade secret information" and attacking individual pieces of information.  (Docket No. 158 at pp. 8, 10-17; Docket No. 160 at pp. 5-10.)  Those evidentiary arguments are not proper in this context, and are discussed at length in Medtech's Response to Defendants' Motion to Dismiss.  (**Exhibit 1** at pp. 10-22.)  In the interests of brevity, those arguments will not be restated here.  After this many months of motion practice, DenTek's and Kaplan's analyses simply misrepresent what the SAC actually says and ignore what Medtech has pleaded.

Similarly, DenTek and Kaplan simply have no answer to the clear line of authority that holds a complaint alleging trade secret misappropriation does not need to specify the trade secrets at issue.  (*See* Section II.A.)  As Medtech pointed out in its Response to the Defendants' Motions to Dismiss (**Exhibit 1**, pp. 7-10), no case cited by either Kaplan or DenTek in their moving papers supporting their Motions to Dismiss stood for the proposition that a dismissal of a trade secret complaint can be based upon a lack of specificity in the complaint.  Rather, each of the cases cited by the Defendants merely noted that trade secrets must be specifically alleged during discovery or for the purposes of motions for summary judgment or preliminary injunction.

> ## 2.    Kaplan's attempts to distinguish the *Head Ski* case relied upon by Magistrate Judge Smith are without merit.

The R&R discusses and relies in part on *Head Ski Co., Inc. v. Kam Ski Co., Inc.*, 158 F. Supp. 919 (D.C. Md. 1958), which deals with a trade secret misappropriation claim very similar to the one made by Medtech and states:

> Defendants contend that plaintiff's processes, methods and materials cannot be trade secrets, since they are known to and used by aircraft mechanics and

engineers. This overlooks the fact that a knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret. So may a knowledge of the best combination of processes, methods, tools and materials. "The mere fact that the means by which a discovery is made are obvious, that experimentation which leads from known factors to an ascertainable but presently unknown result may be simple, we think cannot destroy the value of the discovery to one who makes it, or advantage the competitor who by unfair means, or as the beneficiary of a broken faith, obtains the desired knowledge without himself paying the price in labor, money, or machines expended by the discoverer."

*Id.* at 923 (*quoting* A.*O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 538-39 (6th Cir. 1934)).

Kaplan's attempts to distinguish *Head Ski* are not persuasive. Kaplan states that "the *Head Ski* opinion specifically states that other manufacturers in the United States and Europe had tried to compete with the plaintiff's product but had failed 'despite their knowledge and experience.'" (Kaplan's Objections, p. 8) (*quoting Head Ski*, 158 F. Supp. at 923.) It is from this single line in the opinion that Kaplan apparently urges this Court to find that Medtech was somehow required to allege that DenTek could not have brought its product to the market without the benefit of Medtech's stolen trade secrets – and that Medtech's claim that "disclosure of its so-called trade secrets assisted DenTek in bringing its product to the market faster" is insufficient. (Kaplan's Objections, p. 8.) Such a position would permit trade secrets to be misappropriated without recourse as long as the offending party establishes that it *could have* reached the same result on its own, albeit not as quickly or effectively.

To see the obvious flaw in Kaplan's irrelevant "distinguishing" point, one need look no further than the sentence immediately following the one quoted by Kaplan, which states "Defendants were able to [compete with the plaintiff's product] ***immediately***, because of the knowledge they had gained during their employment at plaintiff's plant." *Head Ski*, 158 F.

Supp. at 923-24 (emphasis added).  This is exactly what Medtech has alleged in this case, where it alleged that:

> In contrast to the years of hard work and advertising expenses expended by Medtech, DenTek was able to quickly bring a dental protector to market, and capture a large percentage of the market share in  mere matter of months by using Medtech's confidential and proprietary information . . . .

(*see, e.g.,* SAC ¶¶ 110; *see also* ¶¶108-109, 123, 129 ("All evaluation and vetting processes were truncated based on Duane and Kaplan's inside information . . . ."), 156-162, 163 ("To Medtech's disadvantage, DenTek, Duane and Kaplan used Medtech's confidential and proprietary [information] to virtually eliminate DenTek's development process and competitive entry into the dental protector market."), 182.).  In short, *Head Ski* was properly relied upon by Magistrate Judge Smith in refusing to recommend that Medtech's trade secret misappropriation claim be dismissed.

