```
        82emedtctp
1       UNITED STATES DISTRICT COURT
1       SOUTHERN DISTRICT OF NEW YORK
2       ------------------------------------x
   2    MEDTECH PRODUCTS, INC.,
3
        3            Plaintiff,
4
        4      v.                    07 Civ. 3302(KMK)(LMS)
5
        5
6       RANIR, LLC and CVS PHARMACY, INC.,
        6
7                    Defendants.
        7    ------------------------------------x
8       MEDTECH PRODUCTS, INC.,
        8            Plaintiff,
9                    v.
10      DENTEK ORAL CARE, INC.,
11                   Defendant.
        11   ------------------------------------x
12      MEDTECH PRODUCTS, INC.,
        12           Plaintiff,
13                   v.
14      POWER PRODUCTS, INC., d/b/a SPLINTEK,
        15           Defendant.
        15   ------------------------------------x
16
17
18                                    United States Courthouse
        18                            White Plains, N.Y.
19                                    February 14, 2008
        19
20
21
22      Before:
        22           THE HONORABLE LISA MARGARET SMITH,
23
        23                            Magistrate Judge
24
25      *Proceedings recorded via electronic recording device.
```

                                                                1

```
        82emedtctp
1                     APPEARANCES
1
2
   2    ALSTON & BIRD, LLP
3            Attorneys for Medtech Products, Inc.
   3    KARL GEERCKEN
4
5
   5    BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
6            Attorneys for Medtech Products, Inc.
   6    CLINTON P. SANKO
7       THOMAS O. HELTON
8
9       PROSKAUER ROSE
   9         Attorneys for DenTek Oral Care, Inc.
10      THEODORE KEVIN CHENG
  10    ALAN FEDERBUSH
11
12
  12    GREENBERG & FREEMAN
13           Attorneys for Defendants CVS Pharmacy, Inc./Raymond Duane
  13    MICHAEL FREEMAN
14
15
16
17
18
19
20
21
22
23
24
25
```

                                                                2

```
1          THE DEPUTY CLERK:  Your Honor, this is in the matter
2     of MedTech v. Ranir, et al.  Messrs. Sanko, Helton, Geercken
3     for the plaintiff; Messers. Federbush, Cheng and Freeman for
4     the defense.
5          THE COURT:  We've received a call from Mr. Fulco's
6     office that he's going to be delayed by at least another 25
7     minutes, and, particularly with the number of folks that are
8     already here, I'm not inclined to delay.
9          I would ask if somebody on the defense side would
10    agree to communicate with him to tell him what has occurred.
11         MR. CHENG:  We will do that, your Honor.
12         THE COURT:  Thank you, Mr. Cheng.
13         All right.  I have received from Medtech's counsel a
14    communication dated January 4th; from the other counsel for
15    Medtech, a communication -- I think it's the other counsel --
16    dated January 17th; from counsel for DenTek a communication
17    dated January 22nd; from counsel for Kelly Kaplan, another
18    communication dated January 22nd; from counsel for Raymond
19    Duane and CVS Associates, a communication dated January 29th;
20    from counsel for DenTek, a communication dated February 2nd;
21    from counsel for plaintiff, a communication dated February 8th;
22    and, by fax, a communication from DenTek dated February 12th.
23         I hesitate to say this, but is there anything that
24    I've missed in those submissions?  Anything that anybody's
25    aware of that I haven't gotten?
```

                                                                3

```
1          UNIDENTIFIED SPEAKER:  I don't think so, your Honor.
2          UNIDENTIFIED SPEAKER:  Nothing, your Honor.
3          UNIDENTIFIED SPEAKER:  No, your Honor.
4          THE COURT:  I reviewed these as they came in, and I
5     reviewed them again today.
6          I think I want to turn first to Mr. Freeman.
7          With regard to your clients, I know that you are
8     belatedly in the case, and I hope you're no longer playing
9     catch-up and that you've mostly caught up.  Is it your wish to
10    submit a motion on your clients' behalf similar to what's
11    already been submitted?
12         MR. FREEMAN:  Yes, your Honor, I would like to do
13    that.  And I am in the process of preparing it right now.  And
14    I believe that it will be incorporated by reference in any
15    arguments by the defendants so as to limit the burden on the
16    Court.  And I would ask that I be given 'till the end of the
17    month, the 29th, if that's acceptable, to submit my papers.
18         THE COURT:  All right.  All right.  So that's February
19    29th, Leap Year day.  You don't get any anniversaries of that
20    for another four years, in case it's a day you want to
21    remember, going forward.  To file your motion.  And I'm going
22    to deal with the question of the response shortly.
23         All right.  I'm faced with significant and disparate
24    submissions, and, quite frankly, I'm prepared to rule.  And I
25    really hesitate to say this, but I guess I should give the
```

