IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS INC., <br>     Plaintiff, <br> v. <br> RANIR, LLC AND CVS PHARMACY, INC., <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| MEDTECH PRODUCTS INC., <br>     Plaintiff, <br> v. <br> DENTEK ORAL CARE, INC., <br> KELLY M. KAPLAN, <br> RAY DAUNE, AND <br> C.D.S. ASSOCIATES, INC. <br>     Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 07 CV 3302 (KMK)(LMS) |
| MEDTECH PRODUCTS INC., <br>     Plaintiff, <br> v. <br> POWER PRODUCTS, INC., <br> d/b/a/ SPLINTEK, <br>     Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**PLAINTIFF MEDTECH PRODUCTS INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE DENTEK ORAL CARE, INC.'S MOTION AND MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR (A) PARTIAL DISMISSAL OF THE SECOND AMENDED COMPLAINT AND (B) ENTRY OF A PROTECTIVE ORDER AND ORDER COMPELLING DISCLOSURE OF ALLEGED <u>TRADE SECRETS</u>**

Plaintiff Medtech Products Inc. ("Medtech") respectfully submits this Memorandum of Law in Support of its Motion to Strike. Defendant DenTek Oral Care, Inc.'s ("DenTek") Memorandum of Law in Support of Its Motion For (A) Partial Dismissal of the Second Amended Complaint and (B) Entry of a Protective Order and Order Compelling Disclosure of Alleged Trade Secrets ("DenTek's Memorandum") improperly references the Declaration of Brad Conley

("Conley Declaration") and the Declaration of Theodore K. Cheng ("Cheng Declaration"), both of which are replete with information that cannot be considered in determining a motion to dismiss. More specifically, the Conley Declaration and Exhibits B, E, F, H, I, J, K, and L and Paragraphs 3, 6, 7, 9, 10, 11, 12, and 13 from the Cheng Declaration (collectively, the "Improper Documents") may not be considered as a part of a motion to dismiss. Given the numerous references to these Improper Documents throughout DenTek's Memorandum, Medtech respectfully requests that this Court strike DenTek's Motion to Dismiss and Memorandum without leave to refile.

## **PRELIMINARY STATEMENT**

Medtech filed this action because DenTek violated patent, trademark, copyright and common law, interfered with private contracts, and otherwise engaged in prohibited conduct. DenTek's Motion to Dismiss further reveals that DenTek believes the rules simply do not apply to it. In apparent recognition that Medtech's Second Amended Complaint is pled with sufficient specificity to survive a procedurally correct motion to dismiss, DenTek flagrantly disregarded the Federal Rules of Civil Procedure, as well as controlling case law precedent, and decided to both file and rely upon the Conley Declaration and the Cheng Declaration, which includes sixteen exhibits. When evaluating a motion to dismiss pursuant to Rule 12(b)(6), this Court must accept as true all well-pled allegations made by Medtech in its Complaint, and must further grant Medtech all reasonable inferences that may be drawn from the Complaint. *Kalnit v. Eichler*, 264 F.3d 131, 138 (2d Cir. 2001). The standards for what information may be considered in support of a motion to dismiss are neither obscure nor confusing. Yet, DenTek disregards all standards and urges this Court to improperly weigh the evidence in its favor based on documents that are outside the Complaint and not properly the subject of judicial notice.

There is no convincing argument for considering these documents. Indeed, DenTek makes only a half-hearted effort to do so. It makes either brief, superficial arguments that judicial notice should be taken or, as is the case with the Conley Declaration, provides no basis whatsoever for what is obviously an improper document – apparently in the hope that neither this Court nor Medtech would notice the transgression. Not only is the information contained in the Conley Declaration clearly beyond the scope of what may be properly considered, the Cheng Declaration and attached exhibits are far removed from the class of documents that may be judicially noticed.

