IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS INC.,<br>    Plaintiff,<br>v.<br>RANIR, LLC AND CVS PHARMACY, INC.,<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>) |
| MEDTECH PRODUCTS INC.,<br>    Plaintiff,<br>v.<br>DENTEK ORAL CARE, INC.,<br>KELLY M. KAPLAN,<br>RAY DAUNE, AND<br>C.D.S. ASSOCIATES, INC.<br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No. 07 CV 3302 (KMK)(LMS)<br>)<br>)     ECF FILED |
| MEDTECH PRODUCTS INC.,<br>    Plaintiff,<br>v.<br>POWER PRODUCTS, INC.,<br>   d/b/a/ SPLINTEK,<br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEDTECH PRODUCTS INC.'S RESPONSE TO OBJECTIONS BY DEFENDANTS
RAY DUANE AND C.D.S. ASSOCIATES, INC. TO THE MAGISTRATE JUDGE'S
<u>REPORT AND RECOMMENDATION, DATED JUNE 2, 2008</u>**

Table of Contents

Page

I. INTRODUCTION AND BACKGROUND TO THE DUANE DEFENDANTS' OBJECTIONS. .................................................................................................... 1

II. MAGISTRATE JUDGE SMITH CORRECTLY RECOMMENDED THAT MEDTECH'S BREACH OF CONTRACT CLAIMS AGAINST THE DUANE DEFENDANTS SHOULD NOT BE DISMISSED. ....................................................... 2

    A. The Duane Defendants' Argued to Magistrate Judge Smith That the Consulting Agreement Terminated Automatically Upon the Sale of The Company (Dental Concepts). ...................................................................... 4

    B. The Duane Defendants' Argument That Medtech's Offer of Continued Employment Terminated the Consulting Agreement Was Properly Rejected by Magistrate Judge Smith. ........................................................... 4

    C. Medtech's Continued Employment of the Duane Defendants After the Sale Demonstrates the Parties' Intent to Keep the Consulting Agreement in Effect. ... 7

III. THE DUANE DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES AND COSTS. ................................................................................................... 8

IV. CONCLUSION. ............................................................................................................. 8

# TABLE OF AUTHORITIES

**Cases**

*Boss v. Advanstar Communications, Inc.*, 911 F. Supp. 109, 109 (S.D.N.Y. 1995) ...................... 7

*Regent Ins. Co. v. Storm King Contracting, Inc.*, No. 06 Civ. 2879(LBS), 2008 WL 563465 (S.D.N.Y. Feb. 7, 2008) ................................................................................................................ 6

**Rules**

Fed. R. Civ. P. 8(a) ........................................................................................................................ 6

Fed. R. Civ. P. 8(a)(2) .................................................................................................................... 6

Fed. R. Civ. P. 9(b) ........................................................................................................................ 6

Plaintiff Medtech Products Inc. ("Medtech") submits this Response to the Objections filed by Defendants Ray Duane ("Mr. Duane") and C.D.S. Associates, Inc. ("CDS") (collectively Mr. Duane and CDS are referred to as the "Duane Defendants") to Magistrate Judge Smith's Report and Recommendation ("Duane Defendants' Objections").

**I.    INTRODUCTION AND BACKGROUND TO THE DUANE DEFENDANTS' OBJECTIONS.**

The Duane Defendants' Objections abandon many of the arguments previously made to Magistrate Judge Smith. (Docket Nos. 139 and 148.) The table below contains Magistrate Judge Smith's eight recommendations, along with the objections which have been asserted to those recommendations:

