UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MEDTECH PRODUCTS, INC.,

       Plaintiff,

 v.

RANIR, LLC and CVS PHARMACY, INC.,

       Defendants.
_____

MEDTECH PRODUCTS, INC.,             07 CV 3302 (KMK) (LMS)

       Plaintiff,

 v.

DENTEK ORAL CARE, INC.,
KELLY M. KAPLAN,
RAY DUANE, and
C.D.S. ASSOCIATES, INC.,

       Defendants.
_____

MEDTECH PRODUCTS, INC.

       Plaintiff,

 v.

POWER PRODUCTS, INC.
 d/b/a SPLINTEK,

       Defendant.
------------------------------------------------------------x

### DEFENDANT KELLY M. KAPLAN'S RESPONSE TO PLAINTIFF'S OBJECTIONS TO MAGISTRATE JUDGE SMITH'S REPORT AND RECOMMENDATION REGARDING DEFENDANTS' MOTIONS TO DISMISS

            SALON MARROW DYCKMAN
            NEWMAN & BROUDY LLP
            *Attorneys for Defendant Kelly M. Kaplan*
            292 Madison Avenue, 6th Floor
            New York, New York  10017
            (212) 661-7100

134154

## TABLE OF CONTENTS

ARGUMENT..........................................................................................................1

    A.    THE REPORT CORRECTLY CONCLUDED THAT PLAINTIFF'S CLAIM AGAINST KAPLAN FOR BREACH OF THE PIIA SHOULD BE DISMISSED..........................1

    B.    THE REPORT CORRECTLY CONCLUDED THAT PLAINTIFF'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED............5

    C.    PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND ITS DEFECTIVE PLEADING......................................10

CONCLUSION....................................................................................................11

## **TABLE OF AUTHORITIES**

**Case**                                                                                                                   **Page**

*Alexander & Alexander of New York, Inc. v. Fritzen,*
68 N.Y.2d 968 (1986)..................................................................................................5

*Brownstone Inv. Grp., LLC v. Levey,*
468 F.Supp. 2d 654 (S.D.N.Y. 2007)(Marrero, J.)...............................................8, 10

*Ciambriello v. Cty. Of Nassau,*
292 F.3d 307 (2d Cir. 2002)........................................................................................8

*CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.*
No. 85 Civ. 1533, 1985 U.S. Dist. LEXIS 19315
(S.D.N.Y. May 31, 1985)(Sweet, D.J.)......................................................................7

*CreditSights, Inc. v. Ciasullo,*
No. 05 CV 9345, 2007 U.S. Dist. LEXIS 25850
(S.D.N.Y. Mar. 26, 2007)(Batts, J.)......................................................................3, 4

*Fisk v. Letterman,*
424 F.Supp.2d 670 (S.D.N.Y. 2006) (Francis, U.S. Mag. J.)...............................8, 11

*Hecht v. Commerce Clearing House,*
897 F.2d 21 (2d Cir. 1990)....................................................................................9, 10

*Kreiss v. McCown De Leeuw Co.,*
37 F.Supp.2d 294, 301 (S.D.N.Y. 1999)(Ward, J.)..............................................2, 3

*Lipin v. Hunt,* 538 F. Supp. 2d 590
(S.D.N.Y. 2008)(Holwell, D.J.)........................................................................6, 8, 11

*Martin v. Dickson,*
No. 03-7917, 2004 U.S. App. LEXIS 10725 (2d Cir. Jun. 2, 2004)..........................6

*Murr v. United States,*
200 F.3d 895 (6th Cir. 2000)....................................................................................11

*Private One of New York, LLC v. JMRL Sales & Serv., Inc.,*
471 F.Supp.2d 216 (S.D.N.Y. 2007)(Townes, J.).....................................................2

*Riggi v. United States,*
No. 04 Civ. 7852, 2007 U.S. Dist. LEXIS 57012 (S.D.N.Y. Aug. 6, 2007)............11

*Scala v. Sequor Grp., Inc.*,
No. 94 Civ. 0449, 1995 U.S. Dist. LEXIS 4969
(S.D.N.Y. Apr. 14, 1995)(Preska, J.)……………………………………………..……………...…......5, 11

