UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS INC., | |
| Plaintiff, | |
| -v- | |
| RANIR, LLC and CVS PHARMACY, INC., | |
| Defendants. | |
| MEDTECH PRODUCTS INC., | |
| Plaintiff, | |
| -v- | |
| DENTEK ORAL CARE, INC., KELLY M. KAPLAN, RAY DUANE, and C.D.S. ASSOCIATES, INC., | |
| Defendants. | |
| MEDTECH PRODUCTS INC., | |
| Plaintiff, | |
| -v- | |
| POWER PRODUCTS, INC. d/b/a SPLINTER, | |
| Defendant. | |

Case No. 07-CV-3302 (KMK)(LMS)

OPINION AND ORDER

Appearances:

W. Edward Ramage, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Nashville, TN
*Counsel for Plaintiff Medtech Products Inc.*

Clinton P. Sanko, Esq.
Micheline K. Johnson, Esq.
Thomas O. Helton, Esq.
John M. Phillips, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Chattanooga, TN
*Counsel for Plaintiff Medtech Products Inc.*

Karl Geercken, Esq.
Alston & Bird, LLP
New York, NY
*Counsel for Plaintiff Medtech Products Inc.*

Samuel F. Miller, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Memphis, TN
*Counsel for Plaintiff Medtech Products, Inc.*

John P. Fulco, Esq.
Petek Gunay, Esq.
Salon Marrow Dyckman Newman Broudy LLP
New York, NY
*Counsel for Defendant Kelly M. Kaplan*

Michael A. Freeman, Esq.
Greenberg Freeman, L.L.P.
New York, NY
*Counsel for Defendants Ray Duane and C.D.S. Associates, Inc.*

James H. Shalek, Esq.
Alan Federbush, Esq.
Theodore K. Cheng, Esq.
Proskauer Rose LLP
New York, NY
*Counsel for Defendant Dentek Oral Care, Inc.*

Gregory J. Sieczkiewicz, Esq.
Proskauer Rose LLP
Boston, MA
*Counsel for Defendant Dentek Oral Care, Inc.*

KENNETH M. KARAS, District Judge:

Plaintiff Medtech Products Inc. ("Medtech") filed this consolidated action against Defendants DenTek Oral Care, Inc. ("DenTek"), Kelly M. Kaplan ("Kaplan"), Ray Duane ("Duane"), and C.D.S. Associates, Inc. ("C.D.S.") (collectively, "Defendants"), alleging patent, trademark, and copyright infringement, as well as unfair competition, breach of contract, tortious interference with contractual relations, civil conspiracy, trade secret misappropriation, and tortious interference with an advantageous business relationship. Before the Court are Defendants' various motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), as well as Medtech's Motion to Strike DenTek's Memorandum of Law, Medtech's Motion to Strike C.D.S.' Motion to Dismiss, and DenTek's Motion to Compel Medtech to disclose with particularity those trade secrets that were allegedly misappropriated.

## I. Background

The Court assumes the Parties' familiarity with the factual and procedural background of this case as it is thoroughly set forth in Magistrate Judge Lisa Margaret Smith's Report & Recommendation dated June 2, 2008 ("R&R").[1]

In her R&R, Magistrate Judge Smith has recommended that this Court adopt the following rulings with respect to the pending motions: (1) deny Medtech's Motion to Strike C.D.S.' Motion to Dismiss (R&R 3 n.3); (2) deny Medtech's Motion to Strike DenTek's Memorandum of Law (*id*. 6-7); (3) deny Defendants' Motions to Dismiss Medtech's trade secret misappropriation claims (*id*. 13); (4) grant Kaplan and Duane's Motions to Dismiss Medtech's

---

[1] The case was referred to Magistrate Judge Smith for all purposes on April 24, 2007. The case was assigned to this Court on August 6, 2007.

claim for breach of the Proprietary Information and Inventions Agreement ("PIIA") (*id*. 20-21); (5) deny Duane and C.D.S.' Motion to Dismiss Medtech's breach of contract claim based on the non-compete and non-solicitation clauses of the Consulting Agreement (*id*. 22); (6) deny C.D.S.' Motion to Dismiss Medtech's breach of contract claim based on the confidentiality provisions of C.D.S.' PIIA (*id*.); (7) deny Duane and Kaplan's Motions to Dismiss Medtech's breach of contract claim based on their respective General Releases (*id*.); (8) grant Defendants' Motions to Dismiss Medtech's civil conspiracy claim (*id*. 23-24); (9) grant DenTek's Motion to Dismiss Medtech's claim for tortious interference with contractual relations (*id*. 27); (10) grant Duane's Motion to Dismiss Medtech's tortious interference with contractual relations claim (*id*. 28); (11) grant Defendants' Motions to Dismiss Medtech's claims for tortious interference with advantageous business relationship/economic advantage (*id*. 31); (12) deny DenTek's Motion to Dismiss Medtech's claims for unjust enrichment and unfair competition (*id*. 35); and (13) deny DenTek's Motion to Compel Medtech to disclose the precise trade secrets allegedly misappropriated until Medtech has had the opportunity to conduct limited discovery on the trade secret claim (*id*. 37-38).  All Parties have filed timely and specific objections to the R&R.

## II. Discussion

### A. Standard of Review

#### 1. Review of Magistrate Judge's Report & Recommendation

A district court reviewing a report and recommendation addressing a dispositive motion "'may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.'"  *Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007) (quoting 28 U.S.C. § 636(b)(1)(c)).  Under 28

U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition." *Id.*; *see also* 28 U.S.C. § 636(b)(1)(c).

Where a party submits timely objections to a report and recommendation, as the Parties have here, the district court reviews the parts of the report and recommendation to which the party objected under a de novo standard of review. *See* 28 U.S.C. § 636(b)(1)(c) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. P. 72(b)(3) ("The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."); *see also Donahue*, 2007 WL 831816, at *1. The district court may adopt those portions of a report to which no objections have been made, as long as those portions are not clearly erroneous. *See Pizarro v. Bartlett*, 776 F. Supp. 815, 817 (S.D.N.Y. 1991).

With regard to a magistrate judge's decision on a non-dispositive matter, such as a discovery dispute between the parties, "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). "Pursuant to this highly deferential standard of review, magistrates are afforded broad discretion in resolving discovery disputes." *Aurora Loan Servs. v. Posner*, 499 F. Supp. 2d 475, 477 (S.D.N.Y. 2007) (internal quotation marks omitted).

## 2. Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citations omitted and second alteration in original). In *Twombly*, *id.* at 1964-69, the Supreme Court also abandoned reliance on the oft-cited line from *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957), that, "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  As the Court explained, a literal application of *Conley*'s "no set of facts" rationale is improper because "a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery." *Twombly*, 127 S. Ct. at 1968 (alteration in original).  Instead, the Court emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . [,]" *id.* at 1965, and "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint[,]" *id.* at 1969.  Plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  If Plaintiffs "ha[ve] not nudged their claims across the line from conceivable to plausible, [their] complaint must be dismissed." *Id.*; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("After careful consideration of the Court's opinion and the conflicting signals from it that we have identified, we believe the Court is not requiring a universal standard of heightened fact

pleading, but is instead requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." (emphasis in original)).

