UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MEDTECH PRODUCTS INC.,<br><br>         Plaintiff,<br><br> -v-<br><br>RANIR, LLC and CVS PHARMACY, INC.,<br><br>         Defendants. | Case No. 07-CV-3302 (KMK)<br><br>OPINION AND ORDER |
| MEDTECH PRODUCTS INC.,<br><br>         Plaintiff,<br><br> -v-<br><br>DENTEK ORAL CARE, INC., KELLY M. KAPLAN, RAY DUANE, and C.D.S. ASSOCIATES, INC.,<br><br>         Defendants. | |
| MEDTECH PRODUCTS INC.,<br><br>         Plaintiff,<br><br> -v-<br><br>POWER PRODUCTS, INC. d/b/a SPLINTER,<br><br>         Defendant. | |

Appearances:

Amy Suzanne Manning, Esq.
Karl Geercken, Esq.
Alston & Bird, LLP
New York, New York
*Counsel for Plaintiff*

Carl M. Davis, II, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Atlanta, Georgia
*Counsel for Plaintiff*

W. Edward Ramage, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Nashville, Tennessee
*Counsel for Plaintiff*

Clinton P. Sanko, Esq.
John M. Phillips, Esq.
Micheline Kelly Johnson, Esq.
Thomas O. Helton, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Chattanooga, Tennessee
*Counsel for Plaintiff*

Samuel F. Miller, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
Memphis, Tennessee
*Counsel for Plaintiff*

John Paul Fulco, Esq.
Peter Gunay, Esq.
Salon Marrow Dyckman Newman Broudy LLP
New York, New York
*Counsel for Defendant Kaplan*

James Holman Shalek, Esq.
Alan Federbush, Esq.
Theodore Kevin Cheng, Esq.
Proskauer Rose, LLP
New York, New York
*Counsel for Defendant DenTek Oral Care, Inc.*

Gregory James Sieczkiewicz, Esq.
Proskauer Rose, LLP
Boston, Massachusetts
*Counsel for Defendant DenTek Oral Care, Inc.*

KENNETH M. KARAS, District Judge:

Plaintiff Medtech Products Inc. ("Medtech") brought these consolidated actions against Dentek Oral Care, Inc. ("Dentek") and other defendants, alleging, among other federal and state law causes of action, an infringement of Medtech's U.S. Patent No. 6,830,051 ("the '051 Patent"). Before the Court now is a dispute between Medtech and Dentek over construction of one of the claims in the '051 Patent.

## I. Background

The Court assumes the Parties' familiarity with the pertinent factual and procedural histories as they are set forth in Magistrate Judge Lisa Margaret Smith's thorough Report and Recommendation dated October 11, 2007 ("R&R").[1] On July 13, 2007, Medtech and Dentek each filed claim construction statements with Magistrate Judge Smith for a disputed claim ("Claim 17") in the '051 Patent.[2] Ultimately, the Parties agreed that five disputed terms in Claim 17 required construction: (1) "Interocclusal Appliance"; (2) "A Resin"; (3) "Molding Over the

---

[1] The case was referred to Magistrate Judge Smith for all purposes on April 24, 2007. The case was assigned to this Court on August 6, 2007.

[2] Claim 17 of the '051 Patent reads as follows:

A method of fabricating an interocclusal appliance for alleviation of the adverse effects of bruxing or clenching events, the method comprising the steps of:
    a) molding and appliance base from a resin having a Vicat softening temperature of at least 70°C. and a Shore A hardness of at least 80; and
    b) molding over the base an impression preform from a resin comprising an ethylene vinyl acetate copolymer having approximately 30% by weight vinyl acetate.

(Second Am. Compl., Ex. E., Col. 12:47-55)

3

Base"; (4) "An Impression Preform"; and (5) "Having Approximately 30% by Weight Vinyl Acetate."