### 3.     DenTek and Kaplan misconstrue the authority upon which they heavily rely.

DenTek and Kaplan rely on *Sit-Up Ltd. V. IAC/InteractiveCorp.* No. 05 Civ. 9292 (DLC), 2008 WL 463884, *10 (S.D.N.Y. Feb. 20, 2008), a case decided under a different standard in a different factual and procedural posture.  DenTek cites *Sit-Up* for the proposition that "New York and Second Circuit law establish that compilation trade secrets are protectable but . . . the law requires the trade secret claimant to describe the secret with sufficient specificity that its protectability can be assessed and to show that its compilation is unique."  (Docket No. 158 pp. 8-9.)  Kaplan cites *Sit-Up*, claiming that "Plaintiff would still have had to sufficiently specify the underlying information to demonstrate that it can be cumulated to form a unique combination that is worthy of trade secret protection."  (Docket No. 160 at p. 7.)  DenTek's and Kaplan's citation to *Sit-Up* does not take into account the procedural posture of that case.  *Sit-Up* involved **a motion for summary judgment**, which was ruled upon "**[f]ollowing massive**

12

*document discovery*." *Id.* at *5 (emphasis added). Obviously, the level of specificity required from a plaintiff after months of discovery is far different than what is required of a plaintiff who drafts a complaint alleging trade secret misappropriation with the benefit of little or no discovery. *See, e.g., SD Protection, Inc.*, 498 F. Supp. 2d at 586.

> C. **Defendants' Objections Should Be Ruled Insufficient and This Court Should Adopt the R&R.**

For the reasons set forth in this brief and in Medtech's Response to the Motions to Dismiss, incorporated herein, Defendants' Objections are insufficient. Medtech submits that this Court should adopt the R&R's recommendation "that Defendants' motions to dismiss Medtech's trade secret misappropriation claims against them should be denied." (R&R at p. 13.)

**III.    DENTEK'S CONTINUED AND IMPROPER RELIANCE UPON EXTRINSIC EVIDENCE THAT WAS PROPERLY EXCLUDED FROM CONSIDERATION BY MAGISTRATE JUDGE SMITH.**

In addition to its many other procedural and substantive mistakes, DenTek improperly relies on material outside the SAC to argue the merits of the trade secret claims. And, DenTek does so without objecting to Magistrate Judge Smith's ruling excluding this evidence that is outside the SAC. Since this is a non-dispositive order, the District Court should only reconsider the Magistrate Judge's R&R if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). Since it is neither—and DenTek has not provided any authority to suggest, let alone show, otherwise—the District Court should not reconsider the matter.

> A. **Background of the Motion to Strike, DenTek's Reliance on Extraneous Evidence, and the R&R's Exclusion of the Evidence.**

In support of its Motion to Dismiss, DenTek submitted numerous extrinsic documents for the Court's consideration, including the Declaration of Brad Conley, portions of a deposition of Ray Duane and Noshir Mehta, and printouts from several Internet websites. (Docket No. 113; R&R at pp. 6-7.) DenTek used these documents in its motion to dismiss, many of which were

attached to the Declaration of Theodore K. Cheng, and references them in its Objections to argue certain evidentiary points.  (*See, e.g.,* Docket Nos. 111 at pp. 9-17; 158 at pp. 11-15.)  Similarly, Kaplan submitted evidence outside the Complaint, which was attached the to the Declaration of John Paul Fulco.  (*See* Docket No. 107.)

Medtech filed a Motion to Strike DenTek's Motion to Dismiss because of DenTek's improper reliance on this extrinsic material.[9]  (Doc. No. 155.)  Although Magistrate Judge Smith declined to strike DenTek's Motion to Dismiss, the R&R makes the following statements regarding these improper exhibits: "I agree with Medtech that the exhibits offered in support of DenTek's motion ***should not properly be considered*** on a motion to dismiss under Rule 12(b)(6) . . . ***I will simply exclude*** DenTek's improper exhibits for the purposes of this motion."  (R&R at p. 7 (emphasis added).)  DenTek did not appeal this determination.  Since DenTek failed to object to that ruling, DenTek is barred from now contesting that portion of the Magistrate Judge's R&R.  Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to.").

### B.    The R&R Should Not Be Reconsidered as to the Exclusion of this Evidence.

DenTek's submission of these documents, and reliance on them, was improper under the *Federal Rules of Civil Procedure*, which clearly restrict documents that may be considered on a motion to dismiss to facts 1) stated on the face of the complaint, 2) in documents appended to the complaint, 3) in documents incorporated in the complaint by reference, and 4) to matters of which judicial notice can be taken.[10]  *Allen v. WestPoint-Pepperell Inc.*, 945 F.2d 40, 44 (2d Cir.

---

[9]    Medtech's Memorandum in Support of its Motion to Strike is Docket No. 117, and its Reply Memorandum is Docket No. 126.  These are attached as **Exhibit 4** and **Exhibit 5**, respectfully, and are incorporated as if fully set forth herein.