                                                                4

```
1    I think earlier you mentioned that the motions to
2    dismiss would go forward.  Are you also including in that
3    decision on May 16th, if necessary, a ruling on the protective
4    order motion that was filed?
5         THE COURT:  If necessary, yes.
6         MR. CHENG:  Thank you, your Honor.
7         MR. HELTON:  Mr. Cheng did remind me of a matter, your
8    Honor, and that is we had asked -- we had filed with the Court
9    and asked that the Court decide our motion to strike certain
10   exhibits from the motion to dismiss, and I assume that the
11   Court will decide that along with the motion to dismiss.
12        THE COURT:  Yes.
13        MR. HELTON:  Thank you, your Honor.
14        THE COURT:  So let me go back to Mr. Sanko.
15        So, setting aside the issue of any contention
16   interrogatories directed to the trade secret claims, are there
17   outstanding interrogatories that have been served by anyone on
18   the intellectual property claims?
19        MR. SANKO:  My understanding is that there are none,
20   your Honor.
21        THE COURT:  Okay.  So what we need to do is get the
22   documents exchanged and then set a date for service of
23   interrogatories relating to the intellectual property claims so
24   that we can move forward.
25        MR. HELTON:  Set a date that will be set after the
```

17

```
1    documents are produced, your Honor?
2         THE COURT:  Well, I would like to do it now so that we
3    could continue to move forward as the Court is considering the
4    motion.  I know that there's going to be a lot of documents and
5    it's going to take a lot of time to digest those, but I would
6    hope that --
7         MR. HELTON:  I would ask that the Court do that.  I
8    wasn't suggesting that it not be set; I was just asking for
9    information.
10        THE COURT:  I'm looking to April 25th to exchange
11   interrogatories directed to the intellectual property claims.
12   That gives you just under four weeks of having the documents in
13   hand.
14        MR. SANKO:  Your Honor, this is Clinton Sanko.
15        Both parties are already past the contention
16   interrogatory date and already served them and answered them,
17   so I would take it that any additional interrogatories would
18   just be supplemental interrogatories.
19        THE COURT:  Yes, that's fine.
20        MR. SANKO:  Okay.
21        THE COURT:  And then we will see you before the
22   answers would be due, but the 30 days would be May 27th.  That
23   happens to be the Tuesday after Memorial Day weekend, and
24   that's really cruel, so how about May 30th for response.  I
25   have children, so I'm concerned about making sure that people's
```

18

```
1    family lives be alright.
2         MR. HELTON:  It's greatly appreciated, your Honor.
3         THE COURT:  Responses due May 30.
4         Okay.  Is there anything else that I need to address
5    at this point?
6         MR. HELTON:  Would you give us some direction on one
7    other issue, your Honor.  There's something that has happened
8    here, and I just want to know how to deal with it.
9         We have -- or Alston & Bird has written ten letters to
10   you, Proskauer Rose has written six, and Salon, Marrow, Dyckman
11   has written four times, and only two letters have been copied
12   to Judge Karas, and those were both by Proskauer.  And there
13   doesn't seem to be any real pattern to it.  They did submit to
14   Judge Karas their motion to dismiss, and then one of their
15   recent -- maybe it was the 22 letter, the January 22 letter,
16   went to Judge Karas.
17        I don't -- I haven't been able to find anything in the
18   local rules that says what is and is not permissible, but I
19   don't really want to send Judge Karas a letter, but I have this
20   horrible and uneasy feeling to think that he's getting a
21   document from my opponent, especially when he has before him
22   the claim construction issue now, and, you know, I can't help
23   but feel that, gosh, he might read that, and it might have a
24   negative impact on my case.
25        So I don't really care whether we send letters to
```

19

```
1    Judge Karas or not.  Whatever's proper.  But I just think it
2    ought to be the same for everybody.
3         MR. CHENG:  Theo Cheng for defendant DenTek.
4         Just in my own defense, I will say that there is some
5    consistency when I copy Judge Karas and when I do not.  It's
6    merely out of courtesy and only when the letters have been
7    requested by the Court under an order.  For example, I did not
8    copy him on the February 12th letter because that was just a
9    responsive letter to Medtech's letter.  That's always been my
10   practice.  He is the District Judge assigned to this case, and
11   when something's transpired in the proceedings that has an
12   order by the Court, that's when I copy him.  But I'm happy to
13   copy him.  I'm happy not to copy him.  It really doesn't matter
14   to me.  I was just being courteous.
15        THE COURT:  I will tell you that, generally, when I
16   get copies of things and I don't know why they're being copied
17   to me, I don't even read them.  I don't know what Judge Karas
18   does.  But I know that he gets more of these things than I do,
19   and if he tried to read everything, he would never go home.
20        I think, for these purposes, until there's a matter
21   that is directly before him, it's the better course not to copy
22   him on matters that are before me.  And then if there is a need
23   to go to him to appeal a ruling or otherwise, we can provide
24   him with a full set of either my copies or something from
25   counsel.  I think it's probably better not to paper him to
```

20