In short, the Improper Documents cannot be considered by this Court in determining DenTek's Motion to Dismiss.[1] Because these declarations and the exhibits thereto are continuously referenced in DenTek's Memorandum, Medtech requests that this Court strike DenTek's Motion to Dismiss and Memorandum in Support in its entirety.

## ARGUMENT

I. **THE DECLARATION OF BRAD CONLEY IS NOT A DOCUMENT THAT MAY BE PROPERLY RELIED UPON IN A MOTION TO DISMISS.**

The Declaration of Brad Conley is relied upon in DenTek's Motion to Dismiss to support the claim that DenTek had decided to introduce a one-size-fits-all dental protector into the market, before DenTek had any contact with Ray Duane or Kelly Kaplan, in order to get Wal-Mart's business. (DenTek Memorandum, p. 9.) For example, DenTek's brief states that "[a]s **established** by the Declaration of Brad Conley . . . Conley was working for DenTek and approached Wal-Mart in the Spring of 2006, months before DenTek ever had any contact with Duane or Kaplan." (*Id.*) (emphasis added). DenTek goes on to cite to the Conley Declaration as

---

[1] Additionally, to the extent that DenTek relies upon Exhibit O and Paragraph 16 from the Declaration of Theodore Cheng in support of its Motion to Dismiss, such reliance is improper.

3

support for the statement that "Conley asked Wal-Mart if DenTek could get into the nightguard [sic.] category at Wal-Mart and was told by Wal-Mart's oral care buyer that Dental Concepts had been asked to provide a one-size-fits-all nightguard [sic.], that Dental Concepts had refused to do so (saying it could not be done), and that DenTek had a very good chance of getting Wal-Mart's business if it could supply one." (*Id.*) These statements relate to critical issues of fact.

When a district court receives a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), its consideration of the claim is limited to facts 1) stated on the face of the complaint, 2) in documents appended to the complaint, 3) in documents incorporated in the complaint by reference, and 4) to matters of which judicial notice may be taken. *Allen v. WestPoint-Pepperell Inc*, 945 F.2d 40, 44 (2d Cir. 1991); *Starr v. Time Warner, Inc.*, No. 07 Civ. 5871(DC), 2007 WL 4144627, *1 (S.D.N.Y. Nov. 21, 2007). It is telling that DenTek makes *no* attempt to explain into which of these categories the Conley Declaration fits, but instead simply makes the statement that the Conley Declaration is "concurrently filed in support of this motion." (DenTek Memorandum, p. 9.) The obvious reason that DenTek provides no basis for consideration of this declaration is that the Conley Declaration clearly does not fit into any of the permissible categories.

Medtech's Second Amended Complaint contains no reference to Brad Conley, much less any purported meeting between him and any Wal-Mart buyer. As such, there is no basis to argue that the Conley Declaration contains either facts located "on the face of the complaint" or appended to that Complaint, nor is there any possible argument that judicial notice of such a document is permissible. Thus, the Conley Declaration is not a document that may be properly referenced in a motion to dismiss, and DenTek has given no reason why it should be allowed to do so in violation of Federal Rules of Civil Procedure and Second Circuit precedent.

4

## II. THE MAJORITY OF THE STATEMENTS MADE IN THE CHENG DECLARATION AND MANY OF THE EXHIBITS ATTACHED THERETO CANNOT BE CONSIDERED IN SUPPORT OF DENTEK'S MOTION TO DISMISS.

As noted above, Exhibits B, E, F, H, I, J, K, and L and Paragraphs 3, 6, 7, 9, 10, 11, 12, and 13 (as well as Exhibit O and Paragraph 16 to the extent they are relied upon to support DenTek's Motion to Dismiss) to the Cheng Declaration are clearly improper and cannot be considered by this Court in deciding DenTek's Motion to Dismiss. Each of these exhibits is discussed in detail below.