|   | **REPORT AND RECOMMENDATION ("R&R") (DOCKET NO. 155)** | **OBJECTION** |
|---|---|---|
| 1 | "that Defendants' motions to dismiss Medtech's trade secret misappropriation claims against them should be denied," *id.*, p. 13; | By Duane Defendants, Docket No. 157 at p. 8. |
| 2 | "that the non-compete and non-solicitation clause applied under the circumstances of Duane and CDS's termination from Dental Concepts," *id.*, p. 17; | By Duane Defendants, Docket No. 157 at pp. 9-13. |
| 3 | "that the confidentiality of the [Proprietary Information and Inventions Agreement (the "PIIA")] survived the execution of the General Release with regard to CDS," *id.*, p. 19; | No Objections by any Party. |
| 4 | "that Medtech's claim against Duane . . . for breach of the PIIAs should be dismissed," *id.*, p. 21; | By Medtech, Docket No. 159 at pp. 9-12. |
| 5 | "that the Amended Complaint sufficiently alleges that Duane [and] CDS . . . disclosed trade secrets . . . [and] sufficiently alleges a breach under the breach of contract claims involving the confidentiality provisions of CDS's PIIA and Duane['s] . . . General Releases," *id.*, at p. 22; | By Duane Defendants, Docket No. 157 at p. 13. |
| 6 | "that Plaintiff has not sufficiently alleged an agreement among the Defendants to engage in such tortious conduct to survive Defendants' motion to dismiss the civil conspiracy claim," *id.* at p. 23; | By Medtech, Docket No. 159 at pp. 5-9. |

1

| 7 | "that Duane's motion to dismiss Medtech's claim of tortious interference with contractual relations against him should be granted," *id.* at p. 28; | By Medtech, Docket No. 159, at pp. 2-4. |
|---|---|---|
| 8 | "that Defendants' motion to dismiss the tortious interference with business relations claim should be granted," *id.* at p. 31. | No Objections by any Party. |

The Duane Defendants do not discuss recommendations one (1), trade secret misappropriation, or five (5), breach of contract, at any length. Instead, they simply incorporate the arguments that were later made in Defendants DenTek Oral Care, Inc.'s ("DenTek") and Kelly Kaplan's ("Kaplan") objections to the R&R, (*see* Docket No. 157 at p. 8, incorporating Docket Nos. 158 and 160), and claim that the breach of contract claim is derivative of the trade secret claim,[1] (*see* Docket No. 157 at p. 13). Similarly, Medtech incorporates by reference the arguments made in its Response to the Objections filed by DenTek and Kaplan, filed simultaneously with this document.

Since the Duane Defendants' Objection is devoted to recommendation two (2), in which the Magistrate Judge recommended finding that the covenant-not-to-compete applies, Medtech will similarly devote most of its attention to this objection.

## II. MAGISTRATE JUDGE SMITH CORRECTLY RECOMMENDED THAT MEDTECH'S BREACH OF CONTRACT CLAIMS AGAINST THE DUANE DEFENDANTS SHOULD NOT BE DISMISSED.

Medtech claims that the Duane Defendants violated a valid non-competition covenant by working for a direct competitor, sharing Medtech's confidential and proprietary information, and soliciting companies and individuals in violation of the specific terms of the contract.[2] Count

---

[1]    As both of the contracts at issue here (the PIIA and the General Release) contain confidentiality provisions protecting far more than just "trade secrets," (Docket No. 66 ¶¶ 40-46, 72-81), this contention is without merit.

[2]    The factual background regarding agreement and the actions taken by the Duane Defendants, the procedural background, and Medtech's legal arguments regarding the validity of its claim for breach of contract against the Duane Defendants, already have been extensively briefed. In the interests of brevity, Medtech will not in this brief restate the facts and arguments already addressed, but instead incorporates the contents of its Response to

2

VII of Medtech's Second Amended Complaint ("SAC"), (Docket No. 66), asserts a claim for breach of contract against the Duane Defendants based upon the covenants included in the Consulting Agreement, which was executed by both Mr. Duane, individually, CDS, and Dental Concepts on September 30, 1999. (SAC at Ex. A (p. 1, ¶¶ 1, 2, and p. 2, ¶ 4).)