*Stutts v. The De Dietrich Grp.*,
No. 03-CV-4058, 2006 U.S. Dist. LEXIS 47638
(E.D.N.Y. Jun. 30, 2006)(Glasser, D.J.)……………………………………………………..………….10

**Statutes**

Fed. R. Civ. P. 72(b)(2)……………………………………………………………………………..…1

28 U.S.C. § 636(b)(1)(C)……………………………………………………………………...………..1

Fed. R. Civ. P. 8(a)……………………………………………………………………………….3, 4

Fed. R. Civ. P. 9(b)……………………………………………………………………………….. 3, 4

TO: THE HONORABLE KENNETH M. KARAS,
UNITED STATES DISTRICT JUDGE

Defendant Kelly M. Kaplan ("Kaplan"), by and through her attorneys, Salon Marrow Dyckman Newman & Broudy LLP, and pursuant to 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), hereby responds to Plaintiff Medtech Products, Inc.'s ("Plaintiff's") Objections to Magistrate Judge [Smith's] Report and Recommendation Regarding Defendants' Motions to Dismiss (the "Report") dated June 19, 2008 ("Plaintiff's Objections"), and respectfully submits that Judge Smith correctly concluded that the claims against Kaplan for civil conspiracy and breach of the PIIA (as that term is defined in the Report) should be dismissed.[1]

### ARGUMENT[2]

A.  **THE REPORT CORRECTLY CONCLUDED THAT PLAINTIFF'S CLAIM AGAINST KAPLAN FOR BREACH OF THE PIIA SHOULD BE DISMISSED**

It is respectfully submitted that Magistrate Judge Smith correctly concluded that Plaintiff's claim against Kaplan for breach of the PIIA should be dismissed.

The Report concludes that the confidentiality provisions of the PIIA are superseded by a General Release Kaplan signed on or about November 14, 2005 (the "General Release").[3] In its Objections, Plaintiff does not dispute, and in fact, cannot

---

[1] Kaplan also requests that this Court adopt the finding in the Report that Plaintiff's claims against Defendants for tortious interference with business relationship/economic advantage should be dismissed, a determination Plaintiff has not challenged.

[2] Kaplan specifically incorporates herein the arguments made by defendants DenTek Oral Care, Inc. ("DenTek"), Ray Duane ("Duane") and CDS Associates ("CDS" and together with Duane, the "Duane Defendants"; DenTek, Duane Defendants and Kaplan collectively, the "Defendants") in their respective responses to Plaintiff's Objections, as well as all papers she submitted to the Court and/or upon which she relied in support of her motion to dismiss.

[3] Kaplan also respectfully submits that Plaintiff's cause of action for the alleged breach of the PIIA should fail also because it is not supported by anything other than conclusory allegations that are wholly insufficient to withstand a motion to dismiss. Kaplan has in fact objected to Judge Smith's conclusion that Plaintiff's cause of action for the alleged breach of the General Release should not be dismissed on this basis. *See* Kaplan's Objections to the Report, item no. 160 on the ECF Docket ("Kaplan's Objections").

134046                                 1

dispute, that a subsequent contract regarding the same subject matter supersedes the prior contract even in the absence of an integration and merger clause in the subsequent contract. *Private One of New York, LLC v. JMRL Sales & Serv., Inc.*, 471 F.Supp.2d 216, 223 (S.D.N.Y. 2007)(Townes, J.)[4]. Plaintiff also cannot dispute that to the extent that a subsequent contract does not pertain precisely to the same subject matter as a previous contract, it will still supersede those terms of the previous contract specifically pertaining to the same subject matter. *Kreiss v. McCown De Leeuw Co.*, 37 F.Supp.2d 294, 301, n.8 (S.D.N.Y. 1999)(Ward, J.) ("[T]he Options Agreement clearly supersedes the Term Sheet on the subject of stock options, as both agreements concern the specific amount of stock options awarded to Plaintiffs"). Nevertheless, Plaintiff contends that the General Release does not supersede the PIIA because the two agreements, among other things, allegedly do not cover the same subject matter. This argument does not even pass the red face test.