A Rule 12(b)(6) motion to dismiss requires a court to "accept[] all factual allegations in the complaint and draw[] all reasonable inferences in the plaintiff's favor." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008); *see also Grandon v. Merrill Lynch & Co.*, 147 F.3d 184, 188 (2d Cir. 1998) (noting court must "accept as true the factual allegations made in the complaint and draw all inferences in favor of the plaintiffs"); *Blimpie Int'l, Inc. v. Blimpie of the Keys*, 371 F. Supp. 2d 469, 470-71 (S.D.N.Y. 2005). "'In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" *Glidepath Holding B.V. v. Spherion Corp.*, No. 04-CV-9758, 2007 WL 2176072, at *10 (S.D.N.Y. July 26, 2007) (quoting *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999)).

B. Analysis

1. Medtech's Motions to Strike

Magistrate Judge Smith recommended that this Court deny Medtech's Motion to Strike C.D.S.' Motion to Dismiss. (R&R 3 n.3.) Medtech has not objected to this recommendation. Having reviewed the recommendation for clear error and found none, the Court adopts Magistrate Judge Smith's recommendation and denies Medtech's Motion to Strike C.D.S.' Motion.

Medtech also moved to strike DenTek's Motion to Dismiss on the ground that it is "replete with information that cannot be considered in determining a motion to dismiss." (Pl. Medtech Products Inc.'s Mot. to Strike DenTek Oral Care, Inc.'s Mot. and Mem. of Law in Supp. of its Mot. for (A) Partial Dismissal of the Second Am. Compl. and (B) Entry of a Protective Order and Order Compelling Disclosure of Alleged Trade Secrets 1-2 ("Pl.'s Mot. to Strike DenTek's Mot.").) [2] In the R&R, Magistrate Judge Smith recommended that this Court deny Medtech's Motion to Strike, finding that "such drastic measures . . . need not be taken." (R&R 7.) Instead, Magistrate Judge Smith excluded improper exhibits from consideration on this Motion. (Id.)[3] None of the Parties has objected to this portion of the R&R. The Court adopts Magistrate Judge Smith's recommendation in this regard and denies Medtech's Motion to Strike DenTek's Motion to Dismiss.

### 2. Motions to Dismiss

#### a. Trade Secret Misappropriation Claims

In the R&R, Magistrate Judge Smith recommended that this Court deny Defendants' Motions to Dismiss Plaintiff's trade secret misappropriation claims. (R&R 13.) Defendants have all filed timely objections to this portion of the R&R, so this Court has reviewed de novo

---

[2] More specifically, Plaintiff identifies the following documents as improperly relied upon and referenced in DenTek's Motion to Dismiss: (1) the Declaration of Brad Conley (Dkt. No. 112); (2) Paragraphs 3, 6, 7, 9, 10, 11, 12, and 13 of the Declaration of Theodore K. Cheng (Dkt. No. 113); and (3) Exhibits B, E, F, H, I, J, K, and L to the Declaration of Theodore K. Cheng (Dkt. No. 113).

[3] Because discovery in this case is ongoing, Magistrate Judge Smith recommended that this Court decline to convert the Motion to one for summary judgment in light of DenTek's submissions. (R&R 7.) This recommendation was not objected to by the Parties, and, in any case, the Court finds no clear error in this sensible conclusion.

the issue of whether Plaintiff has sufficiently alleged a claim for trade secret misappropriation.[4]

For the reasons set forth in Magistrate Judge Smith's thorough R&R, as well as for those stated

below, the Court concludes that, for purposes of the present Motions, Medtech has adequately

alleged a claim of trade secret misappropriation and, therefore, Defendants' Motions to Dismiss

that claim should be denied.

"To succeed on a claim for the misappropriation of trade secrets under New York law, a

party must demonstrate:  (1) that it possessed a trade secret, and (2) that the defendants used that

trade secret in breach of an agreement, confidential relationship or duty, or as a result of

discovery by improper means."  *N. Atl. Instruments, Inc. v. Haber*, 188 F.3d 38, 43-44 (2d Cir.

1999); *see also Faiveley Transp. Malmo AB v. Wabtec Corp.*, — F. Supp. 2d —, No. 08-CV-

3330, 2008 WL 3884346, at *2 (S.D.N.Y. Aug. 22, 2008) (citing *N. Atl. Instruments*).  New

York courts define a "trade secret" as "any formula, pattern, device or compilation of

information which is used in one's business, and which gives [the owner] an opportunity to

obtain an advantage over competitors who do not know or use it."  *N. Atl. Instruments*, 188 F.3d

at 44 (internal quotation marks omitted).[5]  A trade secret, however, "is not simply information as

---

[4] Defendants C.D.S. and Duane (collectively, the "Duane Defendants") have adopted and incorporated by reference the objections filed by DenTek and Kaplan with regard to Magistrate Judge Smith's recommendation that their respective Motions to Dismiss Plaintiff's trade secret misappropriation claim be denied.  (Objections by Defs. Ray Duane and C.D.S. Associates, Inc. to the Magistrate Judge's Report and Recommendation, Dated June 2, 2008 ("Duane Defs. Obj.") 8.)

[5] Courts use the following factors to determine whether information constitutes a trade secret:

> (1) the extent to which the information is known outside of the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken by

to single or ephemeral events in the conduct of the business; rather, it is a process or device for continuous use in the operation of the business." *Sit-Up Ltd. v. IAC/InterActiveCorp.*, No. 05-CV-9292, 2008 WL 463884, at *8 (S.D.N.Y. Feb. 20, 2008) (quoting *Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*, 118 F.3d 955, 968 (2d Cir. 1997)).  "The most important consideration remains whether the information was secret." *Payment Alliance Int'l, Inc. v. Ferreira*, 530 F. Supp. 2d 477, 481 (S.D.N.Y. 2007) (quoting *Lehman v. Dow Jones & Co.*, 783 F.2d 285, 298 (2d Cir. 1986)) (internal quotation marks omitted).  Whether the information was secret is "generally a question of fact." *Ashland Mgmt.*, 624 N.E.2d at 1013 (internal citations omitted).