Magistrate Judge Smith held a *Markman* hearing on September 5, 2007. On October 11, 2007, Magistrate Judge Smith issued an R&R, recommending to this Court a proposed construction for each of the five disputed terms. Each Party has filed timely objections.

## II.  Discussion

A. Standard of Review

### 1.  Review of Magistrate Judge's Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Donahue v. Global Home Loans & Fin., Inc.*, No. 05-CV-8362, 2007 WL 831816, at *1 (S.D.N.Y. Mar. 15, 2007). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), parties may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 10 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1).

Where a party submits timely objections to a report and recommendation, as the Parties did here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Donahue*, 2007 WL 831816, at *1. The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly

erroneous or contrary to law." *Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226 (S.D.N.Y. 2008) (citing Fed. R. Civ. P. 72(b)(2)).

### 2.  Claim Construction

"Victory in an infringement suit requires a finding that the patent claim covers the alleged infringer's product or process, which in turn necessitates a determination of what the words in the claim mean." *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 374 (1996) (internal quotation omitted).  In *Markman*, the Supreme Court held that "the construction of a patent, including the terms of art within its claim, is exclusively within the province of the court." *Id*. at 372.  The purpose of claim construction "is neither to limit nor to broaden the claims, but to define, as a matter of law, the invention that has been patented." *Netword, LLC v. Centraal Corp.*, 242 F.3d 1347, 1352 (Fed. Cir. 2001).

The importance of intrinsic evidence in patent construction claims has been well established:

> It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history.  Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language.

*Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (internal citation omitted); *accord Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  "In most situations, an analysis of the intrinsic evidence alone will resolve any ambiguity in a disputed claim term." *Vitronics Corp.*, 90 F.3d at 1583.  In fact, where the intrinsic evidence is sufficient to resolve ambiguities, "it is improper to rely on extrinsic evidence" to construe a claim.  *Id.*

"All intrinsic evidence [of a claim] is not equal." *Interactive Gift Exp., Inc. v. Compuserve Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001). The first source of a claim is the claim language itself, because "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips*, 415 F.3d at 1312 (citation and internal quotations omitted); *accord Vitronics Corp.*, 90 F.3d at 1582 ("First, we look to the words of the claims themselves, both asserted and nonasserted, to define the scope of the patented invention."). During claim construction, a disputed term is typically given its "ordinary and customary meaning," which is "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1312-13 (internal quotation omitted). However, "a patentee may choose to be his [or her] own lexicographer and use terms in a manner other than their ordinary meaning, as long as the special definition of the term is clearly stated in the patent specification or file history." *Vitronics Corp.*, 90 F.3d at 1582. After the claim's language, the court should then consider the rest of the intrinsic evidence, beginning with the specification and finishing with the prosecution history. *See id.* "This history contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Id.* In this regard, claims must be construed in the context of the entire patent, including the specification, which "is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation omitted). "The specification acts as a dictionary when it expressly defines terms used in the claims or when it defines terms by implication." *Vitronics Corp.*, 90 F.3d at 1582. Limitations from the specification, however, must not be read into the claims. *See Phillips*, 415 F.3d at 1323-24; *Interactive Gift Exp.*, 256 F.3d at 1331 ("[I]n looking to the

6

specification to construe claim terms, care must be taken to avoid reading limitations appearing in the specification into the claims.") (internal quotations, alterations and omissions omitted).

If a patent's intrinsic evidence does not clarify the meaning of a disputed claim term, a court can consider extrinsic evidence, which includes, but is not limited to, expert and inventor testimony, dictionary definitions, and learned treatises.  *See Vitronics Corp.*, 90 F.3d at 1584; *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1216 (Fed. Cir. 1995) (noting that courts can consider extrinsic evidence "if needed").  The court is not "barred from considering any particular sources or required to analyze sources in any specific sequence, as long as those sources are not used to contradict claim meaning that is unambiguous in light of the intrinsic evidence."  *Phillips*, 415 F.3d at 1324.