[10]    The comments by counsel for Medtech at the February 14, 2008 hearing are merely a reference to the standard under which a Rule 12(b)(6) motion is decided.  (*See* Docket No. 158 at pp. 7 (quoting only part of the comments of Medtech's counsel) and Docket No. 158-7 (stating that Medtech did not need discovery "to plead the

1991). DenTek failed to object to this ruling, yet it references the same improper documents in its Objections. (DenTek's Objections, pp. 11-15.) Just as in its Motion to Dismiss, DenTek fails to provide any rationale justifying why its extrinsic evidence can be considered in the context of a motion to dismiss.

Numerous courts have specifically addressed the same types of documents submitted by DenTek and have expressly ruled that such documents cannot be considered on a motion to dismiss. For example, DenTek relies on numerous websites, such as, among others, the websites for Hogan & Hartson, Item New Product Development, AGI/Klearfold, and Stelray Plastic Products, Inc. (DenTek's Objections, pp. 11-15.) Medtech pointed out in its Motion to Strike that courts have refused to consider this type of documents in a motion to dismiss. (**<u>Exs. 4 & 5</u>**.) *See, e.g.*, *Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001) ("pages from a website are not public records for the purposes of Rule 12(b)(6)."); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("private corporate websites, particularly when describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' . . . that our judicial role contemplates.").

Moreover, Magistrate Judge Smith stated that she "w[ould] not consider . . . Kaplan's exhibits in determining her motion to dismiss under 12(b)(6)." (R&R p. 7.) Kaplan did object to this holding, but that objection is subject to the "clearly erroneous or contrary to law" standard. 28 U.S.C. § 636(b)(1)(A); (Docket No. 158 at pp. 8-10.) However, Magistrate Judge Smith's decision to exclude Kaplan's exhibits was correct, as judicial notice of documents in the context of a motion to dismiss can only be taken "to establish the existence of the [record], not for the

---

trade secrets that we think are involved").) All that counsel stated was that any limited discovery, which the Magistrate Judge had suggested proceed, could not be used in determining the motions to dismiss because that discovery would be outside the four corners of Medtech's SAC. (*See* Docket No. 117 at p. 2 (stating the standard of what a Court can review in the context of a Motion to Dismiss).)

truth of the facts asserted in [it]." *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Therefore, as Kaplan has not demonstrated that Magistrate Judge Smith's exclusion of the documents which Kaplan submitted was clearly erroneous, the District Court should not reconsider that portion of the R&R.

### IV. MAGISTRATE JUDGE SMITH APPROPRIATELY RECOMMENDED THAT MEDTECH'S SAC STATES A LEGALLY SUFFICIENT CAUSE OF ACTION AGAINST KAPLAN FOR BREACH OF THE GENERAL RELEASE.

Kaplan's discussion of Magistrate Judge Smith's recommendation that Medtech states a legally sufficient cause of action for breach of the General Release is nothing more than a restatement of arguments made by Kaplan earlier in her Objections or in her Motion to Dismiss. Accordingly, Medtech incorporates herein the arguments made in Section II of this Brief as well as the arguments made in its Response to DenTek's and Kaplan's Motions to Dismiss. (Exhibit 1 at pp. 22-25.)

### V. MEDTECH IS ENTITLED TO PURSUE DISCOVERY PRIOR TO IDENTIFYING THE PRECISE PARAMETERS OF THE TRADE SECRETS THAT THE DEFENDANTS MISAPPROPRIATED AND USED.

Both Kaplan and DenTek object to any discovery from them on Medtech's trade secrets claims without Medtech identifying with particularity the trade secrets DenTek stole and used. This arises out of the last section of the R&R, where Magistrate Judge Smith found that "Medtech should be allowed limited discovery on the trade secret claim prior to being required to identify the precise trade secrets it is alleging were misappropriated." (R&R, p. 37.) This objection dovetails from DenTek's specificity argument under FED.R.CIV.P. 12(b)(6), and is equally flawed.

As set forth above, the Motion for a Protective Order, while combined in the same pleading by DenTek as the motion to dismiss, asked that "a protective order [be] entered pursuant to Fed. R. Civ. P. 26(c), and [an] order, under FED. R. CIV. P. 37(a), compelling plaintiff

Medtech Products Inc. to provide more specific disclosures with respect to its alleged trade secrets that are at issue in this case." (Docket No. 109 at pp. 1-2.) This was not a request that was "dispositive of a party's claim or defense," but, rather, was a routine discovery matter referred to the Magistrate Judge. As such, both Defendants simply misstate the law by implying a *de novo* standard of review applies. Instead, this Court should only "modify or set aside any part of the order that is clearly erroneous or contrary to law." FED.R.CIV.P. 72(a); 28 U.S.C. § 636(b)(1)(A).