### 1. Exhibit B

In DenTek's Memorandum, portions of the deposition of Ray Duane, which are attached as Exhibit B to the Cheng Declaration, are repeatedly used by DenTek to support factual contentions. For example, DenTek states that "Duane's deposition testimony corroborates that DenTek had already decided to introduce a one-size-fits-all nightguard [sic.] into the market before either Duane ever met with DenTek or DenTek ever heard of Kaplan from Duane." (DenTek Memorandum, p. 9.) DenTek later argues that Ray Duane's deposition corroborates its contention that "[t]he Tufts University dentists – and, in particular, Dr. Mehta – are well known experts in the field of bruxism . . . ." (*Id.*, p. 14, n.6.) Not surprisingly, and like the Conley Declaration, DenTek provides no explanation anywhere in its Memorandum as to why Ray Duane's deposition testimony can be considered in this procedural context. Moreover, DenTek transparently relies on Ray Duane's deposition to establish the truth of the factual assertions contained therein (e.g., the timing of DenTek's decision to introduce a one-size-fits-all dental protector and the reputation of the Tufts Doctors). This is entirely inappropriate in a motion to dismiss.

5

Medtech is afforded the presumption that all well-pled allegations are taken as true for the purposes of this Motion to Dismiss. Permitting a deposition to be judicially noticed for the truth of what a witness said would effectively, and improperly, negate that presumption. For this reason, courts have routinely held that judicial notice should not be used to establish the truth of statements. *See, e.g., Loveman v. Lauder*, 484 F. Supp. 2d 259, 268, n.48 (S.D.N.Y. 2007) ("while a court passing on a motion to dismiss in some instances may take judicial notice of statements made in documents outside the complaint for the purpose of establishing that the documents contain those statements, <u>it may not properly do so to establish the truth of the matters asserted</u>.") (emphasis added); *ABN AMRO, Inc. v. Capital Intern. Ltd.*, 2007 WL 845046, *15 (N.D. Ill. March 16, 2007) ("[t]he Court agrees . . . that it is inappropriate to take judicial notice of deposition testimony for purposes of a Rule 12(b)(6) motion, at least when that testimony is not part of the record in a case, ***and particularly not for the truth of the matters asserted therein***.") (emphasis added). Because the only time Exhibit B is referenced in DenTek Memorandum is in an attempt to have Ray Duane's deposition testimony taken for the truth of what it states, consideration of Exhibit B in deciding DenTek's Motion to Dismiss would be improper.[2]

### 2.   Exhibit E

Exhibit E to the Cheng Declaration is a copy of excerpts from the website of the law firm Hogan & Hartson, LLP ("Hogan & Hartson"), which was obtained from the website http://www.hhlaw.com/medicaldevices/ and appears to describe that law firm's experience before the FDA. (Cheng Declaration, ¶ 5.) In DenTek's Memorandum, this exhibit is cited for

---

[2] Similarly, to the extent DenTek relies upon Exhibit O to the Cheng Deposition, which contains portions of the transcript for Dr. Noshir R. Mehta, to support its Motion to Dismiss, such reliance is improper and Exhibit O should be struck for the same reasons as Exhibit B.

6

the proposition that "Hogan & Hartson is well known for its work with medical devices before the FDA." (DenTek Memorandum, p. 13.) By citing to this website, DenTek is attempting to prove that it had not "improperly employed the law firm of Hogan & Hartson, LLP to seek FDA approval for its nightguard [sic.] device." (*Id.*, p. 12.) Regarding this Court's ability to consider the multitude of websites attached as exhibits to the Cheng Declaration, including this Exhibit E, DenTek makes the following statement in a footnote: "DenTek respectfully requests that the Court take judicial notice under Fed. R. Evid. 201 of the websites cited and relied upon in this memorandum, the contents of which cannot reasonably be questioned." (DenTek Memorandum, p. 13, n.4.)