The Consulting Agreement prohibits the Duane Defendants from, among other things, soliciting employees, suppliers and consultants, as well as competing with Dental Concepts or disclosing confidential and proprietary information:

> For a period of twenty-four (24) months from and after the date of termination of such engagement [for services to be rendered by C.D.S. and Duane], if such engagement is terminated by the Consultant or is terminated by the Company for Just Cause, neither [C.D.S.] nor Duane shall, . . . solicit . . . any person who presently is, or any time during [C.D.S.'s] engagement by the Company shall be or shall have been, an employee of the Company or any of its Affiliates . . .; or initiate communications with . . . any client, customer, supplier or account of the Company . . .; sell any product or provide any service which is competitive with any of the business . . . of . . . the Company . . .; become an employee . . . of . . . business competitive with any of the Activities engaged in during the period of [C.D.S.'s] engagement. . . .

(SAC, Ex. A at 7(b).) It is undisputed that the Duane Defendants solicited employees or former employees, suppliers (*e.g.* Stelray Plastic Products), and consultants (*e.g.* the Tufts Doctors), and worked for a competitor to develop a competing product (the DenTek dental protector).

In an effort to avoid the impact of the clear language of the Consulting Agreement, the Duane Defendants have made the strained argument that the non-competition and non-solicitation clauses do not apply under the circumstances described in the SAC. This argument was properly rejected by Magistrate Judge Smith in her R&R, and this Court should refuse to dismiss Medtech's breach of contract claims against the Duane Defendants.

---

the Motion to Dismiss filed by Mr. Duane and C.D.S. (*See* Docket No. 145.)

>   A.   **The Duane Defendants' Argued to Magistrate Judge Smith That the Consulting Agreement Terminated Automatically Upon the Sale of The Company (Dental Concepts).**

When arguing the Motion to Dismiss, the Duane Defendants clearly and unmistakably argued that the Consulting Agreement terminated automatically when Dental Concepts was sold to Prestige. The entirety of the argument in the moving papers simply claimed:

> the Duane Defendants were terminated *when their assignment was concluded* pursuant to ¶ 6(a)(vi) of the Consulting Agreement, which provides for termination of the Consulting Agreement *upon the sale of the company*, as occurred when Dental Concepts was sold to Prestige. Simply put, under the express terms of the Consulting Agreement, the non-compete provision that Medtech claims was breached by the Duane Defendants does not apply here.

(Docket No. 139 at p. 10 (citations omitted) (emphasis added); *see also* Docket No. 148 at pp. 2-4.) The R&R correctly concludes that the Duane Defendants asserted that "the entire Consulting Agreement . . . *terminated automatically* when Dental Concepts was sold to Prestige" and that "such an interpretation is not a reasonable one." (R&R at p. 17.) Although the Duane Defendants quibble, claiming that "those words appear no where in any brief filed by the Duane Defendants," (Docket No. 157 at p. 9), the Duane Defendants contended exactly that result. It now appears, however, that the Duane Defendants have decided to abandon the only basis for their motion to dismiss and make a new argument.

>   B.   **The Duane Defendants' Argument That Medtech's Offer of Continued Employment Terminated the Consulting Agreement Was Properly Rejected by Magistrate Judge Smith.**

The Duane Defendants now urge another, equally flawed argument that was first made in their Reply papers, and was also rightly rejected by Magistrate Judge Smith. The Duane Defendants now claim that Medtech's continued employment of the Duane Defendants after the purchase of Dental Concepts, and Medtech's offer of continued employment, was, on its face, a termination by Medtech of the Consulting Agreement. According to the Duane Defendants, the

Consulting Agreement was terminated because this offer was for a job "inferior" to the one the Duane Defendants held at the time. (Duane Defendants' Objections, p. 12.) This is a specious factual argument that assumes much that is not supported by the SAC and is inappropriate for disposition on a motion to dismiss.