The General Release, which Kaplan executed in connection with the sale of Dental Concepts LLC ("DC") to Plaintiff's parent company, contains the following language regarding Kaplan's confidentiality obligations moving forward:

> Confidential Information. [Kaplan] agrees that [she] will not use, divulge, sell or deliver to or for any other person, firm or corporation other than the Company and its respective subsidiaries, affiliates, successors and assigns any confidential information and material (statistical or otherwise) relating

---

[4]  In fact, here, there is a merger clause. *See* paragraph 10 of the General Release which states as follows:

> Entire Agreement. The parties hereto acknowledge that this Release constitutes **a full, final, and complete settlement of their differences and supersedes and replaces any and all other written or oral exchanges, agreements, understandings, arrangements or negotiations between or among them relating to the subject matter hereof**, and affirmatively state that there are no other prior or contemporaneous agreements, exchanges, representations, arrangements, or understandings, written or oral, between or among them relating to the subject matter hereof other than as set forth herein, and that this release contains the sole and entire Release between them with respect to the subject matter hereof.

*Id.* (bold emphasis added.)

134046                                                       2

to the Company's business, including, but not limited to, confidential information and material concerning manufacturing, distribution, marketing, sales, advertising, customers, employees, suppliers, licensors, financial information, methods and processes incident to the business, and any other secret or confidential information. On or before the Effective Date, [Kaplan] will surrender to the Company all lists, books and records of or in connection with the Company's business and all other property belonging to the Company. Should there be a violation or attempted or threatened violation of this provision, Company may apply for and obtain an injunction to restrain such violation or attempted or threatened violation, [Kaplan] conceding that the loss of such secret or confidential information cannot reasonably or adequately be compensated in damages in an action at law, and that the right to said injunction is necessary for the protection and preservation of the rights of the Company and of any transferee or assignee hereof to prevent irreparable damage to the Company. Such injunctive relief shall be in addition to any other rights and remedies as the Company, and any other permitted transferee or assignee hereof, may have against Employee arising from any breach hereof on [her] part.

General Release, ¶7.

Both the PIIA and the General Release purport to prohibit Kaplan from disclosing trade secrets and confidential information, which is the only supposed breach alleged by Plaintiff, albeit without any factual support. Plaintiff would have this Court believe that an agreement cannot supersede another unless the two agreements mirror each other in every aspect and contain the same exact words when all that is required is that the agreements pertain to the same "subject matter." *See e.g. CreditSights, Inc. v. Ciasullo*, No. 05 CV 9345, 2007 U.S. Dist. LEXIS 25850 (S.D.N.Y. Mar. 26, 2007)(Batts, J.), which distinguishes *Kreiss* as follows:

> [T]he fact that a subsequent contract contains provisions which are of the same subject matter as those in an earlier agreement is not sufficient to supersede the entire contract; rather, **a subsequent agreement supersedes only those terms of the earlier contract that are of the same subject matter.** *Kreiss v. McCown De Leeuw & Co.*, 37 F.Supp.2d 294 (S.D.N.Y. 1999)(holding that when the subject matter of a subsequent agreement does not cover the specific award to Plaintiffs of equity and stock options, the agreement does not supersede the earlier agreement in that regard).

134046                                    3

*CreditSights*, 2007 U.S. Dist. LEXIS 25850 at *18-19 (emphasis added). Here, that subject matter is Kaplan's confidentiality obligations regarding information in which Plaintiff claims to have ownership interest. Thus, the confidentiality obligations contained in the General Release should be held to have superseded the PIIA.[5]

Plaintiff attempts to distinguish the General Release from the PIIA by stating that the General Release is "intended to apply to use of information after the employment of Kaplan and Duane ended." Plaintiff's Opposition at 11. However, as set forth in the Report, the PIIA also addresses Kaplan's post-employment obligations. *See* Report at 20 comparing the PIIA which states "[a]t all times, both during my employment by the Company and after its termination, I will keep in confidence...." with the General Release which provides that "[Kaplan] will receive Consideration .... as severance and contractual payout...on the terms contained in this Release as fully set forth below." Furthermore, the period after the end of Kaplan's employment with Plaintiff is precisely the period at issue here.