Medtech alleges that it, and its predecessor in interest, Dental Concepts LLC ("Dental Concepts"), "expended considerable time, effort, and money developing its trade secrets, including but not limited to manufacturing cost details, drawings, test data, and other information about the design and manufacturing process for its dental protectors."  (Second Am. Compl. ("SAC") ¶ 275.)  Medtech alleges that Kaplan and Duane were "involved extensively in every aspect of the NIGHTGUARD™ business including brand development and marketing, and the

---

the business to guard the secrecy of the information; (4) the value of the information to the business and its competitors; (5) the amount of effort or money expended by the business in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*N. Atl. Instruments*, 188 F.3d at 44 (quoting *Ashland Mgmt v. Janien*, 624 N.E.2d 1007, 1013 (N.Y. 1993)).  These factors, however, are difficult to apply in the absence of discovery, making their consideration sometimes futile in the context of a motion to dismiss.  *See, e.g.*, *SD Protection, Inc. v. Del Rio*, 498 F. Supp. 2d 576, 585-86 (E.D.N.Y. 2007)  ("To consider these factors now [on a motion to dismiss] would be premature. . . . Without discovery, I cannot possibly weigh the six factors discussed in *Ashland* . . . .").

formulation of strategic sales and market goals and initiatives . . . [, and were] intimately familiar with Dental Concepts' consultants, brokers, designers, suppliers, product formulation and production sources, and marketing strategies." (*Id.* ¶ 41.) Further, Medtech alleges that it shared its trade secrets with Kaplan and Duane pursuant to confidentiality agreements, in which they "agreed not to divulge or appropriate for their own use or to the use of others any secret or confidential information or knowledge obtained by them or disclosed to them during their employment at Medtech." (*Id.* ¶ 278.) Despite these confidentiality agreements, according to Medtech, "Duane and Kaplan used Medtech's trade secrets in the performance of their duties at DenTek for their own benefit and disclosed Medtech's trade secrets to DenTek and its employees and officers." (*Id.* ¶ 280.) Medtech alleges that DenTek had "reason to know and, upon information and belief, did know at and/or after the time that Duane and Kaplan disclosed Medtech's trade secrets, and at and/or after the time DenTek made use of these trade secrets, that these trade secrets came from Medtech, and that Duane and Kaplan owed a duty to Medtech to maintain their secrecy." (*Id.* ¶ 281.)

According to Medtech, DenTek had no experience in the dental protector market (*id.* ¶ 127), yet "[b]y virtue of Duane and Kaplan's inside information, DenTek was able to virtually eliminate the development time normally associated with entering into a new line of products" (*id.* ¶ 128.) Further, Medtech alleges that "[a]ll evaluation and vetting processes were truncated based on Duane and Kaplan's inside information about suppliers, designers, consultants, and legal advisors." (*Id.* ¶ 129.) In sum, Medtech alleges that due to the confidential and proprietary information provided to DenTek by Duane and Kaplan, DenTek was aware of Medtech's strategic decisions (for example, to maintain a three-size platform for its product) and was able

to create a competing product on an expedited basis, cutting out a time-consuming and expensive development process, and allowing DenTek to seize a limited opportunity with a large retailer. (R&R 11-12; SAC ¶¶ 110, 123-124, 127-130, 163, 181-82, 275-77, 280.)

Magistrate Judge Smith recommended that this Court find these allegations sufficient to survive Defendants' Motions to Dismiss Plaintiff's trade secret misappropriation claims. (R&R 12-13.) Defendants object to this recommendation, arguing that Plaintiff's vague and conclusory allegations do not sufficiently allege its possession of trade secrets. (Def. Kelly M. Kaplan's Objections to Magistrate Judge Smith's Report and Recommendation Dated June 2, 2008 Regarding, Among Other Things, Defs.' Mots. to Dismiss the Second Am. Compl. ("Kaplan Obj.") 4-5; Def. DenTek Oral Care, Inc.'s Objections to the Report & Recommendation of Magistrate Judge Smith Dated June 2, 2008 ("DenTek Obj.") 6-9.) In particular, Defendants contend that Plaintiff never identified the allegedly misappropriated trade secrets. (Kaplan Obj. 4; DenTek Obj. 5 ("DenTek seeks a specific identification of the trade secrets allegedly used by DenTek now so that it may assess whether they are in fact trade secrets under the factors that apply under New York law, whether any use was ever made by DenTek of any such 'secrets,' and to forestall needless burden and expense.").) Further, Defendants argue that any trade secrets that can be gleaned from Plaintiff's allegations – such as Medtech's decision to maintain its three-size platform and its relationships with various vendors – do not qualify as trade secrets. (DenTek Obj. 10-15; Kaplan Obj. 5, 9-10.)[6] Finally, Defendants object to Magistrate Judge

_____

[6] DenTek argues that, at best, Medtech's Complaint can be read to identify the following three alleged trade secrets: (1) Medtech's strategic decision to maintain a three-size configuration for the NightGuard™; (2) Medtech's use of certain vendors and advisors (e.g., attorneys, manufacturers, etc.) in connection with the development of the NightGuard™ dental protector; and (3) "'manufacturing cost details, drawings, test data, and other information about

12

Smith's conclusion that Plaintiff sufficiently alleged the second element of its trade secret

misappropriation claim because, again, the trade secrets allegedly misappropriated are not

identified, so, according to Defendants, Medtech has failed to allege that any particular trade

secret was improperly disclosed by Kaplan and Duane and used by DenTek.  (DenTek Obj. 17-

18; Kaplan Obj. 10-12.)

The Court recognizes that Medtech, for the most part, does not specify the particular

trade secrets at issue in this case, but instead categorizes them generally as "manufacturing cost

details, drawings, test data, and other information about the design and manufacturing process

for its dental protectors."  (SAC ¶ 275.)  However,  specificity as to the precise trade secrets

misappropriated is not required in order for Medtech to defeat the present Motions to Dismiss.

*See SD Protection, Inc.*, 498 F. Supp. 2d at 586 (denying motion to dismiss where plaintiff

alleged the existence of legitimate trade secrets, and making clear that plaintiff "has no

obligation to reveal those secrets in the Complaint simply to prove that they exist"); *Am. Bldg.*

*Maint. Co. of N.Y. v. Acme Prop. Servs., Inc.*, 515 F. Supp. 2d 298, 309 (N.D.N.Y. 2007)

---

the design and manufacturing process for'" the Medtech dental protector.  (DenTek Obj. 8.)

According to DenTek, "Medtech simply alleges a laundry list of independently unprotectable items, none of which are confidential, and does not allege that DenTek even used much of this information . . . .  In sum, the specific 'combination of characteristics or components' which Medtech claims to be a trade secret allegedly used by DenTek is not actually identified within the SAC."  (*Id.* 9.)

As Magistrate Judge Smith appropriately pointed out, however, "the secrecy of particular information is an issue of fact and cannot be decided at the motion to dismiss stage."  (R&R 12); *see also SD Protection, Inc.*, 498 F. Supp. 2d at 586 (stating that discovery is necessary before the court can determine whether the alleged trade secrets are protectable); *Kosower v. Gutowitz*, No. 00-CV-9011, 2001 WL 1488440, at *8-9 (S.D.N.Y. Nov. 21, 2001) (denying motion to dismiss where plaintiff alleged that certain items were trade secrets and noting that whether the items actually were trade secrets could not be determined on a motion to dismiss).

(denying defendant's motion to dismiss plaintiff's claim for trade secret misappropriation, and finding plaintiff's allegations, "which the Court must accept at this stage of the litigation, suggest that it could prevail on this cause of action and entitle it to gather and present related evidence"); *Gaetano Assocs. Ltd. v. Artee Collections, Inc.*, No. 05-CV-3329, 2006 WL 3026080, at *2 (S.D.N.Y. Oct. 25, 2006) (addressing argument that defendants' trade secret misappropriation counterclaim failed to specify certain details, by stating that "[u]nder the notice pleading standard, however, defendants are not required to do so").