> [B]ecause extrinsic evidence can help educate the court regarding the field of the invention and can help the court determine what a person of ordinary skill in the art would understand claim terms to mean, it is permissible for the district court in its sound discretion to admit and use such evidence.

*Id.* at 1319.  However, a court should be mindful of the fact that extrinsic evidence is "in general . . . less reliable than the patent and its prosecution history in determining how to read claim terms."  *Id.* at 1318 (describing the court's "considerable task of filtering the useful extrinsic evidence from the fluff").  Finally, claims should be interpreted so that they are consistent with the "fundamental purpose and significance of the invention . . . and in a manner consistent with and furthering the purpose of the invention."  *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 98 F. Supp. 2d 362, 375 (S.D.N.Y. 2000) (internal citations, quotations and alterations omitted), *aff'd*, 237 F.3d 1359, 1364 (Fed. Cir. 2001).

B. Analysis

1. "Interocclusal Appliance"

Magistrate Judge Smith found that "because the entire patent sets out to define the patented 'interocclusal appliance' and every claim in the [']051 [P]atent includes in its preamble the same phrase . . . , the phrase . . . need not be specifically construed." (R&R 10.)  However, if this Court finds it necessary to define the term, Magistrate Judge Smith recommends the following definition:  "a device that is placed between some or all of the occlusal surfaces of the teeth."  (*Id.*)  Neither Party has objected to Magistrate Judge Smith's recommendation with respect to this term.  Having reviewed Magistrate Judge Smith's recommendation for clear error and finding none, this Court adopts the portion of the R&R in which Magistrate Judge Smith determines that the term "interocclusal appliance" need not be specifically construed.

2. "A Resin"

Magistrate Judge Smith has recommended that this Court construe "a resin" to mean "a thermoplastic solid or semi-solid substance."  (*Id.* at 12.)  Medtech has narrowly objected to this definition, insisting only that the correct definition must also include the word "thermosetting," so that the definition reads, "a thermosetting or thermoplastic solid or semi-solid substance."  (Pl.'s Objection to R&R ("Medtech Obj.") 7-10.)  Medtech claims that Magistrate Judge Smith's decision to exclude "thermosetting" from the definition of "a resin" is erroneous for the following reasons:  (1) the accepted dictionary definition of "resin" includes thermosetting and thermoplastic materials; (2) consistent with Federal Circuit precedent, a preferred embodiment in the specification should not be used to limit the claim, but should instead be seen as "at least one embodiment of the invention that falls within the scope of the claims"; (3) the patent specifically

8

states that it is not limited by the embodiments described in the specification; and (4) even Dentek's expert acknowledged that the base of the invention could be made from thermosetting resins.  (Medtech Obj. 9-10.)  The Court agrees with Medtech.

It does not follow from the fact that "the word 'thermosetting' is not mentioned anywhere in the patent" (R&R 13) that the term "a resin" must be limited to thermoplastic resins.  Dentek did not request such a limitation in its initial briefing before Magistrate Judge Smith (Mem. of Def. Dentek Oral Care, Inc. on Construction of Claim 17 of the '051 Patent ("Dentek Mem.") 16-17), and agreed to accept a definition stating that a resin "may include thermoplastic or thermosetting materials."  (Pl. Medtech Prods. Inc.'s Claim Construction Br. ("Medtech Mem.") 15; Reply of Def. Dentek Oral Care, Inc. to Pl.'s Br. ("Dentek Reply Mem.") 5 n.1.)  Dentek provides no reason for changing its view that "a resin" may include a thermosetting material, and merely states that the R&R "properly and consistently circumscribed the definition of 'resin' to thermoplastic resins."  (Dentek Resp. to Medtech Obj. ("Dentek Resp.") 5.)