A.    **DenTek's Moving Standard from "Universal Rule" to "General Rule" Demonstrates Its Failure to Show that the Ruling was "Clearly Erroneous or Contrary to the Law."**

Defendants object to this recommendation but provide no arguments not already made to Magistrate Judge Smith. They simply fail to show that this holding is clearly erroneous or contrary to the law. In its moving papers, DenTek stridently argued that there is a "***universal rule***" requiring disclosure of trade secrets alleged to have been misappropriated prior to permitting a plaintiff to proceed with discovery. (Docket No. 111 pp. 29 ("Courts Uniformly Require") and 30 ("universal rule").) In its response to DenTek's Motion for Protective Order, Medtech demonstrated that no such "universal rule" existed, and argued that this motion was not timely as no discovery had been issued in the case. (*See generally* **Exhibit 2**.)

Magistrate Judge Smith found that "there is no 'universal rule' that a plaintiff asserting a trade secret misappropriation claim must disclose the precise trade secrets it alleges were misappropriated before being allowed to proceed with the claim." (R&R at p. 36.) DenTek has apparently reconsidered its "uniform rule" stance, now arguing only that "***the general rule*** is to require the plaintiff to identify its trade secrets with particularity . . . ." (Document No. 158 at p. 19 (emphasis added); Docket No. 158 at pp. 19-20; *see also* Docket No. 160 at pp. 15-16.) Even if DenTek were correct, and there is a ***general rule*** requiring complete identification of trade

17

secrets prior to proceeding with a case, it cannot possibly be argued that Magistrate Judge Smith's decision not to follow a general rule is ***clearly erroneous***.  And, DenTek makes no pretenses of actually reaching such a high bar.

**B.     The Precedent Shows that the R&R's Recommendation on Identification of Trade Secrets is Not Clearly Erroneous or Contrary to the Law.**

There is considerable precedent to support Magistrate Judge Smith's ruling on this issue. *See, e.g., Xerox Corp. v. Int'l Bus. Machs. Corp.*, 64 F.R.D. 367, 371 (S.D.N.Y. 1974) (mandating specification of trade secrets only after "nearly a year of pre-trial discovery"); *Struthers Sci. and Int'l Corp. v. Gen. Foods Corp.*, 51 F.R.D. 149, 154 (D. Del. 1970) (requiring specification of trade secrets only after "extensive discovery" had been conducted).  Indeed, courts are afforded great latitude in deciding how and when a plaintiff should be required to identify the entirety of its trade secrets alleged to have been misappropriated.  *See, e.g., Microwave Research Corp. v. Sanders Assocs., Inc.*, 110 F.R.D. 669, 672 (D. Mass. 1986) (discussing courts that have delayed identification of trade secrets until trial or until substantial discovery had occurred).  A more detailed discussion of these and other cases supporting the recommendation of Magistrate Judge Smith is found in Medtech's Response to DenTek's Motion for Entry of a Protective Order and Order Compelling Disclosure of Alleged Trade Secrets (**Exhibit 2**).

Moreover, while DenTek and Kaplan go on for pages trying to show that the procedural history of this case is somehow relevant to the disposition of their Objections, one thing is abundantly clear: ***no trade secret discovery whatsoever has been provided by either DenTek or Kaplan.***  Given this precedent, the substantial latitude courts have in this area, and the lack of any discovery from DenTek or Kaplan on these issues, Medtech submits that Magistrate Judge

Smith's recommendation to permit Medtech to conduct limited discovery prior to revealing its trade secrets should not be reconsidered as contrary to law or clearly erroneous.

## VI.    THIS COURT SHOULD ADOPT THE MAGISTRATE COURT'S R&R REGARDING THE ISSUES DISCUSSED IN THIS RESPONSE.

For the reasons discussed above, this Court should adopt Magistrate Judge Smith's Report and Recommendation regarding the legal sufficiency of Medtech's claims for misappropriation of trade secrets, breach of contract against Kaplan, and the determination that Medtech is entitled to conduct limited discovery prior to fully disclosing the trade secrets that were misappropriated by the Defendants.  Further, this Court should refuse to consider the improper exhibits referenced by DenTek in both its Motion to Dismiss and its Objections.

Dated:   July 7, 2008
        New York, New York

ALSTON & BIRD LLP


By:   s/ Karl Geercken
Karl Geercken (KG 5897)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com

Todd R. David, GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com

Thomas O. Helton, TN BPR No. 01929
Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
   CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
thelton@bakerdonelson.com
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.