However, DenTek's request that judicial notice be taken of Exhibit E is misplaced for several reasons. First, the date that Attorney Cheng printed portions of the website attached as Exhibit E is clearly shown in the lower right corner that document, revealing that Exhibit E was printed on November 13, 2007. What DenTek fails to mention in its Memorandum is that it submitted its 510(k) through Hogan & Hartson on November 17, 2006 – *almost a full year before Exhibit E was printed.* (*See* Second Amended Complaint at ¶ 152-53.) Thus, DenTek is effectively telling this Court that it should take judicial notice of a website on November 13, 2007 for the proposition that the very same website existed in identical form before November 17, 2006, or during the time when DenTek retained the law firm of Hogan & Hartson. However, courts in the Southern District of New York have held that current websites are not relevant to events occurring in the past and are not proper subjects for judicial notice. *Fortis Corporate Ins., S.A. v. M/V CIELO DEL CANADA*, 320 F. Supp. 2d 95, 98 (S.D.N.Y. 2004) ("[c]urrent websites maintained by the defendant cannot be taken as controlling evidence of the facts that existed in early 2002."); *see also Yodlee, Inc. v. Cashedge, Inc.*, No. C 05-01550 SI, 2007 WL 2261566, *2

(N.D. Cal. Aug. 6, 2007) (noting that current versions of website are not indicative of what existed on such website in the past and "[o]nly by examining archival web pages, source code, technical and other documents, and interviewing the individuals associated with these websites, can one discern the content of those sites in 1997 . . . ."). Whether the website materials contained in Exhibit E existed at the time DenTek retained Hogan & Hartson is a matter that must be proven by either fact witnesses or expert testimony, but it is certainly not proper for DenTek to ask this Court to assume as much for the purposes of judicial notice.

Another reason that Exhibit E cannot be considered in ruling upon DenTek's Motion to Dismiss is the printout of Hogan & Hartson's website is not "generally known within the territorial jurisdiction of the trial court" nor is it "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" as required by Rule 201. DenTek does not even claim that the contents of Hogan & Hartson's website are "generally known." Instead, it requests this Court to take judicial notice of Exhibit E because its contents "cannot be reasonably questioned." (DenTek Memorandum, p. 13, n.4).

However, this argument fails also. The types of documents whose accuracy cannot be reasonably questioned for purposes of judicial notice have been defined as "records and reports of administrative bodies, items in the record of the case, **matters of general public record**, and copies of documents attached to the complaint." *Sun Micro Medical Technologies Corp. v. Passport Health Communications, Inc.*, No. 06 Civ. 2083(RWS), 2007 WL 2230082, *3 (S.D.N.Y. Aug. 2, 2007) (emphasis added). Simply because Attorney Cheng claims he could access the information contained in Exhibit E through the use of the Internet does not convert that information into "matters of general public record." It merely means that the information is

publicly available. The District Court for the Eastern District of Pennsylvania recently addressed this exact issue, noting that:

> [D]efendants confuse "publicly available" with "public record." Articles published in accounting journals and law reviews, conference call transcripts, and company web sites, are not "matters of public record."

*In re Astea Intern. Inc. Securities Litigation*, No. 06-1467, 2007 WL 2306586 (E.D. Pa. Aug. 9, 2007).

Precedent shows beyond any doubt that the website contained in Exhibit E is not a public record. Public records, of which judicial notice may be taken, are documents such as statutes, administrative agency records, and other pleadings, all of which are clearly different from information contained on a privately maintained website such as the one created by Hogan & Hartson. In fact, the type of document that constitutes a "public record" was set forth in *Moore U.S.A., Inc. v. Standard Register Co.*, 139 F. Supp. 2d 348, 363 (W.D.N.Y. 2001), which stated:

> [P]ages from a web site are not public records for the purposes of Rule 12(b)(6). Rather, courts that consider matters of public record in a Rule 12(b)(6) motion are limited to things such as statutes, case law, city charters, city ordinances, criminal case dispositions, letter decisions of government agencies, published reports, records of administrative agencies, or pleadings in another action.