First, the Duane Defendants argue that nowhere does the SAC allege "that the Duane Defendants terminated the Consulting Agreement." (Docket No. 157 at p. 11.) That is incorrect; as the R&R states, the SAC alleged that "CDS and Mr. Duane *declined* continued employment" with Prestige Brands Inc. ("Prestige"), the publicly traded company that owns Medtech. (SAC ¶ 88.) Taking all reasonable inferences in Medtech's favor—a standard to which the Duane Defendants pay only lip-service—this *declination* acted as a *termination*. While the Duane Defendants complain that the Consulting Agreement is not specifically mentioned, this is form over substance. The Consulting Agreement is the agreement under which CDS and Mr. Duane were providing the services mentioned in the SAC at paragraphs 87 and 88. Moreover, under the Consulting Agreement, the services for CDS were to be provided "through Duane, the President of [CDS]." (SAC, ¶ 31.) As such, if Mr. Duane would not work for Medtech or Prestige, CDS could not provide any services.

Second, Mr. Duane complains that the SAC only mentions continued "employment" to the Duane Defendants, and that this is somehow inferior to the "consulting" contemplated under the Consulting Agreement. (Docket No. 157 at pp. 11-12.) Again, the Duane Defendants' reading of the SAC does not comply with the liberal standards applied by courts in evaluating complaints which Defendants seek to dismiss. Indeed, Mr. Duane even referred to himself as an "employee" when he signed the General Release involved in this case. That document begins with reference to Mr. Duane as an "Employee" and ends with his signature above the word

5

"Employee".  (Docket No. 66 at Ex. G ("This General Release ("Release") is made and entered into by and between Dental Concepts, LLC . . . (the "Company"), and Raymond Duane the ("Employee") . . .").)  In light of the foregoing, Mr. Duane's claim of rigorous adherence to his alleged "independent contractor" status rings hollow and appears to lack any good faith basis in law or fact.

Third, Mr. Duane asks this Court to conclude, without any evidence relating to the issue, that a "sales position" with Prestige is necessarily inferior to his previous job with Dental Concepts.  (Docket No. 157 at pp. 16-17.)  Nothing in the Consulting Agreement addresses the comparability of any position offered by the successor to Dental Concepts, and thus there is a question of fact on this issue.  Medtech alleged in its SAC that the Duane Defendants were offered a sales position *with Prestige*—the much larger publicly traded company that purchased all of Dental Concepts for $31 million and folded it into Medtech.  (SAC ¶¶ 65-71.)  As the R&R states, the SAC alleges that "Duane and CDS ended the employment relationship by declining further employment from Prestige."  (R&R, p. 17 and SAC, ¶ 88.)  Under the liberal notice pleading standards set forth in Fed. R. Civ. P. 8(a), these allegations are more than sufficient to constitute a "short and plain statement of the claim showing that [Medtech] is entitled to relief."  *Id.*; *see also Regent Ins. Co. v. Storm King Contracting, Inc.*, No. 06 Civ. 2879(LBS), 2008 WL 563465 (S.D.N.Y. Feb. 7, 2008) ("Rule 9(b) . . . has no application in this case where plaintiff alleges breach of contract . . . [t]he allegations in the Amended Complaint are sufficient to establish a claim for breach of contract . . . and comply with Fed. R. Civ. P. 8(a)(2), which requires 'a short and plain statement of the claim showing that the pleader is entitled to relief'").  Whether the offer of employment from the large publicly traded company "taken as a whole . . . reasonably comparable" to Mr. Duane's position with Dental Concepts involves questions of fact

6

that are not appropriate in this procedural context. *Boss v. Advanstar Communications, Inc.*, 911 F. Supp. 109, 109 (S.D.N.Y. 1995).