Plaintiff also tries to muddy the waters by claiming that the PIIA is more expansive in scope than the General Release. *See* Plaintiff's Opposition at 11-12. Of course, Plaintiff cannot point to any case law requiring a subsequent agreement to be broader in scope than the prior agreement in order to supersede that prior agreement. The truth is, parties to an agreement can easily sharpen and amend their understanding with

---

[5] In fact, as Kaplan has pointed out in her Initial Memorandum of Law in support of her motion to dismiss, the Second Amended Complaint makes clear that Plaintiff believes the General Release merely to contain a reiteration of Kaplan's confidentiality obligations under the PIIA. In a section under the heading **"DUANE AND KAPLAN REAFFIRM THEIR CONFIDENTIALITY OBLIGATIONS AND EXECUTE A GENERAL RELEASE OF DENTAL CONCEPTS"**, the Second Amended Complaint states that "[t]he General Release[ is] further evidence of the efforts that Dental Concepts made to keep [Plaintiff's allegedly confidential and proprietary material] confidential." *Id.* at ¶ 77. Thus, Plaintiff's argument that the confidentiality provisions of the PIIA survived the General Release, which, Plaintiff previously contended to have reaffirmed Kaplan's confidentiality obligations, is disingenuous, at best.

134046                                    4

respect to a specific topic. Here, that is precisely what Plaintiff and Kaplan did. They intended to replace the confidentiality obligations contained in the PIIA (which covered the term of Kaplan's employment as well as the period following her employment) and agreed on the language contained in the General Release. Further, the parties specifically agreed that the General Release superseded and replaced any and all other written or oral exchanges, agreements on the same subject matter. *See* General Release at ¶10.[6]

Accordingly, Plaintiff's cause of action against Kaplan alleging breach of the PIIA should be dismissed, *inter alia*, because it is superseded by the confidentiality provisions of the General Release.

**B.   THE REPORT CORRECTLY CONCLUDED THAT PLAINTIFF'S CIVIL CONSPIRACY CLAIM SHOULD BE DISMISSED**

The Report also correctly concluded that Plaintiff's cause of action for a civil conspiracy is facially defective, and should be dismissed. Thus, Kaplan respectfully requests that this conclusion also be adopted by the Court.

It is well settled that New York does not recognize an independent tort of civil conspiracy. *See Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)(*mem.*) ("[A]s we long ago held, a mere conspiracy to commit a tort is never itself a cause of action."); *see also Scala v. Sequor Grp., Inc.*, No. 94 Civ. 0449, 1995 U.S. Dist. LEXIS 4969, *30 (S.D.N.Y. Apr. 14, 1995)(Preska, J.) To the extent allegations of a conspiracy may be used to support an underlying tort, such allegations must "connect

---

[6] Furthermore, Plaintiff's laundry list of alleged differences between the confidentiality provisions of the two agreements is misleading. By way of example, an acknowledgment by Kaplan that she would "have access to confidential information vital to the business of the Company and its Affiliates" is, as admitted by Plaintiff, merely an acknowledgment, and has no effect on Kaplan's confidentiality obligations under either of the agreements. Similarly, there is no agreement in the General Release to disclose any improvements that are related or used or useful to Plaintiff because the General Release marks the end of Kaplan's employment and the term for the disclosure requirement is "during [Kaplan's] employment with the Company." *See* PIIA at ¶ D.2.

the actions of the defendants with an actionable injury and [establish] that these actions flow from a common scheme or plan." *Id.* at * 30. Thus, the Courts require a cause of action for civil conspiracy to be supported by – in addition to a properly pled underlying tort[7] – allegations of the following: a) an agreement between two or more of the parties, b) an overt act in furtherance of the agreement, (3) the parties' intentional participation in furtherance of the plan or purpose, and (4) resulting damage or injury. *See e.g. Lipin v. Hunt,* 538 F. Supp. 2d 590, 602 (S.D.N.Y. 2008)(Holwell, D.J.)

As set forth in footnote 6 above, Kaplan respectfully submits that Plaintiff's claim for civil conspiracy must fail first and foremost because it is not supported by a properly pled underlying tort. *See* Kaplan's Objections at 2-14.[8] Furthermore, as stated in the Report, plaintiff's allegations about the supposed conspiracy itself are wholly inadequate; in fact, such allegations are virtually nonexistent.