The Court is no more persuaded by the claim that Medtech has failed to identify the trade secrets Kaplan and Duane revealed to the other Defendants. It is true that Medtech does not deny that the Second Amended Complaint for the most part fails to specify the particular trade secrets allegedly misappropriated by Defendants. Medtech nonetheless argues that "[t]o require any greater level of specificity in the Second Amended Complaint would place an onerous burden on Medtech, essentially requiring it to detail information to which it has no access outside of discovery." (Pl. Medtech Products Inc.'s Response to Defs.' DenTek Oral Care, Inc.'s, Kelly M. Kaplan's, Ray Duane's, and C.D.S. Associates, Inc.'s Mots. to Dismiss 20.) According to Medtech, identification of the allegedly misappropriated trade secrets is not required until Medtech has had the opportunity for discovery. (*Id.*)[7] In fact, the case principally

---

[7] As an alternative to its Motion to Dismiss Medtech's trade secret misappropriation claim, DenTek filed a Motion to Compel Medtech's identification of the alleged trade secrets at issue. Magistrate Judge Smith recommended that "Medtech should be allowed limited discovery on the trade secret claim prior to being required to identify the precise trade secrets it is alleging were misappropriated. However, . . . after Medtech's limited discovery on the trade secret claim, DenTek is entitled to receive a list of the specific trade secrets Medtech is alleging were misappropriated forthwith." (R&R 37.)

Because this ruling deals with a non-dispositive, discovery matter, Defendants' objection to the ruling requires the Court to review the ruling and ensure that it is not "clearly erroneous or

relied on by Defendants for the proposition that specificity is required in the Complaint granted defendants' motion for summary judgment (and not a motion to dismiss), "following massive document discovery." *See Sit-Up Ltd.*, 2008 WL 463884, at *5, 12.

Here, there has been no discovery, but the Court finds that Medtech has stated a claim for trade secret misappropriation. Medtech alleges that Kaplan and Duane, who had extensive knowledge of Medtech's business and the production process for the NightGuard™, disclosed Medtech's trade secrets in violation of confidentiality agreements in place, and that, shortly thereafter, DenTek, a company with no experience in the dental protector market, was able to rush a dental protector to the market, without going through any development process. These allegations make Medtech's claim for trade secret misappropriation *plausible*. *See Twombly*, 127 S. Ct. at 1974. The question of whether it will ultimately be successful cannot be answered at this stage of the case. Thus, for these and the reasons outlined by Magistrate Judge Smith, Defendants' Motions to Dismiss Medtech's trade secret misappropriation claim are denied.

### b. Breach of Contract Claims

#### i. Application of the Non-Compete and Non-Solicitation Clause of the Consulting Agreement

Medtech alleges that the Duane Defendants breached the non-compete and non-solicitation clause ("NC/NS clause") of the Consulting Agreement entered into by Dental Concepts and the Duane Defendants on September 30, 1999, by "working for a company

. . . contrary to law." Fed. R. Civ. P. 72(a). Having undertaken such a review here, the Court adopts Magistrate Judge Smith's recommendation that Medtech is entitled to limited discovery on its trade secret misappropriation claim, but that it will, shortly thereafter and in accordance with a schedule to be set by Magistrate Judge Smith, be required to identify the trade secrets Defendants are alleged to have misappropriated or risk dismissal of its trade secret misappropriation claim.

competitive to Dental Concepts; and soliciting, enticing and inducing suppliers and accounts of Medtech; soliciting, enticing and inducing employees of Medtech." (SAC ¶ 231.)[8] The Duane Defendants moved to dismiss this claim, arguing that the NC/NS clause was inapplicable in this case. (Mem. of Law by Defs. Ray Duane and C.D.S. Associates, Inc. in Supp. of Their Mot. to Dismiss the Second Am. Compl. and For Other Relief ("Duane Defs.' Mem.") 9-10.)

Magistrate Judge Smith, finding the Consulting Agreement and the NC/NS clause unambiguous, rejected the Duane Defendants' argument and recommended that this Court find that the NC/NS clause of the Consulting Agreement applied under the circumstances surrounding Duane and C.D.S.' termination from Dental Concepts. (R&R 16-17.) In particular, Magistrate Judge Smith found that Plaintiff's allegation that "CDS and Duane declined continued employment in a sales position that was offered by Prestige" (SAC ¶ 88), the company that acquired Dental Concepts in 2005 and ultimately integrated Dental Concepts into Medtech,

---

[8] In pertinent part, the NC/NS clause provides:

> [C.D.S.] and Duane agree that, commencing as of the date hereof and during the period of [C.D.S.'] engagement by [Dental Concepts] (whether under this Agreement or otherwise) and for a period of twenty-four (24) months from and after the date of termination of such engagement, if such engagement is terminated by [C.D.S.] or is terminated by [Dental Concepts] for Just Cause, neither [C.D.S.] nor Duane shall . . . (ii) . . . solicit, entice or induce, or cause, any person who presently is, or any time during [C.D.S.'] engagement by [Dental Concepts] shall be or shall have been, a client, customer, supplier or account of [Dental Concepts] . . . ; [or] . . . (iv) become an employee, consultant, [etc.] . . . of . . . any other person or entity who is engaged in any line of business competitive with any of the Activities engaged in during the period of [C.D.S.'] engagement with [Dental Concepts] or during the 24-month period prior thereto . . . .

(SAC, Ex. A, ¶ 7(b)(ii), (iv).)

sufficiently alleged that the Consulting Agreement was terminated voluntarily by the Duane Defendants. (R&R 17.)

The Duane Defendants object to Magistrate Judge Smith's recommendation, and argue that the NC/NS clause does not apply in this case because the Second Amended Complaint fails to allege that the Consulting Agreement was terminated by the Duane Defendants or by Dental Concepts for just cause, which are the only two triggering events for the clause. (Duane Defs. Obj. 9-10.) The Duane Defendants argue further that the allegation that they turned down "employment" offered to them by Prestige establishes only that the Duane Defendants were offered an inferior position to that which they held under the Consulting Agreement – one which Prestige knew the Duane Defendants would turn down. (*Id*. 11-12.)

Prestige acquired Dental Concepts in November 2005 (SAC ¶ 71), but Medtech alleges that "CDS and Duane continued consulting for Medtech through and including February 2006[, and that] Duane stayed on board until Dental Concepts was completely transitioned into Medtech" (*id*. ¶ 87). Moreover, Medtech alleges that "[t]he Consulting Agreement's Covenant Not to Compete and Non-Solicitation Agreement survived the acquisition and were applicable to any consulting work of Duane and CDS after the acquisition." (*Id*. ¶ 93.) Accepting all factual allegations in the Second Amended Complaint and drawing all reasonable inferences in the plaintiff's favor, the Court finds these allegations, combined with the allegation that the Duane Defendants "declined continued employment in a sales position that was offered by Prestige" (*id*. ¶ 88), sufficient to make *plausible* the fact that the NC/NS clause was triggered when the Duane Defendants declined continued employment with Prestige.