Magistrate Judge Smith acknowledged that thermosetting materials are embraced by her accepted dictionary definition of "resin" and that Dentek and Medtech previously agreed that the term was not limited to only thermoplastic materials (R&R 13), but nevertheless concluded that "the inventor impliedly defined the term 'a resin' . . . as a thermoplastic material" (*id.* at 14).  She based this conclusion on the patent's description of the functionality of the preform (*id.*), but the preform is only one of the two parts of the appliance made of a resin, and it is clear that the other part — the base — has a functionality that does not require a thermoplastic material.  (Medtech Obj. 8.)  Magistrate Judge Smith also relied on the fact that the word "thermoplastic" "is used either in place of or to modify the word 'resin' numerous times throughout the patent."

9

(R&R 13.) However, the repeated use of the word "thermoplastic" in describing the preferred embodiments of the appliance does not limit the term "a resin" in Claim 17. *See Phillips*, 415 F.3d at 1323-24 (cautioning against importing restrictions from statements designed to "teach and enable those of skill in the art to make and use the invention"); *Interactive Gift Exp.*, 256 F.3d at 1331 (same). And while the statement in Claim 7 that "the base resin comprises a[] . . . copolymer blended with a thermoplastic" limits that claim, it says nothing about the meaning of the term "a resin" in Claim 17.

Accordingly, the Court construes "a resin" to mean "a thermoplastic or thermosetting solid or semi-solid substance."

### 3. "Molding Over the Base"

With regard to the next disputed term, "molding over the base," Magistrate Judge Smith recommended that the term be construed as follows:

> the step of injecting a thermoplastic resin, the characteristics of which are further defined in 17(b), into an occlusal mold cavity into which the base described in 17(a) has been placed so that the thermoplastic resin becomes an impression preform that covers the space between the side walls of the base, the inner surfaces of the side walls, and the space above and on top of the horizontal surfaces of the side walls of the base.

(R&R 16-17.) Both Parties have objected to certain aspects of this definition.

According to Medtech, the definition for this disputed term should be "the step of forming the impression preform of the appliance into a shape on top of the appliance base." (Medtech Obj. 19.) Medtech argues that Magistrate Judge Smith's definition improperly imposes manufacturing specifications and structural requirements and limits the scope of Claim

17. (*Id.* at 18-19.)  In particular, Medtech argues that Magistrate Judge Smith's definition improperly:  (1) places an "[i]njection [m]olding [l]imitation" on the fabrication process; and (2) imposes structural limitations into Claim 17 by requiring that the base have sidewalls and that the impression preform cover the inner surfaces and upper horizontal surfaces of the sidewalls.[3] (*Id.* at 11-19.)

Dentek largely agrees with Magistrate Judge Smith's proposed construction, but argues that, "consistent with the entirety of the reasoning underlying the recommended construction for 'molding over the base,' that phrase should be clarified to mean that, however bonded, the impression preform covers the top of the entire base." (Def. Dentek Oral Care, Inc.'s Objection to R&R ("Dentek Obj.") 11.)  In support of this argument, Dentek points to footnote 4 of the R&R, in which Magistrate Judge Smith stated that her proposed construction of "molding over the base" was not meant to limit the ways in which the impression preform and the base can be bonded together.[4] (R&R 18 n.4.)

---

[3] Dentek does not read Magistrate Judge Smith's definition as placing an injection molding limitation.  Instead, Dentek reads Magistrate Judge Smith's proposed construction as using the word "injecting" in its "ordinary, colloquial sense, namely . . . [as] synonymous with 'introducing.'" (Dentek Resp. 4.)  Therefore, according to Dentek, "the recommended definition does not limit the fabricating process of Claim 17 to the specific method of injection molding; rather, it contemplates other methods of molding." (*Id.*)

It is unclear to the Court whether Magistrate Judge Smith intended for her use of the word "injecting" to be synonymous with "introducing," as Dentek suggests, or if she intended to place an injection molding limitation on the fabrication process, as Medtech believes and to which it objects.  Either way, the Court does not believe that an injection molding limitation should be read into the claims from the specification.  *See Interactive Gift Exp.*, 256 F.3d at 1331 (noting that "care must be taken to avoid reading limitations appearing in the specification into the claims") (internal citations, quotations and alterations omitted).