*Id.* at 363; *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1197 (3d Cir. 1993) (same); *Estate of Axelrod v. Flannery*, 476 F. Supp. 2d 188, 200-01 (D. Conn. 2007) (same); *see also Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("private corporate websites, particularly when describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' . . . that our judicial notice rule contemplates.").[3]

---

[3] This is not to say that websites containing genuine public records are not capable of being judicially noticed, but in such situations the basis for judicial notice is the fact that the information is a public record – not that it appears on an internet website. *In re Wellbutrin SR/Zyban Antitrust Litigation*, 281 F. Supp. 2d 751, 755, n.2 (E.D. Pa. 2003) ("[t]he fact that an agency report is 'published' on the world wide web does not affect the Court's ability to take

Given the serious questions raised by DenTek's attempt to have this Court take judicial notice of an Internet website that may or may not have existed at the time relevant to this cause of action, as well as the precedent holding that judicial notice is not appropriate simply because information is available on the Internet, Exhibit E cannot be considered.

3.   **Exhibit F**

Exhibit F to the Cheng Declaration is composed of search results for the terms "bruxism research dental university" on the Internet search engine Google (www.google.com). (Cheng Declaration, ¶ 7.) According to Cheng's Declaration, a search for those terms yields multiple links, including a link to "Research Faulty and Staff – School of Dental Medicine – Tufts . . ." (*Id.*) By clicking that link, Cheng asserts that the resulting webpage identifies the Tufts dentists at issue in this litigation, as well as the statement that Dr. Mehta "serves as a consultant to the Sleep Disorder Unit of the New England Medical Center in the area of bruxism and sleep apnea." (*Id.*) The entirety of Exhibit F is cited by DenTek in its Memorandum to support its assertion that "[t]he Tufts University dentists – and, in particular, Dr. Mehta – are well known experts in the field of bruxism; a simple Google search reveals their identities and expertise to anyone interested in developing a nightguard." (DenTek Memorandum, p. 14.) By trying to show that the identify of these dentists were within the public realm, DenTek is arguing that it could have contacted them on its own without receiving improper assistance from Kaplan or Duane. (*Id.*, p. 14.)

This exhibit also fails to qualify as a document that may be considered in support of a motion to dismiss, because it has no bearing on what information regarding these dentists existed when they were solicited to work for DenTek, nor does it satisfy the requirements for judicially

---

judicial notice of the contents of that report."). However, because Exhibit E contains no form of public record, it may not be judicially noticed.

noticing documents. The Cheng Declaration itself acknowledges that the Internet search which provides the basis for Exhibit F was performed on October 26, 2007. (Cheng Declaration, ¶ 7.) This date is corroborated by the printed date in the lower left portion of the search results, which also reads October 26, 2007. The remaining pages of Exhibit F consist of printouts from a website produced by the Internet search, which the Cheng Declaration makes clear was visited by Cheng on October 26, 2007. (Cheng Declaration, ¶ 7.)

The impact of this is that DenTek is producing an exhibit accessed and printed only a few weeks ago for the proposition that the same information existed on September 5, 2006, when the Tufts dentists were first solicited to work for DenTek. (*See* Second Amended Complaint at Exhibit P, ¶¶ 140-143). Whether a similar Internet search over a year ago would yield the same results as purportedly contained in Exhibit F, and whether the website also included in Exhibit F would have existed in an identical format, is not established by DenTek's submission. Thus, the real question DenTek poses is a matter for pure speculation. *Fortis Corporate Ins., S.A.*, 320 F. Supp. 2d at 98 (noting that current websites are not controlling as to events occurring in the past); *see also Yodlee, Inc.*, 2007 WL 2261566, *2 (finding that current websites are not indicative of contents on same websites in past). Further, even though the DenTek Memorandum asserts that the contents of the websites contained in Exhibit F "cannot reasonably be questioned" (Dentek Memorandum, p. 13, n.4), numerous courts have held that websites such as these are not proper subjects for judicial notice. *Sun Micro Medical Technologies*, 2007 WL 2230082, *3; *Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363; *see also In re Astea*, 2007 WL 2306586, *8. Therefore, Exhibit F is not a document on which DenTek may rely to support its Motion to Dismiss.