Mr. Duane's argument that Medtech "may not invoke the non-compete and non-solicitation clause simply by offering the Duane Defendants an inferior job it knew they would reject" is inappropriate in the context of a motion to dismiss. The only case Mr. Duane cites, *Boss v. Advanstar Communications, Inc.*, actually demonstrates the inapplicability of this factual argument. The court in *Boss* considered the issue of position comparability in a completely different context—a motion for summary judgment—that has a completely different standard and a completely different factual record. 911 F. Supp. 109, 109 (S.D.N.Y. 1995) ("[t]he parties cross-moved for summary judgment and then stipulated that the Court would try the matter on the summary judgment record"). None of the Duane Defendants' arguments provide them with any relief from their clear and unambiguous duties under the Consulting Agreement.

    C.    **Medtech's Continued Employment of the Duane Defendants After the Sale Demonstrates the Parties' Intent to Keep the Consulting Agreement in Effect.**

Clearly, the SAC contains sufficiently specific allegations regarding the Duane Defendants' voluntary termination of the Consulting Agreement. However, even if Prestige had terminated the Consulting Agreement, the non-compete and non-solicit provisions would continue to apply pursuant to Section 7(c) of the Consulting Agreement. Section 7(c) states that the non-competition and non-solicitation provisions "shall survive the termination or expiration of this [Consulting] Agreement and/or the Term, ***irrespective of the reason therefore***, including without limitation, ***under circumstances in which the Consultant or Duane continues thereafter to be engaged by the Company***." (SAC ¶ 92 (citing Ex. A ¶ 7(c)) (emphasis added).) Although the R&R cites this provision as an additional reason why Medtech's breach of contract

7

claims should not be dismissed, the Duane Defendants tellingly did not address this clause in their Objections. (R&R at 18.) Medtech specifically incorporates the arguments it made regarding this portion of the Consulting Agreement in its Response to the Duane Defendants' Motion to Dismiss. (Docket No. 145 at pp. 7-10.)

### III. THE DUANE DEFENDANTS ARE NOT ENTITLED TO ATTORNEYS' FEES AND COSTS.

Because numerous of Medtech's claims against the Duane Defendants state valid causes of action, as recognized by Magistrate Judge Smith, there is no basis upon which to award attorneys' fees and costs to either Mr. Duane or CDS.[3]

### IV. CONCLUSION.

For the reasons discussed above, this Court should adopt Magistrate Judge Smith's R&R regarding the legal sufficiency of Medtech's claims for misappropriation of trade secrets and breach of contract.

Dated: July 7, 2008
New York, New York

ALSTON & BIRD LLP

By: s/ Karl Geercken
Karl Geercken (KG 5897)
90 Park Avenue
New York, New York 10016-1387
(212) 210-9471 (phone)
(212) 210-9444 (facsimile)
karl.geercken@alston.com

Todd R. David, GA BPR No. 206526
ALSTON & BIRD LLP
One Atlantic Center

---

[3] CDS would not be entitled to any attorneys' fees, under any conditions, because the PIIA does not include an attorneys' fees provision and it is not a party to the General Release. This recommendation (number 3) is not disputed. Therefore, it is wholly without any contractual basis for CDS to ask for attorneys' fees.

8

1201 West Peachtree Street
Atlanta, Georgia 30309-3424
todd.david@alston.com

W. Edward Ramage, TN BPR No. 16261
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
Commerce Center, Suite 1000
211 Commerce Street
Nashville, Tennessee  37201
(615) 726-5600
eramage@bakerdonelson.com

Thomas O. Helton, TN BPR No. 01929
Micheline Kelly Johnson, TN BPR No. 13847
Clinton P. Sanko, TN BPR No. 23354
BAKER, DONELSON, BEARMAN,
 CALDWELL & BERKOWITZ, P.C.
1800 Republic Centre
633 Chestnut Street
Chattanooga, Tennessee  37450-1800
(423) 756-2010
thelton@bakerdonelson.com
mjohnson@bakerdonelson.com
csanko@bakerdonelson.com

Attorneys for Plaintiff
Medtech Products Inc.