Kaplan demonstrated in her motion to dismiss that the Second Amended Complaint contains nothing more than conclusory allegations: (a) that Kaplan was recruited by Duane to work for DenTek; and (b) that she allegedly "conspired" and "agreed" with other defendants to cause injury to Plaintiff. In its Opposition, Plaintiff attempts to identify five supposedly factual allegations which it claims demonstrate a viable cause of action for civil conspiracy:

---

[7] Although Magistrate Judge Smith concluded that "the [Second] Amended Complaint states a claim against each of the Defendants for the underlying tort of trade secret misappropriation" *see* R&R at 23, Kaplan has respectfully disagreed with this conclusion. *See* Kaplan's Objections at 2-14. Thus, while Kaplan does not object to Judge Smith's conclusion that the civil conspiracy must be dismissed because Plaintiff did not sufficiently plead an agreement between the defendants to misappropriate Plaintiff's trade secrets, for the reasons discussed in her objections to the R&R, Kaplan respectfully submits that dismissal is proper also because Plaintiff's alleged conspiracy claim is not supported by a properly pled underlying tort. *See e.g. See e.g. Martin v. Dickson,* No. 03-7917, 2004 U.S. App. LEXIS 10725 (2d Cir. Jun. 2, 2004)(upholding lower court's dismissal of plaintiff's cause of action for conspiracy to defraud because "[a] cause of action sounding in civil conspiracy ... stands or falls with the underlying tort.")

[8] In fact, it is not entirely clear from the Second Amended Complaint that Plaintiff has alleged trade secret misappropriation as the underlying tort since there are no express allegations to that effect.

> A. On or about August 25, 2006, **DenTek and Duane** finalized the terms of their arrangement and signed an agreement pursuant to which **Duane agreed to assist DenTek with the development of an OTC bruxism device** to compete with THE DOCTOR'S® NIGHTGUARD ™; (SAC, ¶ 120.)
>
> B. By virtue of Duane and Kaplan's inside information, **DenTek was able to virtually eliminate the development time** normally associated with entering into a new line of products; (*Id.* at ¶ 128.)
>
> C. After their engagement, and in accordance with their plan, DenTek, Duane, and Kaplan systemically **called upon and recruited various persons and companies** known to Duane and Kaplan only because they had the confidential and proprietary information that they had from their time at Dental Concepts, and because of Duane's clandestine activities; (*Id.* at ¶ 130.)
>
> D. To Medtech's disadvantage, **DenTek, Duane and Kaplan used Medtech's confidential and proprietary** [sic] to virtually eliminate DenTek's development process and competitive entry into the dental protector market; and (*Id.* at ¶ 163.)
>
> E. Upon information and belief, **DenTek, Duane, C.D.S., and Kaplan conspired, agreed, and planned to use Medtech's confidential and proprietary information** in violation of Duane's, C.D.S.'s and Kaplan's valid confidentiality agreements and New York law. (*Id.* at ¶ 270.)

Plaintiff's Opposition at 6 (emphasis supplied.)

None of these allegations individually can help save Plaintiff's defective pleading; moreover, even when viewed collectively, they do not amount to a single allegation of an agreement to do anything, let alone misappropriate Plaintiff's supposed trade secrets. As discussed in Defendants' motions to dismiss, the allegation that Duane and Kaplan "called various persons and companies" known to them because of their association with DC is legally insufficient to support a trade secret misappropriation claim.[9] But what is

---

[9] *See generally* Kaplan's initial memorandum of law submitted in support of her motion to dismiss, which demonstrated the public availability of information claimed to be trade secrets. *See also id.* at 16 (*citing CCS Comm. Control, Inc. v. Law Enforcement Assocs., Inc.*, No. 85 Civ. 1533, 1985 U.S. Dist LEXIS 19315, *7 (S.D.N.Y. May 31, 1985)(Sweet, J.))(stating that "not all information acquired during a period of employment qualifies as a trade secret or as confidential[;] knowledge of the inner workings of a company,

more significant for purposes of this response is that the allegation that Kaplan, Duane and DenTek called those persons and companies, even if credited, cannot even demonstrate an agreement between them to do so. The claim that DenTek was able to bring its dental protector to market more expeditiously supposedly because of confidential information of Plaintiff is also not an allegation regarding any agreement between Defendants. Finally, the claim that "DenTek, Duane, C.D.S., and Kaplan conspired, agreed, and planned to use Medtech's confidential and proprietary information in violation of Duane's, C.D.S.'s and Kaplan's valid confidentiality agreements and New York law" is a conclusory allegation that is not supported by any facts.