The Duane Defendants quibble with Medtech's use of the words "employment" and "sales position" (*id.* ¶ 88), and argue that their decision to "'decline[]'" such a position is not the same as terminating the engagement under the Consulting Agreement. (Duane Defs. Obj. 12.) According to the Duane Defendants, "the SAC does not allege that the 'sales position' offered to the Duane Defendants was comparable to the position they held under the Consulting Agreement." (*Id.*) Yet the fact that the Consulting Agreement describes the Duane Defendants' engagement with Dental Concepts as "direct[ing] and supervis[ing] the sales of [Dental Concepts'] products" (SAC, Ex. A, ¶ 1) undercuts the Duane Defendants' argument that the Court should somehow be able to glean from the term "sales position" that Medtech's allegation refers to something other than the consulting engagement. In any event, the Duane Defendants' factual arguments can be addressed at an appropriate time, when the Parties will have the opportunity to present evidence from which a determination can be made as to whether the Duane Defendants' declination of the sales position constituted their termination of the consulting engagement under the terms of the Consulting Agreement and its NC/NS clause. Thus, for these, and the reasons set forth in the R&R, the Court finds that Medtech's allegations survive the Duane Defendants' Motion to Dismiss on the issue of the NC/NS clause's applicability.[9]

---

[9] The Duane Defendants expressed concern that Magistrate Judge Smith's R&R could be read to conclusively determine, as a matter of law, that the NC/NS clause was triggered in this case. (Duane Defs. Obj. 10 n.6.) To alleviate any confusion, the Court finds that Medtech's allegations are sufficient to make the applicability of the NC/NS clause plausible and, therefore, to defeat the Duane Defendants' Motion to Dismiss on this ground. However, the Duane Defendants will have the opportunity to prove, during summary judgment or at trial, that the NC/NS clause actually does not apply because of the manner in which the consulting engagement was terminated.

<u>ii. The Effect of the General Releases on the PIIAs</u>

Duane (on behalf of himself and C.D.S.) and Kaplan each signed a PIIA with Dental

Concepts in September 1999 (SAC, Exs. C, D), which contains a confidentiality provision that

they are alleged to have breached by providing confidential and proprietary information to

DenTek (*id*. ¶¶ 232, 241). Duane and Kaplan later each signed a General Release in November

2005 (*id*., Exs. G, H), the confidentiality provisions of which they are also alleged to have

breached "by providing DenTek with Medtech's confidential and proprietary information" (*id.*

¶ 250). Defendant Kaplan and the Duane Defendants argue that Medtech's breach of contract

claims based on the PIIAs should be dismissed because the confidentiality provisions of the PIIA

were superseded by the confidentiality requirements in their respective General Releases.

Magistrate Judge Smith recommended this Court conclude that "because the

confidentiality provisions of the PIIAs and the General Releases cover the same rights of the

parties and address precisely the same subject matter – confidentiality – and in light of the

integration and merger clause in the General Releases, the confidentiality provisions of the PIIAs

are superseded by the General Releases with respect to Duane and Kaplan[, and therefore that]

Medtech's claim against Duane and Kaplan for breach of the PIIAs should be dismissed." (R&R

21.)[10]

Medtech objects to this recommendation, arguing that "the terms of the General Release

do not supersede the PIIA, and that its claims for breach of the PIIA are proper causes of action,"

---

[10] Magistrate Judge Smith also recommended that this Court find that the "confidentiality provision of the PIIA survived the execution of the General Release with regard to CDS." (R&R 18-19 n.7.) No Party has objected to this recommendation, and the Court adopts it for the reasons set forth in the R&R.

because "[t]he PIIA and the General Release were intended to serve different purposes and, accordingly, cover different subject matters." (Pl. Medtech Products Inc.'s Objections to Magistrate Judge's Report and Recommendation Regarding Defs.' Mots. to Dismiss ("Medtech Obj.") 9-10.) In its objections, Medtech parses the PIIA and General Release in an effort to demonstrate to the Court the ways in which the PIIA's scope exceeds that of the General Release and covers subject matters not dealt with by the General Release. (*Id.* 10-12.) Indeed, Medtech appears to be objecting to what it perceives as Magistrate Judge Smith's recommendation that this Court conclude that the PIIA in its entirety was superseded by the General Release.

The Court does not read the R&R quite as broadly as does Medtech, making certain aspects of Medtech's objections irrelevant. In particular, the Court does not read the R&R as suggesting the PIIAs were superseded in their entirety by the General Releases. Instead, Magistrate Judge Smith recommended that this Court find that the *confidentiality provisions* in the PIIAs (SAC, Exs. C ¶ D(1), D ¶ D(1)), were superseded by the *confidentiality provisions* in the General Releases (*id.*, Exs. G ¶ 7, H ¶ 7). (R&R 20.)

Though "[i]t is a well settled principle of contract law that a new agreement between the same parties on the same subject matter supercedes the old agreement," *Ottawa Office Integration, Inc. v. FTF Bus. Sys.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001), "a subsequent agreement supersedes only those terms of the earlier contract that are of the same subject matter." *CreditSights, Inc. v. Ciasullo*, No. 05-CV-9345, 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007); *see also Kreiss v. McCown De Leeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999) (finding that provisions in new agreement superseded provisions in older agreement only to the extent that they covered the same subject matter where new agreement contained merger

and integration clause providing: "This Agreement contains the entire agreement between the parties hereto *with respect to the subject matter hereof* and supersedes all prior arrangements or understandings . . . with respect thereto." (alterations and emphasis in original)). Therefore, as pointed out by Medtech, there are certain terms in the PIIA that are not covered in, and are therefore not superseded by, the General Release. With respect to the confidentiality provisions in particular, however, the Court is persuaded by Magistrate Judge Smith's careful analysis and comparison of the two provisions, as well as by her ultimate conclusion that the terms cover the same subject matter – confidentiality owed to Medtech, both during and after Kaplan's and Duane's respective engagements with Medtech. Therefore, the Court finds, for reasons laid out by Magistrate Judge Smith, that the confidentiality provisions of the PIIAs are superseded by the confidentiality provisions of the General Releases. Because Medtech has alleged that Duane and Kaplan breached the confidentiality provisions of their PIIAs, those claims are dismissed. (SAC ¶¶ 232, 241.) *See CreditSights, Inc.*, 2007 WL 943352, at *6 (stating "a plaintiff must identify what provisions of the contract were breached as a result of the acts at issue").

### iii. Allegations of Breach

Magistrate Judge Smith recommended that this Court conclude that Medtech has sufficiently alleged breaches of the following: (1) the NC/NS clause of the Consulting Agreement by the Duane Defendants;[11] (2) the confidentiality provisions of the PIIA by C.D.S.; and (3) the confidentiality provisions of the General Releases by Kaplan and Duane. (R&R 22.)

---

[11] The Duane Defendants urged this Court to dismiss Medtech's breach of contract claim premised on the NC/NS clause of the Consulting Agreement on the ground that Medtech did not adequately allege the applicability of the NC/NS clause in this case. Having already rejected that argument above, the Court denies the Duane Defendants' Motion to Dismiss Medtech's claim for breach of the Consulting Agreement.

The Duane Defendants and Kaplan object to these recommendations, arguing that the Second Amended Complaint fails to adequately allege that they divulged Medtech's trade secrets to DenTek. (Duane Defs. Obj. 13; Kaplan Obj. 14-15.) As already discussed in the trade secret misappropriation section above, the Court finds that Medtech has sufficiently alleged that Kaplan, Duane, and C.D.S. (through Duane) divulged Medtech's trade secrets to DenTek. Therefore, as Magistrate Judge Smith recommended, this Court denies Duane's Motion to Dismiss Medtech's breach of contract claim premised on the General Release, C.D.S.' Motion to Dismiss the breach of contract claim premised on the PIIA, and Kaplan's Motion to Dismiss the breach of contract claim premised on the General Release.