[4] Medtech objects to footnote 4 of the R&R, which Medtech argues could be read to impermissibly "limit the invention to require that the unitary bond between the base and preform be achieved only by the included methods." (Medtech Obj. 19.)  The Court, however, does not

11

The Court has considered both Parties' objections, has undertaken a de novo analysis of the disputed term, and construes "molding over the base" as follows: "the step of molding a resin, the characteristics of which are further defined in part (b) of Claim 17, on top of an appliance base, such that a unitary bond is formed between the newly-introduced thermoplastic resin and the appliance base." The Court finds this construction to be in line with the inventor's intended definition of the disputed term, as reflected in the ordinary meaning of the terms used and as confirmed by the patent's intrinsic evidence. *See Phillips*, 415 F.3d at 1314 ("In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words.").

The Court's analysis begins with the words of the claim itself. *See Vitronics Corp.*, 90 F.3d at 1582. It is clear from its language that Claim 17 describes a two-step method for fabricating an interocclusal appliance. The Parties stipulated to the following definition for the first step, which is "molding an[] appliance base": "the step of forming or shaping the bottom support or layer of the appliance by molding." (Pl. Medtech Prods. Inc.'s Rebuttal Claim Construction Br. ("Medtech Reply Mem.") 3.) This first step describes, in relatively general terms, what is accomplished in step one — namely, the creation of the appliance base. Notably, the definition imposes no structural limitations on what the base should look like, instead describing the base functionally as "the bottom support or layer of the appliance." The Court

---

read footnote 4 as seeking to offer an exhaustive list of all the possible ways in which the impression preform can be bonded to the base, and, in any event, the Court agrees with both Parties that the patent does not require the base and impression preform to be bonded together in any particular manner.

12

reads the Parties' definition of step one as accomplishing two things: (1) describing, as a practical matter, how step two is accomplished ("by molding"), and (2) identifying the goal or purpose of step two (to "form[] and shape[] the bottom support or layer of the appliance"). With these concepts in mind from the actual claim language, the Court turns to the specification in an effort to discern what the inventor intended by describing step two as "molding over the base."

The Federal Circuit has described the specification as "the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal citation and quotation omitted). However, "[a]s with any other type of claim, courts must carefully avoid importing limitations from the specification into method claims." *Baldwin Graphic Sys. v. Siebert, Inc.*, 512 F.3d 1338, 1345 (Fed. Cir. 2008). "Nonetheless the specification informs the meaning of the claims." *Id*. Indeed, "there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Commc'ns., Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

The "Summary of the Invention" section of the specification states that "[m]olded into the base between and above the side walls is an impression preform" ('051 Patent, Col. 2:3-4), and every illustration in the patent appears to depict the upper surface of the base to be entirely covered by the impression preform, including the inner surfaces and horizontal upper surfaces of the sidewalls. The Court, however, declines on these bases to read into the definition of "molding over the base" a requirement that the impression preform cover the entire surface of the base, including various surfaces of the sidewalls. The Court believes that reading such a limitation into the claim language would push the construction over to the wrong side of the "fine line between reading the claim in light of the specification, and reading a limitation into the

claim from the specification." *Comark Commc'ns, Inc.*, 156 F.3d at 1186; *see also Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 805 (Fed. Cir. 2007) ("'[A]lthough the specification often describes very specific embodiments of the invention, we have repeatedly warned against confining the claims to those embodiments.'") (quoting *Phillips*, 415 F.3d at 1323) (alteration in original). It is not apparent to the Court that the inventor intended to impose such a limitation on Claim 17 through use of that language, as evidenced by the inventor's repeated use of the phrase "an interocclusal appliance of the *general character* described" throughout the remainder of the "Summary of the Invention" section.[5] ('051 Patent, Col. 2:44, 47-48, 50-51, 55-56, 58-59, 63-64 & 66; Col. 3:1-2, 6-7, 10-11, 13-14 & 18-19 (emphasis added).)