4.  **Exhibit H**

Exhibit H to the Cheng Declaration purports to be a printout of the website for Item New Product Development ("Item") contained at http://itemnpd.com/contentmgr/showdetails.php/id/46. (Cheng Declaration, ¶ 9.) An examination of Exhibit H reveals that it was accessed and printed by Cheng on November 13, 2007. DenTek's purpose in referencing this website in its Memorandum is to argue that Item is "well known to professionals working in the consumer goods packaging industry" and therefore DenTek did not obtain the identity of Item improperly from Duane or Kaplan. (DenTek Memorandum, p. 15.) What DenTek's Memorandum does not address, however, is how a website printed in early November of this year has any bearing on what information was available when Item was actually contacted by DenTek – an event that occurred well over a year ago. (*See* Second Amended Complaint, ¶¶ 120-137.) Because there is no way to establish whether the website attached as Exhibit H existed during the relevant time period, or what information it contained then, judicial notice cannot be taken of this exhibit. *Fortis Corporate Ins., S.A.*, 320 F. Supp. 2d at 98; *see also Yodlee, Inc.*, 2007 WL 2261566, *2. In addition, the taking of judicial notice for websites such as this one is inappropriate under prior precedent. *Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363. Accordingly, consideration of Exhibit H in conjunction with DenTek Motion to Dismiss cannot be allowed.

5. **Exhibit I**

Attached to the Cheng Declaration as Exhibit I is a document represented as a printout of the website for AGI/Klearfold detailing a list of awards received by that company. (Cheng Declaration, ¶ 10.) This is cited in DenTek's Memorandum to establish that DenTek could have identified this company on its own without receiving improper assistance from Duane or Kaplan because, according to DenTek, "AGI/Klearfold is an award-winning industry leader in packaging . . . ." (DenTek Memorandum, p. 16.) Once again, the appropriateness of considering Exhibit I

12

in conjunction with DenTek's Motion to Dismiss is improper since Exhibit I was printed on November 13, 2007, but is relied upon by DenTek to establish the information that was available when it retained AGI/Klearfold at some point in the past. *Fortis Corporate Ins., S.A.*, 320 F. Supp. 2d at 98; *see also Yodlee, Inc.*, 2007 WL 2261566, *2.

It also appears that DenTek is requesting that this Court accept as true the representations made on AGI/Klearfold's website – that the company is "an award-winning industry leader in packaging." (DenTek Memorandum, p. 16.) Judicially noticing the facts contained on a private corporation's website is improper, as the accuracy of such websites is often questionable. *See, e.g., Victaulic Co. v. Tieman*, 499 F.3d 227, 236 (3d Cir. 2007) ("private corporate websites, particularly when describing their own business, generally are not the sorts of 'sources whose accuracy cannot reasonably be questioned,' . . . that our judicial notice rule contemplates."). Finally, courts have held that websites such as the one attached as Exhibit I are not proper for judicial notice. *Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363. Given the accuracy and relevancy questions raised by Exhibit I, it should not be considered.