Courts in this Circuit do not hesitate to dismiss purported civil conspiracy claims where, as here, the pleader does not allege "specific times, facts and circumstances of the alleged conspiracy." *See e.g. Brownstone Inv. Grp., LLC v. Levey*, 468 F.Supp. 2d 654, 661 (S.D.N.Y. 2007)(Marrero, J.). *See also Fisk v. Letterman,* 424 F.Supp.2d 670 (S.D.N.Y. 2006) (Francis, U.S. Mag. J.)(*quoting Ciambriello v. Cty. Of Nassau,* 292 F.3d 307 (2d Cir. 2002))("Complaints containing only conclusory, vague allegations that the defendants have engaged in a conspiracy ... are properly dismissed, diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct."); *accord Lipin* at 602 (dismissing civil conspiracy claim supported only by conclusory allegation of conspiracy). Based on this well-settled standard, Plaintiff's cause of action for a civil conspiracy is undeniably defective.

---

including the intricacies of business operations and general financial information" and "customer names [...] ascertainable from outside sources" do not qualify as trade secrets.

Plaintiff's impermissible attempts to remedy its defective pleading by way of its Opposition to the Report in fact demonstrate that its claim against Kaplan in this regard is particularly flimsy. On pages 6 and 7 of its Opposition, Plaintiff states the following:

> Medtech has alleged that **DenTek solicited Duane's employment** for the express purposed of using [Plaintiff's] trade secrets to create a product which would compete with the THE DOCTOR'S® NIGHTGUARD ™ brand dental protector (SAC ¶¶ 111,114, 130.), and that, in furtherance of the same goal, **DenTek and Duane acted together to solicit Kaplan's employment** in order to obtain the trade secret information she possessed. (*Id.* at ¶¶ 130, 133.) Thus, the SAC clearly establishes that two of Medtech's former key employees **were solicited by DenTek** to improperly create a competing dental protector, that DenTek, Duane and Kaplan **used Medtech's trade secrets** to rush their product to completion, and that the end result of Defendants' **plan and collaboration** was a dental protector that was completed within a period of time that would not have been possible without the wholesale use of Medtech's trade secrets. These allegations sufficiently establish that each of the Defendants acted in concert to use Medtech's trade secrets, and as a result, Medtech's claim for civil conspiracy should survive Defendants' motions to dismiss.

(emphasis supplied.) Thus, despite Plaintiff's conclusory allegation in its Opposition that Defendants had a **plan and collaboration,** the foregoing makes clear that at best, Plaintiff is claiming only that Kaplan was solicited by other Defendants to work for DenTek, and that Defendants separately, but not in concert or by agreement, used Plaintiff's as yet unidentified trade secrets to help bring the DenTek dental protector to market. Plaintiff seems not to comprehend that a claim that three separate defendants engaged in certain conduct does not amount to an allegation they conspired to do so.

In its Objections, Plaintiff attempts to deflect attention from the patent inadequacy of its allegations by claiming that the Second Amended Complaint passes muster under the federal pleading standards of Fed. R. Civ. P. 8(a). However, *Hecht v. Commerce Clearing House,* 897 F.2d 21, 25-26 (2d Cir. 1990), one of the very cases cited by

Plaintiff for the quote that "Rule 9(b) applies only to fraud or mistake, not to conspiracy" demonstrates that more is needed than what Plaintiff has put on the table:

> Defendants moved to dismiss the complaint for lack of particularity under Rule 9(b), but the title district court did not state whether its decision was based on 9(b). On its face, Rule 9(b) applies only to fraud or mistake, not to conspiracy. Hecht's pleading of a conspiracy, apart from the underlying acts of fraud, is more properly measured under the more liberal pleading requirements of Rule 8(a). *See Rose*, 871 F.2d at 366; *Andreo*, 660 F. Supp. at 1372. **Even so, the complaint must allege some factual basis for finding a conscious agreement among the defendants.**

*Id.* at 26, n. 4 (emphasis supplied); *see also Brownstone*, 468 F. Supp. 2d at 661 ("[A] bare conclusory allegation of conspiracy does not state a cause of action.").[10] Accordingly, Plaintiff's cause of action for civil conspiracy should be dismissed.