### c. Civil Conspiracy Claims

"To establish its claim of civil conspiracy, the [plaintiff] must demonstrate the primary tort, plus the following four elements: (1) an agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) the parties' intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *World Wrestling Fed'n Entm't, Inc. v. Bozell*, 142 F. Supp. 2d 514, 532 (S.D.N.Y. 2001)

In her R&R, Magistrate Judge Smith recommended that Medtech's claim for civil conspiracy should be dismissed on the ground that Plaintiff had not sufficiently alleged the first element of the claim: "[t]here are no allegations in the complaint that the Defendants specifically agreed to use[] the trade secrets that Duane and Kaplan gleaned from their employment with Medtech in order to produce DenTek's competing product." (R&R 24.) Medtech objects to this recommendation, first, by identifying allegations that it contends sufficiently allege, under the liberal pleading standards against which they are to be considered,

an agreement among Defendants to misappropriate Medtech's trade secrets (Medtech Obj. 6 (citing SAC ¶¶ 120, 128, 130, 163, 270)), and second, and in the alternative, by arguing that "[t]he allegations in the SAC were made at a time when virtually no discovery had taken place, and thus any requirement that Medtech state with specificity the exact time, place, and manner of the agreement between DenTek, Duane, and Kaplan is unrealistic" (*id.* 7).

The Court has thoroughly reviewed the allegations flagged by Medtech in its objections, and finds them too conclusory and lacking in factual detail to survive Defendants' Motions to Dismiss the civil conspiracy claim. Though a claim for civil conspiracy is measured against the liberal pleading requirements of Federal Rule of Civil Procedure 8(a), and not the more rigorous requirements of Rule 9(b), merely conclusory allegations are insufficient. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 26 n.4 (2d Cir. 1990) ("[T]he complaint must allege some factual basis for a finding of a conscious agreement among the defendants."); *Grove Press, Inc. v. Angleton*, 649 F.2d 121, 123 (2d Cir. 1981) ("The damage for which recovery may be had in a civil action is not the conspiracy itself but the injury to the plaintiff produced by specific overt acts. Accordingly, a bare conclusory allegation of conspiracy does not state a cause of action." (internal quotation marks and citations omitted)); *Fierro v. Gallucci*, No. 06-CV-5189, 2008 WL 2039545, at *16 (E.D.N.Y. May 12, 2008) ("[T]o survive a motion to dismiss, a complaint must contain more than general allegations in support of the conspiracy. Rather, it must allege the specific times, facts, and circumstances of the alleged conspiracy." (internal quotation marks omitted)); *Brownstone Inv. Group v. Levey*, 468 F. Supp. 2d 654, 661 (S.D.N.Y. 2007) (same); *see also Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) (finding allegations of conspiracy to violate plaintiff's constitutional rights too conclusory

to survive motion to dismiss because plaintiff did "not provide[] any details of time and place, and he has failed to specify in detail the factual basis necessary to enable [defendants] intelligently to prepare their defense" (internal quotation marks and citations omitted)).[12]

The only allegation that can be fairly read to allege an agreement among Defendants to misappropriate Medtech's trade secrets reads as follows: "Upon information and belief, DenTek, Duane, CDS, and Kaplan conspired, agreed, and planned to use Medtech's confidential and proprietary information . . . ." (SAC ¶ 270). This Court, like Magistrate Judge Smith, finds that Medtech's Second Amended Complaint merely concludes that an agreement existed without any factual basis to make the allegation *plausible*. *See Twombly*, 127 S. Ct. at 1968 (rejecting notion that "a wholly conclusory statement of claim [c]ould survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery"). Therefore, Medtech's civil conspiracy claims are

---

[12] The Court is cognizant of the line of cases – some of which are cited by Medtech – that state that courts should give plaintiffs particular leeway in pleading conspiracy. *See, e.g.*, *Maersk, Inc. v. Neewra, Inc.*, 554 F. Supp. 2d 424, 458 (S.D.N.Y. 2008) ("In order to plead the conspiracy, it is important that within the pleader's ability to do so, and without going into unnecessary detail, the opposing party be informed of the nature of the conspiracy charged . . . . Where possible, there should be some details of time and place and the alleged effect of the conspiracy . . . Moreover, great leeway should be allowed the pleader, since by the nature of the conspiracy, the details may not be readily known at the time of pleading." (internal quotation marks omitted) (alterations in original)); *In re Harvard Knitwear, Inc.*, 153 B.R. 617, 628 (E.D.N.Y. 1993) ("It should be recognized that the nature of conspiracies often make it impossible to provide details at the pleading stage. A plaintiff therefore should be allowed to resort to the discovery process and not easily be subject to dismissal of his complaint alleging conspiracy."). The Court does not, however, read these cases as giving plaintiffs carte blanche to plead the existence of conspiracy through solely conclusory allegations. In fact, even the cases calling for leeway contemplate allegations beyond the purely conclusory. *See id.* at 628 ("[A] complaint alleging civil conspiracy must contain sufficient information for the court to determine whether or not a valid claim for relief has been stated and to enable the defendant to prepare an adequate responsive pleading.").

dismissed without prejudice.

<u>d. Tortious Interference Claims</u>

<u>i. Tortious Interferences with Contractual Relations</u>

With respect to Medtech's claims for tortious interference with contractual relations, Magistrate Judge Smith recommended that this Court grant both DenTek's and Duane's Motions to Dismiss. (R&R 27-28.) Medtech's claim against DenTek is premised on DenTek's alleged interference with the Consulting Agreement, the PIIAs, and the General Releases between Dental Concepts and Kaplan and Dental Concepts and Duane. With regard to Medtech's claim against Duane, he is alleged to have tortiously interfered with the PIIA and General Release between Dental Concepts and Kaplan by inducing Kaplan to breach the confidentiality provisions contained therein.

"Under New York law, the elements of tortious interference with contract are (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third-party's breach of the contract without justification; (4) actual breach of the contract; and (5) damages resulting therefrom." *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-402 (2d Cir. 2006) (citing *Lama Holding Co. v. Smith Barney Inc.*, 668 N.E.2d 1370, 1375 (N.Y. 1996)) (internal quotation marks omitted).

Medtech has filed objections to Magistrate Judge Smith's recommendation that this Court dismiss its tortious interference with contractual relations claims based on Medtech's failure to adequately allege the second and third elements with respect to DenTek and the third element with respect to Duane. Medtech argues that DenTek's knowledge of the agreements is a

question of fact that cannot be resolved on a motion to dismiss (Medtech Obj. 2), that Magistrate

Judge Smith applied an incorrect standard by insisting that Medtech must allege that the tortious

interference was accomplished by "wrongful means," and that, in any case, the issue of whether

the alleged interference was done without justification cannot be appropriately determined on a

motion to dismiss (*id*. 4-5). Therefore, the Court has undertaken a de novo review of this portion

of the R&R.