The intrinsic evidence supports the Court's construction of "molding over the base" as containing a requirement that the impression preform and appliance become unitarily bonded as a result of step two. One of the clear purposes behind the invention is to deal with certain problems associated with other self-fitting nightguards, including "separation of the bond between the liner and the trough." (*Id.*, Col. 1:56-57.) In the claims and in the specification, the inventor makes clear that the '051 Patent contemplates an appliance where the base and

---

[5] The Court also notes the inventor's inclusion of the following language at the end of the specification as indicative that the inventor did not intend to limit the patent to a particular embodiment based on exemplary language and illustrations used in the specification:

> Since various possible embodiments might be made of the present invention and since various changes might be made in the exemplary embodiments shown herein, without departing from the spirit of the invention, it should be understood that all matter herein described or shown in the accompanying drawings should be interpreted as illustrative and not in a limited sense.

('051 Patent, Col. 10:61-67.)

impression preform are unitarily bonded together so as to overcome this problem. (*Id.*, Col. 2:15-16 ("The base and preform are bonded to form a unitary appliance . . . ."); *id.* Claim 13, Col. 12:15-17 ("the appliance comprising a base and an impression preform unitarily bonded thereto").) In fact, one of the stated purposes of the invention is "[t]o provide an interocclusal appliance of the general character described having a base and an impression material unitarily molded thereto and characterized by a high shear resistance bond between components." (*Id.*, Col. 3:1-5.) The Court, therefore, finds it appropriate to include in the definition of "molding over the base" the requirement that the end result be an impression preform unitarily bonded to an appliance base.

Thus, the Court reads the specification, including the preferred embodiments, as shedding light on what "molding over the base" means in step two of Claim 17, but declines to impose structural limitations on the term based on exemplary language and illustrations in the specification.

### 4. "An Impression Preform"

Magistrate Judge Smith proposed the following construction for "an impression preform": "a thermoplastic resin which serves as an impression material consistent with the remainder of the requirements in Claim 17."[6] (R&R 19.) Neither Party objects to the first part of the construction, and the Court finds no clear error in Magistrate Judge Smith's construction insofar as it defines "an impression preform" as "a thermoplastic resin which serves as an

---

[6] Dentek had argued that "the phrase 'an impression preform' as it is used in Claim 17 encompasses the structural description of the impression preform as it is stated in Claims 1 and 13." (R&R 18.) Magistrate Judge Smith agreed with Medtech that such a limitation would be improper. (*Id.* at 19-20.)

15

impression material."[7]  However, Medtech objects to the second part of the proposed definition, arguing that the Court should omit the phrase "consistent with the remainder of the requirements in Claim 17."  (Medtech Obj. 22.)  As Medtech observes, this construction would appear "to incorporate all other definitions of all other terms (and their limitations) of Claim 17 into 'an impression preform,'" which would be redundant and contrary to "the well-established princip[le] that terms within a claim must have certain meanings."  (*Id.*)  Accordingly, the Court construes "an impression preform" as follows:  "a thermoplastic resin which serves as an impression material."

### 5.  "Having Approximately 30% by Weight Vinyl Acetate"

Finally, Magistrate Judge Smith recommended that this Court construe the disputed term "having approximately 30% by weight vinyl acetate" to mean "having about, roughly, or around 30% by weight vinyl acetate."  (R&R 21.)  Dentek objects to this proposed definition, claiming that it renders the claim impermissibly ambiguous and indefinite.  (Dentek Obj. 5-10.)  According to Dentek, the disputed term should be defined as follows:  "having at least 25.0% by weight vinyl acetate but not more than 33.0% by weight vinyl acetate."  (Dentek Mem. 24.)  Dentek argues that "[e]xpanding the scope of the phrase 'approximately 30% by weight' outside of that [25-33%] range would leave Claim 17 insolubly ambiguous as to how much vinyl acetate could be present without infringing the claim."  (Dentek Obj. 7.)