6.  **Exhibit J**

Exhibit J fails to qualify as information that can properly be considered in support of a motion to dismiss for the same reasons that Exhibit I fails. Exhibit J is represented as a printed website of MeadWestvaco, which DenTek relies upon for the purposes of showing that (a) Item "is a part of MeadWestvaco" and (b) MeadWestvaco is "one of the most well known packaging companies in the world." (DenTek Memorandum, p. 16.) Not only was this website also printed on November 13, 2007, a date well in the future from when the retention of Item actually occurred by DenTek, but DenTek also asks this Court to accept as true the statements made on this corporate website (i.e., that Item is a part of that MeadWestvaco and, more critically,

MeadWestvaco's own marketing statement that it is one of the most well known packaging companies in the world). Since there is no way of determining what information existed on this website during the relevant time period, and because statements made on a corporate website should not be judicially noticed as true, any reference to Exhibit J in DenTek's Memorandum is improper. *Victaulic Co.*, 499 F.3d at 236; *Yodlee, Inc.*, 2007 WL 2261566, *2; *Fortis Corporate Ins., S.A.*, 320 F. Supp. 2d at 98; *Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363.

7.     **Exhibits K and L**

Exhibit K to the Cheng Declaration is allegedly another term search conducted on the Google Internet search engine that leads to a website called "ThomasNet", which shows that Stelray Plastic Products, Inc. ("Stelray") is "listed as a prominent manufacturer of injection molded plastics on the Thomas Register of plastic manufacturers . . . ." (DenTek Memorandum, p. 17; Cheng Declaration, ¶ 12.) Exhibit L is purportedly a printout from Stelray's website that is used by DenTek in an attempt to argue that "Stelray also has long been recognized as an established leader in precision injection molding for over 50 years . . . ." (*Id.*) Even though the Internet search reproduced in Exhibit K occurred on October 26, 2007, and the website attached as Exhibit L was printed on November 13, 2007, DenTek is trying to use these exhibits as a way of showing that such information existed at the time it retained Stelray. Exhibits K and L are not probative of what existed at any time prior to the date they were printed, nor can the statements on those websites be judicially noticed for the truth of what they say (e.g., the statement taken from Stelray's website contained in Exhibit L that Stelray has been recognized as an established leader in injection molding for over 50 years). *Victaulic Co.*, 499 F.3d at 236; *Yodlee, Inc.*, 2007 WL 2261566, *2; *Fortis Corporate Ins., S.A.*, 320 F. Supp. 2d at 98; *Moore U.S.A., Inc.*, 139 F. Supp. 2d at 363. For these reasons, Exhibits K and L are improper as well.

8. **Relevance of Website Exhibits**

In any event, each of the website exhibits which Medtech moves to strike in this Motion are irrelevant to Medtech's causes of action. Dentek's claim that the confidential and proprietary information misappriopriated by it is within the public domain is an issue of fact not appropriate for determination in a motion to dismiss. *See, e.g., Eberhard Investment Associates, Inc. v. Santino*, No. 01 Civ. 3840(LMM), 2003 WL 22126846, *4 (S.D.N.Y. 2003). Further, DenTek does not specifically claim that it actually obtained this information from the public domain – which is another issue of fact that DenTek will be afforded the opportunity to prove, if possible, after discovery has been taken.

## CONCLUSION

For all the foregoing reasons, this Court should find that consideration of the Declaration of Brad Conley as well as Exhibits B, E, F, H, I, J, K, and L and Paragraphs 3, 6, 7, 9, 10, 11, 12, and 13 from the Declaration of Theodore Cheng would be improper for the purposes of DenTek's Motion to Dismiss. Accordingly, Medtech respectfully requests that this Court enter an Order striking Defendant DenTek Oral Care, Inc.'s Motion and Memorandum of Law in Support of Its Motion For (A) Partial Dismissal of the Second Amended Complaint and (B) Entry of a Protective Order and Order Compelling Disclosure of Alleged Trade Secrets.

Dated: December 4, 2007.

    New York, New York

                                                   Respectfully submitted,

                                                   ALSTON & BIRD LLP

By: /s/ Amy Manning
Karl Geercken (KG 5897)
Amy Manning (AM 0338)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com
amy.manning@alston.com

Todd R. David , GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center
1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee 37201
(615) 726-5600
eramage@bakerdonelson.com

Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
    CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee 37450-1800
(423) 756-2010
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

*Attorneys for Plaintiff Medtech Products Inc.*