### C.  PLAINTIFF SHOULD NOT BE ALLOWED TO AMEND ITS DEFECTIVE PLEADING

Kaplan also respectfully requests that the Court not permit Plaintiff to amend the Second Amended Complaint to replead the causes of action discussed above. This is not a case where the defects in Plaintiff's complaint are results of sloppy pleading that can be remedied with leave to amend. Plaintiff's cause of action for breach of the PIIA is defective as a matter of law, and Plaintiff cannot make any new allegations that can remedy this defect. With respect to Plaintiff's civil conspiracy claim, it is clear that Plaintiff has no factual basis – other than a hunch based on DenTek's quick entry to the market that the Defendants must have "conspired" to misappropriate Plaintiff's trade secrets – that Defendants agreed to commit any tort, took any steps in furtherance of that

---

[10]  Finally, while not addressed by the Report, a point worth noting is that Plaintiff's cause of action for a civil conspiracy fails also for failure to contain allegations of an overt act **in furtherance of the agreement.** *See e.g. Stutts v. The De Dietrich Grp.*, No. 03-CV-4058, 2006 U.S. Dist. LEXIS 47638 (E.D.N.Y. Jun. 30, 2006)(Glasser, D.J.)(cause of action for civil conspiracy dismissed with prejudice)("Moreover, plaintiffs allege that the Bank Defendants performed an "overt act" by providing letters of credit in favor of the Supplier Defendants, but utterly fail to allege facts suggesting that this act was done in furtherance of an agreement to commit unlawful acts with the Supplier Defendants.)

134046

tort, or for that matter, committed that tort. Plaintiff should not be granted leave so that they can file a Third Amended Complaint that is equally deficient.

Courts in this Circuit routinely deny requests for leave to replead where, as here, the deficiencies in a complaint are not capable of being cured by amendment, *i.e.* amendment would be futile. *See e.g. Fisk,* 424 F.Supp. 2d at 677 (concluding that plaintiff should not be given permission to amend its defective civil conspiracy claim supported only by conclusory allegations of participation in a civil conspiracy); *accord Scala,* 1995 U.S. Dist. LEXIS 4969, at *30 (denying leave to amend the complaint with respect to, *inter* alia, a defective civil conspiracy claim because the amendment would be futile); *accord Lipin* at 602.[11] That is precisely the case here. After well over a year of litigation and multiple opportunities to amend its pleadings, Plaintiff still cannot get straight what it is that it is claiming and what facts support its conclusory allegations. Thus, it is respectfully submitted that Defendants should no longer be required to shadowbox allegations which cannot give rise to viable causes of action.

## CONCLUSION

For all the foregoing reasons, as well as those set forth in the papers offered in the respective objections filed by DenTek and Duane Defendants and all other documents submitted by and/or relied upon by Kaplan in support of her motion to dismiss, Kaplan respectfully requests that the Court, among other things, dismiss Plaintiff's causes of action for civil conspiracy and the breach of the PIIA.

---

[11] In fact, Plaintiff never asked for leave to replead in response to Defendants' underlying motions to dismiss. Thus, Kaplan respectfully submits that Plaintiff, who now makes this request for the first time in appealing Judge Smith's Report has waived it. *See e.g. Murr v. United States,* 200 F.3d 895, 902, n.1 (6th Cir. 2000)(*citing cases); see also Riggi v. United States,* No. 04 Civ. 7852, 2007 U.S. Dist. LEXIS 57012, *1 (S.D.N.Y. Aug. 6, 2007)("Because petitioner failed to raise this issue in his original petition, however, he cannot do so now for the first time in an objection to the Report.")

Dated: New York, New York
       July 7, 2008

                        SALON MARROW DYCKMAN
                        NEWMAN & BROUDY LLP
                        *Attorneys for Defendant Kelly M. Kaplan*

                        BY: JOHN PAUL FULCO, P.C.

                        _____
                        John Paul Fulco (JF-2168)
                        Petek Gunay (PG-2695)
                        292 Madison Avenue
                        New York, New York 10017
                        Tel: (212) 661-7100
                        Fax: (212) 661-3339