With respect to the second element, "[a]lthough a defendant need not be aware of all the

details of a contract, it must have actual knowledge of the specific contract." *LinkCo, Inc. v.

Fujitsu Ltd.*, 230 F. Supp. 2d 492, 495 (S.D.N.Y. 2002) (internal quotation marks omitted).

Medtech alleges DenTek's knowledge as follows: (1) "DenTek knew or should have known of

the valid contracts between Duane and Dental Concepts/Medtech and Kaplan and Dental

Concepts/Medtech" (SAC ¶ 258); and (2) "DenTek is a sophisticated entity well aware of the

industry practice of securing confidentiality agreements, as evidenced by its own conduct with

Duane, Kaplan and the Tufts Doctors" (*id*. ¶ 259).[13]

---

[13] The Court notes that Medtech similarly alleged Duane's knowledge as follows:
"Duane knew or should have known of the valid contract between Kaplan and Dental Concepts/
Medtech." (SAC ¶ 265.) Allegations that DenTek and Duane "should have known" of the
contracts, however, even if proven, will not ultimately satisfy the second element of this claim,
and are therefore stricken from the Second Amended Complaint with prejudice. New York law
is clear on its requirement that a defendant charged with tortiously interfering with a contractual
relationship have *actual knowledge* of the breached contract. *See LinkCo, Inc.*, 230 F. Supp. 2d
at 496 (in context of motion for judgment as a matter of law, rejecting notion that "actual
knowledge" of a specific contract can be presumed because such contracts were "a matter of
course" and "common practice" in employment); *A A Tube Testing Co. v. Sohne*, 246 N.Y.S.2d
247, 248 (App. Div. 1964) ("[T]he plaintiff must allege that the defendants had *actual*
knowledge; an allegation that they 'should have known' of the existence of the contract is
insufficient.").

In support of its argument that an allegation that DenTek and Duane "should have
known" of the agreements at issue is sufficient to survive Defendants' Motions to Dismiss,

Even if the Court were inclined to accept Medtech's wholly conclusory allegation that DenTek knew of the contracts at issue, *see Kirch*, 449 F.3d at 402 (finding plaintiff's allegation that defendants "were aware" of the contract at issue insufficient to plead defendant's actual knowledge of the contract) – and assuming that this allegation is consistent with counsel's Fed. R. Civ. P. 11 obligation that there be a good faith basis for the allegation – Medtech is not out of the woods. The Second Amended Complaint contains specific allegations that are hardly consistent with the conclusory claim that DenTek had actual knowledge of the contracts with which it allegedly interfered. For instance, Medtech alleges that "DenTek did not ask to see any employment agreements with Dental Concepts," and that "Duane allegedly failed to inform [the DenTek representative with whom he met] . . . that he was bound by the terms of a non-competition covenant." (SAC ¶¶ 113, 116.) From these allegations, it cannot be said that Plaintiff is claiming that DenTek saw the governing contracts and therefore was aware of the limitations they imposed on Duane and Kaplan. Given these allegations, the Court finds inadequate the general claim of DenTek's knowledge of the contracts. *See Elliot v. City of New York*, No. 06-CV-296, 2008 WL 4178187, at *4 (S.D.N.Y. Sept. 8, 2008) (noting that an adequately stated claim "'may be supported by showing any set of facts consistent with the allegations in the complaint'" (quoting *Twombly*, 127 S. Ct. at 1979)). Therefore, for these and the reasons set forth in the R&R, Medtech has failed to adequately allege the second element in

---

Medtech cites *Rahl v. Bande*, 328 B.R. 387 (S.D.N.Y. 2005). *Rahl* is unhelpful, however, because it did not involve a tortious interference with contract claim. In particular, the *Rahl* court denied a motion to dismiss the plaintiff's claim that a defendant caused a company to issue an illegal dividend, because the plaintiff sufficiently alleged that the defendant "should have known" that the company was insolvent; under the applicable law in that case, actual knowledge of insolvency was not required. *Id.* at 422.

its tortious interference with contractual relations claim against DenTek.

With respect to the third element – the defendant's intentional procurement of the third-party's breach of the contract without justification – the Court finds Medtech's allegations inadequate to survive DenTek and Duane's Motions to Dismiss. Even accepting as true Medtech's conclusory allegations that "DenTek procured Duane's and Kaplan's breaches of [the contracts at issue]" (SAC ¶ 260), and that "Duane procured Kaplan's breach of [the General Release]" (*id.* ¶ 266), Medtech does not allege in the Second Amended Complaint that the alleged procurement by DenTek and Duane was done without justification.[14] Where a plaintiff alleges interference with a valid, enforceable contract, as Medtech has here, there is legal authority establishing that it is not necessary to allege that the interference was malicious or done through wrongful means. *See, e.g.*, *Cerveceria Modelo*, 2008 WL 1710910, at *4 ("[T]o state a claim for tortious interference with contract under New York law, [plaintiff] need not allege malice on the part of [defendants] or that [defendants] used wrongful means to procure the

---

[14] Courts consider the following factors in deciding whether the intentional procurement was "without justification":

> the nature of the conduct of the person who interferes, the interest of the party being interfered with, the relationship between the parties, the motive and interests sought to be advanced by the one who interferes, the social interests in protecting the freedom of action of that person, the contractual interests of the party interfered with and the proximity or remoteness to the interference of the conduct complained of.

*Cerveceria Modelo, S.A. De C.V. v. USPA Accessories LLC*, No. 07-CV-7998, 2008 WL 1710910, at *4 (S.D.N.Y. Apr. 10, 2008).
Though, as Medtech points out, this analysis is necessarily a fact-intensive inquiry, *see id.* at *5 ("[A]s a rule, whether the actions of one party or the other were improper or justified ought not be decided [on a motion to dismiss]."), this fact does not allow Medtech to survive the present Motions where Medtech has not even pled that the alleged interferences were unjustified.

breach. [Plaintiff] need only allege facts that show that [defendants'] procurement of the breach

was without justification."); *NBT Bancorp Inc. et al. v. Fleet/Norstar Fin. Group.*, 664 N.E.2d

492, 496 (N.Y. 1996); *cf. Carvel Corp. v. Noonan*, 3 N.Y.3d 182, 190 (N.Y. 2004) ("[W]here a

suit is based on interference with a nonbinding relationship, the plaintiff must show that

defendant's conduct was not 'lawful' but 'more culpable.'").[15]  Because Medtech has not pled

---

[15] DenTek argues that, in order to state a claim for tortious interference with contractual relations, Medtech must allege that DenTek used "wrongful means" to procure the breach of the contracts at issue.  (Def. DenTek Oral Care, Inc.'s Response to Pl. Medtech's Objections to the Report & Recommendation of Magistrate Judge Smith Dated June 2, 2008 ("DenTek Resp.") 4.)  In support of this proposition, DenTek cites *Wolff v. Rare Medium, Inc.*, 171 F. Supp. 2d 354 (S.D.N.Y. 2001) (hereinafter, "*Wolff I*"), and this Court's opinion in *Darby Trading Inc. v. Shell Int'l Trading & Shipping Co.*, — F. Supp. 2d —, No. 07-CV-400, 2008 WL 852787 (S.D.N.Y. Mar. 31, 2008).  Neither case requires Medtech to allege "wrongful means" in order to state a claim for tortious interference with contractual relations.