---

[7] Dentek asserts that Medtech's acceptance of the limiting word "thermoplastic" as part of this construction is "inconsistent with its attempt to include 'thermosetting' as part of the definition of resin."  (Dentek Resp. 5 n.2.)  To the contrary, this construction is consistent with Medtech's and the Court's broad construction of "a resin," which reflects that thermosetting materials may be used for the appliance's base resin but that only thermoplastic materials are appropriate for the appliance's preform resin.

Every patent has a definiteness requirement, which means that "[t]he specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention." 35 U.S.C. § 112. "[T]he purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude." *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1347 (Fed. Cir. 2005). Absolute clarity is not mandated by the definiteness requirement; indeed, only claims "not amenable to construction" are indefinite. *Id.* (internal quotation omitted). Issues of indefiniteness "often arise when words of degree are used in a claim." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003) (construing claim using the word "about") (internal quotation marks omitted). The focus of the definiteness inquiry is on "whether one of ordinary skill in the art would understand what is claimed when the claim is read in light of the specification." *Id.*

After undertaking a de novo analysis of this disputed term, the Court adopts Magistrate Judge Smith's proposed construction for the reasons aptly and thoroughly set out in the R&R. The Court is not persuaded by Dentek's claim that the 25-33% range is necessary or warranted for this claim. The imposition of such a range would improperly impose a limitation from the specification into the claims. *See Interactive Gift Exp.*, 256 F.3d at 1331. Further, the Court is satisfied that, given the other resin specifications clearly set out in the claims, a person of ordinary skill in the art of resins would be able to discern what is claimed by use of the phrase "having approximately 30% by weight vinyl acetate" in Claim 17. *See Andrew Corp. v. Gabriel Elecs., Inc.*, 847 F.2d 819, 821 (Fed. Cir. 1988) (noting that words such as "closely approximate" are "ubiquitous in patent claims" and "have been accepted in patent examination and upheld by

17

the courts") (emphasis in original).

### III. Conclusion

For the reasons stated herein, the Court adopts Magistrate Judge Smith's October 11, 2007 R&R to the extent it is consistent with this Opinion and Order.

SO ORDERED.

Dated:     November 5, 2009
           White Plains, New York

_____
KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

Service List by ECF:

W. Edward Ramage, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
211 Commerce St., Suite 1000
Nashville, TN 37201

Thomas O. Helton, Esq.
Clinton P. Sanko, Esq.
Micheline K. Johnson, Esq.
John M. Phillips, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
633 Chestnut Street, Suite 1800
Chattanooga, TN 37450
csanko@bakerdonelson.com
mjohnson@bakerdonelson.com
jphillips@bakerdonelson.com
thelton@bakerdonelson.com

Karl Geercken, Esq.
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016
karl.geercken@alston.com

Samuel F. Miller, Esq.
Baker, Donelson, Bearman, Caldwell & Berkowitz PC
165 Madison Avenue
Suite 2000
Memphis, TN 38103

John P. Fulco, Esq.
Petek Gunay, Esq.
Salon Marrow Dyckman Newman Broudy LLP
292 Madison Ave, 6th floor
New York, NY 10017
jfulco@salonmarrow.com
pgunay@salonmarrow.com

Michael A. Freeman, Esq.
Greenberg Freeman, L.L.P.
24 West 40th Street, 17th Floor
New York, NY 10018

freeman@greenbergfreeman.com

James H. Shalek, Esq.
Alan Federbush, Esq.
Theodore K. Cheng, Esq.
Proskauer Rose LLP
1585 Broadway
New York, NY 10036
jshalek@proskauer.com
afederbush@proskauer.com
tcheng@proskauer.com

Gregory J. Sieczkiewicz, Esq.
Proskauer Rose LLP
One International Place
Boston, MA 02110
gsieczkiewicz@proskauer.com