In *Wolff I*, the court stated that under New York law, a party claiming tortious interference with contractual relations must plead that defendant employed "wrongful means" to procure a third-party's breach.  171 F. Supp. 2d at 359.  In a later proceeding, the *Wolff* court again stated that plaintiff "must plead that a defendant used 'wrongful means' to induce the third party to breach the contract."  *Wolff v. Rare Medium, Inc.*, 210 F. Supp. 2d 490, 499 (S.D.N.Y. 2002) (hereinafter "*Wolff II*"), *aff'd*, 65 Fed. App'x 736 (2d Cir. 2003).  The *Wolff* court's dismissal of plaintiff's tortious interference claim in *Wolff II* was affirmed by the Second Circuit in an unpublished opinion, in which the Second Circuit clarified the requirement that tortious interference with contractual relations claims allege "unjustified procurement of a breach," but that tortious interference with a prospective business relationship claims allege the "use of dishonest, unfair, or improper means."  *Wolff*, 65 Fed. App'x at 739.

With regard to this Court's opinion in *Darby*, DenTek quotes the following language from the Court's discussion of plaintiff's tortious interference with contractual relations claim:  "[A]s with Plaintiff's previous tortious interference claim [with business relations], Plaintiff has failed to properly allege 'wrongful means,' a necessary element of the claim."  (DenTek Resp. 4 (quoting *Darby*, 2008 WL 852787, at *16) (internal quotation marks omitted) (alteration in DenTek Resp.)).  However, in *Darby*, plaintiff was required to allege "wrongful means" because the contract with which defendant was alleged to have interfered was found to be unenforceable and voidable.  *Darby*, 2008 WL 852787, at *15 (stating that "unenforceable contracts contain no legal guarantee of future performance, and so should only be allowed limited tort protection," and therefore that they "must satisfy the more demanding standard [of 'wrongful means'] required of claims of tortious interference with business relations" (internal quotation marks omitted)).  Because Plaintiff alleges the breach of enforceable contracts, *Darby* is inapposite.

that the alleged interferences were unjustified, the Court dismisses Medtech's tortious

interference with contractual relations claims against DenTek and Duane, again, without

prejudice.

ii. Tortious Interference with Advantageous Business
Relationship/Economic Advantage

Magistrate Judge Smith also has recommended that this Court grant DenTek's Motion to

Dismiss Plaintiff's claim based on tortious interference with advantageous business

relationship/economic advantage. Medtech explicitly does not object to this recommendation.

(Medtech Obj. 1 n.2.) Thus, the Court, finding no clear error in Magistrate Judge Smith's

analysis, adopts her recommendation and grants DenTek's Motion to Dismiss this claim.[16]

e. Unfair Competition and Unjust Enrichment Claims

Finally, Magistrate Judge Smith recommended that this Court conclude that Medtech's

allegations "sufficiently support Medtech's theory that its unjust enrichment and unfair

competition claims are based on an 'additional element' of breach of duty or trust and therefore

---

[16] Medtech requested that, if this Court dismisses any of its claims, the Court do so without prejudice and with leave for Medtech to amend the Second Amended Complaint upon discovery of additional information supporting the dismissed claims. (Medtech Obj. 1.) Defendants vehemently oppose this request on grounds of waiver and futility. (Def. Kelly M. Kaplan's Response to Pl.'s Objections to Magistrate Judge Smith's Report and Recommendation Regarding Defs.' Mots. to Dismiss ("Kaplan Resp.") 10-11; DenTek Resp. 7-10.)

The Court finds it appropriate at this juncture to dismiss these claims without prejudice, *see Van Buskirk v. N.Y. Times Co.*, 325 F.3d 87, 91 (2d Cir. 2003) ("[A] court granting a 12(b)(6) motion should consider a dismissal without prejudice when a liberal reading of the complaint gives any indication that a valid claim might be stated." (internal quotation marks omitted)), but the Court believes it unnecessary, at this time, to decide whether an amendment to the Second Amended Complaint, if sought, will be permitted. If Medtech wishes to seek leave to amend the Second Amended Complaint, it shall do so by way of a motion to amend, consistent with the Court's Individual Practices. Defendants, at that time, will have the opportunity to oppose any such request.

are sufficient to survive DenTek's motion to dismiss on the basis of preemption." (R&R 35.) This recommendation was not objected to by any party, so the Court reviewed it only for clear error. Having found none, the Court adopts Magistrate Judge Smith's recommendation that DenTek's Motion to Dismiss Medtech's claims for unfair competition and unjust enrichment be denied for the reasons thoroughly set forth in the R&R.

### III. Conclusion

For the reasons stated herein, Magistrate Judge Smith's R&R dated June 2, 2008, is adopted to the extent that it is consistent with this Opinion. Defendants' Motions to Dismiss are granted in part and denied in part, with the following claims having been dismissed without prejudice: (1) breach of the PIIA against Duane (Count VII); (2) breach of the PIIA against Kaplan (Count VIII); (3) tortious interference with contractual relations against DenTek (Count X); (4) tortious interference with contractual relations against Duane (Count XI); and (5) tortious interference with advantageous business relationship/economic advantage against all Defendants (Count XIV). Medtech's Motions to Strike the Motions to Dismiss filed by C.D.S. and DenTek are denied.

The Clerk of Court is respectfully directed to terminate the pending Motions (Dkt. Nos. 104, 109, 116, 121, 137).

SO ORDERED.

Dated:    September 30, 2008
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

31

Service List (By ECF):

W. Edward Ramage, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz (TN)
211 Commerce St., Suite 1000
Nashville, TN 37201

Clinton P. Sanko, Esq.
Micheline K. Johnson, Esq.
Thomas O. Helton, Esq.
John M. Phillips, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
633 Chestnut Street
Suite 1800
Chattanooga, TN 37450
csanko@bakerdonelson.com
mjohnson@bakerdonelson.com
jphillips@bakerdonelson.com
thelton@bakerdonelson.com

Karl Geercken, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016
karl.geercken@alston.com

Samuel F. Miller, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
165 Madison Avenue
Suite 2000
Memphis, TN 38103

John P. Fulco, Esq.
Salon Marrow Dyckman Newman Broudy LLP
292 Madison Ave, 6th floor
New York, NY 10017
jfulco@salonmarrow.com

Petek Gunay, Esq.
Salon Marrow Dyckman Newman Broudy LLP
292 Madison Ave, 6th floor
New York, NY 10017
pgunay@salonmarrow.com

Michael A. Freeman, Esq.
Greenberg Freeman, L.L.P.
24 West 40th Street, 17th Floor
New York, NY 10018
freeman@greenbergfreeman.com

James H. Shalek, Esq.
Alan Federbush, Esq.
Theodore K. Cheng, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
jshalek@proskauer.com
afederbush@proskauer.com
tcheng@proskauer.com

Gregory J. Sieczkiewicz, Esq.
Proskauer Rose LLP
One International Place
Boston, MA 02110
gsieczkiewicz@proskauer.com